# EXHIBIT "A"

## EXHIBIT A

## INDEX OF ALL DOCUMENTS FILED IN STATE COURT ACTION

| DATE FILED | DOCUMENT TITLE |
| --- | --- |
| | STATE COURT DOCKET SHEET |
| 06/02/2009 | ORIGINAL PETITION / AGREED FINAL JUDGMENT (AND SEVERANCE) |
| 01/26/2010 | JURY DEMAND |
| 02/03/2010 | AGREED MOTION TO ABATE |
| 03/16/2010 | ORDER - MEDIATION |
| 07/21/2009 | NOTICE OF TRIAL |
| 01/28/2010 | NOTICE OF TRIAL |
| 02/07/2014 | AGREED MOTION TO LIFT ABATEMENT |
| 03/13/2014 | AGREED ORDER LIFTING ABATEMENT |
| 04/04/2014 | AGREED SCHEDULING ORDER |
| 04/08/2014 | NOTICE OF TRIAL |
| 05/05/2014 | SCHEDULING ORDER |
| 06/24/2014 | RULE 11 AGREEMENT |
| 06/26/2014 | RULE 11 AGREEMENT |
| 07/17/2014 | RULE 11 AGREEMENT |
| 08/08/2014 | RULE 11 AGREEMENT |
| 08/11/2014 | AMENDED ANSWER AND AFFIRMATIVE DEFENSES BY PHCS |
| 08/20/2014 | AGREED MOTION FOR CONTINUANCE |
| 10/31/2014 | AGREED SCHEDULING ORDER |
| 10/31/2014 | NOTICE OF TRIAL |
| 11/14/2014 | AMENDED PETITION |

| | |
|---|---|
| 11/26/2014 | RULE 11 AGREEMENT |
| 12/05/2014 | ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM |
| 01/06/2015 | SCHEDULING ORDER |
| 01/26/2015 | SCHEDULING ORDER |
| 02/25/2015 | NOTICE OF TRIAL |
| 05/11/2015 | RULE 11 AGREEMENT |
| 06/16/2015 | CORRESPONDENCE - LETTER TO FILE - REQUEST TO SET TRIAL |
| 06/16/2015 | MOTION FOR PARTIAL SUMMARY JUDGMENT RELATED TO LIMITATION OF LIABILITY PROVISION BY PHCS |
| 06/17/2015 | ORDER GRANTING AGREED MOTION FOR CONTINUANCE |
| 06/17/2015 | NOTICE OF TRIAL |
| 06/29/2015 | NOTICE OF HEARING ON MOTION FOR PARTIAL SUMMARY JUDGMENT RELATED TO LIMITATION OF LIABILITY PROVISION BY PHCS |
| 08/21/2015 | PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| 08/28/2015 | ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT BY PHCS |
| 09/28/2015 | CORRESPONDENCE - LETTER TO FILE - REQUEST TO RESET TRIAL |
| 10/07/2015 | ORDER GRANTING CONTINUANCE |
| 10/14/2015 | NOTICE OF TRIAL |
| 01/14/2016 | CORRESPONDENCE - LETTER TO FILE - REQUEST TO RESET TRIAL |
| 01/19/2016 | AGREED MOTION FOR CONTINUANCE |
| 02/23/2016 | NOTICE OF TRIAL |
| 04/19/2016 | AGREED MOTION FOR SCHEDULING ORDER & MOTION FOR CONTINUANCE |
| 04/26/2016 | AGREED MOTION FOR CONTINUANCE |

| 04/27/2016 | SECOND AMENDED PETITION |
|---|---|
| 05/05/2016 | NOTICE OF TRIAL |
| 06/03/2016 | ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM BY PHCS |
| 08/22/2016 | THIRD AMENDED PETITION |
| 09/12/2016 | JURY TRIAL NOTICE |

# DC-09-07252 - GPA HOLDING INC vs. PRIVATE HEALTHCARE SYSTEMS

Case Number: DC-09-07252
File Date: 06/02/2009
Case Status: RE-OPENED

Court: 298th District Court
Case Type: OTHER (CIVIL)

PLAINTIFF : GPA HOLDING INC

**Active Attorneys**
  **Lead Attorney:**
   **RYAN, JEFFREY W**
   Retained
   Work Phone: 214-905-2003
   Fax Phone: 214-905-1213

DEFENDANT : PRIVATE HEALTHCARE
SYSTEMS

**Active Attorneys**
  **Lead Attorney:**
   **CAESAR, CRAIG L.**
   Retained
   Work Phone: 504-566-8616
   Fax Phone: 504-585-6916

## 03/18/2010 Judgment

Judicial Officer: TOBOLOWSKY, EMILY
Judgment Type: ORDER - ADMINISTRATIVELY CLOSE CASE (BANKRUPTCY)

## 06/02/2009 ORIGINAL PETITION (OCA)
ORIGINAL PETITION (OCA)
## 01/26/2010 JURY DEMAND
01-26-2010 - Jury Demand CV - DC0907252 - 1525221.pdf
## 02/03/2010 MOTION - MISCELLANOUS

## 03/16/2010 ORDER - MEDIATION
03-16-2010 - Order - Mediation - DC Civ M - DC0907252 - 582 - 1634659.pdf

## 03/16/2010 Non Jury Trial
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: CASE TRIAL RESET

## 03/19/2010 MOTION HEARING
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: HEARING RESCHEDULED

## 05/03/2010 Jury Trial - Civil
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: BY COURT ADMINISTRATOR

## 02/07/2014 MOTION - LIFT ABATEMENT
agmtnlftabatement.pdf
agreedschedulingorder.pdf
Comment: Agreed Motion to Lift Abatement

## 02/07/2014 NOTE - CLERKS
Comment: AGREED SCHEDULING O/SUBMITTED TO ADMIN

## 03/07/2014 CORRESPONDENCE - LETTER TO FILE
filing letter.pdf
agrdorder.pdf
Comment: AGRD O/LIFTING ABATEMENT-CALLED ATTY (NO ORDER FROM BANKRUPTCY COURT)

## 03/13/2014 ORDER - REINSTATE (OCA and REOPEN CASE)
ORDER - REINSTATE (OCA and REOPEN CASE)

## 03/14/2014 NOTE - CLERKS
Comment: RESUBMITTED AGRD SCHEDULING ORDER

## 04/04/2014 CORRESPONDENCE - LETTER TO FILE
letter.pdf
aso.pdf

## 04/04/2014 NOTE - CLERKS
Comment: AGREED SCHEDULING O/SUBMITTED TO ADMIN

## 05/05/2014 SCHEDULING ORDER
SCHEDULING ORDER

## 06/24/2014 RULE 11
Rule 11 Agreement.pdf
Comment: Rule 11 Agreement

## 06/26/2014 RULE 11
Rule 11 Agreement.pdf
Comment: Rule 11 Agreement

## 07/17/2014 RULE 11
Rule 11 Agreement.pdf
Comment: Rule 11 Agreement

## 08/08/2014 RULE 11
Rule 11 Agreement.pdf
Comment: Rule 11 Agreement

## 08/11/2014 AMENDED ANSWER - AMENDED GENERAL DENIAL
PHCS Amended Answer and Affirmative Defenses.pdf
Comment: Answer/Response/Contest

## 08/20/2014 MOTION - CONTINUANCE

MFC.pdf
Comment: Agreed Motion for Continuance SUBMITTED SCHEDULING ORDER

## 10/31/2014 NON-SIGNED PROPOSED ORDER/JUDGMENT
Letter forwarding Agreed Scheduling Order.pdf
Agreed Scheduling Order.pdf
Comment: Letter Forwarding Agreed Scheduling Order SUBMITTED

## 11/03/2014 Jury Trial - Civil
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: BY COURT ADMINISTRATOR

## 11/14/2014 AMENDED PETITION
Plaintiff GPA Holding, Inc.'s First Amended Original Petitio
Comment: Plaintiff GPA Holding, Inc.'s First Amended Original Petition

## 11/26/2014 RULE 11
Rule 11 Agreement.pdf
Comment: Rule 11 Agreement

## 12/05/2014 ORIGINAL ANSWER - GENERAL DENIAL
Private Healthcare Systems, Inc.'s Answer, Affirmative Defen
Comment: Private Healthcare Systems, Inc.'s Answer, Affirmative Defenses, and Counterclaim

## 12/08/2014 COUNTER CLAIM
COUNTER CLAIM
Comment: PHCS, Inc.'s Counterclaim

## 01/06/2015 SCHEDULING ORDER
SCHEDULING ORDER

## 01/26/2015 NON-SIGNED PROPOSED ORDER/JUDGMENT
gpaltr.pdf
gpaschedulingorder.pdf
Comment: Correspondence to Judge with attached Agreed Scheduling Order SUBMITTED

## 02/25/2015 SCHEDULING ORDER
SCHEDULING ORDER
Comment: AGRD

## 03/23/2015 Jury Trial - Civil
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: BY COURT ADMINISTRATOR

## 05/11/2015 RULE 11
Rule 11 Agreement.pdf
Comment: Rule 11 Agreement

## 05/11/2015 CORRESPONDENCE - LETTER TO FILE
Letter Forwarding Order Granting Agreed Motion for Continuan
Order Granting Agreed Motion for Continuance.pdf
Comment: Letter Forwarding Order Granting Agreed Motion for Continuance

## 05/12/2015 NOTE - CLERKS
Comment: AGREED O/CONTINUANCE SUBMITTED

## 06/16/2015 CORRESPONDENCE - LETTER TO FILE
GPA Holding v. PHCS Letter to Court Regarding Trial Date - C
Comment: Letter to Court Regarding Trial Date

## 06/16/2015 NOTE - CLERKS
Comment: LETTER DATED 6/16/15 * ADMIN'S QUEUE

## 06/16/2015 MOTION - PARTIAL SUMMARY JUDGMENT
MOTION - PARTIAL SUMMARY JUDGMENT

ORDER - GRANTING CONTINUANCE
Comment: AGRD

## 06/22/2015 Jury Trial - Civil
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: BY COURT ADMINISTRATOR

## 06/29/2015 NOTICE OF HEARING / FIAT
Notice of Hearing
Comment: Notice of Hearing

## 08/21/2015 RESPONSE
Plaintiff's Response to Defendant's Motion for Partial Summa
Comment: Plaintiff's Response to Defendant's Motion for Partial Summary Judgment

## 08/28/2015 ORDER - PARTIAL SUMMARY JUDGMENT
ORDER - PARTIAL SUMMARY JUDGMENT
Comment: PRIVATE HEALTHCARE SYSTEM INC.

## 08/28/2015 Motion - Partial Summary Judgment
MOTION - PARTIAL SUMMARY JUDGMENT
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Comment: DEF * 30 MIN *

## 09/28/2015 CORRESPONDENCE - LETTER TO FILE
Letter to Judge Emily Tobolowsky requesting resetting of tri
Comment: Letter to Judge Emily Tobolowsky requesting resetting of trial

## 09/28/2015 NOTE - CLERKS
Comment: LETTER TO JUDGE - ADMIN QUE

## 10/07/2015 CORRESPONDENCE - LETTER TO FILE
Letter to Judge Emily Tobolowsky requesting to reset trial
Comment: RE: REQUEST TO RESET TRIAL

## 10/07/2015 NON-SIGNED PROPOSED ORDER/JUDGMENT
Proposed Order
Comment: PROPOSED ORDER FOR CONTINUANCE

## 10/14/2015 ORDER - GRANTING CONTINUANCE
ORDER - GRANTING CONTINUANCE

## 10/26/2015 Jury Trial - Civil
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: BY COURT ADMINISTRATOR

## 01/14/2016 NON-SIGNED PROPOSED ORDER/JUDGMENT
Letter Forwarding Order Granting Agreed Motion for Continuan
Order Granting Agreed Motion for Continuance.PDF
Comment: PROPOSED AGREED ORDER FOR CONTINUANCE

## 01/14/2016 NOTE - CLERKS
Comment: AGREED ORDER FOR CONTINUANCE SUBMITTED TO QUEUE

## 01/14/2016 CORRESPONDENCE - LETTER TO FILE
Letter to Honorable Emily Tobolowsky - Cause No. DC-09-07252
Comment: Letter to Honorable Emily Tobolowsky

## 01/15/2016 NOTE - CLERKS
Comment: SUBMITTED 1/14/16 LETTER * ADMIN'S QUEUE

## 01/19/2016 MOTION - CONTINUANCE
Agreed Motion for Continuance.pdf
Comment: AGREED

Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: BY COURT ADMINISTRATOR

## 04/19/2016 MOTION - SCHEDULING ORDER
Agreed Motion for Scheduiling Order and Motion for Continuanc
Comment: AGREED AND MOTION FOR CONTINUANCE

## 04/19/2016 NON-SIGNED PROPOSED ORDER/JUDGMENT
Letter Forwarding Order Granting Agreed Motion for Scheduing
Order Granting Agreed Motion for Scheduling Order and Motion
Comment: PROPOSED AGREED ORDER ON MOTION FOR SCHEDULING ORDER AND
CONTINUANCE

## 04/19/2016 NOTE - CLERKS
Comment: AGREED ORDER ON MOTION FOR SCHEDULING ORDER AND MOTION FOR
CONTINUANCE SUBMITTED TO QUEUE

## 04/26/2016 NON-SIGNED PROPOSED ORDER/JUDGMENT
Order - Agreed Mtn for Cont.PDF
Comment: Proposed Order on Agreed Motion for Continuance

## 04/26/2016 CORRESPONDENCE - LETTER TO FILE
Letter to Judge.PDF
Comment: RE: TRIAL CONFLICTS AND CONTINUANCE

## 04/27/2016 NOTE - CLERKS
Comment: SUBMITTED AGRD ORDER TO DISMISS * ADMIN'S QUEUE

## 04/27/2016 AMENDED PETITION
Plaintiff GPA Holding, Inc.'s Second Amended Original Petiti
Comment: Second

## 05/02/2016 VACATION LETTER

## 05/16/2016 Jury Trial - Civil
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM
Cancel Reason: BY COURT ADMINISTRATOR

## 06/03/2016 AMENDED ANSWER - AMENDED GENERAL DENIAL
Answer/Response

## 08/22/2016 AMENDED PETITION
Plaintiff GPA Holding, Inc.'s Third Amended Original Petitio
Comment: 3RD

## 09/12/2016 Jury Trial - Civil
Jury Trial Notice
Jury Trial Notice
Jury Trial Notice
Judicial Officer: TOBOLOWSKY, EMILY
Hearing Time: 9:00 AM

CAUSE NO. ~~06-00120~~   09-01252

| | | |
|---|---|---|
| **BAYLOR HEALTH CARE SYSTEM** | § | **IN THE DISTRICT COURT OF** |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **GPA HOLDING, INC.** | § | |
| Defendant & Third-Party Plaintiff, | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| v. | § | |
| | § | |
| **PRIVATE HEALTHCARE SYSTEMS, INC.,** | § | |
| | § | |
| Third-Party Defendant. | § | **298TH JUDICIAL DISTRICT** |

## AGREED FINAL JUDGMENT (AND SEVERANCE)

This cause came on for consideration on the parties' submission of this Agreed Final Judgment (and Severance), the full names of parties hereto being as follows: Baylor Health Care System, on behalf of Baylor All Saints Medical Center, Baylor Heart and Vascular Hospital, Baylor Specialty Hospital, Baylor Institute for Rehabilitation, Baylor University Medical Center, Baylor Medical Center at Garland, Baylor Regional Medical Center at Grapevine, Baylor Medical Center at Irving, Our Children's House at Baylor, Baylor Regional Medical Center at Plano and Baylor Medical Center Ellis County (collectively, "Baylor" or "Plaintiff"), GPA Holding, Inc. (defendant and third-party plaintiff) (hereafter "GPA"), and Private Healthcare Systems, Inc. (third-party defendant) (hereafter "PHCS").

On January 12, 2009, the Court signed orders granting Plaintiff Baylor Health Care System's Motion for Partial Summary Judgment and denying GPA Holding, Inc.'s Traditional and No Evidence Motion for Summary Judgment. On April 3, 2009, the Court signed orders

granting Plaintiff Baylor Health Care System's Motion for Partial Summary Judgment Relating to Construction of Hospital Services Agreement and Plaintiff Baylor Health Care System's Motion for Partial Summary Judgment Relating to Undisputedly Late-Paid Health Care Claims. On April 23, 2009, the Court signed an order granting Plaintiff Baylor Health Care System's Motion for Judgment Based Upon Stipulated Facts.  In light of the foregoing orders signed by the Court, Baylor and GPA, in accordance with Rule 263 of the Texas Rules of Civil Procedure, have stipulated to the remaining disputed factual issues between them and, therefore, the parties' move for the Court's rendition of this Final Judgment from which GPA may appeal.  Baylor and GPA have stipulated and agreed that GPA's appeal of this Final Judgment shall be limited to (as authorized by, *e.g.*, *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 754 & n. 1 (Tex. 1993), *Cain, Brogden & Cain, Inc. v. Local Union No. 47*, 155 Tex. 304, 285 S.W.2d 942, 950-51 (1956), and *Trinity Universal Insurance Co. v. Cowan*, 906 S.W.2d 124, 128 (Tex. App.--Austin 1995), *rev'd on other grounds*, 945 S.W.2d 819 (Tex. 1997)) the following rulings:

(1)     the January 12, 2009, Order Granting Baylor Health Care System's Motion for Partial Summary Judgment;

(2)     the April 3, 2009, Order Granting Plaintiff Baylor Health Care System's Motion for Partial Summary Judgment Relating to Construction of Hospital Services Agreement;

(3)     the April 3, 2009 Order Granting Plaintiff Baylor Health Care System's Motion for Partial Summary Judgment Relating to Undisputedly Late-Paid Health Care Claims;

(4)     the January 12, 2009, Order Denying Defendant GPA Holding, Inc.'s Traditional and No Evidence Motion for Summary Judgment; and

(5)     the April 23, 2009 Order Granting Plaintiff Baylor Health Care System's Motion for Judgment Based Upon Stipulated Facts. As to the remaining claims

It is, accordingly, Ordered, Adjudged and Decreed, based on the Court's earlier orders and stipulations between Baylor and GPA as to amounts recoverable if the Court's orders survive

appellate review, Baylor shall have and recover from GPA:

the sum of $2,269,187.40 as actual damages; plus

the sum of $416,021 for prejudgment interest commencing on January 6, 2006, the date this cause was filed, and ending April 27, 2009; plus

the sum of $596,581.61 for attorney's fees through April 27, 2009; plus

post-judgment interest at five percent per annum on the sums stated above, compounded annually, from the date this judgment is signed until this judgment has been satisfied; plus

$75,000 for additional attorney's fees through the court appeals if GPA appeals and its appeal is unsuccessful; plus

$25,000 for additional attorney's fees if GPA files a petition for review with the Texas Supreme Court and review is denied; plus

$75,000 for additional attorney's fees if the Texas Supreme Court grants review and ultimately renders judgment affirming the lower courts' judgment for Baylor.

It is further Ordered that Baylor shall recover from GPA taxable court costs in the amount of $3,936.

It is further Ordered that GPA's third-party claim against PHCS, and all pleaded disputes between GPA and PHCS, are hereby severed from this Cause No. 06-00120, to be docketed by the district clerk's office under a separate cause number, although such severance is effective immediately upon signing of this final judgment regardless of when the district clerk's office creates a new cause number for the disputes between GPA and PHCS. The district clerk shall include in such severed file certified copies of those documents GPA and PHCS will later designate in writing for inclusion in the severed file, with costs of such certified copies and severance to be borne 50% by GPA and 50% by PHCS.

As the Court intends hereby to render a final and appealable judgment, it is further Ordered that, except as to the severed third-party claim against PHCS, and all pleaded disputes between GPA and PHCS, this judgment finally disposes of all claims between Baylor and GPA, and all relief not expressly granted herein to either Baylor or GPA is denied.

Signed this __23__ day of April, 2009.

Emily J. Tobolowsky, Judge
298th District Court, Dallas County

**APPROVED AS TO FORM AND SUBSTANCE:**

By: _____

Jeff Cody
State Bar No. 04468960
Ben Taylor
State Bar No. 19684500
Melissa A. Davis
State Bar No. 00792995
Tate A. Seideman
State Bar No. 24060912
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone:  214/855-8000
Telecopier:  214/855-8200

ATTORNEYS FOR PLAINTIFF
BAYLOR HEALTH CARE SYSTEM


**APPROVED AS TO FORM:**

By: _____

Jeff W. Ryan
State Bar No. 17469600
CHAMBLEE & RYAN
2777 North Stemmons Freeway, Suite 1157
Dallas, Texas 75207
Telephone:  214/905-2003
Telecopier:  214/905-1213

AND

Craig D. Zips
State Bar No. 00797729
DERRYBERRY & ZIPS, PLLC
100 E. Ferguson Street, Suite 1212
Tyler, Texas 75702
Telephone:  903/526-2767
Telecopier:  903/526-2714

ATTORNEYS FOR DEFENDANT GPA HOLDING, INC.

By: _____

Craig L. Caesar
State Bar No. 24056970
Errol J. King,
*Admitted Pro Hac Vice*
McGLINCHEY STAFFORD, PLLC
2711 N. Haskell, Suite 2700
Dallas, Texas 75204
Telephone: 214/257-1842
Telecopier: 214/257-1818

ATTORNEY FOR THIRD-PARTY DEFENDANT
PRIVATE HEALTHCARE SYSTEMS, INC.

# CHAMBLEE Ⓡ RYAN

FILED

**JARAD L. KENT**
DIRECT DIAL: (214) 678-1437
jkent@chambleeryan.com

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

2777 NORTH STEMMONS FREEWAY
SUITE 1157
DALLAS, TEXAS 75207

MAIN NUMBER: (214) 905-2003
FACSIMILE: (214) 905-1213
crlaw@chambleeryan.com

2009 JUN -2 AM 11:19

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

_____ DEPUTY

May 28, 2009

Ms. Carolyn Dupree Brown
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce St., Box 822
8th Floor New Tower
Dallas, TX 75202-6143

Re:   *Baylor Health Care System vs. GPA vs. Private Healthcare Systems, Inc.*
      Cause No.:   06-00120
      Our File No.:   384-3565

Dear Ms. Brown:

Pursuant to the Court's ruling of April 23, 2009, GPA Holding, Inc.'s claims against Private HealthCare Systems, Inc. have been severed from the above-referenced matter. Enclosed please find an original and copy of the *Agreed Final Judgment (and Severance)* as well as our firm check in the amount of $222.00 for the filing fee. Please issue a new cause number for the severed claims and return a file-marked copy of the enclosed Judgment with the new cause number noted thereon to us in the enclosed envelope.

Thank you for your assistance in this matter. Please feel free to contact me if you have any questions.

Sincerely,

Jarad L. Kent

JLK:dro
Enclosures

cc (w/enc.):   Mr. Jeff Cody, Fulbright & Jaworski, L.L.P.
               Mr. Craig L. Caesar, McGlinchey Stafford PLLC

# CHAMBLEE **R** RYAN

**JEFFREY W. RYAN**
DIRECT DIAL: (214) 905-9714
jwryan@chambleeryan.com

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

2777 NORTH STEMMONS FREEWAY
SUITE 1157
DALLAS, TEXAS 75207

MAIN NUMBER: (214) 905-2003
FACSIMILE: (214) 905-1213
cr.law@chambleeryan.com

January 20, 2010

Ms. Carolyn Dupree-Brown
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce St., Box 822
8th Floor New Tower
Dallas, TX 75202-6143

Re:     *GPA Holding, Inc. vs. Private Healthcare Systems, Inc.*
        Cause No.:      09-07252
        Claim No.:      002428
        Our File No.:   384-3565

Dear Carolyn:.

Enclosed please find a firm check in the amount of $30 for payment of a jury fee in this matter. Also enclosed is a self-addressed and stamped envelope for the return of the receipt.

I appreciate your time and attention to this matter.

Sincerely,

Jeffrey W. Ryan

JWR:bg
Enclosure

cc:     Mr. Craig L. Caesar, McGlinchey Stafford PLLC
        (w/out enclosure)

ENTER DEMAND FOR JURY
JURY FEE PAID $30.00
VOL ___ PG ___    PLTF   DEF

329m 582

CAUSE NO. DC-09-07252

**GPA HOLDING INC**

vs.

**PRIVATE HEALTHCARE SYSTEMS**

In the District Court
Dallas County, Texas
298th District Court

### 298ᵗʰ DISTRICT COURT MEDIATION ORDER

This case is appropriate for mediation pursuant to  Section 154.001 et seq. of the  Texas Civil Practice and Remedies Code.  The mediator may be selected by agreement of the parties; if one cannot be agreed upon within thirty (30) days,  DANIEL C PEREZ @ Work: 214-521-4394 is appointed mediator.   The parties shall advise both the Court and the aforementioned mediator in writing of any agreed mediator within thirty (30) days of the date hereof.  Any mediator substitution requested beyond such time may only be made by motion  to the Court.

Mediation is a mandatory but non-binding settlement conference, conducted with the assistance of the mediator.  Mediation is private, confidential and privileged from process and discovery.  After mediation, the court will be advised by the mediator, parties and counsel, only that the case did or did not settle.  The mediator shall not be a witness nor may the mediator's records be subpoenaed or used as evidence.  No subpoenas, citations, writs, or other process shall be served at or near the location of any mediation session, upon any person entering, leaving or attending any mediation session.

The mediator will negotiate a reasonable fee with the parties which shall be divided and borne equally by the parties unless agreed otherwise, paid by the parties directly to the mediator, and taxed as costs.  If the parties do not agree upon the fee requested by the mediator, the court will set a reasonable fee, which shall be taxed as costs.  Each party and their counsel will be bound by the rules for mediation printed on the reverse hereof, and shall complete the information forms as are furnished by the mediator.

Named parties shall be present during the entire mediation process and each corporate party must be represented by an executive officer with authority to negotiate a settlement.  Counsel, the parties and the mediator shall agree upon a mediation date within 30 days from the date of this order.  If no date can be agreed upon within the 30 day period, then the mediator shall select a date for the mediation and all parties shall appear as directed by the mediator.

The date scheduled by the mediator is incorporated into this Order as the date upon which the mediation session shall occur.   In any event, the mediation shall be conducted no later than **April 17, 2010.**

Failure or refusal to attend the mediation as scheduled may result in imposition of sanctions, as permitted by law, which may include dismissal or default judgment.  Failure to mediate will not be considered cause for continuance of the trial date.

A report regarding the outcome of the mediation session is to be mailed by the mediator to the court, with a copy to the ADR Coordinator, immediately after the mediation session.

Signed this  Mar. 16. 2010

Emily A. Tobolowsky

The Honorable EMILY TOBOLOWSKY,, Presiding

cc:      Counsel of Record and Mediator

FILED
DALLAS COUNTY
2/7/2014 2:01:47 PM
GARY FITZSIMMONS
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

## AGREED MOTION TO LIFT ABATEMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, GPA Holdings, Inc. (GPA) Plaintiff herein and Private Healthcare Systems, Inc. (PHCS), Defendant herein, and files this, their Agreed Motion to Lift Abatement and respectfully shows unto the Court as follows:

### I.

On or about February 3, 2010, the parties submitted a Joint Agreed Motion to Abate this matter. The abatement was based on the fact there were issues involved in the case *GPA Holding, Inc. v. Baylor Health Care System;* Cause No. DC-06-00120 that were on appeal that would have possibly had an impact or could have been dispositive of the issues involved in the present case. This Court after hearing arguments of counsel entered an Order abating this present action on March 18, 2010.

**Agreed Motion to Lift Abatement – Page 1**

All appeals have been exhausted with the prior matter and the parties are prepared to proceed with the litigation of the pending claim.

### II.

Attached as Exhibit "A" is a proposed Agreed Scheduling Order setting forth proposed dates for additional matters up to and including trial.

WHEREFORE, PREMISES CONSIDERED, the Parties respectfully request that this Court lift its Order of Abatement and the case be placed on the Court's trial docket at a mutually agreed time.

Respectfully submitted,

**Chamblee, Ryan, Kershaw & Anderson, P.C.**

By: _____

Jeffrey W. Ryan
State Bar No: 17469600
jwryan@chambleeryan.com

2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas 75207
(214) 905-2003
(214) 905-1213 (facsimile)
Attorneys for GPA Holding, Inc.

**Agreed Motion to Lift Abatement – Page 2**

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.

By: _____

Craig I. Caesar
Texas State Bar No. 24056970
ccaesar@bakerdonelson.com

201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200
Telecopier: (504) 585-6916
ATTORNEYS FOR PHCS


## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff and counsel for Defendant have personally conducted a conference at which there was a substantive discussion of every item presented to the Court in this Agreed Motion. I, the undersigned attorney, hereby certify to the Court that after conferring on the request presented in this Agreed Motion, all Parties have agreed to this Motion.

Jeffrey W. Ryan


Agreed Motion to Lift Abatement – Page 3

## CERTIFICATE OF SERVICE

I do hereby certify that on February _14_, 2013 a true and correct copy of the above and foregoing document has been forwarded via fax and/or email to counsel for Defendant:

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

Jeffrey W. Ryan

**Agreed Motion to Lift Abatement – Page 4**

346m· 000452

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

## <u>AGREED ORDER LIFTING ABATEMENT</u>

The Court having considered the Parties' Agreed Motion to Lift Abatement, concludes that such Motion should be granted.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Abatement granted on March 18, 2010, is hereby lifted, and that the parties herein are no longer enjoined from conducting discovery or proceeding with litigation in the case.

Signed and approved this ___*13*___ day of March, 2014.

_____
DISTRICT COURT JUDGE

ORIGINAL SIGNED BY JUDGE

**AGREED ORDER LIFTING ABATEMENT - PAGE 1**

FILED
DALLAS COUNTY
4/4/2014 2:27:05 PM
GARY FITZSIMMONS
DISTRICT CLERK



**Chamblee Ryan**
CHAMBLEE | RYAN | KERSHAW | ANDERSON

April 4, 2014

Ms. Margaret Thomas
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce Street, Box 822
Dallas, TX 75202-6143

Re:     *GPA Holding, Inc. vs. PHCS, Inc.*
        Cause No.:    DC-09-07252
        Claim No.:    002428
        Our File No.:  384-3565

Dear Ms. Thomas:

        Attached please find an Agreed Scheduling Order.  Please present to the Judge for approval and signature.

        I appreciate your time and attention to this matter.

                                Sincerely,

                                Jeffrey W. Ryan

JWR:bg
Enclosure

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| GPA HOLDING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| | § | |
| PRIVATE HEALTHCARE | § | 298TH JUDICIAL DISTRICT |
| SYSTEMS, INC. | § | |

## AGREED SCHEDULING ORDER

The following Agreed Scheduling Order shall apply to this case unless modified by the Court or by written agreement of the parties. If no date is given below, the item is covered by the Texas Rules of Civil Procedure.

1.  **EXPERT WITNESS DESIGNATION**
    Expert witness designations are required and must be served by the following dates. The designation must include the information listed on Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.

    a) 06/27/14 Plaintiff's experts.

    b) 07/25/14 Defendant's experts.

2.  07/18/14  **ALTERNATIVE DISPUTE RESOLUTION**
    Mediation must be conducted by this date. The parties will agree to a mediator within 90 days of the signing of this order and will notify the court of such agreement.

3.  09/30/14  **DISCOVERY PERIOD ENDS**
    All discovery must be completed by this date. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

4.   09/30/14   **DISPOSTIVE MOTIONS AND PLEAS**
Dispositive motions or pleas subject to an interlocutory appeal must be filed by this date.

5.   10/16/14   **CHALLENGES TO EXPERT TESTIMONY**
All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

6.   06/27/14   **PLEADINGS**
All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

7.   11/03/14   **JURY TRIAL**
Reset or continuance of the initial trial setting will not alter any deadlines established in this 'Agreed Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order or agreement of counsel.

8.   TBD   **EXCHANGE EXHIBITS**
The parties shall exchange list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery 14 days before the trial date.

9.   TBD   **ATTORNEY CONFERENCE**
Attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this order and attempt to maximize agreement on such matters 10 days before the trial date.

Plaintiff/Plaintiff's counsel shall serve a copy of this Agreed Order on any Defendants joined after this date.

IT IS SO ORDERED on this the 5th day of April 2014.

*JUDGE PRESIDING*

**AGREED:**

RET JUDGE 162 th JUDICIAL DISTRICT COURT SITTING FOR JUDGE 29
JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS

By: _____

Craig L. Caesar
Texas State Bar No. 24056970
ccaesar@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200
Telecopier: (504) 585-6916

ATTORNEYS FOR PHCS

By: _____

Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, TX 75207
Telephone: (214) 905-2003
Telecopier: (214) 905-1213

ATTORNEYS FOR GPA HOLDING, INC.

Agreed Scheduling Order - 3

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS  75202-4604

April 08, 2014

File Copy

DC-09-07252
GPA HOLDING INC  vs.  PRIVATE HEALTHCARE SYSTEMS

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:    11/03/2014 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF
THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY.
IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED
FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL
PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS
RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL
PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL
PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN

DALLAS COUNTY
6/24/2014 10:58:19 AM
GARY FITZSIMMONS
DISTRICT CLERK



**Chamblee Ryan**

CHAMBLEE I RYAN I KERSHAW I ANDERSON

June 24, 2014

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

Re:     *GPA Holding, Inc. vs. PHCS, Inc.*
          Cause No.:   DC-09-07252
          Claim No.:    002428
          Our File No.: 384-3565

Dear Mr. Caesar:

Pursuant to your conversations with Mr. Ryan regarding the above referenced matter, this letter shall serve as the parties' Rule 11 Agreement with respect to each party's respective expert designation deadline. Pursuant to this Rule 11 Agreement, it is expressly agreed that the deadline for the parties to designate experts per the Court's previously entered scheduling order shall be extended to the dates noted below:

(1) 7/18/14 – Plaintiff's expert designation deadline;
(2) 8/15/14 – Defendant's expert designation deadline.

Please sign below if the above accurately reflects the terms of our Rule 11 Agreement, and return a signed copy to me for filing with the Court. Thank you for your courtesies with respect to this matter.

Sincerely,

Jarad L. Kent

JLK:jlk

AGREED:

Mr. Craig L. Caesar
Attorney for Defendant
Private Healthcare Systems, Inc.

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 878-1437 | F: (214) 905-1213
jkent@chambleeryan.com | www.chambleeryan.com

Rule 11 Agreement - Solo Page

TOTAL P.003

FILED
DALLAS COUNTY
6/26/2014 10:17:09 AM
GARY FITZSIMMONS
DISTRICT CLERK



**Chamblee Ryan**
CHAMBLEE I RYAN I KERSHAW I ANDERSON

June 26, 2014

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

     Re:    *GPA Holding, Inc. vs. PHCS, Inc.*
           Cause No.:   DC-09-07252
           Claim No.:   002428
           Our File No.: 384-3565

Dear Craig:

     Per Jeff's e-mail this morning, the following shall represent the parties' Rule 11 Agreement with respect to the current pleading deadline under the current scheduling order. Per the terms of this Rule 11 Agreement, the parties expressly agree that the deadline to file all amended or supplemental pleadings is hereby extended until July 17, 2014.

     Please sign below where indicated if the above accurately reflects the terms of our Rule 11 Agreement, and return a conformed copy to me for filing with the Court. Please do not hesitate to contact me should you have any questions concerning this matter.

                                   Sincerely,

                                   Jarad L. Kent

JLK:jlk

AGREED:

Mr. Craig L. Caesar
Attorney for Defendant
Private Healthcare Systems, Inc.

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 678-1437 | F: (214) 905-1213
jkent@chambleeryan.com | www.chambleeryan.com

Rule 11 Agreement - Solo Page

FILED
DALLAS COUNTY
7/17/2014 10:42:25 AM
GARY FITZSIMMONS
DISTRICT CLERK



CHAMBLEE | RYAN | KERSHAW | ANDERSON

July 16, 2014

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

     Re:   *GPA Holding, Inc. vs. PHCS, Inc.*
          Cause No.:   DC-09-07252
          Claim No.:    002428
          Our File No.:  384-3565

Dear Craig:

     Per Jeff's e-mail this morning, the following shall represent the parties' Rule 11 Agreement with respect to the current pleading deadline under the current scheduling order. Per the terms of this Rule 11 Agreement, the parties expressly agree that the deadline to file all amended or supplemental pleadings is hereby extended until August 11, 2014.

     Parties also agree that the deadline for plaintiff to designate experts is extended until August 11, 2014.

     Parties also agree that the deadline for defendant to designate experts is extended until September 8, 2014.

     Parties also agree that the deadline for mediation is extended until August 11, 2014.

     Please sign below where indicated if the above accurately reflects the terms of our Rule 11 Agreement, and return a conformed copy to me for filing with the Court. Please do not hesitate to contact me should you have any questions concerning this matter.

                         Sincerely,

                         Jarad L. Kent

JLK:jlk

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 678-1437 | F: (214) 905-1213
jkent@chambleeryan.com | www.chambleeryan.com

Rule 11 Agreement - Page 1

July 16, 2014
Page 2

AGREED:

Mr. Craig L. Caesar
Attorney for Defendant
Private Healthcare Systems, Inc.

FILED
DALLAS COUNTY
8/8/2014 7:39:55 AM
GARY FITZSIMMONS
DISTRICT CLERK



## Chamblee Ryan
CHAMBLEE | RYAN | KERSHAW | ANDERSON

August 7, 2014

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

     Re:   *GPA Holding, Inc. vs. PHCS, Inc.*
           Cause No.:  DC-09-07252
           Claim No.:   002428
           Our File No.: 384-3565

Dear Craig:

    As per our conversation this afternoon, the following shall represent the parties' Rule 11 Agreement with respect to the upcoming deadlines under the current scheduling order. Per the terms of this Rule 11 Agreement, the parties expressly agree that all deadlines, including deadlines to file all amended or supplemental pleadings and to designate experts is hereby extended until August 18, 2014.

    Parties also agree that the deadline for defendant to designate experts is extended until September 18, 2014.

    Parties further agree that the deadline for mediation is extended until September 18, 2014.

    Please sign below where indicated if the above accurately reflects the terms of our Rule 11 Agreement, and return a conformed copy to me for filing with the Court. Please do not hesitate to contact me should you have any questions concerning this matter.

                          Sincerely,

                          Jeffrey W. Ryan

JWR:bw

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 905-9714 | F: (214) 905-1213
jwryan@chambleeryan.com | www.chambleeryan.com

Rule 11 Agreement - 1

August 7, 2014
Page 2

AGREED:

Mr. Craig L. Caesar
Attorney for Defendant
Private Healthcare Systems, Inc.

FILED
DALLAS COUNTY
8/11/2014 12:29:55 PM
GARY FITZSIMMONS
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | **298TH JUDICIAL DISTRICT** |
| **SYSTEMS, INC.,** | § | |

## PRIVATE HEALTHCARE SYSTEMS, INC.'S
## AMENDED ANSWER AND AFFIRMATIVE DEFENSES

COMES NOW, Private Healthcare Systems, Inc. ("PHCS"), and with a full reservation of rights, respectfully files the following Amended Answer and Affirmative Defenses in response to the Original Third-Party Petition filed by GPA Holding, Inc. ("GPA") on December 18, 2006, as follows[1]:

### I.

### GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, PHCS generally denies all of GPA's claims and demands strict proof thereof.

---

[1] PHCS notes that on June 18, 2007, it filed separately with this Court a Third-Party Counterclaim ("PHCS Counterclaim") against GPA in Cause No. 06-00120, "*Baylor Health Care System v. GPA Holding, Inc., v. Private Healthcare Systems, Inc.*," the proceeding from which this matter was severed. It is PHCS' intention to work with GPA and the Court to have transferred into the record of this matter the relevant pleadings from the prior matter, including the PHCS Counterclaim. Out of an abundance of caution, PHCS refers to, and by such reference, incorporates as if fully set forth herein, the PHCS Counterclaim.

## II.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

GPA has failed to state a claim upon which relief can be granted.

### Second Affirmative Defense

PHCS has not breached any obligation allegedly owed to GPA arising out of any contractual relationship between GPA and PHCS.

### Third Affirmative Defense

PHCS is not the cause of any alleged liability on the part of GPA to Baylor Health Care System ("Baylor") for which GPA is seeking recovery from PHCS.

### Fourth Affirmative Defense

PHCS avers that it is not the proximate cause of any damages allegedly suffered by GPA.

### Fifth Affirmative Defense

PHCS has not breached any alleged fiduciary duty claimed by GPA to have been owed to GPA.

### Sixth Affirmative Defense

PHCS' alleged conduct does not rise to negligence and therefore is not actionable.

### Seventh Affirmative Defense

PHCS pleads the affirmative defense of comparative or contributory negligence.

### Eighth Affirmative Defense

PHCS pleads the affirmative defense of waiver.

Ninth Affirmative Defense

GPA is not entitled to indemnification or contribution from PHCS.

Tenth Affirmative Defense

GPA is estopped by its conduct from asserting any claim against PHCS for indemnity or contribution.

Eleventh Affirmative Defense

GPA has failed to mitigate its damages.

Twelfth Affirmative Defense

PHCS pleads all of the terms and conditions of the Subscriber Services Agreement between PHCS and GPA (and all ancillary documents), including all limitations, terms, and defenses as set forth therein as bars to the claims of GPA.

Thirteenth Affirmative Defense

On information and belief, PHCS avers that GPA did not fulfill its obligations as set forth in Subscriber Services Agreement between PHCS and GPA (and all ancillary documents), as well as those obligations in the Hospital Services Agreement-PPO between PHCS and Baylor to which GPA was bound; therefore GPA is barred from any recovery from PHCS.

Fourteenth Affirmative Defense

PHCS reserves the right to supplement these affirmative defenses based on future discovery and pleadings by the parties.

III.

**PRAYER**

The allegations contained in the "PRAYER" are denied. Specifically, PHCS denies that GPA is entitled to any relief herein, monetary or otherwise.

**WHEREFORE, PREMISES CONSIDERED,** Private Healthcare Systems, Inc. prays that, after due proceedings are held, this matter be dismissed and that GPA Holding, Inc. take nothing by way of its claims, that PHCS recover all of its costs and reasonable and necessary attorneys' fees as allowed by law, and for such other and further relief, both at law and in equity, to which PHCS may be justly entitled.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By:  _/s/ Craig L. Caesar_
**CRAIG L. CAESAR (State Bar No. 24056970)**
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
Telephone:   (504) 566-8616
Facsimile:   (504) 585-6916
ccaesar@bakerdonelson.com

and

Errol J. King
Chase Tower North, 20th Floor
450 Laurel St.
Baton Rouge, LA 70801
Telephone:   (225) 381-7041
Facsimile:   (225) 343-3612
eking@bakerdonelson.com

**ATTORNEYS FOR PRIVATE HEALTHCARE
SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2014 the foregoing pleading was served to all counsel

of record via electronic mail as follows:

Jeffrey W. Ryan
(jwryan@chambleeryan.com)
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207



/s/ *Craig L. Caesar*

FILED
DALLAS COUNTY
8/20/2014 11:25:59 AM
GARY FITZSIMMONS
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| GPA HOLDING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| PRIVATE HEALTHCARE SYSTEMS, | § | |
| INC. | § | 298TH JUDICIAL DISTRICT |

## AGREED MOTION FOR CONTINUANCE

**COME NOW**, GPA Holdings, Inc. ("GPA") and Private Healthcare Systems, Inc. ("PHCS") and file this their Agreed Motion for Continuance and would respectfully show the Court the following:

### I.

Trial in this matter is set for trial on November 3, 2014. As the court is aware, this matter had been abated pending a lengthy appeal process regarding a related dispute. The abatement was lifted in just March of this year.

### II.

The parties are in the process of evaluating the merits of a possible mediation and counsel have worked to coordinate dates that are mutually convenient to all parties involved. The parties have discussed a proposed scheduling order and believe that they can complete mediation, if practical, and conclude any needed discovery in sufficient time for a March, 2015 trial setting. In that regard, attached hereto is a proposed scheduling order agreed to by the parties which is being submitted to the court for signature.

### III.

This continuance is not sought for purposes of delay but so that justice may be done.

Agreed Motion for Continuance – Page 1

**WHEREFORE, PREMISES CONSIDERED,** the Parties request this Agreed Motion for Continuance be granted and that trial be set on the March 23, 2015 trial docket.

Respectfully submitted,

**Chamblee, Ryan, Kershaw & Anderson, P.C.**

By: _____
       Jeffrey W. Ryan
       State Bar No. 17469600
       jwryan@chambleeryan.com
       Chamblee, Ryan, Kershaw & Anderson
       2777 N. Stemmons Freeway, Suite 1157
       Dallas, TX 75207
       Telephone: (214) 905-2003
       Telecopier: (214) 905-1213

       ATTORNEY FOR GPA HOLDING, INC.

**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**

By: _____
       Craig L. Caesar
       Texas State Bar No. 24056970
       ccaesar@bakerdonelson.com
       201 St. Charles Avenue, Suite 3600
       New Orleans, LA 70170
       Telephone: (504) 566-5200
       Telecopier: (504) 585-6916

       ATTORNEY FOR PHCS

**WHEREFORE, PREMISES CONSIDERED,** the Parties request this Agreed Motion for Continuance be granted and that trial be set on the March 23, 2015 trial docket.

Respectfully submitted,

**Chamblee, Ryan, Kershaw & Anderson, P.C.**

By: _____

Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, TX 75207
Telephone: (214) 905-2003
Telecopier: (214) 905-1213

ATTORNEY FOR GPA HOLDING, INC.

**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**

By: _____

Craig L. Caesar
Texas State Bar No. 24056970
ccaesar@bakerdonelson.com
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200
Telecopier: (504) 585-6916

ATTORNEY FOR PHCS

FILED
DALLAS COUNTY
10/31/2014 8:31:43 AM
GARY FITZSIMMONS
DISTRICT CLERK



**Chamblee Ryan**
CHAMBLEE I RYAN I KERSHAW I ANDERSON

October 31, 2014

Hon. Emily Tobolowsky
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce St., Box 822
8th Floor New Tower
Dallas, TX 75202-6143

     Re:   *GPA Holding, Inc. vs. PHCS, Inc.*
           Cause No.:   DC-09-07252
           Claim No.:    002428
           Our File No.:  384-3565

Dear Hon. Tobolowsky:

     I have attached a copy of the Agreed Scheduling Order that we filed with our Agreed Motion for Continuance back in August. We have been operating on the belief that nothing else was required of us and that a hearing would not be scheduled in light of the Agreed nature of the Motion.

     However, it occurred to me that a 2009 cause number may raise some eyebrows, and we wanted to remind the Court that this case has been stayed since 2009 and the stay was lifted just earlier this year. Therefore, it has not truly been an open file for that long.

     If the proposed trial date on the attached Scheduling Order does not work with the Court's schedule, we are of course happy to work with your coordinator on a date that will.

     Please feel free to call me or Craig Caesar with any questions.

                  Sincerely,

                  Jeffrey W. Ryan

JWR:bw
Enclosure

cc:   Mr. Craig L. Caesar, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
      -- Via facsimile - (With enclosure)

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| GPA HOLDING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| PRIVATE HEALTHCARE SYSTEMS, | § | |
| INC. | § | 298TH JUDICIAL DISTRICT |

## AGREED SCHEDULING ORDER

The following Agreed Scheduling Order shall apply to this case unless modified by the Court or by written agreement of the parties. If no date is given below, the item is covered by the Texas Rules of Civil Procedure.

1.      **EXPERT WITNESS DESIGNATION**
Expert witness designations are required and must be served by the following dates. The designation must include the information listed on Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.

   a) 11/21/14   Plaintiff's experts.

   b) 12/22/14   Defendant's experts.

2. 10/17/14    **ALTERNATIVE DISPUTE RESOLUTION**
Mediation must be conducted by this date. The parties will agree to a mediator on or before September 12, 2014 and will notify the court of such agreement.

3. 01/16/15    **DISCOVERY PERIOD ENDS**
All discovery must be completed by this date. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

4. 01/16/15    **DISPOSTIVE MOTIONS AND PLEAS**
Dispositive motions or pleas subject to an interlocutory appeal must be filed by this date.

5. 01/16/15    **CHALLENGES TO EXPERT TESTIMONY**
All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

6.   11/07/14     **PLEADINGS**
All amendments and supplements must be filed by this date. This order does not preclude prompt fling of pleadings directly responsive to any timely filed pleadings.

7.   03/23/15     **JURY TRIAL**
Reset or continuance of the initial trial setting will not alter any deadlines established in. this 'Agreed Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order or agreement of counsel.

8.   TBD        **EXCHANGE EXHIBITS**
The parties shall exchange list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery 14 days before the trial date.

9.   TBD        **ATTORNEY CONFERENCE**
Attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this order and attempt to maximize agreement on such matters 10 days before the trial date.

Plaintiff/Plaintiff's counsel shall serve a copy of this Agreed Order on any Defendants joined after this date.

IT IS SO ORDERED on this the _____ day of August, 2014.


_____
JUDGE PRESIDING


Agreed Scheduling Order – Page 2

**AGREED:**

By:_____

Craig L. Caesar
Texas State Bar No. 24056970
ccaesar@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue,        Suite 3600
New Orleans, LA  70170
Telephone:  (504) 566-5200
Telecopier:  (504) 585-6916

ATTORNEY FOR PHCS


By:_____

Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, TX  75207
Telephone:  (214) 905-2003
Telecopier:  (214) 905-1213

ATTORNEY FOR GPA HOLDING, INC.

**AGREED:**

By:_____
      Craig L. Caesar
      Texas State Bar No. 24056970
      ccaesar@bakerdonelson.com
      Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
      201 St. Charles Avenue,     Suite 3600
      New Orleans, LA  70170
      Telephone:  (504) 566-5200
      Telecopier:  (504) 585-6916

      ATTORNEY FOR PHCS

By:_____
      Jeffrey W. Ryan
      State Bar No. 17469600
      jwryan@chambleeryan.com
      Chamblee, Ryan, Kershaw & Anderson
      2777 N. Stemmons Freeway, Suite 1157
      Dallas, TX  75207
      Telephone:  (214) 905-2003
      Telecopier:  (214) 905-1213

      ATTORNEY FOR GPA HOLDING, INC.

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS  75202-4604

October 31, 2014

File Copy

DC-09-07252
GPA HOLDING INC  vs.  PRIVATE HEALTHCARE SYSTEMS

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:    03/23/2015 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF
THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY.
IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED
FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL
PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS
RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL
PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL
PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN

FILED
DALLAS COUNTY
11/14/2014 2:40:56 PM
GARY FITZSIMMONS
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

### PLAINTIFF GPA HOLDING, INC.'S FIRST AMENDED ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Plaintiff GPA Holding, Inc. ("GPA") and files this it's First Amended Petition against Private Healthcare Systems, Inc. ("PHCS") pursuant to Texas Rule of Civil Procedure 38, and in support thereof would respectfully show as follows:

### I.

### Jurisdiction and Venue

1.     This Court has jurisdiction over this case because the amount in controversy is above the minimum jurisdictional limits of this Court.

2.     Venue is proper in Dallas County, Texas pursuant to Section 15.002(a)(1) of the Texas Civil Practices & Remedies Code because the original suit by Baylor Health Care System ("Baylor") was filed in Dallas County, Texas, and all or a substantial part of the events giving rise to the claims asserted herein arose or occurred in Dallas County, Texas.

## II.

### Parties

3.     GPA is a Texas corporation with its principal place of business in Dallas County, Texas.

4.     Defendant PHCS is a Delaware corporation authorized to conduct and conducting business in the State of Texas, with its principal place of business at 1100 Winter Street, Waltham, Massachusetts 02451. PHCS has previously been served with process by serving its registered agent in Texas, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201 and has previously appeared and answered herein. PHCS has contracted with medical providers in Texas such as Baylor, and is otherwise conducting business in this State and in Dallas County. Accordingly, PHCS is subject to the jurisdiction of this Court.

### III.

### Factual Background

5.     Baylor Healthcare System filed its Original Petition against GPA on October 11, 2006 in Cause No. 06-00120, alleging that GPA breached a contract between Baylor and PHCS. More particularly, Baylor's allegations against GPA arise from a Hospital Services Agreement – PPO ("Hospital Services Agreement") executed by and between Baylor and PHCS on January 1, 2002. GPA was neither a signatory nor a party to the Hospital Services Agreement and has maintained that it is

not individually subject to the prompt payment obligations specified in Baylor's Original Petition.

6.    GPA Holding, Inc. filed its Original Third-Party Petition against Private Healthcare Systems, Inc. on December 18, 2006 alleging causes of action against PHCS for numerous claims including breach of fiduciary duty, negligence, indemnity, contribution and breach of contract.

7.    Subsequently, this Court entered an Agreed Final Judgment between Baylor Healthcare System and GPA Holding, Inc. and further ordered GPA's third-party claim against PHCS be severed from the present cause and be docketed by the District Clerk's Office under a separate cause number.  The parties in the above-matter subsequently entered into an Agreed Order to Stay Proceedings pending the outcome of appeals of the underlying GPA/Baylor litigation.  This Court entered a Stay of all Proceedings for the present case which was subsequently lifted on March 13, 2014.

8.    GPA has denied liability to Baylor in this matter.  However, GPA has exhausted all avenues of appeal regarding this Court's finding of liability to Baylor.  Therefore, in light of the Court's finding in Baylor's favor on claims asserted against GPA, GPA contends that PHCS is liable to GPA for all or part of Baylor's alleged damages.

## IV.

## Causes of Action

### A.   *Breach of Fiduciary Duty*

9.     Pursuant to a string of agreements, including a Limited Power of Attorney by and between PHCS and GPA, PHCS agreed to act as GPA's fiduciary and was obligated to act in GPA's best interests.  The Limited Power of Attorney empowered PHCS to enter into certain "standard form" agreements for the benefit of GPA and the individual self-funded plans administered by GPA.

10.     By way of its Original Petition, Baylor alleges that PHCS, through its execution of the Hospital Services Agreement, bound GPA to the obligations of a "Payor" under the non-standard Hospital Services Agreement.  GPA previously denied that PHCS bound it as a "Payor" under the Hospital Services Agreement, but the determination by this Court that PHCS did in fact obligate GPA as a "Payor" under the agreement with Baylor, then such an action by PHCS was in direct breach of its fiduciary duties owed to GPA.

11.     As GPA's agent and fiduciary, PHCS had an obligation to enter only contractual arrangements that were reasonable, readily performable, consistent with GPA's rights and responsibilities under the Employee Retirement Income Security Act, and beneficial to GPA.  The Court's determination that Baylor is correct in asserting that GPA is a "Payor" under the Hospital Services Agreement (which GPA

specifically denied), means that PHCS breached its fiduciary duties to GPA because it knew or should have known that GPA was not a Payor and unnecessarily exposed GPA to potential liability as a "Payor."

12.     Based on Baylor's interpretation of the Hospital Services Agreement, PHCS also breached its fiduciary duties to GPA by agreeing to a one-sided and impracticable PPO agreement that is inconsistent with GPA's rights and duties under ERISA. Section 4.4 of the Hospital Services Agreement requires that a claim be paid within 45 days of receipt of a clean claim. Pursuant to Baylor's contract construction (which GPA disputed), claims would have to be paid before completion of the full investigation required by ERISA, and before the true payors (the self-funded employee health plans) made funds available for payment. Moreover, PHCS agreed to the Hospital Services Agreement without ever consulting GPA.

13.     Further, the Hospital Services Agreement does not require Baylor to refund any money paid if a claim is later determined not to be covered under the applicable self-funded ERISA plan. PHCS breached its fiduciary duties to GPA by entering into an agreement with Baylor that fails to appropriately protect the interests of GPA (to the extent GPA is considered a Payor, which GPA denied).

14.     As GPA's fiduciary, PHCS owed GPA a duty to place the interests of GPA before its own. Yet, upon information and belief, PHCS received an undisclosed 2% fee from Baylor in connection with claims submitted to GPA for processing,

without advising GPA or remitting such fee to GPA or to the self-funded employee health plans in GPA's charge. PHCS thereby breached its fiduciary duties to GPA by placing itself in a position of conflicting interests and competing duties of loyalty, and by failing to disclose the conflict of interest to GPA. PHCS further breached its fiduciary duties by failing to obtain GPA's consent to receive commissions from both sides of transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA.

15.    Further, PHCS breached its fiduciary duties to GPA by failing to provide GPA with the Hospital Services Agreement before the Baylor claims in question arose. Specifically, PHCS breached its fiduciary duties by failing to inform GPA that the construction of the contracts entered into by PHCS and Baylor would effectively make GPA a "payor" – something they never were before. PHCS placed GPA in the untenable position of performing a non-standard contract that was kept secret from PHCS' fiduciary.

**B.    *Negligence and Willful Malfeasance***

16.    PHCS owed GPA a duty of care as GPA's agent and attorney in fact. PHCS was negligent, grossly negligent, and/or acted with reckless disregard, willful malfeasance and/or intent to harm GPA in connection with and in performing duties it owed to GPA.

17. In the event Baylor prevails in its claims against GPA, the GPA alleges that PHCS proximately caused GPA harm.

## C. *Indemnity*

18. In light of GPA being found liable for Baylor's alleged damages, PHCS is liable to GPA for indemnity.

19. GPA seeks indemnity directly from PHCS based on Article VI, Section 6.1 of the Subscriber Services Agreement for negligence and/or willful malfeasance by PHCS in connection with the performance or non-performance of PHCS' duties and obligations under the Hospital Services Agreement.

20. In addition, GPA was sued by Baylor in this action based upon alleged acts or omissions on the part of PHCS. In light of these allegations, GPA seeks all rights and remedies under common law and under the Texas Civil Practices & Remedies Code Chapter 32.001, *et seq.*

## D. *Contribution*

21. In light of GPA being found liable for Baylor's alleged damages, GPA is entitled to contribution from PHCS under Chapters 32 and 33 of the Texas Civil Practices and Remedies Code and any other applicable statues or law.

22. GPA affirmatively asserts that the negligent and/or wrongful acts or omissions of PHCS proximately caused the harm alleged by Baylor, and GPA is

entitled to and seeks a reduction of liability and damages for any percentage of responsibility of PHCS for the damages alleged in this suit.

### E.    Breach of Contract

23.    PHCS materially breached its contract with GPA by failing to provide GPA with the Hospital Services Agreement as required by Section C and Section 1.2 of the Subscriber Acknowledgment.

24.    PHCS materially breached its contract with GPA by entering into a non-standard contract with Baylor, to the extent GPA is bound by conventional terms making it a "payor" under the Agreement.

25.    Further, PHCS has materially breached its contract with GPA by failing to indemnify GPA as required by Article VI, Section 6.1 of the Subscriber Services Agreement.

26.    PHCS' material breaches have caused and continue to cause GPA injury and damages.

### F.    Attorneys' Fees

27.    GPA has been required to retain the services of the undersigned counsel to represent it in connection with the prosecution of this suit.  GPA is entitled to recover reasonable and necessary attorneys' fees through trial, appeal, and Supreme

Court review pursuant to the Subscriber Services Agreement and Chapters 38 of the Texas Civil Practices and Remedies Code and/or other applicable law.

## G. *Conditions Precedent*

28. All conditions precedent to the relief requested in this Original Third-Party Petition have occurred, been performed, been waived, or are excused by law.

**V.**

**<u>Damages</u>**

29. As a direct and proximate result of PHCS' conduct described above, GPA has been damaged, continues to be damaged, and seeks the following relief:

    a. Actual damages;

    b. Consequential damages;

    c. Exemplary damages;

    d. Forfeiture of any/all fees received by PHCS, whether received from Baylor or GPA;

    e. Profit disgorgement;

    f. Indemnity;

    g. Contribution;

    h. Reasonable and necessary attorneys' fees;

    i. Pre- and post-judgment interest;

    j. Costs of suit;

k.  All further relief to which GPA may show itself to be justly entitled.

**WHERFORE, PREMISES CONSIDERED**, GPA requests that, on final trial of this cause, the Court enters judgment against PHCS awarding GPA all relief to which it may be justly entitled.

Respectfully submitted,

**CHAMBLEE, RYAN, KERSHAW & ANDERSON, P.C.**

By:

_____

Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Jarad L. Kent
State Bar No. 24062824
jkent@chambleeryan.com

2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207
(214) 905-2003
(214) 905-1213 (Facsimile)

**ATTORNEYS FOR GPA HOLDING, INC.**

## CERTIFICATE OF SERVICE

I do hereby certify that on November 14, 2014, a true and correct copy of the above and foregoing document has been forwarded via fax and/or certified mail, return receipt requested to Defendant's counsel of record:

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA  70170

_____
Jeffrey W. Ryan

FILED
DALLAS COUNTY
11/26/2014 9:05:53 AM
GARY FITZSIMMONS
DISTRICT CLERK



**Chamblee Ryan**

CHAMBLEE | RYAN | KERSHAW | ANDERSON

November 20, 2014

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA  70170

   Re:  *GPA Holding, Inc. vs. PHCS, Inc.*
      Cause No.: DC-09-07252
      Claim No.: 002428
      Our File No.: 384-3565

### RULE 11 AGREEMENT

Dear Craig:

   As per my conversation with you yesterday, this is to confirm that the Court has set the above case for jury trial on its March 23, 2015 trial docket.

   For purposes of a Rule 11 Agreement, this is to further confirm that the parties have agreed to the following pre-trial deadlines:

        **EXPERT WITNESS DESIGNATION**
        Expert witness designations are required and must be served by the following
        dates. The designation must include the information listed on Rule 194.2(f).
        Failure to timely respond will be governed by Rule 193.6.

        a) 01/09/15 Plaintiff's experts (if any)

        b) 02/09/15 Defendant's experts (if any)

03/06/15    **DISCOVERY PERIOD ENDS**
        All discovery must be completed by this date.  Counsel may conduct discovery
        beyond this deadline by agreement.  Incomplete discovery will not delay the
        trial.

03/06/15    **DISPOSTIVE MOTIONS AND PLEAS**
        Dispositive motions or pleas subject to an interlocutory appeal must be filed by
        this date.

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 905-9714 | F: (214) 905-1213
jwryan@chambleeryan.com | www.chambleeryan.com

Rule 11 Agreement - Page 1

November 20, 2014
Page 2

03/06/15 **CHALLENGES TO EXPERT TESTIMONY**
All motions to exclude expert testimony and evidentiary challenges to expert
testimony must be filed by this date, unless extended by leave of court.

02/09/15 **PLEADINGS**
All amendments and supplements must be filed by this date. This order does
not preclude prompt fling of pleadings directly responsive to any timely filed
pleadings.

Please sign in the space below to signify your agreement with the above. Please do not hesitate to give
me a call if you have any questions or need additional information.

Sincerely,

Jeffrey W. Ryan

JWR:bg

AGREED:

Craig L. Caesar

FILED
DALLAS COUNTY
12/5/2014 3:17:36 PM
GARY FITZSIMMONS
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | **298TH JUDICIAL DISTRICT** |
| **SYSTEMS, INC.,** | § | |

## PRIVATE HEALTHCARE SYSTEMS, INC.'S
## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

COMES NOW, Private Healthcare Systems, Inc. ("PHCS"), and with a full reservation of rights, respectfully files the following Answer, Affirmative Defenses, and Counterclaim in response to the First Amended Original Petition filed by GPA Holding, Inc. ("GPA") on November 14, 2014, as follows:

### I.

### GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, PHCS generally denies all of GPA's claims and demands strict proof thereof.

### II.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

GPA has failed to state a claim upon which relief can be granted.

---

<u>Second Affirmative Defense</u>

PHCS has not breached any obligation allegedly owed to GPA arising out of any contractual relationship between GPA and PHCS.

<u>Third Affirmative Defense</u>

PHCS is not the cause of any alleged liability on the part of GPA to Baylor Health Care System ("Baylor") for which GPA is seeking recovery from PHCS.

<u>Fourth Affirmative Defense</u>

PHCS avers that it is not the proximate cause of any damages allegedly suffered by GPA.

<u>Fifth Affirmative Defense</u>

PHCS has not breached any alleged fiduciary duty claimed by GPA to have been owed to GPA.

<u>Sixth Affirmative Defense</u>

PHCS' alleged conduct does not rise to negligence and therefore is not actionable.

<u>Seventh Affirmative Defense</u>

PHCS pleads the affirmative defense of comparative or contributory negligence.

<u>Eighth Affirmative Defense</u>

PHCS pleads the affirmative defense of waiver.

<u>Ninth Affirmative Defense</u>

GPA is not entitled to indemnification or contribution from PHCS.

<u>Tenth Affirmative Defense</u>

GPA is estopped by its conduct from asserting any claim against PHCS for indemnity or contribution.

Eleventh Affirmative Defense

GPA has failed to mitigate its damages.

Twelfth Affirmative Defense

PHCS pleads all of the terms and conditions of the Subscriber Services Agreement between PHCS and GPA (and all ancillary documents), including all limitations, terms, and defenses as set forth therein as bars to the claims of GPA.

Thirteenth Affirmative Defense

On information and belief, PHCS avers that GPA did not fulfill its obligations as set forth in Subscriber Services Agreement between PHCS and GPA (and all ancillary documents), as well as those obligations in the Hospital Services Agreement-PPO between PHCS and Baylor to which GPA was bound; therefore GPA is barred from any recovery from PHCS.

Fourteenth Affirmative Defense

PHCS reserves the right to supplement these affirmative defenses based on future discovery and pleadings by the parties.

**III.**

**RESPONSE TO PLAINTIFF'S PRAYER**

The allegations contained in the "PRAYER" are denied.  Specifically, PHCS denies that GPA is entitled to any relief herein, monetary or otherwise.

**IV.**

**COUNTERCLAIM**

AND NOW, assuming the position of Counterclaim-Plaintiff, PHCS avers as follows:

1.      Jurisdiction and venue are proper in this Court based on the claims asserted by GPA in the First Amended Original Petition.

2.      GPA and PHCS are parties to that certain Subscriber Services Agreement, with an Effective date of April 17, 1998, as amended, assigned and assumed (the "Subscriber Services Agreement").

3.      Pursuant to Article VI, Section 6.3 - Subscriber Indemnification, of the Subscriber Services Agreement, GPA agrees to "indemnify, defend and hold harmless, PHCS, and its officers, directors, employees, and agents against any losses, claims, damages, judgment, liabilities, or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or nonperformance) or any willful malfeasance by [GPA] or any of its officers, directors, employees, or agents in connection with the performance of any of the Subscriber's duties or obligations under this Agreement."

4.      To the extent that GPA has been found liable to Baylor Health Care System ("Baylor") for failure to pay in accordance with the terms of the Hospital Services Agreement between Baylor and PHCS, as set forth in GPA's First Amended Original Petition, and such failure is the result of GPA's "negligent performance (or nonperformance) or  . . . willful malfeasance," then PHCS is entitled to indemnification from GPA for the "losses, claims, damages, judgment, liabilities or expense (including reasonable counsel fees and costs) incurred" as a result. Thus, PHCS, at a minimum, is entitled to an offset from any sums sought by GPA from PHCS, by way of indemnity or otherwise, that are attributable to GPA's negligence or malfeasance.

5.      Moreover, whether by way of the above-cited indemnity provision from the Subscriber Services Agreement, pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001 et seq., and/or any other applicable law, because PHCS has been required to retain the services of

undersigned counsel to represent it in connection with this suit, PHCS is entitled to recover reasonable and necessary attorney's fees through trial appeal and Supreme Court review.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Private Healthcare Systems, Inc. prays that, after due proceedings are held,  this matter be dismissed and that GPA Holding, Inc. take nothing by way of its claims, that PHCS recover all of its costs and reasonable and necessary attorneys' fees as allowed by law, and for such other and further relief, both at law and in equity, to which PHCS may be justly entitled.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By: _____/s/ *Craig L. Caesar*_____
**CRAIG L. CAESAR (State Bar No. 24056970)**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
Telephone:    (504) 566-8616
Facsimile:    (504) 585-6916
ccaesar@bakerdonelson.com

and

Errol J. King
Chase Tower North, 20th Floor
450 Laurel St.
Baton Rouge, LA  70801
Telephone:    (225) 381-7041
Facsimile:    (225) 343-3612
eking@bakerdonelson.com

**ATTORNEYS FOR PRIVATE HEALTHCARE
SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2014 the foregoing pleading was served to all counsel of record via electronic mail as follows:

Jeffrey W. Ryan
(jwryan@chambleeryan.com)
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207


/s/ *Craig L. Caesar*

350m 000010

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| GPA HOLDING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| PRIVATE HEALTHCARE SYSTEMS, | § | |
| INC. | § | 298TH JUDICIAL DISTRICT |

## AGREED SCHEDULING ORDER

The following Agreed Scheduling Order shall apply to this case unless modified by the

Court or by written agreement of the parties. If no date is given below, the item is covered by the

Texas Rules of Civil Procedure.

1.              **EXPERT WITNESS DESIGNATION**
Expert witness designations are required and must be served by the following dates. The designation must include the information listed on Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.

    a) 11/21/14   Plaintiff's experts.

    b) 12/22/14   Defendant's experts.

2.   10/17/14   **ALTERNATIVE DISPUTE RESOLUTION**
Mediation must be conducted by this date. The parties will agree to a mediator on or before September 12, 2014 and will notify the court of such agreement.

3.   01/16/15   **DISCOVERY PERIOD ENDS**
All discovery must be completed by this date. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

4.   01/16/15   **DISPOSITIVE MOTIONS AND PLEAS**
Dispositive motions or pleas subject to an interlocutory appeal must be filed by this date.

5.   01/16/15   **CHALLENGES TO EXPERT TESTIMONY**
All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

6.    11/07/14     **PLEADINGS**
All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

7.    03/23/15     **JURY TRIAL**
Reset or continuance of the initial trial setting will not alter any deadlines established in this 'Agreed Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order or agreement of counsel.

8.    TBD          **EXCHANGE EXHIBITS**
The parties shall exchange list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery 14 days before the trial date.

9.    TBD          **ATTORNEY CONFERENCE**
Attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this order and attempt to maximize agreement on such matters 10 days before the trial date.

Plaintiff/Plaintiff's counsel shall serve a copy of this Agreed Order on any Defendants joined after this date.

IT IS SO ORDERED on this the _____ day of August, 20__.

_____
JUDGE PRESIDING

**AGREED:**

By: _____

Craig L. Caesar
Texas State Bar No. 24056970
ccaesar@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue,      Suite 3600
New Orleans, LA  70170
Telephone:  (504) 566-5200
Telecopier:  (504) 585-6916

ATTORNEY FOR PHCS

By: _____

Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, TX  75207
Telephone:  (214) 905-2003
Telecopier:  (214) 905-1213

ATTORNEY FOR GPA HOLDING, INC.

Agreed Scheduling Order – Page 3

**AGREED:**

By:_____
      Craig L. Caesar
      Texas State Bar No. 24056970
      ccaesar@bakerdonelson.com
      Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
      201 St. Charles Avenue,    Suite 3600
      New Orleans, LA  70170
      Telephone:  (504) 566-5200
      Telecopier:  (504) 585-6916

      ATTORNEY FOR PHCS

By:_____
      Jeffrey W. Ryan
      State Bar No. 17469600
      jwryan@chambleeryan.com
      Chamblee, Ryan, Kershaw & Anderson
      2777 N. Stemmons Freeway, Suite 1157
      Dallas, TX  75207
      Telephone:  (214) 905-2003
      Telecopier:  (214) 905-1213

      ATTORNEY FOR GPA HOLDING, INC.

FILED
DALLAS COUNTY
1/26/2015 10:34:33 AM
FELICIA PITRE
DISTRICT CLERK



**Chamblee Ryan**

CHAMBLEE | RYAN | KERSHAW | ANDERSON

January 26, 2015

**Via E-Filing**
Hon. Emily Tobolowsky
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce St., Box 822
Dallas, TX 75202-6143

Re:     *GPA Holding, Inc. vs. PHCS, Inc.*
        Cause No.:    DC-09-07252
        Claim No.:    002428
        Our File No.:  384-3565

Dear Judge Tobolowsky:

We had previously filed an Agreed Motion for Continuance with an Agreed Scheduling Order in the above-referenced matter. However, after reviewing the particulars of this case and the schedules of all of the parties, witnesses and counsel involved, it became clear that the originally proposed March trial date would not work.

After conferring, the parties have come up with a substitute Agreed Scheduling Order with a June 15, 2015 trial date that is hereby being submitted to the Court for review and approval. In light of the agreed nature of this matter, please let us know as soon as possible if the Court requires a hearing on this matter.

Sincerely,

Jeffrey W. Ryan

JWR:bg
Enclosure

cc:     Mr. Craig L. Caesar, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
        (w/enclosure)
        **Via Fax**

---

350m 000518

CAUSE NO. DC-09-07252

| GPA HOLDING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| PRIVATE HEALTHCARE SYSTEMS, | § | |
| INC. | § | 298TH JUDICIAL DISTRICT |

## AGREED SCHEDULING ORDER

The following Agreed Scheduling Order shall apply to this case unless modified by the

Court or by written agreement of the parties. If no date is given below, the item is covered by the

Texas Rules of Civil Procedure.

1.      **EXPERT WITNESS DESIGNATION**
Expert witness designations are required and must be served by the following dates. The designation must include the information listed on Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.

     a) 02/20/15   Plaintiff's experts.

     b) 03/20/15   Defendant's experts.

2.  03/20/15    **ALTERNATIVE DISPUTE RESOLUTION**
If Mediation is done it must be conducted by this date. The parties will agree to a mediator on or before March 1, 2015 and will notify the court of such agreement.

3.  05/15/15    **DISCOVERY PERIOD ENDS**
All discovery must be completed by this date. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

4.  05/15/15    **DISPOSITIVE MOTIONS AND PLEAS**
Dispositive motions or pleas subject to an interlocutory appeal must be filed by this date.

5.  04/17/15    **CHALLENGES TO EXPERT TESTIMONY**
All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

6.  04/17/15   **PLEADINGS**
All amendments and supplements must be filed by this date. This order does not preclude prompt fling of pleadings directly responsive to any timely filed pleadings.

7.  06/15/15   **JURY TRIAL**
22          Reset or continuance of the initial trial setting will not alter any deadlines established in. this 'Agreed Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order or agreement of counsel.

8.  TBD     **EXCHANGE EXHIBITS**
The parties shall exchange list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery 14 days before the trial date.

9.  TBD     **ATTORNEY CONFERENCE**
Attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this order and attempt to maximize agreement on such matters 10 days before the trial date.

    Plaintiff/Plaintiff's counsel shall serve a copy of this Agreed Order on any Defendants joined after this date.

    IT IS SO ORDERED on this the ___25___ day of ~~January~~, February 2015.


    _____
    JUDGE PRESIDING

Agreed Scheduling Order – Page 2

**AGREED:**

By: _____
       Craig L. Caesar
       Texas State Bar No. 24056970
       ccaesar@bakerdonelson.com
       Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
       201 St. Charles Avenue,       Suite 3600
       New Orleans, LA  70170
       Telephone:  (504) 566-5200
       Telecopier:  (504) 585-6916

       ATTORNEY FOR PHCS

By: _____
       Jeffrey W. Ryan
       State Bar No. 17469600
       jwryan@chambleeryan.com
       Chamblee, Ryan, Kershaw & Anderson
       2777 N. Stemmons Freeway, Suite 1157
       Dallas, TX  75207
       Telephone:  (214) 905-2003
       Telecopier:  (214) 905-1213

       ATTORNEY FOR GPA HOLDING, INC.

Agreed Scheduling Order – Page 3

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS 75202-4604

February 25, 2015

File Copy

DC-09-07252
GPA HOLDING INC vs. PRIVATE HEALTHCARE SYSTEMS

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:   06/22/2015 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF
THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY.
IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED
FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL
PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS
RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL
PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL
PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN

FILED
DALLAS COUNTY
5/11/2015 1:18:44 PM
FELICIA PITRE
DISTRICT CLERK



**Chamblee Ryan**

CHAMBLEE | RYAN | KERSHAW | ANDERSON

May 11, 2015

## RULE 11

*Via e-mail*
Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

     Re:    *GPA Holding, Inc. vs. PHCS, Inc.*
           Cause No.:   DC-09-07252
           Claim No.:   002428
           Our File No.:  384-3565

Dear Mr. Caesar:

    As per our earlier discussions, this is to confirm for purposes of a rule 11 agreement, that we agree to extend all current unreached deadlines in the above matter 60 days while we await a new trial setting.   As you are aware, under separate heading, we have jointly submitted a request to the Court to reset the trial in this matter to August 24.

    Please sign in the space below and return to my attention at the earliest convenience.

                Sincerely,

                Jeffrey W. Ryan

JWR:bw

Agreed and accepted this 11ᵗʰ day of May, 2015:

By: _____
    Craig Caesar, Counsel for Defendant

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 905-9714 | F: (214) 905-1213
jwryan@chambleeryan.com | www.chambleeryan.com

FILED
DALLAS COUNTY
5/11/2015 1:17:35 PM
FELICIA PITRE
DISTRICT CLERK



## Chamblee Ryan
### CHAMBLEE | RYAN | KERSHAW | ANDERSON

May 11, 2015

Hon. Emily Tobolowsky
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce St., Box 822
8th Floor New Tower
Dallas, TX 75202-6143

      Re:   *GPA Holding, Inc. vs. PHCS, Inc.*
            Cause No.:   DC-09-07252
            Claim No.:    002428
            Our File No.:  384-3565

Dear Judge Tobolowsky:

      The above case is currently set on the Court's June 22, 2015, docket. The parties had previously proposed a June 15, 2015, trial, however, the Court set the matter on the current trial setting.

      The parties and their counsel have attempted to make the current trial setting work, but are unable to do so because of conflicts with both parties and both counsel, the parties respectfully request the current trial setting be reset on August 24, 2015, or if that is not feasible, that a brief telephone hearing be scheduled to arrange a trial setting that works for all parties involved. I have attached a proposed Order. Should it be necessary to schedule a brief hearing on this matter, we of course would be happy to do so. Thank you for your time and attention to this matter.

                Sincerely,

                Jeffrey W. Ryan

JWR:bw

Agreed and accepted this 11th day of May, 2015:

By: _____
    Mr. Craig L. Caesar, Counsel for Defendant

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 905-9714 | F: (214) 905-1213
jwryan@chambleeryan.com | www.chambleeryan.com

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| GPA HOLDING, INC. | § | IN THE DISTRICT COURT |
| | § | OF |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| PRIVATE HEALTHCARE | § | |
| SYSTEMS, INC. | § | 298TH JUDICIAL DISTRICT |

## ORDER GRANTING
## AGREED MOTION FOR CONTINUANCE

CAME ON TO BE HEARD the AGREED MOTION FOR CONTINUANCE in the above-referenced cause, and the Court, after having considered same, does hereby hold that the above motion is GRANTED, and this case is hereby reset to _____, 2015.

SIGNED the_____day of_____, 2015.

_____

**JUDGE PRESIDING**

**ORDER GRANTING AGREED MOTION FOR CONTINUANCE - Page 1**

FILED
DALLAS COUNTY
6/16/2015 11:21:38 AM
FELICIA PITRE
DISTRICT CLERK



# Chamblee Ryan

CHAMBLEE | RYAN | KERSHAW | ANDERSON

June 16, 2015

Ms. Carolyn Dupree-Brown
298th Judicial District Court
George L. Allen Sr. Courts Building
600 Commerce Street
Dallas, TX 75202

   Re: *GPA Holding, Inc. vs. PHCS, Inc.*
     Cause No.: DC-09-07252
     Claim No.: 002428
     Our File No.: 384-3565

Dear Ms. Dupree-Brown:

   Following up on our conversation yesterday, the parties have discussed trial date options and request that this matter be set for jury trial on October 26, 2015, or, if necessary for the court, October 19, 2015. Please let me know if you need anything else.

        Sincerely,

        Jeffrey W. Ryan

JWR:bw

cc: Mr. Craig L. Caesar, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
  – Via facsimile

FILED
DALLAS COUNTY
6/16/2015 5:41:16 PM
FELICIA PITRE
DISTRICT CLERK

### CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | |
| | § | **298TH JUDICIAL DISTRICT** |

### PRIVATE HEALTHCARE SYSTEMS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT RELATED TO LIMITATION OF LIABILITY PROVISION

Pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure, Third-Party Defendant, Private Healthcare Systems, Inc. ("PHCS") files this Motion for Partial Summary Judgment seeking a determination as to limitation of its liability to Third-Party Plaintiff GPA Holdings, Inc. ("GPA"),[1] and in support thereof, respectfully shows the Court as follows:

### I.

### SUMMARY OF MOTION

1.      Pursuant to the terms of the Subscriber Services Agreement (the "Agreement") between PHCS and GPA,[2] the parties entered into a mutual indemnification provision set forth in Article VI of the Agreement. At all times, the Agreement between PHCS and GPA was between

---

[1] This case was severed from the action styled *Baylor Health Care System v. GPA Holding, Inc. v. Private Healthcare Systems, Inc.*, No. 06-00120, 298th JDC, Dallas County, Texas (the "*Baylor/GPA* case"). In the present action, GPA is seeking indemnity of amounts paid by GPA to Baylor in settlement of the judgment rendered in favor of Baylor against it. The terms of the settlement are confidential, and for purpose of this motion need not be presented to the Court, thus avoiding the necessity of filing this pleading under seal.

[2] GPA is successor-in-interest to Group & Pension Administrators, Inc., which was the original signatory to the Agreement, which was executed in April 1998. In January 2003, the Agreement was amended, assigned and assumed by GPA, with PHCS' consent.

independent contracting parties with equal bargaining power.  Both entities were sophisticated contracting entities in the healthcare market place and the fairness of the indemnification provision is reflected in the fact that it is mutual with the same protections provided to both parties.  The indemnification provision contained a mutual limitation of liability provision (a "waiver") in favor of both parties.  This limitation of liability provision which limits the right of either party to recover from the other a maximum amount of  $1 million should be enforced by this Court as a matter of law, but for purposes of the present motion, in favor of PHCS as against any claims asserted by GPA.

## II.

## SUMMARY JUDGMENT EVIDENCE

2.    PHCS' motion is supported by the following evidence attached hereto and fully incorporated herein by reference:

| Exhibit "A" | Subscriber Services Agreement dated April 17, 1998, between Private Healthcare Systems, Inc., and Group Pension & Administrators, Inc., and exhibits thereto (the "Agreement") - REDACTED |
|---|---|
| Exhibit "B" | Amendment, Assignment, and Assumption of The Subscriber Services Agreement, dated January 1, 2003, and exhibits thereto (the "Amendment and Assignment") - REDACTED |
| Exhibit "C" | Hospital Services Agreement - PPO between Baylor Health Care System and Private Healthcare Services, Inc., effective January 1, 2002, signed August 2001 (the "Hospital Services Agreement - PPO') - REDACTED |
| Exhibit "D" | Excerpts of Deposition of Kathy Enochs, Corporate Representative of GPA Holding, Inc., taken in the *Baylor/GPA* case, on February 27-28, 2008 |
| Exhibit "E" | Affidavit of Mark Hoffman, former PHCS employee, dated June 10, 2015 |

| Exhibit "F" | Excerpts from Group & Pension Administrators website, http://www.gpatpa.com/ |
|---|---|

## III.

## FACTUAL BACKGROUND

3.      In this follow-on litigation to the *Baylor/GPA* case, GPA is seeking indemnity and contribution from PHCS for amounts paid to Baylor Health Care System ("Baylor') in settlement of claims as to which Baylor obtain a final judgment against GPA.  GPA claims that PHCS is obligated to it pursuant to the Agreement, which GPA asserts PHCS negligently breached by negotiating terms with Baylor in the Hospital Services Agreement - PPO (submitted as summary judgment evidence Exhibit "C") that obligated GPA, as a payor, promptly to pay claims submitted by Baylor for services rendered to patients covered by healthcare plans administered by GPA or else lose the discount provided to GPA by the three-party network arrangement among Baylor, PHCS and GPA.  Further, GPA claims that a fiduciary relationship was created by the Agreement and its subsequent amendment, and that PHCS breached that alleged fiduciary relationship through the same negotiations.

4.      The applicable contracts between GPA and PHCS, which are submitted as summary judgment evidence Exhibits "A" and "B," and which have been authenticated and rendered admissible by the deposition testimony of Kathy Enochs, the Chief Operating Officer of GPA and its corporate representative in the *Baylor/GPA* case, and the Affidavit of Mark Hoffman, former PHCS employee, submitted as summary judgment evidence Exhibits "D" and "E," are the Agreement and its various exhibits, and the Amendment and Assignment and its various exhibits.

3

5.     The Agreement, and the Amendment and Assignment, and most particularly, the Subscriber Acknowledgment (which is an exhibit to the Amendment and Assignment), were all signed by GPA, binding it to the terms and obligations set forth therein.  It is those obligations that this Court enforced against GPA in the *Baylor/GPA* case.

6.     As shown more fully below, there is no dispute that the claims being asserted by GPA against PHCS fall within the scope of the indemnification provision of the Agreement.  At this point of the litigation, PHCS is not seeking rulings from the Court on the merits of GPA's claims against PHCS, although PHCS submits that there is no basis for such claims; particularly in light of GPA's admitted failure to seek legal counsel or even to read the various agreements to which it committed itself.  See Exhibit "D" attached hereto.  Instead, PHCS is asking the Court simply to rule at this juncture that the limitation on liability (again, the waiver) arising out of the indemnity provision in the Agreement should be enforced as clearly and unambiguously set forth in the document that embodies the agreement of the parties thereto.

7.     Because there is no factual dispute as to the applicability of the Agreement and the language of the indemnification provisions (and waivers) is not ambiguous (nor has such an allegation been made in the pleadings), it is enforceable as a matter of law, rendering summary adjudication of this issue entirely appropriate.

## IV.

## ARGUMENTS AND AUTHORITIES

### A.     *Summary Judgment Standard*

8.     Summary judgment is proper to resolve questions of law and matters of undisputed fact.  See *Bakali v. Bakali,* 830 S.W. 2d 251, 256 (Tex. App. - Dallas 1992, no writ).  "A plaintiff moving for summary judgment on its claim must establish its right to summary

judgment by conclusively proving all of the elements of its cause of action as a matter of law."

*Anglo-Dutch Petroleum International, Inc. v. Haskell,* 193 S.W. 3d, 87, 95 (Tex. App. - Houston [1st Dist.] 2006, pet. denied) (citing *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999)).

**B.**     ***The Undisputed Summary Judgment Evidence Establishes Each Element of PHCS' Claim As A Matter Of Law***

**i.**     **Relevant Contractual Language**

9.     Article VI of the Agreement between PHCS and GPA contains the following indemnification and limitation of liability provisions:

> 6.1     <u>PHCS Indemnification</u>.  PHCS shall indemnify, defend, and hold harmless the Subscriber and its officers, directors, employees and agents, against losses, claims, damages, judgments, liabilities or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or non-performance), or any willful malfeasance, by PHCS or any of its officers, employees, or agents, in connection with the performance of any of PHCS' duties and obligations under this Agreement.

> 6.2     <u>Subscriber Waiver</u>.  In consideration of the indemnification set forth in Section 6.1, the Subscriber and its officers, directors, employs, and agents waive the right to recover from PHCS any sum in excess of $1 million per occurrence in any action involving such negligent performance, nonperformance, or willful malfeasance in connection with the performance of any of PHCS' duties and obligations under this Agreement.

> 6.3     <u>Subscriber Indemnification</u>.  Subscriber shall indemnify, defend, and hold harmless PHCS and its officers, directors, employees and agents, against losses, claims, damages, judgments, liabilities or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or non-performance), or any willful malfeasance, by the Subscriber or any of its officers, employees, or agents, in connection with the performance of any of the Subscriber's duties and obligations under this Agreement.

> 6.4     <u>PHCS Waiver</u>.  In consideration of the indemnification set forth in Section 6.3, PHCS and its officers, directors, employs, and agents waive the right to recover from the Subscriber any sum in excess of $1 million per occurrence in any action involving such negligent performance, nonperformance, or willful malfeasance in connection with the performance of any of the Subscriber's duties and obligations under this Agreement.

### ii.    Analysis

10.    The Agreement between PHCS and GPA contains an indemnification provision, whereby PHCS agreed to:

> indemnify, defend, and hold harmless the Subscriber and its officers, directors, employees and agents, against losses, claims, damages, judgments, liabilities or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or non-performance), or any willful malfeasance, by PHCS or any of its officers, employees, or agents, in connection with the performance of any of PHCS' duties and obligations under this Agreement.

Agreement, Article VI, § 6.1. However, the Agreement also contains a "Subscriber Waiver," which limits PHCS' liability in damages as follows:

> In consideration of the indemnification set forth in Section 6.1, the Subscriber and its officers, directors, employs, and agents waive the right to recover from PHCS any sum in excess of $1 million per occurrence in any action involving such negligent performance, nonperformance, or willful malfeasance in connection with the performance of any of PHCS' duties and obligations under this Agreement

Agreement, Article VI, § 6.2.

11.    Under Texas law, "contracting parties can limit their liability in damages to a specified amount," absent contrary public policy. *Texas Motor Coach, L.C. v. Blue Bird Body Co.*, 2005 WL 3132482, at *4 (E.D. Tex. Nov. 22, 2005) (citing *Fox Elec. Co. v. Tone Guard Sec., Inc.*, 861 S.W.2d 79, 82–83 (Tex.App.–Fort Worth 1993)). In other words, "[a]n agreement to limit liability for future negligence is enforceable if the agreement does not violate public policy." *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex.App.– Dallas 1999) (citing *Fox Elec.*, S.W.2d at 82–83). Generally, the issue is one of unconscionability, that is, the agreement is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

12.     In deciding whether a limitation of liability clause is unconscionable, Texas courts must consider "the entire atmosphere in which the agreement was made," including (i) the relationship of the parties, (ii) the bargaining process that the parties went through, and (iii) "whether there is such a disparity in bargaining power" that one of the parties was forced to accept the exculpatory provision. *Mireles v. Tejas Appraisal & Inspection Co.*, 2007 WL 1826074, at *1 (Tex. App.–Fort Worth 2007); see also *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 748 (Tex.App.–Fort Worth 2005) ("In cases examining limitation of liability clauses, the courts tend to look to the relationship of the parties and their bargaining power." (citations omitted)).   This is procedural unconscionability.   Some form of oppression or unfairness must taint the negotiation process. *El Paso Nat. Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61 (Tex.App.–Amarillo 1998), *rev'd on other grounds*, 8 S.W.3d 309 (Tex. 1999).   If the contract (or, as here, one term) is utterly lopsided, e.g., where there is no reasonable or subjective parity between the values exchanged, then it is unenforceable. *Id.*, at 61-62; *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. App.–Texarkana 1975, no writ).

13.     Courts must then evaluate the fairness of the provision "by determining whether there are legitimate commercial reasons that justify its inclusion as part of the agreement." *Head*, 159 S.W.3d at 748 (citation omitted). See also *Pony Exp. Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex.App.–San Antonio 1996, no writ) ("Although no single formula exists, proof of unconscionability begins with two broad questions:  (1) How did the parties arrive at the terms in controversy; and (2) Are there legitimate commercial reasons justifying the inclusion of the terms?" (citation omitted)); *American Employers' Ins. v. Aiken*, 942 S.W.2d 156, 160 (Tex.App.–Forth Worth 1997, no writ).  This is substantive unconscionability.

7

14.     Texas courts have found legitimate commercial reasons for allowing companies to limit their liability in varying contexts.  See, e.g., *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810–11 (Tex. App. 1999) (protective services company); *Head*, 159 S.W.3d at 748–49 (home inspection company); *D'Lux Movers & Storage v. Fulton*, 2007 WL 1299400, at *3 (Tex.App.–Fort Worth 2007) (moving services company).

15.     There is no legitimate basis for GPA to suggest, or for this Court to infer, that the indemnification waiver at issue here is procedurally unconscionable, i.e., the result of a disparity of bargaining power between PHCS and GPA.  Excerpts from GPA's own website (submitted herewith as summary judgment evidence Exhibit "F") show that it is "the largest privately owned TPA in the Southwest," that it has been in business for over 40 years (which would have been 23 years when the Agreement was signed, and 28 years when the Amendment and Assignment, along with the Subscriber Acknowledgment, was signed), that it has as clients "over 200 privately held and publicly traded companies . . . across the United States", including Fortune 500 businesses.  As just one example of its client base, when Ms. Enochs was deposed in 2008, she was shown a copy of a claims administration agreement that GPA had with The Perot Group, a well-known Dallas, Texas-based firm with recognized business acumen.  See Exhibit "D" attached hereto.  Mr. Hoffman confirms that there was no disparity of bargaining power, and that no coercion was present in PHCS' dealings with GPA.  See Exhibit "E" attached hereto.

16.     The simple response to any claim of substantive unconscionability is the fact that the indemnification caps (or waivers) are mutual.  Both GPA and PHCS agreed to limit the indemnification liability of the other.

17.     Moreover, GPA received the benefit of the bargain among the parties, not only because its clients' plan beneficiaries received healthcare services from Baylor for which it paid

discounted rates (only to have the discounts lost because <u>GPA</u> failed to pay them timely), but also because in the indemnification provisions themselves, full consideration for the waiver is provided and acknowledged by the provision of indemnification up to the value of the cap.

18.     It should also be noted that, by their terms, the mutual indemnification obligations show that the parties negotiating the contract placed other, non-monetary limits on the scope of the claim protection afforded, i.e., indemnifying only negligence performance or non-performance or willful malfeasance, which is further evidence that the terms are appropriate and not against public policy.

19.     GPA is seeking to recover damages from PHCS for the amounts it had to pay Baylor for failing to live up to its "prompt-pay" obligation.  GPA claims that it should never have been subject to such an obligation because PHCS entered into the Hospital Services Agreement - PPO with Baylor in violation of its contractual or quasi-contractual (as an alleged fiduciary) obligations to GPA under the Agreement.  GPA's allegations of negligence and gross negligence, as well as its claim that PHCS exceeded any grant of negotiating authority given to it by GPA fall squarely within the scope of the indemnification provision.

20.     Accordingly, should liability be found against PHCS, then GPA is only entitled to indemnification up to $1 million for any "losses, claims, damages, judgments, liabilities or expense (including reasonable counsel fees and costs) incurred" by GPA.

21.     PHCS seeks to have this Court rule now, before any such liability is established, that GPA's damages are capped at $1 million, pursuant to Article VI, Section 6.2 of the Agreement.

## V.

## CONCLUSION

22.     GPA's claims against PHCS arise out of the Agreement between them.   The

Agreement contains a clear and unambiguous – and mutual – indemnification provision that

includes a limitation on the liability that the indemnitor is required to cover for the indemnitee.

The term, negotiated between two sophisticated participants in the healthcare industry, is

enforceable as written.  PHCS simply seeks a judgment from this Court to that effect.

WHEREFORE, PREMISES CONSIDERED, Private Healthcare Systems, Inc. requests

that the Court grant this Motion for Partial Summary Judgment and award PHCS all other relief

to which it may be entitled in equity and at law.

Respectfully submitted,

*/s/ Craig L. Caesar*

Craig L. Caesar (TX Bar. 24056970)
**BAKER DONELSON BEARMAN,
CALDWELL & BERKOWITZ, PC**
201 St. Charles Avenue, Ste. 3600
New Orleans, Louisiana  70170
Telephone:     (504) 566-8616
Facsimile:      (504) 585-6916
ccaesar@bakerdonelson.com

## CERTIFICATE OF SERVICE

I certify that on June 16, 2015, the foregoing was served to all counsel of record via

electronic and first class mail as follows:

Jeffrey W. Ryan (jwryan@chambeeryan.com)
Jared L. Kent (jkent@chambleeryan.com)
Chamblee, Ryan, Kershaw & Anderson, P.C.
2777 Stemmons Freeway, Ste. 1157
Dallas, Texas  75207

*/s/ Craig L. Caesar*

Craig L. Caesar

Oct.26 06.04:06p        Cathy Engl'                              `7442410            p.2

# SUBSCRIBER SERVICES AGREEMENT

This SUBSCRIBER SERVICES AGREEMENT (which, together with all exhibits hereto, is referred to as the "Agreement") is made and entered into as of ___April 17,___, 199 8 (the "Effective Date"), between PRIVATE HEALTHCARE SYSTEMS INC., a Delaware corporation, located at 1100 Winter Street, Waltham, Massachusetts 02154, ("PHCS"), and Group & Pension Administrators, Inc., a Texas corporation, located at 300 Municipal Drive, Richardson, TX 75080 (the "Subscriber").

## RECITALS

A.    PHCS is in the business of providing provider networks and a comprehensive medical management system, including utilization review, quality assurance, and other cost containment related services throughout the United States.

B.    Plans offered and managed by Subscriber provide health benefits and/or services to eligible participants under health benefit plans.

C.    Plans offered and managed by Subscriber generally include financial incentives to encourage eligible participants to choose treatment from providers who have contracted with entities, such as preferred provider organizations and exclusive provider organizations, who are in the business of offering provider discounts and other managed medical benefits.

D.    Subscriber is interested in and intent upon becoming a subscriber for services of PHCS, thus availing itself of the PHCS comprehensive medical management system.

THEREFORE, the parties agree as follows:

## ARTICLE I:  DEFINITIONS

The following terms are defined for purposes of this Agreement:

1.1    [RESERVED]

1.2    "Centers of Excellence" shall mean the services described in Exhibit B to this Agreement.

1.3    "Covered Employee" shall mean the group consisting of an individual, and his or her covered dependents, if any, which:

(a)    is entitled to receive benefits under Healthcare Plans; and

GPASSA2.doc                              1

GPA-03005

**Exhibit A**

(b)   is eligible to receive the Services (as defined in Section 1.24 below) from PHCS. For individual medical plans, "Covered Employee" shall mean the group consisting of the policyholder of the individual health policy, and his or her covered dependents.

1.4   [RESERVED]

1.5   "Healthcare Plan" shall mean healthcare benefits provided through either a group plan, an individual plan, or the medical reimbursement portion of a workers' compensation plan, whether insured or self-funded or any combination thereof, which plan is underwritten, administered, or managed by the Subscriber.

1.6   "Initial Fee" shall have the meaning set forth in Article IV of this Agreement.

1.7   "Initial Term" shall have the meaning set forth in Section 3.1 of this Agreement.

1.8   [RESERVED]

1.9   "Market" shall mean the separate geographic areas defined by PHCS and listed on Exhibit E, for which geographic areas Subscriber has requested that PHCS provide Network Services. Following the commencement of the Initial Term of this Agreement, Subscriber may add or delete Markets identified on Exhibit E by providing PHCS with at least ninety (90) days notice prior to the effective date of such addition or deletion of said Market(s) subject to the restrictions set forth in Section 5.11 of this Agreement.

1.10   "Materials" shall have the meaning set forth in Section 5.4 of this Agreement.

1.11   [RESERVED]

1.12   "Monthly Fee" shall have the meaning set forth in Section 4.2 of this Agreement.

1.13   "Network" shall mean one of the networks of Participating Providers established in the Markets.

1.14   "PHCS Mark" shall mean the service mark or marks, together with accompanying design, and the PHCS Graphic Standards (Guide to the Use of the Private Healthcare Systems, Inc. Logo) which has been provided to Subscriber.

1.15   "Plan Sponsor" shall mean any corporation, partnership, labor union, association, employer, or any other group that provides medical benefits to its employees or members pursuant to the terms of a Healthcare Plan.

1.16   "PCP Plan" shall mean the services described in Exhibit G of this Agreement.

1.17   [RESERVED]

GPASSA2.doc                                    2

GPA-03006

**Exhibit A**

1.18  [RESERVED]

1.19  [RESERVED]

1.20  "PPO Services" shall mean the services described in Exhibit J to this Agreement.

1.21  "Participating Provider" shall mean a Provider who has been selected by PHCS for participation in the network of providers that support the Services.

1.22  "Provider" shall mean hospital, physician, ancillary, physician's office personnel, or other direct provider of health care services.

1.23  "Service Exhibit" shall mean each of the exhibits to this Agreement which described the services to be provided by PHCS to Subscriber.

1.24  "Services" shall mean the services provided by PHCS to the Subscriber pursuant to this Agreement.

1.25  [RESERVED]

1.26  "Successive Terms" shall have the meaning set forth in Section 3.1 of this Agreement.

1.27  [RESERVED]

1.28  [RESERVED]

## ARTICLE II: SERVICES

Pursuant to the terms and subject to the conditions of this Agreement, PHCS hereby offers the following Services to Subscriber:

2.1  <u>Services</u>. Commencing on July 1, 1998, PHCS will make the Services available to the Subscriber subject to the terms and conditions contained in this Agreement, including the Service Exhibits.

2.2  <u>Terms</u>. In addition to all other terms and conditions of this Agreement:

(a)  the Services shall be provided by PHCS in accordance with the provisions of Exhibit N to this Agreement.

(b)  (i) PHCS shall have the right, in its sole discretion to add to, modify, rescind, delete, or change any or all of the Services;

(ii) PHCS shall give the Subscriber prior written notice of any adjustment to the Services pursuant to the preceding paragraph. and such adjustment to the Services shall be

GPASSA2.doc                                      3

GPA-03007

**Exhibit A**

effective no sooner than the ninetieth (90th) day following the mailing of notice to the Subscriber;

(iii) if the adjustment to the Services is not acceptable to the Subscriber, the Subscriber may terminate this Agreement in accordance with Section 3.4; and

(iv) whether or not the Subscriber elects to utilize the Services, the Subscriber shall pay to PHCS the fees set forth in Article IV of this Agreement.

(c)    the Subscriber hereby grants to PHCS a power of attorney, as set forth in Exhibit O hereto, to act in its name and on its behalf with respect to any and all contracts with Participating Providers regarding the Services. Subscriber understands and acknowledges that PHCS will be undertaking a recontracting effort to eliminate payors from the contracts with Participating Providers and adding PHCS to those contracts as the network administrator. This recontracting effort includes drafting new form agreements to be used to (i) recontract with existing Participating Providers in the PHCS network and (ii) contract with Providers who are not in the PHCS network (the "Recontracting Effort"). At the time of the Recontracting Effort and upon written notice to Subscriber, Subscriber agrees to allow PHCS to remove it as a party to those contracts with Participating Providers and to take all other steps PHCS deems reasonably necessary to effectuate the termination of Subscriber as a party to those contracts at the time PHCS is added as a party to serve as the network administrator.

(d)    PHCS shall use its best efforts to determine that each Participating Provider participating meets certain quality assurance standards established by PHCS.

2.3    Ordering. The Subscriber shall order Services for a Plan Sponsor by submitting written notification to PHCS containing the information set forth in the applicable Service Exhibit.

2.4    Use of Subscriber's Marketing Name. PHCS agrees to use the following marketing name when referring to Subscriber in any of its marketing materials: _Group + Pension Adm., Inc._

## ARTICLE III: TERM & TERMINATION

3.1    Term. This Agreement shall continue in force from the Effective Date through June 30, 1999 (the "Initial Term"), and shall be renewed automatically for successive terms of one year (the "Successive Terms") until terminated as provided in this Article. As specified in more detail below, termination of this Agreement will be initiated by the provision of written notice which will specify the date of termination (the "Termination Date").

3.2    Termination With or Without Cause. Either party may terminate this Agreement at any time with or without cause by giving the other party written notice of its intention to terminate at least ninety (90) days prior to the Termination Date.

GPASSA2.doc                                    4

GPA-03008

**Exhibit A**

3.3  Termination by PHCS.  PHCS may terminate this Agreement in the event of any effort on the part of Subscriber to assign any Participating Provider contract, assign a new network administrator, or otherwise attempt to assume control of the PHCS Network (s).

3.4  Termination After Fee Adjustment For Services or Change in Services.  If Subscriber receives notice of a fee adjustment pursuant to Section 4.6 of this Agreement, a claims repricing fee pursuant to Sections 5.10 or 10.2 of this Agreement, or notice of a change in services pursuant to Section 2.2(b) of this Agreement, Subscriber shall have thirty (30) days to notify PHCS of its decision to terminate this Agreement.  The Termination Date shall be the sixtieth (60th) day after the date on which PHCS receives the Subscriber's written notice of termination pursuant to its right under this Section and in accordance with Section 10.5 of this Agreement.

3.5  Effect of Termination.  All obligations of the parties under this Agreement shall terminate on the Termination Date, except for the obligations specified in or created by Article IV (with respect to previously accrued fees and retroactive adjustments to fees), Article VI, and Article VIII.  Further, each of the contracts entered into by PHCS with Participating Providers on behalf of Subscriber shall terminate on the Termination Date.  PHCS shall take all steps it deems reasonably necessary to effectuate the termination of any and all such Participating Provider contracts.

## ARTICLE IV: FEES & TERMS OF PAYMENT

4.1  Initial Fee  The Subscriber shall pay PHCS the initial fee, if any, specified in Exhibit P to this Agreement ("Initial Fee") on the first day of the Initial Term.  In the event the Subscriber fails to: (a) initiate Services with PHCS under this Agreement; (b) continue the provision of Services by PHCS, within the first sixty (60) days of the Initial Term pursuant to this Agreement, this Agreement shall automatically terminate within one hundred fifty (150) days from the effective date of this Agreement, provided, however, Subscriber shall pay PHCS the implementation or initial fee specified on Exhibit P to this Agreement.

4.2  Monthly Fee.  The Monthly Fee shall be paid for PPO Services in the following manner.  For each calendar month during the Initial Term and any Successive Term the Subscriber shall pay to PHCS a fee every month ("Monthly Fee").  Subscriber shall calculate such Monthly Fee on the basis of (a) the number of Covered Employees eligible to receive each of the Services listed in this Section 4.2 as of the first day of any month, multiplied by (b) the rate for that particular service for each Covered Employee as set forth in Exhibit P to this Agreement.  Each payment of the Monthly Fee shall be accompanied by a statement prepared by the Subscriber showing the number of Covered Employees enrolled in each of the Services listed in this Section 4.2, and its calculation of the Monthly Fee paid, in a form mutually agreed to by the parties.

4.3  [RESERVED]

4.4  [RSERVED]

GPASSA2.doc  5

GPA-03009

**Exhibit A**

4.5   <u>Payment Terms</u>. The Monthly Fee shall be payable on or before the fifteenth (15th) day of the month in which such fee was incurred.

4.6   <u>PHCS Fee Adjustment</u>. The Monthly Fees may be adjusted as of July 1st during any Successive Term; provided, that PHCS notifies the Subscriber no later 90 days immediately preceding the September 1st fee adjustment date of any proposed adjustment to the Monthly Fees.   If the fee adjustment in any Successive Term is not acceptable to the Subscriber, the Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement, but in any case Subscriber shall pay the adjusted Monthly Fees from the effective date of the adjustment until the Termination Date.

4.7   <u>Retroactive Adjustments</u>. In the event that Subscriber submits information which seeks a retroactive decrease in the amount of any previously paid Monthly Fee or other fees set forth on Exhibit P, such retroactive adjustments in aggregate enrollment will be reflected only in the next month's Monthly Fees; provided, however, such retroactive adjustment in aggregate enrollment is requested by Subscriber in writing within six (6) months following the month for which such adjustment is being requested and in no event shall such adjustment be made any later than February 15 for the previous calendar year (e.g. In the event Subscriber seeks an adjustment for enrollment fee paid in November, it must seek an adjustment prior to February 15 of the following year.   An adjustment sought in April for the month of November in the previous calendar year is prohibited.)   In the event the Agreement is terminated, PHCS shall pay Subscriber the retroactive adjustment within thirty (30) days following the Termination Effective Date.   Nothing contained in this Section 4.7 will limit the ability of PHCS to obtain retroactive adjustments to Monthly Fees or any other fees contained in this Agreement should any audit conducted by either party, or its designee, indicate inaccuracies in the enrollment figures or other information by which the Monthly Fees or any other fees contained in this Agreement were calculated.

## ARTICLE V: DUTIES OF THE SUBSCRIBER

5.1   <u>Covered Employee Health Care Benefits</u>. As between PHCS and the Subscriber, the Subscriber shall retain full authority and responsibility (i) for determining whether a Covered Employee is eligible to receive benefits under Healthcare Plans, (ii) for determining the amount of such benefits Covered Employee is to receive under any such Healthcare Plan, and (iii) for providing any such benefits to the Covered Employee.   PHCS is providing the Services under the terms of this Agreement as an independent contractor.   PHCS shall not be authorized to communicate or confirm eligibility or coverage under the Healthcare Plans.   Communications between PHCS and the Covered Employee or the Covered Employee's attending physician shall disclaim confirmation of eligibility or coverage.

5.2   <u>Notice to Plan Sponsors and Covered Employees</u>. It is the sole responsibility and obligation of the Subscriber to cause Plan Sponsors to timely and thoroughly communicate to all Covered Employees any and all requirements necessary to enable PHCS to provide the Services. Should the Subscriber fail to so notify Plan Sponsors and Covered Employees, PHCS shall be under no obligation to provide the Services to the Subscriber.   PHCS shall, however, have the ability to communicate with Covered Employees in connection with any customer service issues directed to PHCS by the Covered Employee or Subscriber regarding the Services.


GPASSA2.doc                                6

**Exhibit A**

5.3   Release of Information.  The Subscriber will use its best efforts to cause each Covered Employee to provide to his or her attending physician any authorization that may be necessary for the release of information concerning the Covered Employee to PHCS and by PHCS to healthcare providers, Subscriber, claims payors, and any other person or entity involved in the provision or review of health care services, claims processing, or claims payment of the Services.  Subscriber agrees that PHCS shall not be in breach of this Agreement if it cannot perform Services due to the failure of Subscriber to secure such authorization from any individual Covered Employee.

5.4   Materials.  The Subscriber may develop for anyone (except Participating Providers) their own sales materials, employee communication materials, and explanatory materials regarding the Services ("Materials").  .  The Subscriber shall not, and shall take necessary actions to insure that each Plan Sponsor shall not, distribute, deliver or otherwise use any Materials without first submitting the Materials to PHCS.  Such review shall be limited in scope to matters potentially affecting the liability, responsibility, or reputation of PHCS.  The Subscriber shall make any modifications to the Materials as may be reasonably requested by PHCS prior to any distribution of the Materials.  PHCS shall have no responsibility for the contents of the Materials, and nothing in this Agreement shall impose upon PHCS any obligation to review or comment on the Materials, or constitute a waiver of any of the provisions of Article VI.

5.5   Plan Sponsor Monthly Statements.  The Subscriber shall provide a monthly statement to PHCS listing each Plan Sponsor receiving the Services.  Such monthly statement shall be provided on paper or electronic media and shall include:  (i) the name and account number(s) of each Plan Sponsor, (ii) number of Covered Employees as of the beginning of the month for each Plan Sponsor for each Service, and (iii) other data which PHCS may reasonably require to provide Services under this Agreement.  All information required by this Section 5.5 shall be provided in a form reasonably acceptable to PHCS.

5.6   Cost of Directories and Materials.  If the Subscriber elects to publish directories of Participating Providers or other communications materials, such costs shall be paid by the Subscriber.  Subscriber and publication such directories and other communications materials shall be subject to Section 5.4.

5.7   Quarterly Computer Tape.  Promptly after the end of each calendar quarter the Subscriber shall provide PHCS (on computer tape or other medium meeting the specifications as PHCS may reasonably require) information regarding all claims paid or administered by the Subscriber regardless of whether such claim was paid to or on behalf of a Covered Employee.  This submission shall include such information regarding paid claims as PHCS may reasonably request.

5.8   Ad Hoc Eligibility Data Submission.  The Subscriber shall use its best efforts to provide to PHCS any information regarding Plan Sponsors requested by PHCS.

5.9   Use of PHCS Marks.  The Subscriber shall have the right to use in advertising and promotional materials the PHCS Mark; provided such use shall be in strict conformance with PHCS' graphic standards as published to PHCS's clients. and such advertising and promotional materials shall be subject to Section 5.4.

GPASSA2.doc                               7

GPA-03011

**Exhibit A**

5.10  <u>Use of Outsourced Claims Administration</u>.  Subscriber shall not use the services of a outsourced claims administrator ("OCA") in connection with the Services without the prior written consent of PHCS, which consent may be withheld in the sole discretion of PHCS.  Should PHCS consent to the use by Subscriber of a OCA, Subscriber shall cause the OCA to execute the OCA Confidentiality Agreement appended to this Agreement as Exhibit Q prior to the date on which Subscriber initiates its use of the OCA for PHCS Services.  In the event that an approved OCA is owned by an entity which is a vendor of provider network management services identical or similar to those Provider Network Services offered under this Agreement, the repricing of claims shall be performed by Subscriber or PHCS, at Subscriber's option.  In the event that PHCS performs the repricing of the claims, PHCS will charge Subscriber an additional fee for the claims repricing.  In the event that the repricing fee is not acceptable to Subscriber, Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement.

5.11  <u>Restriction on Market Development</u>.  During the Initial Term or any Successive Term and for a period of two (2) years after the termination or expiration of this Agreement, Subscriber shall not take any actions whatsoever to develop or initiate development of provider networks in the Markets in which Subscriber is using the Services.

## ARTICLE VI: INDEMNIFICATION

6.1  <u>PHCS Indemnification</u>.  PHCS shall indemnify, defend, and hold harmless the Subscriber and its officers, directors, employees and agents, against losses, claims, damages, judgments, liabilities or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or non-performance), or any willful malfeasance, by PHCS or any of its officers, employees, or agents, in connection with the performance of any of PHCS' duties and obligations under this Agreement.

6.2  <u>Subscriber Waiver</u>.  In consideration of the indemnification set forth in Section 6.1, the Subscriber and its officers, directors, employees, and agents, waive the right to recover from PHCS any sum in excess of $1 million per occurrence in any action involving such negligent performance, nonperformance, or willful malfeasance in connection with the performance of any of PHCS' duties and obligations under this Agreement.

6.3  <u>Subscriber Indemnification</u>.  The Subscriber shall indemnify, defend and hold harmless, PHCS and its officers, directors, employees, and agents against losses, claims, damages, judgments, liabilities, or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or nonperformance) or any willful malfeasance by the Subscriber or any of its officers, directors, employees, or agents in connection with the performance of any of the Subscriber's duties and obligations under this Agreement.

6.4  <u>PHCS Waiver</u>.  In consideration of the indemnification set forth in Section 6.3, PHCS and its officers, directors, employees, and agents waive the right to recover from the Subscriber any sum in excess of $1 million per occurrence in any action involving such negligent performance,

nonperformance, or willful malfeasance in connection with the performance of any of the Subscriber's duties and obligations under this Agreement.

## ARTICLE VII:  INSURANCE

7.1  <u>PHCS Insurance.</u>  During the term of this Agreement PHCS shall maintain insurance coverage for liabilities that may result from provision of the Services in the amount of one million dollars ($1,000,000) per occurrence, ten million dollars ($10,000,000) in the aggregate.

7.2  <u>Subscriber Insurance.</u>  During the term of this Agreement Subscriber shall maintain insurance coverage for liabilities that may result from its duties and obligation under this Agreement in the amount of one million dollars ($1,000,000) per occurrence, ten million dollars ($10,000,000) in the aggregate.

## ARTICLE VIII:  CONFIDENTIALITY

8.1  <u>Confidentiality Obligation of PHCS</u>.  PHCS agrees to keep confidential all records and other information regarding the Subscriber, Plan Sponsors or Covered Employees.  The restrictions contained in this Section 8.1 shall not apply to information that is or comes within the public domain without breach of this Agreement by PHCS.

8.2  <u>Non-Confidentiality of Certain Information</u>.  PHCS may incorporate all data and information received from the Subscriber into PHCS' data bases for use and reporting on an aggregate basis so long as:

(a)  the identities of Covered Employees, Plan Sponsors and the Subscriber are not disclosed to parties other than the Subscriber; and

(b)  no data is disclosed by PHCS that (i) could not be disclosed by it were it an insurance company, agent, insurance support organization or other entity subject to any insurance information or privacy protection statute or other similar statute or regulation, or (ii) the disclosure of which could result in liability on the part of the Subscriber or any Plan Sponsor pursuant to any privacy or similar laws.

8.3  <u>Confidentiality Obligation of the Subscriber</u>. The Subscriber shall keep confidential, and shall cause any Plan Sponsors to keep confidential, all records, reports, trade secrets, proprietary processes, and proprietary data of PHCS, including, but not limited to, this Agreement, and any other information regarding PHCS, whether such information is written, transferred orally, visually, electronically or by any other means, as well as all copies, abstracts, summaries, or analyses of such information prepared by or on behalf of the Subscriber, which may be disclosed to the Subscriber in connection with this Agreement, or which may otherwise come into the possession of the Subscriber. The Subscriber agrees not to disclose any such information to any third party, except to a Plan Sponsor or potential Plan Sponsor, without the express prior written consent of PHCS.  Such information shall

GPASSA2.doc                                                   9

GPA-03013

**Exhibit A**

be disseminated only to employees of the Subscriber on an as-needed basis in conjunction with the performance of such employees' duties regarding the Services provided pursuant to this Agreement. The restrictions contained in this Section 8.3 shall not apply to information that is or comes within the public domain without breach of this Agreement by the Subscriber.

## ARTICLE IX:  ACCESS TO RECORDS

9.1  General Access.  PHCS shall have the right, upon reasonable request and at reasonable times during normal business hours, to have access to such books and records of the Subscriber for inspection and examination as may be reasonably necessary for PHCS to audit the number of Covered Employees.  PHCS may be granted access to other books and records of the Subscriber for examination and inspection in connection with the Subscriber's performance of its obligations under this Agreement, but such access shall be granted only upon mutual agreement of the Subscriber and PHCS.

9.2  Access to Plan Sponsor Books and Records.  The Subscriber shall use its best efforts to obtain similar rights of access for PHCS to the books and records of any Plan Sponsor, and such rights of access shall be a condition to PHCS' obligation to provide Services under this Agreement to the extent that such access is reasonably necessary to the provision of the Services or the determination or enforcement of PHCS' rights under this Agreement.

9.3  Subscriber Access.  The Subscriber, or its representatives, shall have the right, upon reasonable request and at reasonable times during normal business hours, to have access to records of PHCS for inspection necessary to audit the performance of PHCS under this Agreement; provided, that the Subscriber, or its representatives, as the case may be, shall keep all information of PHCS confidential in accordance with Section 8.3 of this Agreement.

## ARTICLE X:  MISCELLANEOUS

10.1  Waiver, Modification or Cancellation.  No waiver, modification or alteration of any of the provisions of this Agreement, or cancellation or replacement of this Agreement, shall be valid unless in writing and signed by the parties hereto.  The failure of any party to the Agreement, at any time, to require performance by any other party of any provision of this Agreement shall in no way affect the full right to require such performance at any time thereafter.  The waiver by any party of a breach of any provision of this Agreement shall not constitute a waiver of any succeeding breach of the same or any other provision, nor shall such waiver constitute a waiver of the provision itself.

10.2  Assignment.  This Agreement is personal to each of the parties hereto, and neither party may assign this Agreement without the prior written consent of the other party.  In the event that Subscriber is merged, consolidated or purchased in whole or in part by another person or entity that, as of the Effective Date, is not owned by Subscriber, wholly owned by Subscriber or under common control with Subscriber ("Non-Affiliated Party"), PHCS has the right to terminate this Agreement upon ninety (90) days prior written notice in accordance with Section 10.5 of this Agreement.  Upon

GPASSA2.doc                          10

GPA-03014

**Exhibit A**

such merger, consolidation or purchase: (a) the Participating Provider contracts shall not be assigned to the Non-Affiliated Party; and (b) all claims repricing shall immediately be conducted by PHCS. PHCS will charge Subscriber an additional fee for the claims repricing services. In the event that the claims repricing services fee is not acceptable to Subscriber, Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement.

10.3  Binding Effect.  This Agreement constitutes the entire agreement between the parties respecting the Services to be performed by PHCS, and shall be binding upon and shall inure to the benefit of the parties hereto and their permitted successors.

10.4  Governing Law.  The validity, construction, interpretation and enforceability of this Agreement shall be determined and governed by the laws of the Commonwealth of Massachusetts.

10.5  Notice.

Any notice provided for in this Agreement must be in writing and must be either personally delivered or mailed by first class mail (registered or certified, return receipt requested), telex, telecopier or overnight air courier guaranteeing next day delivery, to the recipient at the address(es) listed below, or to such other address(es) or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party.  Except as otherwise provided in this Agreement, any notice under this Agreement shall be deemed to have been given:  (i) at the time delivered by hand, if personally delivered; (ii) when deposited in the mail, postage prepaid, if mailed; (iii) when answered back, if telexed; (iv) when receipt acknowledged, if telecopied; and (v) the next business day after timely delivery to the courier, if sent by overnight air courier guaranteeing next day delivery.

Private Healthcare Systems, Inc.          Group & Pension Administrators, Inc.
1100 Winter Street                        300 Municipal Drive
Waltham, MA 02154-1227                    Richardson, TX 75080
Attn: Group & Pension Administrators, Inc.  Attn:  Vice President of Marketing
Account Manager


with a copy to:                           with a copy to:

Private Healthcare Systems, Inc.          _____
1100 Winter Street                        _____
Waltham, MA 02154-1227                    _____
Attn: Vice President and General Counsel  Attn: _____

10.6  Severability.  If any provision of this Agreement, as applied to either party or to any circumstances, shall be adjudged by a court of competent jurisdiction to be void or unenforceable, the same shall in no way affect any other provision of this Agreement or the validity or enforceability of this Agreement.

GPASSA2.doc                         11

GPA-03015

**Exhibit A**

10.7   <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.8   <u>Third Party Beneficiaries</u>.  Nothing in this Agreement, whether express or implied, shall be deemed to confer on any person, other than the parties hereto and their successors and assigns, any right, obligation, remedy, or liability.

10.9   <u>Entire Agreement</u>.   This Agreement and the exhibits hereto contain the entire agreement between the parties with respect to the matters contemplated by this Agreement.

10.10   <u>Compliance with State and Federal Laws</u>.  Each party shall comply with all applicable state and federal statutes and regulations relating to this Agreement.  Any provision of this Agreement which conflicts with an applicable state or federal statute or regulation shall be construed, interpreted and given effect so as to conform to the minimum requirements of such statute or regulation.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first written above.

**Group & Pension Administrators, Inc.**

By: _____
Name: _Jerry McPeters_____
Title: _President_____

**Private Healthcare Systems, Inc.**

By: _____
Name: Richard F. Belloff
Title: Chairman, President & CEO
_____

GPASSA2.doc                    12

GPA-03016

**Exhibit A**

## EXHIBIT A:  CASE MANAGEMENT SERVICES

### RESERVED

GPASSA2.doc                            13

GPA-03017

**Exhibit A**

## EXHIBIT B:  CENTERS OF EXCELLENCE SERVICES

*NOTE: The Subscriber acknowledges that the PPO and/or POS Services purchased by the Subscriber includes Centers of Excellence Services.  Centers of Excellence Services may also be purchased independent of the PPO and/or POS Services for sale by the Subscriber as a stand-alone offering.  However, the Subscriber has elected not to utilize the Centers of Excellence Services at this time as a stand-alone offering.  Should the Subscriber subsequently elect to purchase the Centers of Excellence Services as a stand-alone offering, the Subscriber shall provide PHCS with written notice at least thirty (30) days prior to the date on which the Subscriber desires to first offer the Centers of Excellence Services as a stand-alone offering.  The following Exhibit B contains the standard Centers of Excellence Services and is included for the sole purpose of identifying for the Subscriber, the Centers of Excellence Services to be available to the Subscriber under this Agreement.*

1.  Definition.  The Centers of Excellence Program Services include PHCS:

    (a)  Establishing and maintaining a national network of providers that have agreed to certain reimbursement rates for organ transplantation services (the "Centers"), all as defined in the PHCS form of the Centers of Excellence Agreement.

    (b)  Providing information to the Subscriber describing the Centers of Excellence Network, including the Centers' names, addresses, preferred provider center reimbursement rates, and other information reasonably necessary for the Subscriber to process Center claims.

    (c)  Re-pricing Center claims for Subscriber upon Subscriber's request.  Should Subscriber request that PHCS re-price claims, the Centers will still submit their claims to Subscriber who will then forward the claims to PHCS.

    (d)  Providing information to the Centers describing the procedures for submitting claims and identifying Covered Employees who are eligible for the Centers of Excellence Program Services and identifying new Subscribers.

2.  PHCS Transplant Coordination Services.  When a patient chooses to have a transplant performed at a PHCS Center of Excellence, the Covered Employee, the Subscriber or the attending physician contacts the PHCS Transplant Coordination staff to begin the precertification process.  If the procedure is certified, the Transplant Coordination staff is available to facilitate communications on administrative issues among the Covered Employee, family members, treatment team, medical center administrators and Subscriber.   The Transplant Coordination Staff only facilitates communication with the Center, and does not provide case management services as described in Exhibit A unless requested in writing and paid for at the rates set forth in Exhibit P.

3.  Transplant Case Management.  For transplant case management, when PHCS does not otherwise provide case management in connection with the use of a PHCS healthcare provider network or PHCS utilization review services, PHCS is available to perform transplant case management services on a time and materials basis (in addition to the Centers of Excellence per Covered

GPASSA2.doc                                14

GPA-03018

**Exhibit A**

Oct 26 06 04:11p      Cathy Engli                              `442410              p.16

Employee per month fee).   Transplant Case Management consists of the services described in Exhibit A as applied to transplant cases.

(a)   The Transplant Coordination staff shall be available to assist and advise Subscriber of the Centers' specific benefit and eligibility requirements for transplant procedures.

(b)   PHCS' Transplant Coordination Staff shall also be available to answer questions about PHCS' Centers of Excellence Program, and assist in the overall coordination of patient referrals.  General information shall be available on each transplant program in the network.

4.   <u>Duties of the Subscriber.</u>

(a)   The Subscriber shall provide the following information to PHCS for each Plan Sponsor within fifteen (15) days from the date on which, pursuant to Section 2.3, the Subscriber orders Centers of Excellence Services:  (i) the Plan Sponsor account name and address, (ii) the Plan Sponsor account number, (iii) the number of Covered Employees to receive Centers of Excellence Services, (iv) the effective date of the Centers of Excellence Services, and (v) any other information which PHCS may reasonably require to provide Centers of Excellence Services.  The Subscriber shall provide this information in a form acceptable to PHCS.

(b)   The Subscriber shall abide by the terms of any Centers of Excellence Agreement executed by Subscriber or its agents.

(c)   If the Subscriber elects to publish directories or directory supplements of Centers of Excellence or other communication materials, the production shall be performed by the Subscriber at its expense, and Subscriber shall comply with the provisions of Section 5.4 of the Agreement.

(d)   The Subscriber may terminate the Centers of Excellence Services for any Plan Sponsor without terminating this Agreement.  The Subscriber shall provide PHCS with written notice of the termination of the Centers of Excellence Services for any Plan Sponsor at least fifteen (15) days prior to the effective date of such termination.



GPASSA2.doc                              15

GPA-03019

**Exhibit A**

## EXHIBIT C:  EMPLOYEE ASSISTANCE PROGRAM SERVICES

### RESERVED

GPASSA2.doc                              16

**Exhibit A**

## EXHIBIT D:  MANAGED PHARMACY PROGRAM

### RESERVED

GPA-03021

**Exhibit A**

Oct 26 06 04:12p     Cathy Englis                         142410              p.19

## EXHIBIT : DESCRIPTION OF MARKETS



| PBCS DEFINED MARKET | BBREV. | NETWORK SERVICES SELECTED | | | | |
|---|---|---|---|---|---|---|
| | | PPO | PCP | EPO | POS | MHSR |

GPA-03022

Exhibit A



| PHCS DEFINED | | NETWORK SERVICES SELECTED | | | | |
| MARKET | ABBREV. | PPO | PCP | EPO | POS | MHSE |

GPA-03023

Exhibit A



Revision date: August 6, 1997

GPA-03024

**Exhibit A**

Oct 26 06 04:13p        Cathy Engli:                        '442410              p.22

## EXHIBIT F:  MENTAL HEALTH SPECIALTY PLAN

### RESERVED

GPASSA2 . doc                              21

GPA-03025

**Exhibit A**

## EXHIBIT G:  PRIMARY CARE PLAN SERVICES

### RESERVED

GPA-03026

**Exhibit A**

# EXHIBIT H: POS SERVICES

## RESERVED

GPA-03027

**Exhibit A**

Oct '26 06 04:14p        Cathy Engli                              '442410                    p.25

## EXHIBIT I: PPO ENHANCEMENT SERVICES

### RESERVED

GPA-03028

**Exhibit A**

## EXHIBIT J:  PPO SERVICES

1.  <u>Definition</u>.  PHCS provides two different types of PPO Services, each is set forth as follows.

    (a)  <u>Hospital PPO</u>.  PHCS' "Hospital PPO Services" include PHCS:

        (i)   establishing and maintaining a network of acute care medical and surgical facilities and ancillary facilities that have agreed to certain reimbursement rates for hospital services, all as defined in the PHCS form of Preferred Hospital Agreement ("Hospital PPO");

        (ii)   providing information to the Subscriber describing the Hospital PPO, including the hospitals' names, addresses, preferred provider hospital reimbursement rates, and other information reasonably necessary for the Subscriber to process Hospital PPO claims;

        (iii)   providing written information to the hospitals describing the procedures for submitting claims and identifying Covered Employees who are eligible for the Hospital PPO Services, which information shall be supplemented by on-site training sessions provided by PHCS for hospital administrative personnel.

    (b)  <u>Physician PPO</u>.  PHCS' "Physician PPO Services" include PHCS:

        (i)   establishing and maintaining a network of physicians that have agreed to certain reimbursement rates for physician services, all as defined in the PHCS form of Preferred Physician Agreement ("Physician PPO");

        (ii)   providing information to the Subscriber describing the Physician PPO, including the physicians' names, addresses, preferred provider reimbursement rates, and other information reasonably necessary for the Subscriber to process PPO claims;

        (iii)   providing written information to the physicians describing the procedures for submitting claims and identifying Covered Employees who are eligible for the Physician PPO Services.

2.  <u>PHCS Selection of PPO Markets and Services</u>.   PPO Services are provided with respect to hospitals and physicians in selected market areas.  The selection of market areas within which PPO Services will be provided and the schedule for providing specific PPO Services in those market areas shall be determined by PHCS, in its sole discretion.

3.  <u>Duties of the Subscriber</u>.

GPASSA2.doc                                    25

GPA-03029

**Exhibit A**

(a)   The Subscriber shall provide the following information to PHCS for each Plan Sponsor within fifteen (15) days from the date on which, pursuant to Section 2.3, the Subscriber orders PPO Services:  (i) the Plan Sponsor account name and address, (ii) the Plan Sponsor account number, (iii) the name of the PHCS PPO market area(s) in which the Plan Sponsor will utilize PPO Services, (iv) the number of Covered Employees to receive PPO Services and whether the Covered Employees are enrolled in the Hospital PPO and/or the Physician PPO, (v) the effective date of the PPO Services, and (vi) any other information which PHCS may reasonably require to provide PPO Services.   The Subscriber shall provide this information in a form acceptable to PHCS.

(b)   The Subscriber shall abide by the terms of any agreement with a Participating Provider entered into by PHCS on behalf of the Subscriber with regard to the provision of PPO Services.

(c)   If the Subscriber elects to publish directories of PPO providers or other communications materials, the production shall be performed by the Subscriber at its expense.  Subscriber shall be prohibited from listing, or publishing directories of, PHCS Participating Providers on its or any Internet Website, unless Subscriber complies with all security requirements mutually agreed to in writing by PHCS and Subscriber.

(d)   The Subscriber shall produce a standard identification card for use by its Covered Employees enrolled for PPO Services (the "PPO ID Card"), which PPO ID Card shall contain the information set forth in Attachment J(1) hereto.   PHCS strongly recommends to the Subscriber that each Covered Employee participating in the PPO receive at least two PPO ID Cards.

(e)   The Subscriber shall produce a standard explanation of benefits form ("PPO EOB") which shall contain, among other items, the information set forth in Attachment J(2) hereto.  The Subscriber shall provide an PPO EOB to each Covered Employee upon each submission of a claim for services provided by a PPO Participating Provider.

(f)   The Subscriber may terminate the PPO Services for any Plan Sponsor without terminating this Agreement.  The Subscriber shall provide PHCS with written notice of the termination of the PPO Services for any Plan Sponsor at least fifteen (15) days prior to the effective date of such termination.

GPA-03030

**Exhibit A**

## ATTACHMENT J(1):  INFORMATION TO BE INCLUDED ON PPO CARDS

1.  PHCS Horizontal Red Stripe

2.  Identification as an "MD Plan" with the necessary encounter fee information (on front of card if possible)

3.  Subscriber - Employer Eligibility/Benefits Coverage Information Phone Number

4.  Claims Submission Address

5.  UR "800" Number

6.  -- PHCS logo

In addition, PHCS strongly recommends:

1.  Multiple cards per employee

2.  Information on the UR requirements and penalty.

GPASSA2.doc                                   27

GPA-03031

Exhibit A

## ATTACHMENT J(2): INFORMATION TO BE INCLUDED ON PPO EXPLANATION OF BENEFITS FORM (PPO EOB)

The Subscriber shall develop its own PPO EOB that clearly identifies what the Participating Provider can or cannot bill to the Covered Employee. Either the amount which cannot be billed to the Covered Employee or the amount which will be billed to the Covered Employee must be set forth on the PPO EOB. Each Subscriber PPO EOB must identify PHCS as the provider network. PHCS strongly recommends that both the amount that can be billed and the amount which cannot be shown on the PPO EOB. The PPO EOB is required to include the standard PPO EOB language set forth as follows:

A.   "PPO - Preferred Participating Provider Benefit Applied; $XXX (of $XXX) cannot be balanced billed to the Patient"

OR

B.   "PPO - Preferred Participating Provider Benefit Applied; only $XXX (of $XXX) may be billed to the Patient"

OR

C.   "PPO - Preferred Participating Provider Benefit Applied; not billable to the Patient."

[For this last option, an asterisk or numbered notation must be included to indicate which amount(s) are not billable.]

For all three of the above descriptions the exact amounts to be included in the parentheses are optional.

GPASSA2 . doc

28

GPA-03032

**Exhibit A**

# EXHIBIT K: SPECIAL HANDLING PROGRAM

### RESERVED

GPA-03033

Exhibit A

## EXHIBIT L:  UTILIZATION REVIEW

### RESERVED

GPA-03034

**Exhibit A**

## EXHIBIT M:  WORKERS' COMPENSATION SERVICES

### RESERVED

GPA-03035

**Exhibit A**

## EXHIBIT N: SERVICES PREREQUISITES

1. <u>General</u>. The Services to be provided under this Agreement are subject to the following conditions which delineate several prerequisites placed upon the Subscriber for utilizing certain services.

2. <u>Conditions/Prerequisites</u>. Once the Subscriber orders the services pursuant to Section 2.3 of this Agreement, the Subscriber shall be required to utilize the Services in accordance with the following prerequisites.

   (a)  <u>Utilization Review</u>. The Subscriber has the option of declining to use Utilization Review Services

   (b)  <u>Case Management Services</u>.  The Subscriber has the option of declining to use Case Management Services. In the event the Subscriber should utilize Case Management Services, the Subscriber has the option of utilizing only:

      (i)   Case Screening, or

      (ii)  Case Screening and Case Management.

   The Subscriber may use only option (i) or option (ii) for all Plan Sponsors. The Subscriber is not permitted to use option (i) for some Plan Sponsors and option (ii) for other Plan Sponsors.

   (c)  <u>POS Services</u>.   The Subscriber has the option of declining to use POS Services.  The Subscriber may use PPO Services with EPO or POS Services.  In the event POS Services are ordered, the Subscriber has three (3) options for mental health services as follows:

      (i)   Mental Health Specialty Plan Services

      (ii)  Mental Health Utilization Review Services whereby PHCS will manage acute in-patient mental health services only.

      (iii) No Mental Health Services. PHCS will provide POS provider names to Covered Employees only.  PHCS will transmit mental health claims data electronically to Subscriber with a low benefit recommendation.

   In the event POS Services are ordered, the Subscriber must offer a managed pharmacy program either by utilizing the Managed Pharmacy Program Services of PHCS or another vendor.

GPASSA2.doc                                    32

GPA-03036

**Exhibit A**

(d) <u>Mental Health Specialty</u>.  The Subscriber must use either POS Services or PPO Services for Covered Employees using Mental Health Specialty Plan Services.  The Subscriber shall not offer PHCS Mental Health Specialty Plan Services without the PHCS PPO or POS.

(e)   <u>PPO Services</u>.  The following conditions and prerequisites apply to the Subscriber's use of PPO Services:

    (i)   The Subscriber may decline to utilize the PPO Services.

    (ii)   Utilization of Case Management Services is not a prerequisite to utilization of PPO Services.

    (iii)   For each Plan Sponsor, the Subscriber may choose to use either:

        a.   the Hospital PPO, or

        b.   the Hospital PPO and Physician PPO.

(f)   <u>Special Handling Program Services.</u>   The Subscriber must use either PHCS' Case Management Services or the case management services of another vendor.

GPASSA2.doc                              33

GPA-03037

**Exhibit A**

## EXHIBIT O: POWER OF ATTORNEY

### LIMITED POWER OF ATTORNEY

The undersigned (the "Company") hereby appoints and authorizes Private Healthcare Systems, Inc. ("PHCS"), a Delaware corporation, to be its agent and attorney-in-fact, for the limited purpose of making, executing, terminating, acknowledging and delivering, in the Company's name, place and stead, those preferred provider and other PHCS network agreements, including, but not limited to, physician individual and group agreements, hospital/facility agreements and ancillary/vendor services and case management agreements (the "Agreements"), with health care providers selected by PHCS (the "Participating Providers"), as are the then standard forms of such agreements in use by PHCS at the time the agreements are signed. The Company hereby further authorizes PHCS to execute, on the Company's behalf and without the prior approval of the Company, any amendments to such Agreements. Each Agreement, when executed and delivered by PHCS and Participating Provider, shall be binding upon and inure to the benefit of such Participating Provider and Company as if individually executed by Participating Provider and Company. New Exhibits may be added hereto and incorporated herein by reference only with the prior oral or written consent of the Company.

Third parties may rely upon the actions of said attorney-in-fact as to all matters relating to the power granted by this Power of Attorney, and no person who may act in reliance upon the actions of said attorney-in-fact shall incur any liability to the undersigned as a result of permitting said attorney-in-fact to exercise such judgment.

This Limited Power of Attorney will supersede any prior written Limited Power of Attorney between the parties with respect to the terms and provisions contained herein. The Company hereby authorizes PHCS to terminate each of the Agreements upon termination by either Company or PHCS of the Subscriber Services Agreement, and this Limited Power of Attorney shall be revoked upon the termination of the last of the Agreements. This Limited Power of Attorney may be revoked by written notice from Company to PHCS, but such revocation shall not be effective against any third party unless such third party shall have received actual notice of such revocation and as to Participating Providers, until each of the Agreements has been terminated. This Limited Power of Attorney shall be immediately revoked upon the termination by PHCS of the last of the Agreements following the effective date of termination or expiration of the Subscriber Services Agreement. Any such notice of revocation shall be provided by PHCS. This power is granted solely to PHCS acting through its authorized employees, and PHCS shall have no power of substitution with respect thereto.

IN WITNESS WHEREOF, this Power of Attorney has been executed by Group & Pension Administrators, Inc. on the _17th_ day of _April_, 199_8_.

By:
Name:
Title:

STATE OF _____
COUNTY OF _____

On this _17_ day of _____, 199_5_, before me personally appeared _____, to me known and known to me to be the person identified above who executed the foregoing Power of Attorney and, being by me first duly sworn, duly acknowledged to me that he executed the same. Witness my hand and official seal.

EDNA GEER HUDGINS
Notary Public, State of Texas
My Commission Expires
AUG. 2, 2001

Notary Public
My Commission Expires: _____

GPASSA2.doc

34

GPA-03038

**Exhibit A**

## EXHIBIT P: PHCS FEES

**INITIAL FEE:** ....................................................................... ███

| | **MONTHLY RATE PER COVERED EMPLOYEE** |
|---|---|
| **SERVICE FEES: A/** | |

**PPO SERVICES: B/**

Physician, Hospital, and Ancillary PPO Services.............................. ███

**CENTERS OF EXCELLENCE:**

Centers of Excellence.......................................................... ███

A/ The Services may only be utilized in accordance with the conditions and prerequisites set forth in Exhibit N.

B/ Subscriber is required to maintain a minimum number of 15,000 Covered Members enrolled in PHCS Services. If enrollment fails to reach the 15,000 member level by October 1, 1998, the Monthly Fees owed by Subscriber to PHCS as set forth in Article IV and this Exhibit P of this Agreement will be calculated using the minimum number of 15,000 Covered Members, at ███ per Covered Member per month, notwithstanding Subscriber's failure to maintain that minimum level of Covered Members (i.e. in the event only 10,000 Covered Members are enrolled in month X, Subscriber shall owe PHCS ████████ for month X. In the event that Subscriber fails to reach the 15,000 member level by October 1, 1998, Subscriber shall pay to PHCS, the shortfall as if enrollment was at the 15,000 level from July 1, 1998.

GPA-03039

**Exhibit A**

## AMENDMENT, ASSIGNMENT, AND ASSUMPTION OF THE SUBSCRIBER SERVICES AGREEMENT

This amendment, assignment, and assumption (the "Amendment"), which is effective as of the dates set forth below is entered into by and among **PRIVATE HEALTHCARE SYSTEMS, INC.**, a Delaware corporation, located at 1100 Winter Street, Waltham, MA 02451 ("PHCS"), **GROUP AND PENSION ADMINISTRATORS, INC.**, a Texas corporation, located at 300 Municipal Drive, Richardson, TX 75080 (the "G&P Administrators") *and* **GPA HOLDING, INC.**, ("GPA Holding") a corporation, located at _____ (G&P Administrators and GPA Holding shall be collectively referred to herein as "Subscriber" or "Subscribers") and hereby modifies the Subscriber Services Agreement between PHCS and G&P Administrators dated January 1, 1998, including Attachments, Appendices, and previous amendments incorporated therein (the "Agreement"). All terms of this Amendment shall have the meaning ascribed to them in the Agreement unless otherwise defined herein.

**WHEREAS**, G&P Administrators and PHCS wish to amend the Agreement to change the payment terms; and

**WHEREAS**, G&P Administrators wishes to have the Agreement assigned to GPA Holding; and

**WHEREAS**, GPA Holding wishes to assume the duties and obligations under the Agreement; and

**WHEREAS**, PHCS consents to this assignment and assumption.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. As of September 1, 2002, the Agreement is amended as follows:

   (a)   Delete Section 1.17 in its entirety and replace it with the following new Section 1.17:

   1.17 "Repricing Services" shall mean the services described in Exhibit R of this Agreement, but shall not include claims adjudication or claims payment.

   (b)   Delete Section 1.18 in its entirety and replace it with the following new Section 1.18:

   1.18 "Repricing Services Fee" shall have the meaning set forth on Exhibit P of this Agreement.

**Confidential
PHCS0047**

**Exhibit B**

(c)   Delete Section 1.19 in its entirety and replace it with the following new Section 1.19:

1.19 Self Reported Enrollment Fees" shall mean the fees described on Exhibit P to this Agreement.

(d)   Delete Section 1.25 in its entirety and replace it with the following new Section 1.25

1.25   "Self Reported Claims Fees" shall mean the fees described on Exhibit P to this Agreement.

(e)   Delete Section 1.27 in its entirety and replace it with the following new Section 1.27

1.27   "Billed Fees" shall mean the fees described on Exhibit P to this Agreement.

(f)   Delete Section 2.2(c) in its entirety and replace it with the following:

2.2(c)   Subscriber hereby grants to PHCS a power of attorney (the "Power of Attorney"), as set forth in Exhibit O hereto, to act in its name and on its behalf with respect to any and all contracts with Participating Providers regarding the Services. In connection therewith, Subscriber understands and acknowledges that:

(i)   the addition of Subscriber to the PHCS provider contracts pursuant to the Power of Attorney is solely an administrative matter required in order to permit Subscriber and its customers access to the PHCS Provider Network;

(ii)   the addition of Subscriber to the PHCS provider contracts pursuant to the Power of Attorney is not intended to grant Subscriber any ownership interest in the PHCS Provider Network or in the contracts with Participating Providers

(iii)   PHCS is undertaking a recontracting effort to eliminate payors from the contracts with Participating Providers and adding PHCS to those contracts as the network administrator. This recontracting effort includes drafting new form agreements to be used to (i) recontract with existing Participating Providers in the PHCS network and (ii) contract with Providers who are not in the PHCS network (the "Recontracting Effort"). At the time of the Recontracting Effort and upon written notice to Subscriber, Subscriber agrees to allow PHCS to remove it as a party to those contracts with Participating Providers and to take all other steps PHCS deems reasonably necessary to effectuate the termination of Subscriber as a party to those contracts at the time PHCS is added as a party to serve as the network administrator. In order for PHCS to commence the

2

Confidential
PHCS0048

Exhibit B

Recontracting Effort and to contract with Providers and recontract with Participating Providers, Subscriber agrees to the terms and conditions set forth in the Subscriber Acknowledgement on Exhibit B to this Agreement and shall execute the Subscriber Acknowledgement simultaneously with the execution of this Agreement.

(g)    Add the following to Section 2.4:

In the event Subscriber wishes to terminate a Service under this Agreement, the Subscriber may do so (provided, however, that the Subscriber is receiving other Services from PHCS) by submitting written notification to PHCS at least ninety (90) days prior to the effective date of the termination date of that Service. In the event Subscriber wishes to terminate all Services being provided to it by PHCS, Subscriber shall do so pursuant to Article III of this Agreement.

(h)    Delete Section 3.5 in its entirety and replace it with the following new Section

3.5    Effect of Termination. All obligations of the parties under this Agreement shall terminate on the Termination Date, except for the obligations specified in or created by Article IV (with respect to previously accrued fees and retroactive adjustments to fees), Article VI, Article VIII and Exhibit P. Further, each of the contracts entered into by PHCS with Participating Providers on behalf of Subscriber shall terminate on the Termination Date. PHCS shall take all steps it deems reasonably necessary to effectuate the termination of any and all such Participating Provider contracts.

(i)    Delete Article IV: Fees & Terms of Payment in its entirety and replace it with the following new Article IV: Fees & Terms of Payment:

## ARTICLE IV: FEES & TERMS OF PAYMENT

Subscriber shall pay PHCS for the Services purchased hereunder in accordance with the terms and conditions set forth on Exhibit P of this Agreement.

(j)    Delete Exhibit B, Centers of Excellence in its entirety and replace with the attached, new Exhibit B, Subscriber Acknowledgement.

(k)    Delete Exhibit E, Description of Markets and replace it with the following new Exhibit E, Description of Markets.

(l)    Delete Exhibit P, PHCS Fees in its entirety and replace it with the attached, new Exhibit P, PHCS Fees.

(m)    Add the attached Exhibit R, Repricing Services.

3

Confidential
PHCS0049

**Exhibit B**

2.     As of January 1, 2003: (a) PHCS agrees to the assignment of the Agreement to GPA Holding; (b) G&P Administrators agrees to assign the Agreement to GPA Holding; and (c) GPA Holding agrees to assume all obligations, duties and rights under the Agreement, including its obligations to sign and deliver a Limited Power of Attorney and Subscriber Acknowledgement pursuant to Section 2.2(c) of this Agreement.

3.     This Amendment may be executed in one or more counterparts; each counterpart shall be deemed an original.

4.     PHCS, G&P Administrators and GPA Holding each ratify and confirm the terms and conditions of the Agreement as modified herein, and each confirm that the terms and conditions of the Agreement as modified herein shall remain in full force and effect. All other provisions of the Agreement are not amended by the foregoing remain valid and effective.

5.     In the event of a conflict between the terms of the Agreement and this Amendment, this Amendment shall control.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed as of the date first referenced above.

**G&P Administrators:**
**Group and Pension Administrators, Inc.**

By: _Kathy Enoch_

Name: _____
Title: _____

**PHCS:**
**Private Healthcare Systems, Inc.**

By: _____
Name: Joseph R. Driscoll
Title:   President and CBO

**GPA Holding (now known as Subscriber):**
**GPA Holding, Inc.**
By: _Kathy Enoch_
Name: _____
Title: _____

4

Confidential
PHCS0050

**Exhibit B**

## EXHIBIT B: SUBSCRIBER ACKNOWLEDGEMENT

## SUBSCRIBER ACKNOWLEDGEMENT

The undersigned (the "Subscriber") hereby acknowledges the following obligations, effective as of January 1, 2003, as provided in the Subscriber Services Agreement between Subscriber and Private Healthcare Systems, Inc. ("PHCS"):

### RECITALS:

A.   Subscriber and PHCS are parties to a subscriber services agreement under which PHCS will provide to Subscriber certain provider network services, including credentialing, recredentialing and quality assurance services, and/or comprehensive medical management services, including utilization review, quality assurance, case management and other cost containment related services, (the "Services") in certain markets throughout the United States (the "Services Agreement").

B.   PHCS has entered into to contracts with health care providers for participation in the PHCS provider network ("PHCS Preferred Providers") at certain reimbursement rates for health care services provided to Subscriber's Covered Employees pursuant to certain PHCS preferred provider agreements (the "PHCS Preferred Provider Agreement").

C.   All terms in this Subscriber Acknowledgement shall have the meaning ascribed to them in the Services Agreement unless otherwise defined in this Subscriber Acknowledgement or the PHCS Preferred Provider Agreement, copies of which such form PHCS Preferred Provider Agreements have or will be provided to the Subscriber.

In order to purchase the provider network Services offered by PHCS, Subscriber hereby acknowledges the following:

1.1   Licenses, Registrations and Certifications.  Subscriber will comply with all laws and regulations governing its performance under the Services Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations and certifications necessary for that purpose.

1.2   Payment health care services.  Subscriber agrees to pay or arrange to pay PHCS Preferred Providers in accordance with the PHCS Preferred Provider Agreement for such Preferred Provider, for the markets and the networks for which Subscriber has purchased provider network Services from PHCS.

1.3   Marketing. Subscriber will make available and promote Healthcare Plans which provide direction and redirection to Preferred Providers, to the extent that it is lawful to do so. Such direction and redirection may occur through, but is not limited to, greater plan benefits or directory listings. Subscriber will make available to Covered Employees the name, address and telephone number of PHCS Preferred Providers.

5

**Confidential**
**PHCS0051**

**Exhibit B**

1.4   <u>Identification and Eligibility.</u> Subscriber will furnish Covered Employees with a means of identifying themselves as covered under a HealthCare Plan for the provision of the health care services through a PHCS provider network. Such methods of identification may include, but is not limited to, (i) identification cards, (ii) affixing the PHCS logo to identification cards, or (iii) a PHCS phone number identifier. In addition, Subscriber will use its best efforts to provide the most current eligibility information available on the day of inquiry for those Covered Employees for whom Subscriber maintains eligibility information.

1.5   <u>Copying of Medical and Billing Records.</u> If Subscriber requests copies of medical and billing records from a Preferred Provider for purposes other than the reconsideration of payment to such Preferred Provider, Subscriber agrees to reimburse the Preferred Provider for such copies according to the rates specified in the Preferred Provider Agreement between PHCS and such Preferred Provider.

1.6   <u>Third Party Beneficiaries.</u> Nothing contained in this Agreement will be construed to make PHCS or Subscriber, and their respective directors, officers, employees, agents and representatives liable to persons or entities not parties hereto in situations in which they would not otherwise be subject to liability, provided however, that PHCS and Subscriber agree that Preferred Provider(s) are third party beneficiaries to this Agreement. Except as provided in the preceding sentence, nothing contained herein will be construed as, or be deemed to create, any rights or remedies in any party other than PHCS or Subscriber.

1.7   <u>Inappropriate Access of the Preferred Payment Rates.</u> Subscriber agrees that the Preferred Payment Rates agreed to in the PHCS Preferred Provider Agreement between PHCS and the Preferred Provider are applicable solely for Covered Care rendered to Covered Employees covered under a Healthcare Plan which utilizes the PHCS provider network. In the event that a Preferred Provider believes Subscriber is, or may be, accessing the Preferred Payment Rates set forth in the Preferred Provider Agreement inappropriately (e.g., to non-eligible individuals), the Preferred Provider shall notify Subscriber immediately in writing. Upon receipt of such notice, PHCS will work in cooperation with the Preferred Provider and Subscriber to determine whether Subscriber appropriately accessed the Preferred Payment Rates for a Covered Employee covered under a Healthcare Plan which utilizes the PHCS provider network. In the event that PHCS finds that Subscriber intentionally and inappropriately accessed the Preferred Payment Rates agreed to in the Preferred Provider Agreement, Subscriber (i) will reimburse the Preferred Provider for the difference between the Preferred Payment Rate and the Provider's regular billing rates, and/or (ii) allow PHCS to terminate or limit the Subscriber's access to the applicable Preferred Provider's Preferred Provider Agreement.

SUBSCRIBER:
GPA Holding, Inc.

By: _Kathy Enochs_

Name: _____

Title: _____

6

Confidential
PHCS0052

**Exhibit B**

## EXHIBIT E:  DESCRIPTION OF MARKETS

Subscriber will receive the Network Services provided under this Agreement in the following Markets on the following effective dates:



| PHCS DEFINED MARKET | ABBREV | PPO | NETWORK SERVICES SELECTED | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Open Access | Healthy Directions | Access Advantage | National Advantage |

7

Confidential
PHCS0053

Exhibit B



| PHCS DEFINED MARKET | ABBREV. | PFO | NETWORK SERVICES SELECTED | | | |
|---|---|---|---|---|---|---|
| | | | Open Access | Healthy Directions | Access Advantage | National Advantage |

8

Confidential
PHCS0054

**Exhibit B**



9

Confidential
PHCS0055

**Exhibit B**

## EXHIBIT P:  PHCS FEES

**A.   Services, Fees and Fee Adjustments.**

1.   Subscriber shall purchase the Services set forth below and shall pay PHCS for those Services in accordance with the terms, fees and conditions set forth in the Services and Pricing Table below.

2.   The fees outlined in the Services and Pricing Table below and any other applicable fees may be adjusted at any time during any Successive Term; provided, that (a) PHCS notifies the Subscriber no later 90 days immediately preceding the adjustment date of any proposed adjustment to the fees; and (b) fees are not adjusted more than once in any Successive Term. If the fee adjustment in any Successive Term is not acceptable to the Subscriber, the Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement, but in any case Subscriber shall pay the adjusted fees from the effective date of the adjustment until the Termination Date.

SERVICES AND PRICING TABLE effective July 1, 2002 – June 30, 2003

| Service | Price Unit | Fee Basis | Payment Due Date | Fee | Annual Subscriber Amounts (in years) | | |
|---|---|---|---|---|---|---|---|
| | | | | | Year 1 | Year 2 | Year 3 |
| PPO Services | Each Covered Employee | Self-Reported By Subscriber | 5th day of month following the month in which fees were incurred. | ░░ | ███████ | | |
| Healthy Direction Services | Total Claims Savings | Self-Reported By Subscriber | 15th day of the month following the month in which fees were incurred | ██ | ░░░░ | ░░░ | ░░░ |

**Confidential**
**PHCS0056**

**Exhibit B**

SERVICES AND PRICING TABLE effective as of July 1, 2003

| | | | | | | |
|---|---|---|---|---|---|---|
| **PPO Services** | Each Covered Employee | Self-Reported By Subscriber | 5th day of month following the month in which fees were incurred. | | | |
| **Healthy Direction Services** | Total Claims Savings | Self-Reported By Subscriber | 15th day of the month following the month in which fees were incurred | | | |
| **Repricing Services –EDI Option A** | Each Covered Employee | Self-Reported By Subscriber | 5th day of month following the month in which fees were incurred | | | |

**B.   Payment Terms.**

1.   Payments are due on or before the due date indicated next to each Service in the Services and Pricing Table herein. A late payment fee of ▉▉▉ will be assessed on a monthly basis for all overdue balances.  In addition, in the event fees are not paid when due, PHCS may terminate: (a) this Agreement with notice and after 30 days of the payment due date; and/or (b) sales and customer support services, including, but not limited to, access reports, savings and disruption analyses, RFP support and telephonic customer service.

2.   All payments must be submitted to PHCS using either method to the following addresses:

**Wire/ACH:**                                    **Checks:**
Fleet National Bank                       Private Healthcare Systems, Inc.
100 Federal St.                               P.O. Box D-3232
Boston, MA  02110                       Boston, MA  02241-3232
Account #: 0051021478               Attn: Accounting
ABA #: 011000138

Each payment shall reference Subscriber's assigned account number or remittance ID as well as the applicable enrollment month.

**C.   Calculation of Fees:**

1.   Billed Fees:  For each calendar month during the Initial Term and any Successive Term, PHCS shall calculate and bill the Subscriber an amount equal to the number of billing units for each billed Service multiplied by the price for that service as outlined in the Services and Pricing Table.

11

**Confidential**
**PHCS0057**

**Exhibit B**

2.  Self-Reported Enrollment Fees: For each calendar month during the Initial Term and any Successive Term and for each Service purchased as set forth in the Service and Pricing Table herein with a bill type of "self-reported", the Subscriber shall calculate and pay to PHCS a self reported enrollment fee ("Self Reported Enrollment Fees"). Subscriber shall calculate such Self Reported Enrollment Fees on the basis of: (a) the number of Covered Employees eligible to receive each of the Services provided pursuant to this Agreement **as of the first day of the month**, multiplied by (b) the rate for that particular Service as set forth in the Service and Pricing Table.

 (a)   The price tier to be used in calculating the Self Reported Enrollment Fee shall be determined based on the total enrollment of Covered Employees receiving the Service **as of the first day of the month**. However, the benefit of tiered pricing will not be in effect (i.e. the **highest** price for Service will apply) if Subscriber does not report all enrollment in one (1) detailed payment backup report and one (1) summary payment backup report ("Payment Report") provided to the Subscriber during the implementation process or if Subscriber pays Self Reported Enrollment Fees with more than one check or wire transfer for each month's enrollment payment.

 (b)   In the event that Subscriber cannot calculate the actual number of Covered Employees for any calendar month, Subscriber shall estimate that month's Covered Employee enrollment based upon the Subscriber's prior month's Covered Employee enrollment.

 (c)   In no event shall Subscriber withhold payment of the Self Reported Enrollment Fees due to the failure of Subscriber's Plan Sponsors to pay Subscriber for their enrollment and services provided by Subscriber.

3.  Self-Reported Claims Savings Fees: For each service in the Service and Pricing Table with a billing type of Self Reported and a billing unit of Total Claims Savings, as defined below, Subscriber shall calculate the monthly fee ("Self-Reported Claims Savings Fees"), which shall be based on the total of all savings generated in the current month. The savings will be determined by subtracting the total of all PHCS Negotiated Rates with Participating Providers, as defined below, for all claims processed in the current month from the total of all Covered Charges of Participating Providers for all claims processed in the current month ("Total Claims Savings").

 (i)  PHCS Negotiated Rates are those rates agreed to by the Participating Providers in the PHCS Preferred Provider Agreements.

4.  Retroactive Adjustments. Subscriber is required to report retroactive changes to previously reported enrollment and/or paid fees. Any fees payable hereunder shall be adjusted accordingly to reflect such retroactive changes. However, if such retroactive changes result in a reduction to previously paid fees, such changes must be reported within six (6) months following the month for which such adjustment is being requested and in no event shall such adjustment be made any later than February 15 for the previous calendar year in order to receive a credit against said fees.

12

**Confidential
PHCS0058**

**Exhibit B**

(a)   Retroactive increases or decreases to previously paid fees will be calculated using the price paid in the enrollment and/or service month being adjusted.

(b)   In no event will retroactive adjustments be factored into the determination of the pricing tier to be used for a particular payment.

(c)   Nothing contained in this Section will limit the ability of PHCS to obtain retroactive adjustments to any fees contained in this Agreement should any audit conducted by PHCS or its designee, reveal discrepancies in the enrollment data or other information by which such fees contained in this Agreement were calculated.

**D.   Payment Support & Enrollment Reporting:**  Each month the Subscriber shall provide to PHCS, on or before the due date of its payment, a Payment Report via electronic media and in the format prescribed by PHCS.  The Payment Report shall consist of a (1) summary payment backup report; and (2) detailed payment backup report

1.    The summary payment backup report shall indicate for each Service and each enrollment month being paid or adjusted including:

   (a)   the enrollment month,
   (b)   the total number of billing units (Covered Employees or total claims savings),
   (c)   the price being paid,
   (d)   the total amount due

2.    The detail payment backup report shall indicate, for each self reported service fee the following:

   (a)   for each Service and for each Plan Sponsor in each Service with a billing unit of Covered Employee, the number of Covered Employees as of the first of the month subtotaled by the first 3 digits of the zip code where each Covered Employee is located;
   (b)   if applicable, the termination date for each Plan Sponsor that has terminated its relationship with Subscriber during the current month;
   (c)   the total amount of claims savings as calculated pursuant to Section 3(e) of this Exhibit; and
   (d)   other data which PHCS may reasonably require to provide Services under this Agreement.

**E.   Enrollment Expectations:**

1. Subscriber is expected to enroll and maintain a minimum number of 15,000 Covered Employees in PHCS PPO Services by January 1, 2002 and thereafter.

2.  As stated in Section 3.3 of this Agreement, if Subscriber fails to enroll and maintain 15,000 Covered Employees during this time period PHCS may immediately and without notice terminate this Agreement.

13

Confidential
PHCS0059

**Exhibit B**

**EXAMPLES**

*The fees provided in the examples below are for purposes of example only:

**Example – Retroactive Adjustments**

If Subscribers initially reports PPO enrollment of 15,010 for October of 2002, the Self Reported Enrollment Fee for May will be calculated using the per Covered Employees rate of ███ for PPO Services . If, in November of 2002, Subscriber reports a decrease in enrollment of 100 for October, the reduction in the Self Reported Enrollment Fee for October will be calculated as 100 x ███ notwithstanding the fact that total enrollment for October might otherwise produce a *higher* Self Reported Enrollment Fee. By way of further example, if Subscriber initially reports PPO enrollment of 14,950 for November of 2002, the Self Reported Enrollment Fee for November will be calculated using the per Covered Employees rate of ███ for PPO Services. If, in December of 2002, Subscriber reports an increase in enrollment of 75, the increase in the Self Reported Enrollment Fee due November will be calculated as 75 x ███ notwithstanding the fact that total enrollment for November might otherwise produce a *lower* Self Reported Enrollment Fee.

**Example – Tiered Pricing**

If Subscriber were to enroll 16,000 Covered Employees in the PPO Services, Subscriber would pay ███ per Covered Employees per month for the PPO Services for all 16,000 Covered Employees. By way of further example, if the number of Covered Employees were to decline to 13,000, Subscriber would pay ███ per Covered Employees per month for the PPO Services for all 13,000 Covered Employees. If, however, that same 16,000 Covered Employees were reported in two separate reports or was paid by two separate checks, the price for all 16,000 Covered employees would be ███ (the **highest** price).

The amount of the Self Reported Enrollment Fee shall be calculated monthly based upon the totals reported in the summary and detailed payment backup reports submitted by Subscriber pursuant to this Exhibit. In the event that Subscriber submit more than one summary and one detailed payment backup report for any given month, the number of Covered Employees contained on the individual reports will **not** be combined when calculating the Self Reported Enrollment Fee due to PHCS and the fee for all enrollment will be calculated using the lowest tier of 1- 14,999 (the **highest** price).

14

Confidential
PHCS0060

**Exhibit B**

## Example — % Savings

### FEE CALCULATION:

| Total Billed Charges | - | Non-Covered Services | = | Total "Covered" Services |
|---|---|---|---|---|
| Total "Covered" Services | - | PHCS Negotiated Rate | = | Total Claims Savings |
| Subscriber Price ▮ | x | Total Claims Savings | = | Amount Owed to PHCS by Subscriber |

### EXAMPLE OF FEE CALCULATION:

Example: Cardiac Surgery, 10 day L.O.S..

Total Billed Charges
Non-Covered Services
Total Covered Services
PHCS Negotiated Rate
**Total Claims Savings**
Subscriber Price

**Amount Due PHCS**



15

**Confidential
PHCS0061**

**Exhibit B**

### EXHIBIT O: POWER OF ATTORNEY

### LIMITED POWER OF ATTORNEY

The undersigned (the "Company") hereby appoints and authorizes Private Healthcare Systems, Inc. ("PHCS"), a Delaware corporation, to be its agent and attorney-in-fact, for the limited purpose of making, executing, terminating, acknowledging and delivering, in the Company's name, place and stead, those preferred provider and other PHCS network agreements, including, but not limited to, physician individual and group agreements, hospital/facility agreements and ancillary/vendor services and case management agreements (the "Agreements"), with health care providers selected by PHCS (the "Participating Providers"), as are the then standard forms of such agreements in use by PHCS at the time the agreements are signed. The Company hereby further authorizes PHCS to execute, on the Company's behalf and without the prior approval of the Company, any amendments to such Agreements. Each Agreement, when executed and delivered by PHCS and Participating Provider, shall be binding upon and inure to the benefit of such Participating Provider and Company as if individually executed by Participating Provider and Company. New Exhibits may be added hereto and incorporated herein by reference only with the prior oral or written consent of the Company.

Third parties may rely upon the actions of said attorney-in-fact as to all matters relating to the power granted by this Power of Attorney, and no person who may act in reliance upon the actions of said attorney-in-fact shall incur any liability to the undersigned as a result of permitting said attorney-in-fact to exercise such judgment.

This Limited Power of Attorney will supersede any prior written Limited Power of Attorney between the parties with respect to the terms and provisions contained herein. The Company hereby authorizes PHCS to terminate each of the Agreements upon termination by either Company or PHCS of a subscriber services agreement between the Company and PHCS (the "Subscriber Services Agreement") and this Limited Power of Attorney shall be revoked upon the last termination of the last of the Agreements. This Limited Power of Attorney may be revoked by written notice from Company to PHCS, but such revocation shall not be effective against any third party unless such third party shall have received actual notice of such revocation and as to Participating Providers. This Limited Power of Attorney shall be immediately revoked upon termination by PHCS of the last of the Agreements following the effective date of termination or expiration of the Subscriber Services Agreement. This power is granted solely to PHCS acting through its authorized employees, and PHCS shall have no power of substitution with respect thereto.

IN WITNESS WHEREOF, this Power of Attorney has been executed by GPA Holding Inc. and is effective as to GPA Holding Inc. as of the first day of January, 2003.

By: _Kathy Enochs_

Name: _Kathy Enochs_

Title: **Chief Operating Officer**

STATE OF _TEXAS_ )
COUNTY OF _Dallas_ )

On this _2ᵈ_ day of _October_, 2003, before me personally appeared _Kathy Enochs_, to me known and known to me to be the person identified above who executed the foregoing Power of Attorney and, being by me first duly sworn, duly acknowledged to me that he executed the same. Witness my hand and official seal.

_Cathy L. English_

Notary Public

My Commission Expires: _3-30-05_

16

CATHY L. ENGLISH
Notary Public, State of Texas
My Commission Expires
March 30, 2005

**Confidential
PHCS0062**

**Exhibit B**

**EXHIBIT R: REPRICING SERVICES**

I. **DEFINITIONS.** The following terms are defined for purposes of this Exhibit:

  **A. EXCEPTIONS.** Any claim that cannot be auto-priced by the e-price system.

  **B. PENDED CLAIMS.** Any Exception that must be processed by PHCS. These Exceptions include, but are not limited to, claims that cannot auto-price because the provider address missing, the fee schedule missing, or if it is a hospital claim that requires manual calculations.

II. **REPRICING SERVICES MODELS.** Subscriber may chose to purchase Repricing Services using only one of the three models noted below.

  **A. E-price Options.**

    1. **Direct (EDI).** Under this model, the Subscriber inputs claims data necessary to reprice claims into a standard electronic file, as prescribed by PHCS. The Subscriber submits the file directly to PHCS using an Electronic Data Interface ("EDI"). The PHCS e-price system reprices the claims and sends the repriced claims back to the Subscriber using an EDI. Pended Claims must be processed by PHCS. Exceptions, except for Pended claims, can either be processed by PHCS, or can be sent back to the Subscriber for the necessary adjustments.

      &bull; OPTION A. Under this option, the Pended Claims will be processed by PHCS, and all other Exceptions will be processed by the Subscriber.

      &bull; OPTION B. Under this option, all Exceptions will be processed by PHCS.

    2. **Online (Remote).** Under this model, the Subscriber will have direct access to the e-price system via the Internet. Subscriber will enter claim data into the remote desktop for repricing. The e-price system will reprice the claims automatically for the Subscriber. Pended Claims must be processed by PHCS. PHCS will send repriced Pended Claims back to the Subscriber via the Internet. To become a Remote User, Subscriber must be approved by the PHCS's repricing vendor (hereinafter the "Vendor"). PHCS shall have no responsibility for the Subscriber's Internet connectivity.

  **B. Standard Repricing Option.**

17

**Confidential**
**PHCS0063**

**Exhibit B**

**Classic**.  Under this model, the Subscriber submits all claims data necessary to reprice claims directly to PHCS in a standard paper claim format, as specified by PHCS.  PHCS will enter the claim into the e-price system, reprice the claim for the Subscriber, and then send the repriced claim back to the Subscriber in either a standard paper or EDI form.  All Exceptions must be processed by PHCS.

III.   **REPRICING SERVICES COMPONENTS**

A.   **Implementation Services**.

1.   Depending upon the Repricing Services purchased by the Subscriber, PHCS may organize a project team consisting of representatives from PHCS, Vendor and Subscriber will assist the Subscriber in testing and providing advice on equipment issues, software and staff training.

2.   The Subscriber will not be charged an additional fee for the implementation services, unless Subscriber requires Customization Services (as described below in Section 3).

B.   **Support Services**.  PHCS shall provide support services to the Subscriber in connection with the Repricing Services as follows:

1.   Help Desk Access.   Help Desk Services are available to Subscribers purchasing the Direct or Remote e-pricing options, or for Subscribers purchasing the Classic model with claims information transmitted from PHCS via EDI.  PHCS will provide the Subscriber with telephone access to a team who will be available to assist the Subscriber with technical issues including, but not limited to, system access and software functionality questions.

2.   Claim Support.  Claims support services will be provided to Subscriber for any of the repricing models described above.   PHCS will provide the Subscriber with telephone access to a team member who will be available to assist the Subscriber with questions relating to claim processing or business rule issues.  Please note that this support does not include assistance with the resolution of eligibility and/or benefits issues.

C.   **Customization Services**.  PHCS may be required to develop file formats or perform custom system modifications ("Customization Services") in order to provide the Subscriber with Repricing Services.   In the event that the Subscriber requires Customization Services, the Subscriber will be responsible for paying an additional fee for these services.   PHCS will work with the Vendor in determining the amount of

18

**Confidential**
**PHCS0064**

**Exhibit B**

customization required, and establishing a fee for the Customization Services. PHCS will provide the Subscriber with an invoice for any Customization Services Fees.

## IV.   REPRICING SERVICES GENERAL PROVISIONS

A.   **Fees.**   The Subscriber will pay the fees specified in Exhibit P for the Repricing Services.   The pricing noted on Exhibit P includes the applicable charge to process Exceptions and Pended Claims within the claims option purchased by the Subscriber.   In the event that the Subscriber is purchasing the Repricing Services on a per claim basis, the Subscriber shall be charged a per claim fee each time that a claim is submitted, including duplicates, adjustments and resubmitted claims.   The Subscriber shall not be charged a per claim fee for Exceptions until the repricing process is complete.

B.   **Duties of the Subscriber with regard to Repricing Services.** The Subscriber shall submit client identification and applicable product information as required by PHCS to perform the Repricing Services.   In addition, the Subscriber must submit all information that is required to reprice a claim under the model that is purchased by the Subscriber.

C.   **Termination, Reduction and Modifications of Repricing Services.**

1.   The Repricing Services may be terminated by Subscriber in accordance with Section 2.4 of this Agreement.

2.   The Repricing Services may be added to, modified, rescinded, deleted or changed by PHCS in accordance with Section 2.2 of the Agreement.

3.   Upon the Termination Date of the Agreement, PHCS will continue to provide Repricing Services, under the Repricing Services model that the Subscriber is purchasing at the time of termination, for a period of 12 months for claims with service dates prior to termination.   In the event that the Subscriber is not purchasing the Repricing Services on a per claim basis, PHCS will establish a per claim fee that the Subscriber will pay to PHCS for this 12 month period. In the event that the Subscriber is not purchasing Repricing Services as of the Termination Date, but requests that PHCS provide Repricing Services during the period following the Termination Date, PHCS will establish a per claim fee that the Subscriber will pay to PHCS for this 12 month period.

19

**Confidential**
**PHCS0065**

**Exhibit B**

## HOSPITAL SERVICES AGREEMENT - PPO

This Hospital Services Agreement ("Agreement"), effective January 1, 2002 (the "Effective Date"), is entered into by and among the hospitals and related health care facilities of the Baylor Health Care System, executing this Agreement (each a "Hospital") and Private Healthcare Systems, Inc. ("PHCS"), for Hospital to provide health care services and supplies to be provided to Members on the terms and conditions herein. Hospital and PHCS are referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

WHEREAS, Hospital is a corporation licensed and operating in accordance with Texas and federal laws and is engaged in the business of providing hospital and related health care services, and wishes to provide Covered Services to Members; and

WHEREAS, PHCS desires to contract with Preferred Providers to allow Members access to appropriate health care services;

NOW, THEREFORE, in consideration of their mutual promises and obligations, the Parties agree as follows:

### Article I. Definitions

"*Business Days*" means a weekday other than a Saturday or Sunday or other day on which commercial banks in Dallas, Texas are authorized or required to remain closed.

"*Clean Claim*" means a claim that is submitted on a UB92 form (or its successor) and accurately contains all the following information: patient name, patient's date of birth, Member identification number, Hospital's name, address and tax ID number, date(s) of service or purchase, diagnosis narrative or ICD-9 code, procedure narrative or CPT-4 code, services and supplies provided, physician's name and license number, the Hospital's charges and any other attachments or information mutually agreed upon in writing by the Parties.

"*Copayment*", "*Coinsurance*" or "*Deductible*" means payments that a Member is required to make to Hospital in accordance with the applicable Health Plan.

"*Covered Services*" means care, treatment, services and supplies for which a benefit is payable under the applicable Health Plan.

"*Emergency Care*" means the health care services provided in a hospital emergency facility or a comparable facility to evaluate and stabilize medical conditions of a recent onset of severity, including but not limited to severe pain, that would lead a prudent lay person possessing an average knowledge of medicine and health to believe that the person's condition, sickness, or injury is of such a nature that failure to get immediate medical care could result in: (a) placing the patient's health in serious jeopardy; (b) serious impairment to bodily functions; (c) serious dysfunction of any bodily organ or part; (d) serious disfigurement; or (e) in the case of a pregnant woman, serious jeopardy to the health of the fetus.

**Confidential**
**PHCS0068**

Exhibit C

*"Health Plans"* means certain group or individual health insurance policies issued by Payor and certain self-funded or self-insured health benefit plans or trusts that include Direction (as defined in Section 2.3) to Preferred Providers for which PHCS provides or arranges for administrative services, including a network of Preferred Providers for Members.

*"Member"* means an eligible individual and/or any eligible dependents enrolled and entitled to Covered Services under the Health Plan.

*"Normal Billed Charges"* means Hospital's usual charges for health care services and supplies which are normally charged by Hospital to other persons regardless of whether the person is a Member.

*"Preferred Provider"* means a licensed facility or licensed, registered, or certified health care professional that agrees to provide health care services to Members and has been selected by PHCS for participation in the PHCS provider network. Preferred Providers may be referred to in this Agreement and in the administrative handbook(s) individually as "Preferred Facility" and "Preferred Professional" respectively.

*"Payor Acknowledgment"* means a written contract between a Payor and PHCS whereby PHCS arranges for the provision of a network of Preferred Providers which will provide Covered Services under such Payor's Health Plan, and the Payor agrees to abide by the terms of such arrangements.

*"Payors"* means an insurance company, employer health plans, Taft-Hartley fund, plan sponsors or other similarly situated entities or organizations which are obligated (directly or through its designee) to pay for Covered Services for Members in accordance with such Health Plans.

*"PHCS Affiliate(s)"* means the following entities, or any subsidiary or successor corporation: Central States, Southeast and Southwest Areas Health and Welfare Fund; Connecticut General Life Insurance Company; First Allmerica Financial Life Insurance Company; Fortis, Inc.; GE Group Administrators, Inc., GE Group Life Assurance Company; General American Life Insurance Company; The Guardian Life Insurance Company of America; New England Life Insurance Company; Pacific Life & Annuity Company; and Trustmark Insurance Company. PHCS may amend this list of PHCS Affiliates upon at least thirty (30) days' prior written notice to Hospital.

*"Preferred Payment Rates"* means the rates paid to Hospital for Covered Services, as set forth in Schedule 1.

*"Utilization Management Program"* means the programs, procedures and standards established by PHCS or by or on behalf of Payor under which the utilization of care, treatment or supplies may be evaluated against clinical criteria for medical necessity, appropriateness and efficiency under the terms of a Health Plan.

Confidential
PHCS0069

Exhibit C

### Article II.  Obligations/Representations of
### PHCS and/or Payors

2.1  *Identification Cards/Eligibility*.  PHCS shall require Payors to provide Members with a means of identifying themselves to Hospital as covered under a Health Plan for the provision of health care services through a PHCS provider network.  Unless otherwise agreed to by PHCS and Hospital, such methods of identification shall include, but are not limited to, identification cards indicating the name and/or logo of PHCS, the name of the policyowner or employee who is a Member, the name of the Health Plan and/or Covered Group, the Payor's name, a toll-free telephone number for general information regarding benefits under a Health Plan, verification of eligibility information, an address to send claims for Covered Services, and any other necessary information, including information necessary to obtain precertification.  Except when Emergency Care is provided, the presentation of an identification card may be required by Hospital as a pre-condition to its providing Covered Services.  Hospital acknowledges that it will accept the Preferred Payment Rates in Emergency Care situations even though the Member did not present his or her identification card beforehand.  PHCS will require each Payor to provide the most current eligibility information available on the day of inquiry for that Payor's Members. Payor shall provide verification of eligibility of particular Members and pre-certification or authorization of Covered Services upon request of Hospital. PHCS shall use best efforts to work with Payor to respond to requests for verification of eligibility or pre-certification of Covered Services within twenty-four (24) hours of Hospital's request. Payor shall notify Hospital in writing of its determination of the request for pre-certification within two (2) Business Days of the request; provided that notifications of adverse determinations, including denials of a request for pre-certification, shall be made within the time period prescribed by the Texas Department of Insurance.  Failure to respond within this time period will be deemed an automatic grant of pre-certification of the Covered Services and Payor shall be responsible for payment for such services. It is within the sole discretion of Payor to determine the eligibility of a Member and whether a service is a Covered Service under the applicable Health Plan. However, if Hospital follows Payor's procedure for verification of eligibility or pre-certification or authorization of coverage, provides Covered Services in reliance on such verification or authorization and provides to PHCS and/or Payor evidence documenting the verification of eligibility or authorization of coverage from Payor, Payor shall not retroactively deny, withhold or reduce payment for any Covered Services if it is later determined that the verification was in error.

2.2  *Payor Acknowledgment*.  PHCS represents and warrants that it has entered into Payor Acknowledgments with Payors for the use of the PHCS provider network.  A representative sample of the Payor Acknowledgment is attached hereto as Exhibit 3. Each Payor Acknowledgment between PHCS and a Payor will obligate the Payor (or its designee) to comply with the duties and obligations of this Agreement, including, but not limited to, paying for Covered Services rendered to Members in accordance with the provisions of Article IV of this Agreement.  PHCS is not an insurer, guarantor, or payor of claims and will not be liable for any payment of claims submitted by Hospital to any Payor or PHCS under a Health Plan.  In the event of a dispute between Hospital and a

**Confidential**
**PHCS0070**

**Exhibit C**

Payor relating to fees, reimbursement or otherwise, PHCS will act as a liaison in cooperation with Hospital and Payor to resolve this matter. A Payor has final responsibility for its Health Plan claim payments. Notwithstanding the foregoing, PHCS shall assist Hospital in its collection efforts from a Payor upon Hospital's request.

2.3 *Modifications.* Payor shall retain, within its sole discretion, the right to modify, amend or otherwise change any Health Plan. PHCS shall use best efforts to require Payors to notify Hospital and provide the complete text of any material reduction to a Health Plan's level of benefits or coverage or Payor Acknowledgment at least thirty (30) days prior to the implementation of such amendment, modification or other change that may affect the obligations of or payment to Hospital. If the amendment or modification is not acceptable to Hospital, Hospital may so notify PHCS within thirty (30) days. If an accommodation with PHCS and the Payor cannot be worked out within the 30-day period, Hospital may terminate its participation in this Agreement in accordance with Section 5.3, if Hospital gives such notice, the amendment or modification shall not go into effect as to Hospital during the termination period.

2.4 *Marketing.* PHCS shall require that Payors make available and promote Health Plans issued in the service area of Hospital that include financial incentives which provide Direction to Members to utilize Preferred Providers rather than providers who are not Preferred Providers. "Direction" shall be defined as: (i) greater plan benefits; or (ii) the provision of financial incentives that provide Members with savings when they obtain health care services from Hospital. Direction may also include, in addition to greater plan benefits or financial incentives, directory listings. PHCS acknowledges that Hospital will not participate in any Health Plan, and this Agreement shall not apply to, any Payor which does not provide Direction to Members. A list of the types of PHCS products in which Hospital will participate is attached hereto as Exhibit 5.

2.5 *Utilization Management.*

(a) PHCS has established a Utilization Management Program and shall perform utilization review and utilization management hereunder. A copy of the current Utilization Management Program is attached hereto as Exhibit 1. PHCS and any Payor performing Utilization Management must be appropriately licensed to perform such functions in the State of Texas, if required. PHCS shall provide Hospital a facsimile number for purposes of Hospital transmitting, and permit the transmission of, via facsimile, information regarding Members or the provision of Covered Services, as required by PHCS in the course of performing Utilization Management.

PHCS retains the right, at any time, to amend, revoke or modify its existing Utilization Management Program or to establish new standards and procedures. PHCS will use its best efforts to provide Hospital with at least thirty (30) days prior written notice of any material modifications to the PHCS Utilization Management Program. If the amendment or modification to the PHCS Utilization Management Program is not acceptable to Hospital, Hospital may notify PHCS within such thirty (30) day timeframe that it elects to terminate its participation

**Confidential**
**PHCS0071**

**Exhibit C**

under this Agreement in accordance with Section 5.3 and, if the Agreement so terminates, the amendment or modification shall not go into effect as to Hospital during the termination period.

(c)   Notwithstanding anything to the contrary in this Agreement, PHCS shall not permit case managers or other personnel performing PHCS Utilization Management to unilaterally reduce the level of coverage a Member is receiving (i.e., inpatient care reduced to skilled nursing facility care), unless PHCS has first communicated with the Member's attending physician. If the attending physician does not concur with the proposed change, any reduction in the level of services approved by PHCS or denial of reimbursement for such care shall be deemed to be an adverse determination and the rules and procedures established by the Texas Department of Insurance for review and appeal of an adverse determination shall apply. All Utilization Management Programs will provide a procedure for prompt reconsideration and appeal of any determination denying coverage for a requested or provided service or supply. PHCS and any Payor performing Utilization Management will conform with applicable law and rules of the Texas Department of Insurance in the conduct of its Utilization Management Program.

(d)   PHCS shall, and shall require Payors to, abide by and comply with the standard on-site utilization review guidelines and policies for Baylor University Medical Center when performing on-site concurrent review at that hospital.

(e)   Concurrent or retrospective review will not be provided by Hospital telephonically. Upon request, Hospital will use best efforts to provide a written update, via facsimile, of the Member's status within forty-eight (48) hours of the request by PHCS or Payor, as applicable.

2.6   *PHCS's Relationship With Payors.*

(a)   PHCS shall market its Preferred Provider Network to Payors as PHCS determines appropriate. PHCS shall offer Hospital's services to the Payors in accordance with the terms and conditions of this Agreement, including the payment provisions of Article IV.

(b)   Upon the Effective Date of this Agreement, PHCS shall provide Hospital a list of Payors which have Payor Acknowledgements currently in effect with PHCS ("Payor Listing"). The Payor Listing as of the Effective Date of this Agreement is attached hereto as Exhibit 2. After the Effective Date of this Agreement, PHCS will provide an updated Payor Listing to Hospital in each instance in which a new Payor executes a Payor Acknowledgement with PHCS in the market in which Hospital is located at least thirty (30) days prior to the effective date of such Payor Acknowledgement.

(c)   PHCS shall use best efforts to provide Hospital thirty (30) days notice prior to the termination of a Payor Acknowledgement. Hospital shall provide Covered Services to Members of the terminated Payor in accordance with Sections 5.6 and

**Confidential**
**PHCS0072**

**Exhibit C**

5.7 and Payor shall continue to reimburse Hospital in accordance with this Agreement.

(d) PHCS shall disclose the terms of Schedule 1 to the Payor as needed for purposes of the Payor remitting the appropriate fee to Hospital. Such disclosure shall not be deemed a violation of the confidentiality provision set forth in Section 6.11(e).

(e) Under a Payor Acknowledgment, the Payor shall be responsible for performing certain duties and obligations set forth in Article II. PHCS shall notify Hospital of the duties and obligations performed by a Payor and will ensure that Hospital receives written notice containing all information from such Payor that is reasonably necessary for Hospital to carry out and perform its duties and obligations under this Agreement. PHCS shall ensure that an appropriate communication mechanism exists whereby Hospital may contact the Payor to fulfill the Hospital's duties and obligations hereunder where such duties and obligations involve or are related to the administrative services being performed by the Payor. Notwithstanding the performance of certain duties and obligations by Payor, all administrative services must be performed using, and in accordance with, PHCS's programs, policies and procedures. PHCS shall require Payors to comply with the applicable terms of this Agreement. Notwithstanding the foregoing, Payor (or its designee) shall not delegate claims processing of Hospital claims to a provider group or practice.

(f) Neither PHCS nor any Payor, nor any entity or individual acting on behalf of PHCS or any Payor, will offer, lease, sell, discount, provide, or allow any other entity or individual to offer, lease, sell, discount, or provide the discounted fee schedule applicable to Hospital in this Agreement to any third party who is not a Payor at the time the Covered Services are provided to Members. PHCS will include in its Payor Acknowledgment with Payors a representation from Payor that Payor will use the Preferred Payment Rates agreed to in this Agreement solely for Covered Services rendered to Members covered under a Health Plan which utilizes the PHCS provider network and in which Hospital participates. Only Members covered by a Health Plan in which Hospital participates through the PHCS provider network at the date Covered Services are provided are entitled to the fee schedule amounts set forth on Schedule 1. The Parties acknowledge and agree that the purpose and intent of this subsection is to prohibit the practice commonly known in the managed health care industry as a "silent PPO." If PHCS learns or has reason to believe that a Payor is, or may be accessing, the Preferred Payment Rates set forth in Schedule 1 of this Agreement inappropriately, PHCS will immediately notify in writing the Hospital affected of the Payor involved. If Hospital learns or has reason to believe that a Payor is, or may be accessing, the Preferred Payment Rates set forth in Schedule 1 of this Agreement inappropriately, Hospital will immediately notify PHCS in writing of the Payor involved and the claims for which Hospital believes the Preferred Payment Rates have been inappropriately accessed. Upon receipt of notice of a violation, PHCS will work in cooperation with Hospital to determine whether

2D008514_B                                    -6-

Confidential
PHCS0073

Exhibit C

such Payor inappropriately accessed the Preferred Payment Rates agreed to on Schedule 1 of this Agreement. Such determination shall be made within ten (10) business days of receipt of notice or knowledge of a potential violation. In the event that PHCS and Hospital find that the Payor inappropriately accessed the Preferred Payment Rates, PHCS will notify such Payor in writing of the discount denial by Hospital. Violation of this subsection shall be grounds for immediate termination by Hospital in accordance with Section 5.5(a). Hospital may bill any such third parties at Hospital's Normal Billed Charges for services rendered.

2.7     *Limitation on Access.* PHCS will not market or contract to provide Hospital's services to any third-party who is not a PHCS Affiliate or Payor that is engaged in the business of providing or arranging for the provision of health care services, such as a health maintenance organization, preferred provider organization, insurance company, third party administrator, independent practice association, provider network or broker for any such parties, nor disclose the terms of this Agreement or Schedule 1 to any such parties, without the prior written consent of Hospital. This provision does not prohibit PHCS from marketing or contracting with any party to provide Hospital's services for such party's own employee benefits plan, nor to disclose the terms of Schedule 1 to such party for such purpose.

2.8     *Equality of Preferred Providers.* PHCS retains the right, within its sole discretion and without consultation or the approval of Hospital, to contract with any hospital, physician or other ancillary health care provider not affiliated with Hospital for the delivery of health care services under Health Plans. Notwithstanding the foregoing, neither PHCS nor any Payor will, through financial incentives, exclusive arrangements, carve-outs or any other means, direct or influence Members to use any particular Preferred Provider or group of Preferred Providers within a given Health Plan or product who provide the same Covered Services as Hospital or refuse to authorize or pay for services because such services were provided by Hospital.

2.9     *Applicability of Agreement.* Subject to any continuing care obligations, only Members under Health Plans effective as of the date Covered Services are provided are entitled to the benefit of the rates set forth herein and/or any other benefits of this Agreement.

2.10    *Insurance Coverage.*

(a)     *Coverage Required.* PHCS shall self-insure or carry at its sole expense liability insurance of at least One Million Dollars ($1,000,000) per occurrence and at least Three Million Dollars ($3,000,000) in the annual aggregate insuring against managed care liability. PHCS shall provide Hospital evidence of such coverage prior to the Effective Date of this Agreement and thereafter upon Hospital's reasonable request. PHCS shall maintain the above coverage during the entire term of this Agreement and will notify Hospital immediately in writing of any termination, cancellation or reduction of such coverage required by this Agreement or any failure to renew such coverage as described herein. No representative of Hospital shall be obligated to perform any services as a member of a committee or other group formed by PHCS with respect to the Health Plans

**Confidential**
**PHCS0074**

**Exhibit C**

unless insurance coverage acceptable to Hospital is provided by PHCS for such services.

(b)    If this Agreement is terminated and any insurance coverage of PHCS required under this Agreement is on a claims-made basis, PHCS shall continue such coverage with a non-advancing retroactive date or purchase tail coverage for all insured events alleged to have occurred during the term of this Agreement.

2.11   *Retaliatory Action.*  Neither PHCS nor any Payor shall engage in any retaliatory action against a Hospital, including termination or refusal to renew this Agreement, because Hospital has, on behalf of a Member, reasonably filed a complaint against PHCS or a Payor or has appealed a decision of PHCS or a Payor.

2.12   *Financial Incentives.*  Neither PHCS nor any Payor shall use any financial incentive or make a payment to Hospital or a Preferred Provider which acts directly or indirectly as an inducement to limit medically necessary services.

2.13   *Communications with Patients.*  Neither PHCS nor Payor shall, as a condition of this Agreement with Hospital or in any other manner, prohibit, attempt to prohibit, or discourage a provide from, or in any way penalize, terminate, or refuse to compensate for Covered Services Hospital for:

(a)    discussing with or communication to a current, prospective, or former patient, or a party designated by a patient, information or opinions regarding that patient's health care, including but not limited to, the patient's medical condition or treatment options; or

(b)    discussing with or communication in good faith to a current, prospective, or former patient, or a part designated by a patient, information or opinions regarding the provisions, terms, requirements, or services of the Health Plan as they relate to the medical needs of patient.

2.14   *Compliance with Laws.*  PHCS will comply with all laws and regulations governing its performance under this Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations, and certifications necessary for that purpose.  PHCS will require each Payor to comply with all laws and regulations governing the Payor's responsibilities under this Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations, and certifications necessary for that purpose.  PHCS will, and will require each Payor to act in conformance with the applicable rules and laws of the State of Texas and the Texas Department of Insurance ("TDI"), as amended, as such rules and laws are applicable to PHCS and/or Payor in the performance of their respective obligations under this Agreement.

Article III.  Obligations and Representations of Hospital

3.1    *Policies, Procedures and Rules.*  Hospital will cooperate with PHCS's policies, procedures and rules.  PHCS will provide complete copies of such applicable policies,

**Confidential
PHCS0075**

**Exhibit C**

procedures and rules to Hospital as needed for Hospital to meet such obligations. Prior to any change to such applicable policies, procedures and rules being effective as to Hospital, PHCS shall provide Hospital with at least thirty (30) days' advance written notice of any material changes in such policies, procedures and rules and a copy of the complete text thereof. If such changes are not acceptable to Hospital, and the Parties are unable to work out their differences during such 30-day period, Hospital may give PHCS written notice that it elects to terminate its participation in this Agreement in accordance with Section 5.3 and if this Agreement so terminates, such changes will not go into effect as to Hospital during the termination period. In the event of a conflict between PHCS's policies, procedures or rules and the terms of this Agreement, this Agreement shall control and govern.

3.2 *Standard of Care.* Hospital will render health care services in a manner which assures availability, adequacy and continuity of care to Members. Hospital shall be responsible for the quality of health care services rendered to Members, and will ensure that such services are rendered in accordance with generally accepted health care practices and standards prevailing in the medical community at the time of treatment, and shall be within the scope of Hospital's license.

3.3 *Nondiscrimination.* Hospital shall provide Covered Services to Members in the same manner and in accordance with the same standards and with the same availability as for patients who are not Members. Hospital shall render Covered Services without regard to race, age, religion, sex, national origin, marital status, source of payment or disability of any Member.

3.4 *Referrals.* Hospital's referrals of a Member for additional or ancillary services shall be to another Preferred Provider unless Hospital or the treating health care professional determines that it would be medically inappropriate to do so.

3.5 *Utilization Management.* Hospital agrees to participate in PHCS's and/or Payor's Utilization Management Program and any revised or substituted Utilization Management Program as provided for in Section 2.5. A copy of the current PHCS Utilization Management Program is attached hereto as Exhibit 1.

3.6 *PHCS Programs.* Subject to Section 3.1, Hospital will participate in and observe the protocols of the PHCS programs described in the administrative handbook(s), as may be modified from time to time, including, without limitation, the quality management and credentialing/recredentialing programs. In the event of a conflict with any protocols of the PHCS programs and this Agreement, this Agreement shall control and govern.

3.7 *Liability Insurance.*

(a) *Coverage Required.* Hospital shall maintain separate medical professional and malpractice liability insurance in amounts equal to at least $1,000,000 per claim and $3,000,000 aggregate; and separate commercial general liability insurance in amounts equal to at least $1,000,000 per occurrence and $2,000,000 aggregate; or maintain a comparable program of self-insurance.

**Confidential
PHCS0076**

**Exhibit C**

    (b)    *Continuation of Coverage.* If this Agreement is terminated and any insurance coverage of Hospital is on a claims-made basis, Hospital shall continue such coverage with a non-advancing retroactive date or purchase tail coverage for all insured events alleged to have occurred during the term of this Agreement.

    (c)    *Evidence of Insurance.* Hospital shall furnish evidence of the above-required coverages to PHCS prior to the Effective Date. Hospital shall maintain the above coverage during the entire term of this Agreement and will notify PHCS immediately in writing of any termination, cancellation or reduction of such coverage or any failure to renew such coverage as described herein.

3.8    *Licenses, Certifications and Accreditations.* Hospital will comply with any applicable local, state and/or federal laws or regulations related to the delivery of health care services. Hospital possesses and will maintain in good standing:

    (a)    all licenses, accreditations, certifications, and registrations required by law to operate as a hospital or health care facility and to render health care services. Evidence of such licensure shall be provided to PHCS upon request;

    (b)    accreditation by the Joint Commission on the Accreditation of Healthcare Organizations; and

    (c)    Medicare certification, if applicable.

3.9    *Separate Agreements.* Hospital is free to enter into a separate agreement with a Payor under such terms and conditions as they may agree upon.

3.10    *Applicability of Payor Acknowledgment.* A particular Payor Acknowledgement shall have no application with respect to Hospital and a Payor on the earliest of the following:

    (a)    The date the Payor Acknowledgement between Payor and PHCS terminates (PHCS agrees to use best efforts to provide Hospital with advance notice of such date);

    (b)    The date this Agreement terminates;

    (c)    The date the Payor ceases business or becomes insolvent, if such bankruptcy proceeding, appointment of trustee, receiver or other custodian or general assignment for the benefit of creditors is not discharged or dismissed within sixty (60) days; or

    (d)    The date the Payor enters into a separate agreement, other than or in addition to the Payor Acknowledgment, with Hospital for the same Health Plan, product or business as is covered by the PHCS Preferred Provider network in order to avoid stacking of provider networks.

3.11    *Right to Subcontract/Addition or Deletion of Locations.* Hospital may subcontract in its discretion with appropriately licensed health care providers to provide certain Covered

**Confidential
PHCS0077**

**Exhibit C**

Services upon notice to PHCS and subject to such subcontractor being approved for credentialing in the sole discretion of PHCS pursuant to PHCS's uniform credentialing criteria. Such subcontracting health care providers will provide Covered Services in compliance with the terms of this Agreement. Hospital will be financially responsible for payment to such providers for any Covered Services provided by them. Hospital may add new locations or delete existing locations at which it provides Covered Services. Such locations are listed on Exhibit 4 attached hereto. Such locations will be added when PHCS has determined in its sole discretion that the locations meet the applicable PHCS credentialing criteria, which determination shall be made within sixty (60) days of Hospital's notice to PHCS. Hospital will give PHCS notice of any changes to Exhibit 4.

3.12   *Notice of Actions.* Hospital will send written notice to PHCS within fifteen (15) business days of:

(a)   Any final legal or governmental action taken against Hospital, including any termination, probation, suspension or sanction taken by any state or federal government or accrediting agency in connection with a Health Plan, a government sponsored health benefit program or license, accreditation, certification or registration held by Hospital for billing fraud or abuse.

(b)   Any legal or governmental action initiated against Hospital related to (i) insolvency of Hospital; (ii) general assignment for the benefit of creditors by Hospital; or (iii) subjection of Hospital to any proceedings under the Federal Bankruptcy Act or any state statute relating to insolvency or the protection of rights of creditors; or (iv) appointment of a receiver for the business or assets of Hospital. Any notice required pursuant to this Section will be provided in accordance with the notice requirements specified in Section 6.16 of this Agreement, except that the address and agent to receive notice shall be as follows: Credentialing Coordinator to the Medical Director, Private Healthcare Systems, Inc., 1100 Winter Street, Waltham, MA 02451.

## Article IV. Payment

4.1   *Hospital Fees.*

(a)   Hospital shall accept as payment in full for Covered Services the fees specified in the attached Schedule 1, even when Payor may have subrogation rights of recovery from another party. Payor shall pay such fees, less any applicable Copayments, Coinsurance, Deductibles or any amounts payable by another payor under the coordination of benefits provisions of the applicable Health Plan.

(b)   The fees set forth on Schedule 1 may be changed only upon written agreement of PHCS and Hospital. Renegotiated rates shall take effect on the date agreed upon by the Parties. Upon adoption of a new Schedule 1, inpatient admissions begun under the prior Schedule 1 shall continue under such prior fee schedule until the Member is discharged, unless the Parties agree otherwise.

-11-

**Confidential**
**PHCS0078**

**Exhibit C**

4.2    *Billing Restrictions.*

(a)    Hospital is not entitled to payment from Payor for supplies or services that are not Covered Services or are otherwise not subject to reimbursement from Payor. Hospital shall not seek payment from a Member for the difference between Hospital's Normal Billed Charges and the amount allowable pursuant to Schedule 1 of this Agreement, nor shall Hospital seek payment from a Member for services determined to be medically unnecessary pursuant to PHCS's and/or Payor's Utilization Management Program pursuant to this Agreement unless Hospital obtains written consent to such payment from the Member prior to rendering services. Further, Hospital will not seek payment from the Member for the amount of any reduction of fees due to Hospital's failure to comply with the procedures of PHCS's and or Payor's Utilization Management Program. Except as permitted by Section 4.2(b), in no event shall Hospital bill or require any Member to tender any payment with respect to Covered Services, other than Copayments, Coinsurance and Deductibles, if any, as specified in the Member's Health Plan.

(b)    Hospital may bill Members directly for services which are not Covered Services. For Covered Services, Hospital shall bill or collect from Members all Copayments as specified in the Member's Health Plan. Following the receipt of an explanation of benefits form from Payor, Hospital shall bill or collect from a Member any Coinsurance amounts or Deductibles which are due from Members under the terms of the applicable Health Plan. Hospital shall bill Members for Copayments, Coinsurance and Deductibles only on the discounted fee and not Hospital's Normal Billed Charges. PHCS shall assist Hospital in its collection efforts from a Payor upon request.

4.3    *Claim Submission.* Hospital shall use best efforts to submit a Clean Claim for its services or supplies at its Normal Billed Charge within ninety (90) days, but in no event greater than one-hundred eighty (180) days, of furnishing Covered Services or discharge, whichever is later, utilizing a UB92 (or its successor) standard billing format, as applicable. Hospital's bills shall be prepared in strict adherence to the usage guidelines and conventions set forth in the CPT, ICD and DSM, as applicable. For inpatient Covered Services continuing for longer than thirty (30) days, Hospital may submit interim claims in thirty (30) day intervals. In the event Payor performs repricing, PHCS shall provide accurate fee schedule information to the Payor, update such information promptly as needed, and monitor Payor's accurate repricing of claims.

4.4    *Claim Processing.*

(a)    Payor (or its designee) shall pay all Clean Claims for Covered Services within forty-five (45) calendar days of receipt of a Clean Claim containing the information set out in Section 4.3 from Hospital in accordance with the applicable reimbursement rates attached on Schedule 1. If Payor (or its designee) determines that a bill is not a Clean Claim, it must notify Hospital by facsimile or electronic mail within fifteen (15) Business Days of receipt of the bill of the specific

    -12-

**Confidential
PHCS0079**

**Exhibit C**

additional information needed to constitute a Clean Claim and pay the Clean Claim within forty-five (45) calendar days of resubmission by Hospital. If Payor fails to notify Hospital of any additional information needed to have a Clean Claim within fifteen (15) Business Days of Payor's receipt of the claim, the claim shall be deemed to be a Clean Claim. If Payor (directly or through its designee) does not pay within forty-five (45) days of receipt of a Clean Claim, Payor shall no longer be eligible for the rates set forth on Schedule 1 and shall be obligated to pay Hospital at Hospital's Normal Billed Charges and Hospital may elect to terminate this Agreement pursuant to Section 5.5(a)(vi) of this Agreement.

(b)    PHCS and the Payors will provide Hospital an opportunity to appeal and present its case on any bill determined not to be eligible for payment as submitted prior to final denial.

(c)    To the extent allowed by law, any requests for refunds for overpayments by PHCS or a Payor to Hospital must be made in writing within one hundred eighty (180) days of the date payment was made. Future payments to Hospital shall not be offset due to any past overpayments of claims. After expiration of this one hundred eighty (180) day period, the payment shall be considered final.

(d)    If Payor intends to audit a claim or bill, Payor must notify Hospital within forty-five (45) days of receipt of a claim from Hospital of its intent. Notwithstanding the intent to audit the claim or bill, Payor must pay eighty-five percent (85%) of the claim at the rates set forth in this Agreement within such forty-five (45) day period. Any audit of a claim shall be completed and Hospital notified in writing of the results within seventy-five (75) days of the date the claim was originally submitted by Hospital. Payment of any amounts due to Hospital shall be made within thirty (30) days of notification of the audit results. Hospital shall have the right to appeal any determination that Hospital is not entitled to full payment of the claim as originally submitted. Payor shall be obligated to provide Hospital with documentation supporting its audit results.

4.5    *Coordination of Benefits.*    Hospital shall reasonably cooperate in coordinating benefit payments with other health care plans which may provide coverage to Members, and in all other matters relating to proper coordination of benefits. Other plans shall include, but are not limited to, group insurance plans, government-sponsored plans, multiple-employer trust plans and prepaid health maintenance organization plans. Except as otherwise required by law, if Payor is other than primary under the coordination of benefits rules, Hospital will accept from Payor, as payment in full, the amount which when added to amounts received by Hospital from any combination of other sources, equals one hundred percent (100%) of the Preferred Payment Rate.

Article V.  Term and Termination of Agreement

5.1    *Initial Term.*    This Agreement shall take effect on the Effective Date and shall remain in effect for a period of one (1) year unless terminated earlier as provided in this Agreement.

20008514_8                          -13-

**Confidential
PHCS0080**

**Exhibit C**

5.2    *Renewal of Agreement.*  This Agreement shall automatically renew for successive one (1) year periods on each anniversary of the Effective Date unless PHCS or Hospital gives to the other at least ninety (90) calendar days' advance written notice of its intention to terminate at the end of the initial term or the current renewal term, or unless this Agreement is otherwise terminated as provided in this Agreement.

5.3    *Voluntary Termination.*  In addition to any other termination rights under this Agreement, Hospital or PHCS may terminate this Agreement at any time upon ninety (90) calendar days' advance written notice to the other Party to this Agreement.

5.4    *Termination With Cause.*

    (a)    <u>By PHCS</u>.  PHCS shall have the right to terminate this Agreement upon at least thirty (30) calendar days advance written notice of such termination to Hospital if Hospital materially breaches any provision of this Agreement.  PHCS shall set forth in the notice of termination the facts underlying its claim of breach and cite the relevant sections of this Agreement that are claimed to have been breached. Remedy of such breach to the reasonable satisfaction of PHCS, within thirty (30) calendar days of the receipt of such notice, shall revive this Agreement for the remaining portion of its then-current term.

    (b)    <u>By Hospital</u>.  Hospital shall have the right to terminate this Agreement upon at least thirty (30) calendar days advance written notice of such termination to PHCS if PHCS materially breaches any provision of this Agreement.  Hospital shall set forth in the notice of termination the facts underlying its claim for breach and cite the relevant sections of the Agreement that are claimed to have been breached. Remedy of the breach to the reasonable satisfaction of Hospital, within thirty (30) calendar days of receipt of such notice, shall revive this Agreement for the remaining portion of its then-current term.

5.5    *Immediate Termination of Agreement.*

    (a)    <u>Termination by Hospital</u>.  Unless the Parties agree otherwise, this Agreement may be immediately terminated by Hospital upon written notice to PHCS for any of the following reasons:

        (i)    if PHCS becomes insolvent or admits in writing its inability or refusal to pay debts as they become due, or PHCS applies for, or consents to, or acquiesces in the appointment of a trustee, receiver or other custodian for PHCS or any property of PHCS, or make a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointment for PHCS or for a substantial part of the property of PHCS and is not discharged within sixty (60) calendar days; or any bankruptcy, reorganization, debt arrangement or other case or proceeding under any bankruptcy or insolvency law or any dissolution or liquidation proceeding is commenced in respect of PHCS, and if such case or proceeding is not

**Confidential**
**PHCS0081**

**Exhibit C**

commenced by PHCS, it is consented to or acquiesced in by such party or remains for sixty (60) calendar days undismissed; or PHCS takes any action to authorize, or in furtherance of, any of the foregoing;

(ii)   if PHCS is found guilty of a felony criminal offense or is found liable for gross misconduct related to this Agreement;

(iii)  if the Texas Department of Insurance determines that the Parties may not perform in accordance with the terms of this Agreement and the Parties are unable to modify the Agreement to satisfy the requirements of the Texas Department of Insurance;

(iv)  if PHCS no longer has the necessary licensure or certification required to operate in conformity with this Agreement;

(v)   if Hospital discovers that PHCS or any Payor has engaged in any activity prohibited by Section 2.6; or

(vi)  if Payor fails to pay Hospital for Covered Services in a timely manner in accordance with Article IV of this Agreement; provided, however, that the Agreement shall not terminate if Payor pays all delinquent amounts for Covered Services within thirty (30) calendar days of receipt of Hospital's notice (subject to any penalties set forth in Section 4.4).

(b)   Termination by PHCS. Unless the Parties agree otherwise, this Agreement may be immediately terminated by PHCS upon written notice to Hospital for any of the following reasons:

(i)   if Hospital engages in any activity which causes or is likely to cause imminent harm to patient health;

(ii)  upon an action by a state medical board, other medical licensing board, or other licensing board or other government agency that effectively impairs Hospital's ability to practice;

(iii) if Hospital engages in fraud or malfeasance; or

(iv)  any action is taken which requires Hospital to provide PHCS with notice under Section 3.12.

(c)   Effect of Termination. Either Party to this Agreement shall promptly notify the other Party in writing of any event giving rise to termination under this Section, provided that failure to give such notice shall not prevent this Agreement from automatically terminating upon the occurrence of such event. In the event one of the occurrences set forth in this Section occurs only in relation to one Hospital, the automatic termination of this Agreement shall occur only as to that particular Hospital. In the event one of the occurrences set forth in this Section occurs only

-15-

**Confidential
PHCS0082**

**Exhibit C**

in relation to one Payor, the automatic termination of this Agreement, at the sole discretion of Hospital, shall occur only as to that particular Payor.

5.6     *Course of Treatment.*  Subject to the provisions of <u>Section 5.7</u> below, Covered Services performed as a course of treatment which began prior to the termination date of this Agreement will continue to be subject to this Agreement until the course of treatment is complete, subject to all terms and conditions of the Health Plan, unless arrangements are made for a medically appropriately transfer of treatment of the Member to another Preferred Provider.  Notwithstanding the foregoing, if a medically appropriate transfer is not made within ninety (90) calendar days of termination, Hospital will be paid its Normal Billed Charges for all services and supplies provided after the 90th day.

5.7     *Special Circumstances.*  Termination of this Agreement or termination of a Hospital's participation under this Agreement for reasons other than issues of medical competence or professional behavior by Hospital shall not release the obligation of Payor or PHCS to reimburse the Hospital as a Preferred Provider under the applicable Health Plan if at the time of such termination the Member has special circumstances such as a disability, acute condition, or life threatening illness or is past the 24th week of pregnancy and is receiving treatment in accordance with the dictates of medical prudence.  "Special circumstances" means a condition such that the Hospital or other health care provider reasonably believes that discontinuing care by such Hospital could cause harm to the Member.  Special Circumstances shall be identified by the Hospital which must request that the Member be permitted to continue treatment under the Hospital's care.  In such instance, Hospital agrees not to seek payment from the Member of any amount for which the Member would not be responsible if the Hospital were still a Preferred Provider.  Any dispute over whether a Member is subject to a "special circumstance" shall be settled under the terms of <u>Article VII</u> with the majority of the Arbitrators to be physicians licensed in the state of Texas actively practicing in a specialty which customarily treats patients' with the condition of the Member affected.  The obligation to reimburse Hospital at the rates set forth on <u>Schedule 1</u> extends for ninety (90) days beyond the effective date of termination or nine (9) months in the case of a Member who at the time of termination has been diagnosed with a terminal illness.  The obligation to reimburse Hospital for services to a Member who at the time of termination is past the twenty-fourth (24th) week of pregnancy extends through delivery of the child, immediate postpartum care and the followup checkup within the first six (6) weeks of delivery.  If a medically appropriate transfer has not been effected at the expiration of the preceding timeframes, PHCS or Payor shall reimburse the terminated Hospital for any additional services rendered to a Member at Hospital's Normal Billed Charges.  This Section shall survive termination of this Agreement, regardless of the reason for termination.

5.8     *Notice to Members.*  Payor shall provide, subject to the provisions of this section, reasonable advance notice to the Member of the impending termination from the Health Plan of Hospital which is currently treating the Member and in the event of termination of Hospital's participation in the Health Plan shall make available to the Member a current listing of Preferred Providers.

**Confidential**
**PHCS0083**

**Exhibit C**

(a)   If a Hospital is terminated for reasons other than at the Hospital's request, Payor shall not notify Members of the termination until the effective date of the termination.

(b)   If a Hospital voluntarily terminates the Hospital's relationship with Payor, the Hospital shall provide reasonable notice to Members under the Hospital's care, Payor shall provide assistance to the Hospital in assuring that the notice requirements are met.

(c)   If a Hospital is terminated for reasons related to imminent harm, Payor may notify Members immediately.

### Article VI. Miscellaneous

6.1   *Entire Agreement.* This Agreement, including all Schedules and Exhibits, contains the entire agreement among the Parties relating to the rights granted and the obligations assumed under this Agreement. Any prior agreements, promises, negotiations or representations, either written or oral, relating to the subject matter of this Agreement not expressly set forth in this Agreement are of no force or effect.

6.2   *Assignability.* Neither PHCS, Payors nor Hospital may assign, delegate or transfer this Agreement or a Payor Acknowledgment or rights created or granted herein without the prior written consent of the other Party. Hospital may enter into subcontract agreements related to this Agreement solely in conformance with Section 3.11.

6.3   *Independent Entities.* The relationship of Hospital to PHCS and any Payor shall continue to be as independent entities, and no such Party is an employee, agent or representative of any other Party by virtue of this Agreement, nor shall any such Party have any expressed or implied right or authority to assume or create any obligation or responsibility on behalf of or in the name of any other Party by virtue of this Agreement.

6.4   *Third Parties.* This Agreement is entered into by and between the Parties for their benefit. There is no intent by any Party to create or establish third-party beneficiary status or rights or their equivalents in any Member, health care provider, subcontractor or other party which may be affected by the operation of this Agreement, and no such third party shall have any right to enforce or enjoy any benefit created or established under this Agreement.

6.5   *Amendment.* Neither PHCS nor Hospital may modify the terms of this Agreement without prior written approval of the other.

6.6   *Severability.* The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of any other term or provision of this Agreement.

6.7   *Waiver.* Failure to insist upon strict compliance with any of the terms, covenants or conditions of this Agreement shall not be deemed a waiver of those or any other term,

20008514 8                           17                                           ^ ^

**Confidential**
**PHCS0084**

**Exhibit C**

covenant or condition.  Any waiver of any provision of this Agreement must be by written agreement of the Parties.

6.8     *Applicable Law.*  This Agreement shall be construed and enforced according to the laws of the State of Texas.  Venue for any dispute arising under this Agreement shall lie exclusively in Dallas County, Texas.  Should any provision of this Agreement require judicial interpretation, the Parties agree and stipulate that the court interpreting or considering this Agreement shall not apply any presumption that the terms of this Agreement shall be more strictly construed against a Party who itself or through its agents prepared this Agreement.   The Parties acknowledge that all Parties have participated in the preparation of this Agreement, either through drafting or review, and that each Party has had full opportunity to consult legal counsel of choice before execution of this Agreement.

6.9     *Headings.*  The headings of the various Sections of this Agreement are inserted merely for convenience and do not, expressly or by implication, limit, define or extend the specific terms of the section so designated.

6.10    *Access to Records.*.  As permitted or required by applicable law, during the term of this Agreement and for a period of five (5) years thereafter, PHCS, Payor and Hospital shall have access during regular business hours and upon reasonable notice to all of the other Party's records, books and other documentation directly relevant to this Agreement and Hospital's participation in the Preferred Provider network.   With appropriate authorization in conformance with Section 6.11, PHCS and Payors shall have access to Hospital's patient records, books and other documentation directly relevant to Covered Services provided or to be provided to Members, including any charges or claims for Covered Services under this Agreement.  Said records, books and documentation shall be maintained in such form, containing such information and preserved for such time periods as are required by applicable law.  PHCS, Payors or Hospital may also make copies of any such records, books and documentation.  This Section shall survive termination of this Agreement, regardless of the reason for termination.

6.11    *Confidentiality/Privilege.*

(a)     Hospital, Payors and PHCS shall maintain the confidentiality of medical records of Members in accordance with applicable local, state and federal laws.  Each Party shall only disclose information contained in a Party's records in accordance with applicable Federal and state laws and regulations.   PHCS and Payors recognize, acknowledge, and agree that medical records pertaining to AIDS and psychiatric and alcohol and drug treatment are particularly sensitive and confidential and civil and criminal penalties may be imposed for breaching the confidentiality of the information contained in such records.  Patient consent shall be required prior to the release of any documents containing such information.  Such consent shall be obtained by PHCS or Payor, as applicable, prior to the release of any document containing such information to PHCS or Payor.

**Confidential
PHCS0085**

**Exhibit C**

(b)   It is expressly agreed that any disclosure of patient medical records or Hospital quality assurance or peer review information to PHCS or any Payor or their employees, agents and representatives pursuant to this Agreement is not intended, nor shall it be construed to constitute, a waiver of any of the statutory or common law privileges that may attach to such information. Except as provided in this Agreement, PHCS or any Payor and their employees, agents and representatives agree that such information will be used solely and exclusively for the purpose of conducting utilization management and quality assurance activities, will be kept strictly confidential, and will be disclosed only to employees, agents and representatives of PHCS or any Payor with a need to access and with the status also to claim the privileged or confidential status of the information for such activities. Except as allowed by law, any other disclosure, distribution or publication of this information is prohibited. PHCS represents and warrants to Hospital that it is a "health care entity" as defined in the Texas Medical Practice Act and the federal Health Care Quality Improvement Act of 1986, as amended. This Section 6.11 shall survive termination of the Agreement, regardless of the reason for termination.

(c)   Except as otherwise required by law, no Party shall disclose the payment provisions of this Agreement or other financial information relating to this Agreement without the prior written consent of the other Party. The Parties acknowledge that, during the course of performance of their duties and obligations under this Agreement, certain proprietary matters or confidential information of the other Party may become available or otherwise be disclosed. Each Party agrees that any such information obtained under this Agreement will be used and kept in strictest confidence, will not be disclosed to third parties unless compelled by law or court order, and will not be used to gain an unfair advantage over the other Party, discredit the other Party, or gain financial benefit therefrom. This Section shall survive termination of this Agreement, regardless of the reason for termination.

(d)   Notwithstanding the provisions of Section 6.11(c), PHCS may provide prospective policyholders or Payors, or their representatives, with all or part of this Agreement, including, but not limited to, Schedule I, if PHCS first obtains a signed agreement from such parties that such information will be kept confidential and shall be used only for purposes of analyzing such parties' interest in contracting with PHCS for the use of the PHCS Preferred Provider network in connection with Payor's issuance or administration of a Health Plan, compliance with the terms of this Agreement and paying claims.

6.12   *Use of Names.*

(a)   PHCS and/or Payor may use the name, address, telephone number and a factual description of the facilities and services of Hospital in handbooks, directories and announcements of new Preferred Providers provided to Members and Preferred Providers without the prior written consent of Hospital. Hospital may use the name of PHCS in notification letters to physicians and patients to refer to

20008514.8                                      -19-

Confidential
PHCS0086

Exhibit C

Hospital's status as a Preferred Provider without the prior written consent of PHCS.

(b)   Except as provided in this <u>Section 6.12</u>, Hospital, Payor and PHCS reserve the right to use and control the use of its respective name, symbols, and trademarks and service marks presently existing and subsequently acquired. In addition, except as provided in this <u>Section 6.12</u>, neither PHCS, Payor nor Hospital will use the name, symbol, trademark or service marks, presently existing or subsequently acquired, of PHCS, Payor or Hospital without the prior written consent of such party and will cease any such use immediately upon receipt of written notice from the party or termination of this Agreement, whichever occurs first.

6.13   *Responsibility for Benefits.* Hospital assumes no liability for Health Plan benefits, nor does Hospital underwrite the liability for benefits under a Health Plan.

6.14   *Other Programs.* Nothing contained in this Agreement shall prevent PHCS, PHCS's policyholders, policyowners, employers subject to Health Plans, Payors, or Hospital from participating in or contracting with any other health care or other provider, preferred provider organization, health maintenance organization or other health delivery or insurance program.

6.15   *Other Coverage of Payor.* Nothing in this Agreement shall prohibit a Payor from arranging for types of benefit coverage other than that which is available through this Agreement.

6.16   *Notices.* All notices, requests, demands and other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given, made and received only when delivered as documented by a courier's receipt; or upon actual receipt of registered or certified mail, postage prepaid, return receipt requested; or by facsimile upon actual receipt, addressed as set forth below (or at such other addresses as may be stated in notices similarly given):

If to PHCS:   Private Healthcare Systems, Inc.
              1501 LBJ Parkway #650
              Dallas, Tx 75234-6800
              Attention:  Territory Director
              Telephone:
              Fax:
              UM Fax:

with a copy to:   Private Healthcare Systems, Inc.
                  1100 Winter Street
                  Waltham, MA 02451
                  Attention:  Provider Contracts Administration
                  Telephone:
                  Fax:

20008514 8                    -20-

**Confidential**
**PHCS0087**

**Exhibit C**

If to Hospital:       2001 Bryan Street, Suite 2700
Dallas, Texas 75201-3005
Attention:    Vice President-Managed Care
Telephone:   (214) 820-8610
Facsimile:    (214) 820-4554

6.17   *Force Majeure.* No Party shall be deemed to be in default of this Agreement if prevented from performing for reasons beyond its reasonable control, including, without limitation, governmental laws and regulations, acts of God, war, strikes or work stoppages. In the event that performance must be suspended for any reason due to impossibility of performance within the meaning of this Section, the Parties agree to provide as timely notice of the existence of such conditions as possible, but in any event within forty-eight (48) hours of the commencement of the condition resulting in impossibility of performance hereunder. In such event, the Parties agree to negotiate in good faith with the goal and intent of preserving this Agreement and the rights of the Parties, to the end of providing normal services as provided herein as nearly as is practicable under the circumstances.

6.18   *Relationship of Hospital/Physician.* Hospital, PHCS and the Payors acknowledge that the physicians who provide services at Hospital to Members in connection with this Agreement are engaged in the independent practice of medicine, and none of them is under the direction, supervision or control of Hospital as to the practice of medicine or the provision of Covered Services.

6.19   *No Conflict.* PHCS expressly represents and warrants to Hospital that no term or condition of this Agreement is in conflict with any Payor Acknowledgment. In the event a term or condition of this Agreement does conflict with any Health Plan or Payor Acknowledgment, the Parties agree that this Agreement shall control and govern.

## Article VII. Dispute Resolution

7.1   *Dispute Resolution.* In the event of any problems or disputes that may arise under this Agreement, the Parties to such problem or dispute will meet and seek resolution in good faith. Any controversy or claim arising out of or relating to this Agreement or the breach thereof, which is not resolved within thirty (30) days or such longer period as may be mutually agreed upon between the Parties, will be submitted to binding arbitration in accordance with the procedures set forth below. Notwithstanding the agreement to arbitrate, PHCS or Hospital may seek interim and/or permanent injunctive relief pursuant to this Agreement in a court of competent jurisdiction.

7.2   *Appointment of Arbitrators.* The demand for arbitration shall be in writing, shall be served on the other Party in the manner prescribed in Section 6.16 and shall set forth a short statement of the factual basis for the claim, specify with reasonable particularity the matter or matters to be arbitrated, including identification of the Section or Article of this Agreement in dispute. Within thirty (30) calendar days of the demand, each Party shall appoint an arbitrator. The arbitrators so appointed shall appoint a third arbitrator within fifteen (15) days of their appointment. In the event a Party shall fail to appoint an

**Confidential**
**PHCS0088**

**Exhibit C**

arbitrator and notify the other Party as herein provided within such 30-calendar day period, or a third arbitrator is not appointed within the 15-day period, either Party shall have the right to apply to the Chief Judge of the United States District Court for the Northern District of Texas—Dallas Division for an appointment of an arbitrator.

7.3     *Procedure.* The arbitrators shall hold a conference with the Parties as soon as practicable to define and narrow the issues and claims to be arbitrated and to attempt to define and limit discovery and identify the form of evidence to be presented. Any arbitration pursuant hereto shall be conducted in accordance with the Texas General Arbitration Act (the "Act") and the rules of the American Arbitration Association (the "Rules"). All such arbitration proceedings shall take place in Dallas, Texas. Either Party to the arbitration may seek to have the arbitration award entered in a court of competent jurisdiction. Except in connection with the enforcement of such award or as may otherwise be required by law, all aspects of such arbitration proceeding will be held in strict confidence by the Parties and will not be disclosed to any third Person.

7.4     *Fees.* The fees and expenses of each arbitrator and all other costs and expenses incurred in the arbitration, including reasonable attorneys' fees, shall become due as specified in the arbitration award.

7.5     *Award.* The arbitrators shall render their decision and award upon the concurrence of at least two of their number. Such decision and award shall be in writing, and counterpart copies thereof shall be delivered to each of the Parties simultaneously. In rendering such decision and award, the arbitrators shall not add to, subtract from or otherwise modify the provisions of this Agreement or any agreement entered into pursuant hereto. The arbitration award shall not include any punitive, exemplary, or other non-economic damage component.

7.6     *Limitation of Other Proceedings.* Except as expressly provided in this Article VII, each of the Parties agrees that it will not file (nor will it cause any other Person to file) any suit, motion, petition or otherwise commence any legal action or proceeding which may by submitted to arbitration pursuant to this Agreement. Upon the entry of an order dismissing or staying any such action or proceeding in a court, the Party which filed such action or proceeding shall promptly pay to the other Party the attorneys' fees, costs and expenses incurred by such other Party prior to the entry of such order.

7.7     *Survival.* With respect to disputes between the Parties arising during the term of this Agreement, this Article VII shall survive termination or expiration of the Agreement.

(Signature Pages Follow)

20008514_8                            -22-

Confidential
PHCS0089

Exhibit C

IN WITNESS WHEREOF, this Agreement is executed by the Parties through their duly authorized representatives as of the date first set forth above.

Hospital                                                      PHCS

BAYLOR UNIVERSITY MEDICAL CENTER                             PRIVATE HEALTHCARE SYSTEMS, INC.

By: _____                                 By: _____
Name:  Gary D. Brock                                        Name: George S. Moran
Title:  Attorney-in-Fact for M. Timothy Parris, President   Title: Ex. VP Networks
Tax I.D. No. 75-1837454                                     Date: August   2001

BAYLOR MEDICAL CENTER - ELLIS COUNTY

By: _____
Name:  Gary D. Brock
Title:  Attorney-in-Fact for Ron Hudspeth, President
Tax I.D. No. 75-1844139

BAYLOR MEDICAL CENTER AT GARLAND

By: _____
Name:  Gary D. Brock
Title:  Attorney-in-Fact for John McWhorter, President
Tax I.D. No. 75-1037591

BAYLOR MEDICAL CENTER AT GRAPEVINE

By: _____
Name:  Gary D. Brock
Title:  Attorney-in-Fact for Mark C. Hood, President
Tax I.D. No. 75-1777119

BAYLOR/RICHARDSON MEDICAL CENTER

By: _____
Name:  Gary D. Brock
Title:  Attorney-in-Fact for Ron Boring, President
Tax I.D. No. 75-1233535

BAYLOR MEDICAL CENTER-IRVING

By: _____
Name:  Gary D. Brock
Title:  Attorney-in-Fact for Michael O'Keefe, President
Tax I.D. No. 75-2586857

Confidential
PHCS0090

Exhibit C

BAYLOR INSTITUTE FOR REHABILITATION

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Laura Lycan, President
Tax I.D. No. 75-1037226

BAYLOR SPECIALTY HOSPITAL (FORMERLY
BAYLOR CENTER FOR RESTORATIVE CARE)

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Gerry Brueckner, Exec. Dir.
Tax I.D. No. 75-1765385

BAYLOR PEDIATRIC SPECIALTY SERVICES
(FORMERLY BAYLOR PEDIATRIC CENTER FOR
RESTORATIVE CARE)

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Jay Fox, Exec. Dir.
Tax I.D. No. 75-1765385

MEDCARE @ HOME

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Jerry Carroll, President
Tax I.D. No. 58-2535411

BAYLOR SURGICARE

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Wesley Chick
Tax I.D. No. 75-2813815

TEXAS SURGERY CENTER

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Wesley Chick
Tax I.D. No. 75-2813815

20008514_8                    -24-

Confidential
PHCS0091

Exhibit C

BAYLOR HEALTH CARE SYSTEM

HOSPITAL SERVICES AGREEMENT

Schedule 1

Effective _July 1, 2001_

<u>Compensation</u>

20008514.8

Exhibit C

Baylor University Medical Center
Payment Rates
Private Health Care System
Effective July 1, 2001

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Medical | | |
| Surgical | | |
| ICU/CCU/NICU | Rev. Codes 174-175, 200-204, 207-213, 219 | |
| ICU/CCU Step down | Rev. Codes 206, 214 | |
| Normal OB, includes baby | DRG 372-375 | |
| Additional days | | |
| C-Section, includes baby | DRG 370-371 | |
| Additional days | | |
| Nursery Newborn/Board | Rev. Codes 170-171, 179 | |
| Nursery, Level 2 & 3 | Rev. Codes 172-173 | |
| Craniotomy and other nervous system procedures | DRG 1, 2, 3, 7 | |
| Spinal and extracranial vascular procedures | DRG 4, 5 | |
| Angioplasty, PTCA | DRG 112 | |
| Cardiac Catheterization | DRG 124-125 | |
| Pacemaker Implantation | DRG 115-118 | |
| Open Heart Surgery | DRG 104-111 | |
| Circulatory Disorders w/CC | DRG 121 | |

BUMC *Rates*
PHCS PPO/POS/EPO 07-01-01

Confidential
PHCS0093

Exhibit C

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Circulatory Disorders w/o CC | DRG 122 | |
| Rehabilitation | Rev. Codes 118, 128 | |
| Orthopedic Surgery | DRG 209-234, 471, 491, 496-503 | |

Transplants and Transplant related
services-Inpatient or Outpatient.

Stop-Loss (Does not apply to Transplants & Transplant Related Services.)  If Billed charges exceed ▮▮▮ for a single inpatient stay, reimbursement reverts to ▮▮ of billed charges for the entire stay.

Ambulatory Surgery

Emergency Room                    Rev. Codes 450-459

Other Outpatient

Excluded from all inpatient and        Rev. Codes 259, 274-275, 278-279
outpatient rates:
TPA, Implants, Prosthetics,
Orthotics, Pacemakers, Stents, AZT,
Activase, Chemo Drugs,

Confidential
PHCS0094

Exhibit C

Baylor Medical Center Ellis County at Waxahachie
Baylor Medical Center at Grapevine
Baylor/Richardson Medical Center
Baylor Medical Center at Garland
Baylor Medical Center at Irving
Payment Rates
Private Health Care System
Effective July 1, 2001

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Medical | | |
| Surgical | | |
| ICU/CCU/NICU | Rev. Codes 174-175, 200-204, 207-213, 219 | |
| ICU/CCU Step down | Rev. Codes 206, 214 | |
| Normal OB, includes baby | DRG 372-375 | |
| Additional days | | |
| C-Section, includes baby | DRG 370-371 | |
| Additional days | | |
| Nursery Newborn/Board | Rev. Codes 170-171, 179 | |
| Nursery, Level 2 & 3 | Rev. Codes 172-173 | |
| Craniotomy and other nervous system procedures | DRG 1, 2, 3, 7 | |
| Spinal and extracranial vascular procedures | DRG 4, 5 | |
| Angioplasty, PTCA | DRG 112 | |
| Cardiac Catheterization | DRG 124-125 | |

*BHCS Ancillaries Rates*
*PHCS PPO/POS/EPO 01-01-01*
*Page 1 of 2*

1

**Confidential**
**PHCS0095**

**Exhibit C**

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Pacemaker Implantation | DRG 115-118 | ███████ |
| Open Heart Surgery | DRG 104-111 | |
| Circulatory Disorders w/CC | DRG 121 | |
| Circulatory Disorders w/o CC | DRG 122 | |
| Rehabilitation | Rev. Codes 118, 128 | |
| Orthopedic Surgery | DRG 209-234, 471, 491, 496-503 | |
| Transplants and Transplant related services-Inpatient or Outpatient. | | |

Stop-Loss (Does not apply to Transplants & Transplant Related Services.) If billed charges exceed ███ for a single inpatient stay, reimbursement reverts to ███ of billed charges for the entire stay.

| Ambulatory Surgery | | ███████ |
|---|---|---|
| Emergency Room | Rev. Codes 450-459 | |
| Other Outpatient | | |
| Excluded from all inpatient and outpatient rates: TPA, Implants, Prosthetics, Orthotics, Pacemakers, Stents, AZT, Activase, Chemo Drugs, | Rev. Codes 259, 274-275, 278-279 | |

**Confidential**
**PHCS0096**

**Exhibit C**

Baylor Institute for Rehabilitation
Baylor Center for Restorative Care
Our Children's House
Baylor Center for Reproductive Health
Baylor SurgiCare
Texas Surgery Center
Payment Rates
Private Health Care System
Effective July 1, 2001

| Service | PPO, POS, EPO |
|---|---|
| Inpatient Services* | |
| Outpatient Services | |
| Ambulatory Surgery | |



*Excluded from all inpatient services: To be paid at ▮▮▮ of billed charges:
TPA's, Specialty Beds – Rev. Code 278-279, Implants, Durable Medical Equipment, Prosthetics, Positron Emission Tomography, Orthotics, Chemo Drugs, Pacemakers, Stents

Confidential
PHCS0097

Exhibit C

Medcare@Home
Affiliated with Baylor Health Care System
Payment Rates
Private Health Care System
Effective July 1, 2001

█████ of billed charges.

**Confidential
PHCS0098**

**Exhibit C**

# EXHIBIT 1

## UTILIZATION MANAGEMENT PROGRAM

[to be attached hereto]

20008514  R

Confidential
PHCS0099

Exhibit C

EXHIBIT 1

I.   UTILIZATION MANAGEMENT SERVICES MODELS

1.   Utilization Management Services Models.   PHCS shall provide Payor upon purchase by Payor from
     PHCS with Utilization Management Services using one of the models noted below.   The models vary
     in the number of procedures, treatment or supplies reviewed and types of medical encounters.   Ninety
     (90) days prior to the commencement of Utilization Management Services, Payor shall choose one of
     the following models:

     (a)   **Comprehensive Model** – The Comprehensive Model reviews treatment over the full
           continuum of care.   Reviews are conducted on a specific list of procedures, therapies, supplies
           and pharmaceuticals developed by PHCS.   The Comprehensive Model includes the following
           service components:

           (i)    Notification
           (ii)   Precertification
           (iii)  Admissions Review
           (iv)   Concurrent Review
           (v)    Discharge Planning

     (b)   **Focused Model** – The Focused Model reviews a smaller scope of treatments (inpatient
           admissions and selected outpatient procedures) to be reviewed.   The Focused Model includes
           the following service components:

           (i)    Notification
           (ii)   Precertification
           (iii)  Admissions Review
           (iv)   Concurrent Review

     (c)   A la Carte Services – A la Carte services provides a number of stand-alone Utilization
           Management Services components which may be added to either the Focused or
           Comprehensive Models.   A la Carte services include:

           (i)    Notification
           (ii)   Case Management
           (iii)  Retrospective Medical Record Review
           (iv)   Physician Stand Alone Review
           (v)    Discharge Planning
           (iv)   Behavioral Health Comprehensive Review

II.   UTILIZATION MANAGEMENT SERVICES COMPONENTS.

      The following are the components of the Utilization Management Services.   Depending upon the model
      and setting chosen by the Payor, the Utilization Management Services provided to Payor may contain
      some or all of the following components:

**Confidential
PHCS0100**

**Exhibit C**

1.  Notification involves obtaining and documenting a complete record of medical services rendered to a Member to assist Payor with Payor's benefits administration and claims payment. Standard notification services includes obtaining and documenting a complete record of medical services for acute (short term) inpatient admissions, as well as out-patient surgical procedures.

2.  Utilization Review. Utilization Review or treatment review is a service for evaluating and certifying whether certain care, treatment, pharmaceuticals or supplies prescribed for a Member meets certain medical necessity requirements of the Member's health care plan as well as examining length of stay and location of care requests. The criteria for Utilization Review (the "Utilization Review Requirements") is as follows:

    •   determining whether a particular treatment is necessary and/or appropriate given the symptoms, and is consistent with the diagnosis, if any;

    •   determining whether a particular treatment is not generally regarded as experimental or unproven by recognized medical professionals or appropriate governmental agencies (such as, but not limited to, the United States Food and Drug Administration, the Public Health Services Office of Health Technology Assessment or the National Institutes of Health); and

    •   if the treatment meets the requirements of subparagraphs (i) and (ii) above, PHCS then evaluates and certifies the appropriateness of the proposed location (i.e. inpatient or outpatient) of the prescribed treatment, and the appropriate length of stay for the prescribed treatment.

    (a)  Utilization Review Process.

        (i)   If PHCS's opinion is that the prescribed treatment meets the Utilization Review Requirements, PHCS will certify such treatment, setting, and/or amount of visits or services. The Precertification will then be communicated to the Member. If PHCS's opinion is that the prescribed treatment, setting, and/or amount of visits or services, does not meet the Utilization Review (or Continued/Concurrent Stay Review) Requirements, certification will not be rendered and the Member will be advised that he/she may appeal the decision. Once the appeal is initiated, the case will be reviewed by a board certified physician advisor, other than the original reviewing physician, who holds certification in the same or similar specialty as the treating physician and could typically manage the medical condition, procedure, or treatment under review ("Appeal Physician"). If the Appeal Physician confirms the conformity of the prescribed treatment to the Utilization Review (or Continued/Concurrent Stay Review) Requirements, the case will be certified. If a disagreement still exists between the Appeal Physician and the attending physician, or the case is not certified, then the Member will be referred to the Payor for further consideration. It is expressly understood that any claims for appeal described in this paragraph shall be submitted to the Payor for adjudication and payment.

        (ii)  For those Members eligible for preferred hospital arrangements, PHCS will identify the preferred hospitals and notify the Member's treating physician whether or not the non-emergent admission is scheduled at a preferred hospital. Preferred Hospital shall mean a licensed facility that agrees to provide health care services to Members through a PHCS Provider network ("Preferred Hospital").

    (c)  Utilization Review Services.

**Confidential**
**PHCS0101**

**Exhibit C**

(i) <u>Precertification.</u>   Precertification is the Utilization Review and certification of medical, surgical, obstetrical or behavioral health treatment prescribed *prior* to the date of such medical, surgical, obstetrical or behavioral health treatment prescribed, or in some instances very shortly thereafter (e.g., day of) (hereinafter "Precertification").

(ii) <u>Precertification of Ancillary and Rehabilitation Services ("Ancillary Precertification").</u> Ancillary Precertification is the Utilization Review and certification (and Continued/Concurrent Stay Review) of certain ancillary or rehabilitation care or treatment prescribed for a Member to determine whether such ancillary or rehabilitation care or treatment meets certain medical necessity requirements for a *determined amount/quantity* of care or treatment (i.e., 10 chiropractic visits, 5 days of home nursing for 2 hours a day, etc.) prior to the date of the ancillary or rehabilitation care or treatment prescribed for a Member, or in some instances very shortly thereafter (e.g., day of) (hereinafter "Ancillary Precertification"). For purposes of this Exhibit, ancillary services may include, but are not limited to, home health care services, outpatient therapies, skilled nursing and hospice. Only those cases in which the Member is eligible to receive benefits under Health Plans offered or administered by the Payor, as determined by the Payor, will be reviewed by PHCS for Ancillary Precertification.

(iii) <u>Admission Review.</u>   Admission Review is the Utilization Review and certification of medical, surgical, obstetrical or behavioral health treatment prescribed *at the time of an Inpatient admission* (hereinafter "Admission Review").

(iv) <u>Concurrent Review.</u>   Concurrent Review is the Utilization Review and certification of requests for and extension to a previously authorized treatment. PHCS will review the clinical information and, when appropriate, certify the extended stay. Requests that do not meet the review guidelines are referred to Physician Review.

(v) <u>Retrospective Review.</u> Retrospective Review is the Utilization Review and certification of medical, surgical, obstetrical, behavioral health treatment, ancillary and rehabilitation services that is performed *retrospectively* ("Retrospective Utilization Review"). Payor will identify those claims appropriate for Retrospective Utilization Review and will forward information regarding such claim to PHCS, including, a copy of the written referral, a copy of the claim in question, and any supporting medical records.

3. <u>Discharge Planning.</u> With input from the Utilization Review process, selected medical/surgical and psychiatric admissions cases are intervened in by a registered nurse for the purpose of coordinating a Member's transfer from a acute care setting to a lesser level of care setting and/or coordinate the delivery of healthcare services such as home health services, DME, HHA, nursing, safety checks, IV and medications to the Member who is being discharged to the lesser level of care.

**Confidential
PHCS0102**

**Exhibit C**

EXHIBIT 2

PAYOR LISTING


[to be attached hereto]

**Confidential
PHCS0103**

**Exhibit C**

SAMPLE
EXHIBIT A

PHCS hereby signifies its acceptance on behalf of the Carriers or Subsidiaries listed below, pursuant to a power of attorney, of the terms and conditions specified in the document entitled Amendment to the Preferred Hospital Agreement effective as to Baylor Health Care System (BHCS) on April 1, 2001.

CARRIERS AND (SUBSIDIARIES)



Confidential
PHCS0104

Exhibit C

SAMPLE
EXHIBIT A CONTINUED



Page 3 of 22

Confidential
PHCS0105

Exhibit C

SAMPLE
EXHIBIT A CONTINUED



BY: _____
Territory Director
DATE: _____

Confidential
PHCS0106

Exhibit C

EXHIBIT 3

PAYOR ACKNOWLEDGMENT

[to be attached hereto]

Confidential
PHCS0107

Exhibit C

## PAYOR ACKNOWLEDGEMENT

The undersigned (the "Payor") hereby acknowledges the following obligations, effective as of _____, as provided in the Subscriber Services Agreement between Payor and Private Healthcare Systems, Inc. ("PHCS"):

### I. RECITALS:

A.  Payor and PHCS are parties to a subscriber services agreement under which PHCS will provide to Payor certain provider Network services, including credentialing, recredentialing and quality assurance services, and/or comprehensive medical management services, including utilization review, quality assurance, case management and other cost containment related services, (the "Services") in certain markets throughout the United States (the "Services Agreement").

B.  PHCS has entered into contracts with health care providers for participation in the PHCS provider Network ("PHCS Preferred Providers") at certain reimbursement rates for health care services provided to Payor's Covered Employees pursuant to certain PHCS preferred provider agreements (the "PHCS Preferred Provider Agreement").

C.  All terms in this Payor Acknowledgement shall have the meaning ascribed to them in the Services Agreement unless otherwise defined in this Payor Acknowledgement or the PHCS Preferred Provider Agreement, copies of which such form PHCS Preferred Provider Agreements have or will be provided to the Payor.

In order to purchase the provider Network Services offered by PHCS, Payor hereby acknowledges the following:

1.1  Licenses, Registrations and Certifications. Payor will comply with all laws and regulations governing its performance under the Services Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations and certifications necessary for that purpose.

1.2  Payment for Health Care Services and Compliance with Preferred Provider Agreement. Payor agrees to (i) pay or arrange to pay PHCS Preferred Providers in accordance with the PHCS Preferred Provider Agreement for such Preferred Provider, and (ii) comply with the applicable terms and conditions of the PHCS Preferred Provider Agreements, for the Markets and the Networks for which Payor has purchased provider Network Services from PHCS.

1.3  Marketing. Payor will make available and promote Healthcare Plans which provide direction and redirection to Preferred Providers, to the extent that it is lawful to do so. Such direction and redirection may occur through, but is not limited to, greater plan benefits or directory listings. Payor will make available to Covered Employees the name, address and telephone number of PHCS Preferred Providers.

**Confidential
PHCS0108**

**Exhibit C**

1.4  Identification and Eligibility. Payor will furnish Covered Employees with a means of identifying themselves as covered under a HealthCare Plan for the provision of the health care services through a PHCS provider Network. Such methods of identification may include, but is not limited to, (i) identification cards, (ii) affixing the PHCS logo to identification cards, or (iii) a PHCS phone number identifier. In addition, Payor will use its best efforts to provide the most current eligibility information available on the day of inquiry for those Covered Employees for whom Payor maintains eligibility information.

1.5  Copying of Medical and Billing Records. If Payor requests copies of medical and billing records from a Preferred Provider for purposes other than the reconsideration of payment to such Preferred Provider, Payor agrees to reimburse the Preferred Provider for such copies according to the rates specified in the Preferred Provider Agreement between PHCS and such Preferred Provider.

1.6  Third Party Beneficiaries. Nothing contained in this Agreement will be construed to make PHCS or Payor, and their respective directors, officers, employees, agents and representatives liable to persons or entities not parties hereto in situations in which they would not otherwise be subject to liability. Nothing contained herein will be construed as, or be deemed to create, any rights or remedies in any party other than PHCS or Payor.

1.7  Inappropriate Access of the Preferred Payment Rates. Payor agrees that the Preferred Payment Rates agreed to in the PHCS Preferred Provider Agreement between PHCS and the Preferred Provider are applicable solely for Covered Care rendered to Covered Employees covered under a Healthcare Plan which utilizes the PHCS provider Network. In the event that a Preferred Provider believes Payor is, or may be, accessing the Preferred Payment Rates set forth in the Preferred Provider Agreement inappropriately (e.g., to non-eligible individuals), the Preferred Provider shall notify PHCS immediately in writing. Upon receipt of such notice, PHCS will work in cooperation with the Preferred Provider and Payor to determine whether Payor appropriately accessed the Preferred Payment Rates for a Covered Employee covered under a Healthcare Plan which utilizes the PHCS provider Network. In the event that PHCS finds that Payor intentionally and inappropriately accessed the Preferred Payment Rates agreed to in the Preferred Provider Agreement, Payor (i) will reimburse the Preferred Provider for the difference between the Preferred Payment Rate and the Provider's regular billing rates, and/or (ii) allow PHCS to terminate or limit the Payor's access to the applicable Preferred Provider's Preferred Provider Agreement.

PAYOR:

_____

By: _____
Name: _____
Title: _____
Date: _____

Confidential
PHCS0109

Exhibit C

EXHIBIT 4

HOSPITAL LOCATIONS

Baylor University Medical Center
3500 Gaston Avenue
Dallas, TX 75246

Texas Surgery Center
3535 Worth Street, Suite 7000
Dallas, TX 75246

Baylor Medical Center – Ellis County
1405 West Jefferson
Waxahachie, TX 75165

Baylor Medical Center at Garland
2300 Marie Curie
Garland, TX 75042

Baylor Medical Center at Grapevine
1650 West College Street
Grapevine, TX 76051

Baylor/Richardson Medical Center
401 West Campbell Road
Richardson, TX 75080

Baylor Medical Center-Irving
1901 N. MacArthur Blvd.
Irving, TX 75061

Baylor Institute for Rehabilitation
3505 Gaston Ave.
Dallas, TX 75246

Baylor Specialty Hospital
3504 Swiss Avenue
Dallas, Texas 75204

Baylor Pediatric Specialty Services
3301 Swiss Avenue
Dallas, TX 75204

MedCare @ Home
6301 Gaston Avenue, Suite 800
Dallas, TX 75214

Baylor SurgiCare
3920 Worth Street
Dallas, TX 75246

**Confidential
PHCS0110**

**Exhibit C**

EXHIBIT 5

PHCS PRODUCTS

Included:

- PPO

- POS (until December 31, 2001)

Specifically Excluded:

- Healthy Directions

20008514 R

**Confidential**
**PHCS0111**

Exhibit C

Enochs 08-02-27 Depo Transcript Vol 1 Summation.txt

00001
```
 1                        CAUSE NO. 06-00120
 2  BAYLOR HEALTH CARE SYSTEM,    ) IN THE DISTRICT COURT OF
          Plaintiff,             )
 3                                )
    VS.                           )
 4                                )
    GPA HOLDING, INC.,            )
 5       Defendant and           )
         Third-Party Plaintiff,  )
 6                                )
    and                          ) DALLAS COUNTY, TEXAS
 7                                )
    ASSURECARE CLAIMS and         )
 8  ADMINISTRATION COMPANY,       )
         Defendant,              )
 9                                )
    VS.                           )
10                                )
    PRIVATE HEALTHCARE SYSTEMS,   )
11  INC.,                         )
         Third-Party Defendant.  ) 198TH JUDICIAL DISTRICT
12
13          ORAL VIDEOTAPED DEPOSITION OF KATHY ENOCHS
        AS CORPORATE REPRESENTATIVE OF GPA HOLDING, INC.
14                      VOLUME 1 OF 2
15                    FEBRUARY 27, 2008
16
17          ORAL VIDEOTAPED DEPOSITION OF KATHY ENOCHS AS
18  CORPORATE REPRESENTATIVE OF GPA HOLDING, INC., produced
19  as a witness at the instance of PLAINTIFF, and duly
20  sworn, was taken in the above-styled and above-numbered
21  cause on FEBRUARY 27, 2008, from 9:31 A.M. to 3:43 P.M.,
22  before SUZANNE GONZALEZ, CSR in and for the state of
23  Texas, reported by machine shorthand at the offices of
24  Chamblee & Ryan, P.C., 2777 N. Stemmons Freeway,
25  Suite 1157, Dallas, Texas, pursuant to the Texas Rules
```
00002
```
 1  of Civil Procedure and the provisions stated on the
 2  record.
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 1

**Exhibit D**

```
                      Enochs 08-02-27 Depo Transcript Vol 1 Summation.txt
24      Q    Did you report to Mr. McPeters in 2002?
25      A    Yes.
00014
 1      Q    Did you report to Mr. McPeters in April of
 2  1998?
 3      A    Yes.
 4      Q    Did GPA enter into the Subscriber Services
 5  Agreement with PHCS with a specific intent to access the
 6  provider network contracts that PHCS had in place?
 7                 MR. RYAN:  Objection, form.
 8      A    We entered into the agreement with PHCS to
 9  market their network to our plans that we administer.
10      Q    (By Mr. Cody)  As part of GPA's business, it
11  goes out and tries to sign up as customers
12  employer-funded health plans; is that correct?
13      A    Self-funded.
14      Q    Self-funded health plans.
15      A    Correct.
16      Q    And to be more attractive to a self-funded
17  plan, GPA tries to offer the best access to healthcare
18  providers through its network arrangements with
19  companies like PHCS; is that correct?
20      A    Correct.
21      Q    And so when you go and talk to a particular
22  self-funded plan, depending on their geographic
23  location, you want to be able to offer them the
24  healthcare providers in their area; is that right?
25      A    Correct.
00015
 1      Q    When you -- strike that.
 2           Is there a particular geographic area in
 3  2002/2003 where the predominant number of your
 4  self-funded plans were located?
 5      A    Our self-funded plans are located all over.
 6  We have covered lives in every state so we're not
 7  limited to Dallas/Fort Worth, we're not limited to
 8  Texas.
 9      Q    Where are most of your self-funded plans
10  located or your covered lives located?  Is there a
11  concentration in a particular area?
12      A    The majority of the employers' corporate
13  offices are in Texas.  We do have some that are in other
14  states, but the majority of the corporate offices are
15  held here in Texas.
16      Q    Okay.  And is that the same today as it would
17  be in 2002?
18      A    Yes.
19      Q    And then 1998, when the Subscriber Service
20  Agreement was signed?
21      A    Yes.
22      Q    In the April 1998 time frame did GPA have
23  access to Baylor Health Care Systems through a PPO
24  network?
25      A    I would have to say yes.
00016
 1      Q    Do you recall through what PPO network they
 2  were accessing Baylor?
 3      A    I don't know the specifics of which networks
 4  offered Baylor because we had several available.
 5      Q    What networks did GPA have contracts with in
 6  '98 that would --
 7      A    In '98 --
 8      Q    -- that would have provided access to Baylor
                              Page 7
```

```
                    Enochs 08-02-27 Depo Transcript Vol 1 Summation.txt
11  of Tape 2.
12       Q    (By Mr. Cody)  Ms. Enochs, I'm going to hand
13  you what's been marked as Exhibit 47.  Do you see that?
14       A    (Witness examined exhibit.)  Yes.
15       Q    Exhibit 47 is a copy of the Amendment,
16  Assignment and Assumption of the Subscriber Services
17  Agreement between PHCS and GPA Holdings and
18  Group & Pension Administrators, Inc.; is that correct?
19       A    Yes.
20       Q    There is a fax legend at the top of
21  Exhibit 47, just like there was on Exhibit 46, where it
22  says that it was faxed by Cathy English on October 26th,
23  2006; is that right?
24       A    Yes.
25       Q    And at the bottom right-hand corner it's got a
00046
1   GPA-03040 Bates number.  Do you see that?
2        A    Yes.
3        Q    Do you believe that Exhibit 47 came from your
4   files?
5        A    Yes.
6        Q    Flipping over to Page 4 of Exhibit 47, I
7   noticed that this copy is not signed.
8        A    Correct.
9        Q    Did GPA Holdings and G & P Administrators sign
10  Exhibit 47?
11       A    I can't verify that.
12            MR. RYAN:  We've got --
13            MR. HANSEN:  We have a version --
14            MR. CODY:  Yeah, they have a version, but
15  you-all don't, and that's what I --
16            MR. RYAN:  I can always go get that
17  version.  I mean, if it'll help you, I --
18            MR. CODY:  I just -- I mean, if you-all
19  are good by -- I want her to confirm -- she can't -- she
20  doesn't know, but if we want to stipulate that, yeah,
21  you did indeed sign it, I'm fine with that.
22            MR. RYAN:  Well, I'm just saying, why
23  don't we show her the one that's signed and ask her if
24  that looks like . . .
25            MR. CAESAR:  Have you got a clean one?
00047
1            MR. HANSEN:  Unlike some people, I have
2   extra copies.
3            MR. RYAN:  Top-secret notes and . . .
4            (Mr. Caesar handed document to witness.)
5        Q    (By Mr. Cody)  Okay.  Ms. Enochs, you've been
6   handed another document; is that correct?
7        A    (Witness examined document.)  Correct.
8        Q    And what's the title of the document you've
9   been handed?
10       A    Amendment, Assignment and Assumption of the
11  Subscriber Services Agreement.
12       Q    And does it have Bates numbers at the bottom?
13       A    No.
14            MR. RYAN:  It does.
15       A    Oh, yes, it -- I'm sorry, yes.
16       Q    (By Mr. Cody)  Would you read us the Bates
17  numbers?
18       A    Sorry.  PHCS-0047.
19       Q    Looking at the document with the PHCS Bates
20  numbers you've just identified, is it a copy of the same
21  document we've marked as Exhibit 47, with the exception
                              Page 20
```

**Exhibit D**

```
                    Enochs 08-02-27 Depo Transcript Vol 1 Summation.txt
22    of the signature blocks being executed on the PHCS
23    version?
24         A    Yes.
25         Q    So now that you've looked at the PHCS version,
00048
1     can you now confirm for us that GPA Holdings and G & P
2     Administrators did, in fact, sign Exhibit 47?
3          A    Yes.
4          Q    Can you give any explanation as to why GPA's
5     copy of the Amendment, Assignment and Assumption of the
6     Subscriber Services Agreement was not signed?
7          A    My assumption would be that we signed the
8     original probably two sets, sent them on to PHCS, and we
9     didn't get a copy back for our file.
10         Q    What was the purpose of executing the
11    Amendment, Assignment and Assumption of the Subscriber
12    Services Agreement?
13         A    The intent was to change the contract from
14    Group & Pension Administrators to GPA Holding.
15         Q    Why did GPA Holdings want to do that?
16         A    Since they were the holding company of
17    Group & Pension Administrators, we wanted to make sure
18    all contracts were identified recognizing
19    Group & Pension Holding -- or GPA Holding.
20         Q    Does GPA Holdings or G & P Administrators
21    contract with the plans?
22         A    I'd have to look back at the administrative
23    agreements because in our world they're really one and
24    the same, but I'd have to look at our current agreements
25    to see if it's under Group & Pension or GPA Holding.
00049
1          Q    Was there a business reason that you know of
2     for moving the obligations under the Subscriber Services
3     Agreement from G & P Administrators to GPA Holdings?
4          A    Yes, there was a business reason.
5          Q    What is that business reason?
6          A    I -- you'd have to address those with the
7     president, Jerry McPeters.
8          Q    You don't know what those reasons are?
9          A    I do, but I probably couldn't explain them in
10    the same manner that they were set forth.
11         Q    Well, go ahead and tell us what you know.
12         A    Well, GPA Holding owns different entities,
13    Group & Pension Administrators, Gateway, so it was to
14    just make sure that we had coverage for all umbrellas of
15    the companies that Group & Pension Holding . . .
16         Q    So GPA Holdings --
17         A    GPA Holding.
18         Q    -- owns other third-party administrators?
19         A    Not other third-party administrators, no.
20         Q    You mentioned a company by the name of
21    Gateway?
22         A    Gateway.
23         Q    What does Gateway do?
24         A    Gateway's a marketing company that markets
25    products like Teladoc, ancillary services.
00050
1          Q    Does Gateway market the PHCS --
2          A    No.
3          Q    -- network access?
4          A    No.  Also owns a small life insurance company,
5     Texas-owned company.
6          Q    What's the name of that?
                              Page 21
```

**Exhibit D**

                    Enochs 08-02-27 Depo Transcript Vol 1 Summation.txt
 3                  Is that correct?
 4          A    Correct.
 5          Q    So in this last part of the new
 6  Section 2.2(c), Romanette (iii), GPA is agreeing to the
 7  terms and conditions of the Subscriber Acknowledgment;
 8  is that right?
 9          A    That is correct, that's what it says.
10          Q    And there's no reference in the new
11  Section 2.2(c), Romanette (iii), to the fact that GPA is
12  agreeing to the Subscriber Acknowledgment on behalf of
13  its plans or customers, correct?
14                  MR. RYAN:  Objection, form.  Wait.
15  Could -- I'm sorry, will you restate that question,
16  please.
17                  MR. CODY:  Sure.
18          Q    (By Mr. Cody)  There is no reference in
19  Section -- the new 2.2(c), Romanette (iii), that GPA as
20  the subscriber is agreeing to the terms and conditions
21  of the Subscriber Acknowledgment on behalf of or for its
22  plans or customers, is there?
23          A    No.
24          Q    Who made the decision within GPA to sign the
25  Amendment, Assignment and Assumption of the Subscriber
00056
 1  Services Agreement?
 2          A    The officers of the company, including myself.
 3          Q    And if this document, Exhibit 47, was signed
 4  between September of 2002 and January of 2003, who would
 5  have been the person who recommended that the company
 6  execute the document?
 7          A    Are you asking who contacted PHCS to redo
 8  the -- to redo an amendment, to actually acknowledge an
 9  amendment to change from Group & Pension Administrators
10  to GPA Holding?
11          Q    Yes.
12          A    I don't know who actually contacted them, but
13  my -- I mean, you're asking me to speculate.  I would
14  think it would be Jerry's secretary.
15          Q    Was there someone within GPA that was
16  responsible for negotiating the Amendment, Assignment
17  and Assumption of the Subscriber Services Agreement?
18          A    The intent was to recognize GPA Holding, not
19  really to change any of the other terms.
20          Q    But you would agree that it does change the
21  terms?
22          A    I would agree that, yes, it does change.
23          Q    Do you recall whether there was any
24  negotiation at all with the changing of the terms as
25  they're reflected in the Amendment, Assignment and
00057
 1  Assumption of the Subscriber Services Agreement?
 2          A    Not that I'm aware of.
 3          Q    Do you know who prepared the Amendment,
 4  Assignment and Assumption of the Subscriber Services
 5  Agreement?
 6          A    My assumption is it was PHCS.
 7          Q    Do you know whether GPA had counsel, legal
 8  counsel, review drafts of Exhibit 47 before it was
 9  signed?
10          A    Not that I'm aware of.
11          Q    Did GPA consult with legal counsel before
12  signing Exhibit 47?
13          A    Not that I'm aware of, no.
                                    Page 24

                                                        **Exhibit D**

```
                    Enochs 08-02-27 Depo Transcript Vol 1 Summation.txt
14        Q    Who signed Exhibit 47 for GPA?
15        A    I did.
16        Q    And did you sign for both G & P Administrators
17   and GPA Holdings?
18        A    Yes.
19        Q    Did you review Exhibit 47 before you signed
20   it?
21        A    In its entirety, no.  I would have reviewed
22   the changing of the name in the beginning of it.
23        Q    So you did not review the Section we just
24   described, which is changing Section 2.2(c) of the
25   original Subscriber Services Agreement to the new
00058
1    Section 2.2(c) beginning on Page 2 and carrying on to
2    Page 3?
3         A    I can't say that I did, no.
4         Q    Did somebody who works for you review all of
5    Exhibit 47 and then communicate to you that they
6    recommend or it was okay for you to sign the document?
7         A    Not that I'm aware of, no.
8         Q    Did anyone from GPA review the new
9    Section 2.2(c), beginning on Page 2 and carrying over to
10   Page 3 of Exhibit 47, before it was signed?
11        A    Not that I'm aware of, no.
12        Q    Looking over at Page 4 of Exhibit 47, Item
13   No. 2 at the top of the page.  Do you see that?
14        A    Yes.
15        Q    It says, As of January 1, 2003, PHCS agrees to
16   the assignment of the Agreement to GPA Holding.
17             Is that correct?
18        A    Correct.
19        Q    Did you have any discussions with PHCS
20   regarding the execution of this Amendment and Assignment
21   Agreement, Exhibit 47?
22        A    Not that I recall, no.
23        Q    How did the draft, the final version of
24   Exhibit 47, end up on your desk to be signed?  Who
25   brought it to you?
00059
1         A    I don't recall.
2         Q    Were you involved in getting the document,
3    Exhibit 47, from PHCS so you could sign it?
4         A    I don't recall.  Again, I know we contacted
5    them regarding changing Group & Pension Administrators
6    to GPA Holding so we would have had some kind of contact
7    with them to make that name change.  Therefore, they
8    produced this document (indicating).
9         Q    And you've testified I think now a couple of
10   times that you believe that PHCS prepared the Amendment
11   and Assignment Agreement marked as Exhibit 47 --
12        A    Yes.
13        Q    -- correct?
14        A    Yes.
15        Q    You feel confident that GPA did not prepare
16   Exhibit 47?
17        A    Yes.
18        Q    When you turn over to Page 5 of the Amendment
19   and Assignment Agreement, Page -- or Exhibit 47, that's
20   Exhibit B, and it's entitled Subscriber Acknowledgment;
21   is that right?
22        A    Correct.
23        Q    And you turn to the -- Page 6, and Page 6 of
24   the Exhibit 47 is unsigned, correct?
                                   Page 25
```

**Exhibit D**

```
                 Enochs 08-02-28 Depo Transcript Vol 2-ASCII-Summation.txt
00188
  1                            CAUSE NO. 06-00120
  2    BAYLOR HEALTH CARE SYSTEM,       ) IN THE DISTRICT COURT OF
            Plaintiff,                  )
  3                                     )
       VS.                              )
  4                                     )
       GPA HOLDING, INC.,               )
  5         Defendant and              )
            Third-Party Plaintiff,     )
  6                                     )
       and                             ) DALLAS COUNTY, TEXAS
  7                                     )
       ASSURECARE CLAIMS and            )
  8    ADMINISTRATION COMPANY,          )
            Defendant,                  )
  9                                     )
       VS.                              )
 10                                     )
       PRIVATE HEALTHCARE SYSTEMS,      )
 11    INC.,                            )
            Third-Party Defendant.      ) 198TH JUDICIAL DISTRICT
 12
 13           ORAL VIDEOTAPED DEPOSITION OF KATHY ENOCHS
           AS CORPORATE REPRESENTATIVE OF GPA HOLDING, INC.
 14                        VOLUME 2 OF 2
 15                      FEBRUARY 28, 2008
 16
 17           ORAL VIDEOTAPED DEPOSITION OF KATHY ENOCHS AS
 18    CORPORATE REPRESENTATIVE OF GPA HOLDING, INC., produced
 19    as a witness at the instance of PLAINTIFF, and duly
 20    sworn, was taken in the above-styled and above-numbered
 21    cause on FEBRUARY 28, 2008, from 9:07 A.M. to 5:08 P.M.,
 22    before SUZANNE GONZALEZ, CSR in and for the state of
 23    Texas, reported by machine shorthand at the offices of
 24    Chamblee & Ryan, P.C., 2777 N. Stemmons Freeway,
 25    Suite 1157, Dallas, Texas, pursuant to the Texas Rules
00189
  1    of Civil Procedure and the provisions stated on the
  2    record.
  3
  4
  5
  6
  7
  8
  9
 10
 11
 12
 13
 14
 15
 16
 17
 18
 19
 20
 21
 22
 23
 24
 25
                                 Page 1
```

**Exhibit D**

Enochs 08-02-28 Depo Transcript Vol 2-ASCII-Summation.txt
4   employer relating to any of the individual healthcare
5   reimbursement claims placed at issue by Baylor in this
6   matter.  And in response, despite being compelled to
7   specify by Bates number exactly what documents it has
8   produced to PHCS, if any, which are responsive, GPA says
9   it can't identify any at this time.
10                  To the best of your knowledge, is GPA's
11  response correct, that it can't identify any
12  notifications of late funding that it provided to any of
13  its customers in connection with any of the claims in
14  dispute in this case?
15                  MR. RYAN:  Objection, form.
16       A    Can you repeat the question?
17       Q    (By Mr. Hansen)  Yeah.  Are you aware of any
18  notifications of late funding that GPA made to any of
19  its customers in connection with any of the claims in
20  dispute in this case?
21       A    Well, I'll answer that in -- I guess a
22  question is, are you referring to "late funding" as when
23  the funding was accepted by GPA or returned to GPA?
24       Q    No, ma'am, I'm talking about notifications
25  that GPA provided to its customers that late funding had
00200
1   occurred with respect to a claim or was occurring with
2   respect to a claim that's in dispute in this case.
3       A    No, I'm not aware of any.
4                  (Exhibit 52 marked.)
5       Q    (By Mr. Hansen)  I've placed in front of you a
6   document which has been labeled as Deposition
7   Exhibit 52.  I'd ask you to take a look at that and
8   identify it for me.
9       A    (Witness examined exhibit.)  It's a Claims
10  Administration Agreement between Group & Pension
11  Administrators and The Perot Group.
12       Q    And The Perot Group is a customer of GPA's?
13       A    Correct.
14       Q    And this is a Claims Administration Agreement
15  that was entered into between The Perot Group and
16  Group & Pension Administrators, or GPA as we're going to
17  call them, sometime in 2002?
18       A    Correct.
19       Q    And in the time period of 2002 did GPA's
20  claims administration agreements all look basically the
21  same as The Perot Group agreement represented in
22  Deposition Exhibit 52?
23       A    Yes.
24                  MR. RYAN:  Objection, form.
25       A    There could have been slight modifications on
00201
1   a client-by-client basis, but the majority is pretty
2   much boilerplate.
3       Q    (By Mr. Hansen)  So there are boilerplate
4   provisions that GPA has in its claims administration
5   agreements that usually appear in all of these
6   agreements that it has with its customers?
7       A    Correct.
8       Q    And there's no reason, sitting here today,
9   that you believe Exhibit 52 is not a representative
10  sample of the claims administration agreements that GPA
11  has with its customers; isn't that right?
12       A    Correct.
13       Q    If I could ask you to look at the third
14  Wherefore (sic) clause -- or the third paragraph of the
                        Page 7

**Exhibit D**

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **PRIVATE HEALTHCARE SYSTEMS,** | § | |
| **INC.** | § | **298TH JUDICIAL DISTRICT** |

## AFFIDAVIT OF MARK HOFFMAN

STATE OF WISCONSIN

COUNTY OF SHEBOYGAN

BEFORE ME, the undersigned Notary Public in and for the aforesaid County and State, personally came and appeared:

**MARK HOFFMAN** ("Affiant")

who, having been duly sworn by me, deposes and says as follows:

1.

That Affiant was employed by Private Healthcare Systems, Inc. ("PHCS") beginning in September of 2000 as a Network Development Specialist and was later promoted to Network Development Executive, ending his employment on December 31, 2004.

**Exhibit E**

2.

That in the capacity as both Network Development Specialist and Network Development Executive, Affiant was familiar with the healthcare Provider Agreements entered into by PHCS with its provider network, as well as being aware of the Subscriber Services Agreement and Subscriber Acknowledgments entered into by PHCS with its clients.

3.

That Affiant makes this sworn statement in support of PHCS' Motion for Partial Summary Judgment filed in the above-captioned matter and that he has personal knowledge of the matters set forth therein.

4.

That on April 17, 1998, PHCS entered into a Subscriber Services Agreement with Group and Pension Administrators, Inc., the predecessor of GPA Holding, Inc.  A true and correct copy of the Subscriber Services Agreement is attached to the Motion for Partial Summary Judgment as Exhibit "A."

5.

That on January 1, 2003, GPA Holding, Inc. executed an Amendment, Assignment and Assumption of The Subscriber Services Agreement, along with, among other documents,   the Subscriber Acknowledgment with PHCS. A true and correct copy of the Subscriber Acknowledgment is attached to the Motion for Partial Summary Judgment as Exhibit "B."

**Exhibit E**

6.

That on January 1, 2002, PHCS entered into a Hospital Services Agreement-PPO with Baylor Health Care System. A true and correct copy of the Hospital Services Agreement-PPO is attached to the Motion for Partial Summary Judgment as Exhibit "C."

7.

That in his and PHCS' dealings with GPA, neither Affiant nor PHCS was in a position to coerce GPA into accepting any term or provision of any document, and that the relationship between PHCS and GPA was that of sophisticated companies doing business with each other as equal bargaining partners dealing at arms' length. Further, to the best of his knowledge, that same relationship was in place between PHCS and GPA during all of the years in which they did business.

FURTHER AFFIANT SAYETH NOT.

_____
Mark Hoffman

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned Notary Public, on this 10th day of June, 2015

_Sharon K. Bein_
Notary Public

Notary Printed Name: _Sharon K. Bein_

Notary Number: _N/A_

**Exhibit E**

My Commission Expires: _____6-21-2015_____

**Exhibit E**



Exhibit F

EMPLOYERS | MEMBERS | BROKERS | PROVIDERS



ABOUT GPA   WHY GPA   CUSTOM SOLUTIONS   NEWS & EVENTS   CONTACT US

# About GPA



## SMALL ENOUGH TO CARE, LARGE ENOUGH TO DELIVER

GPA is committed to providing the highest-quality, customized healthcare benefit solutions for self-funded employers and their members. What drives us? Very simply, we care.

As the largest privately owned TPA in the Southwest, GPA is well equipped to deliver the health and wellness solutions our clients need, from cost-management services to patient care. We also recognize that not all employers or their employees are alike. With this in mind, GPA is focused on creating health benefit plans that mirror each employer's unique culture while controlling cost and enhancing the quality of life for all plan members.

- Our clients include over 200 privately held and publicly traded companies representing a broad spectrum of employers across the United States

- Named on the Top 100 Places To Work list by *The Dallas Morning News*

- Featured as one of the Top 100 Healthiest Companies in North Texas

ABOUT GPA   WHY GPA   CUSTOM SOLUTIONS   NEWS & EVENTS   CONTACT US

EMPLOYER AND EMPLOYEE SERVICES

MEMBERS AND PROVIDERS

• Less than 4% annual employee turnover with 0% executive turnover in more than 20 years

• Integrated systems to provide proven savings and results



## THE GPA COMMITMENT

GPA is committed to providing customized, flexible, web-based healthcare benefit management solutions that liberate human resource professionals and empower members.

Group & Pension Administrators | About GPA

EMPLOYERS | MEMBERS | BROKERS | PROVIDERS

ABOUT GPA    WHY GPA    CUSTOM SOLUTIONS    NEWS & EVENTS    CONTACT US

http://www.gpatpa.com/aboutgpa.php

6/15/2015

**Exhibit F**



EMPLOYERS | MEMBERS | BROKERS | PROVIDERS

ABOUT GPA   WHY GPA   CUSTOM SOLUTIONS   NEWS & EVENTS   CONTACT US

# Why GPA



## WHY WE'RE DIFFERENT

At GPA, we offer the hands-on service and care of a smaller organization, while having the same capabilities of the largest TPAs in the country. Through our personalized approach to each client's healthcare needs, GPA offers maximized cost savings for our clients and their employees.

- Long-standing client relationships with high satisfaction levels
- Serve Fortune 500 companies and smaller industry leaders
- Customized total wellness solutions with proven savings and outcomes
- Innovative GPA Nurse Navigator™ service supports wise consumerism
- Entrepreneurial culture with ongoing investment in the future

Learn about GPA's Custom Solutions

**Exhibit F**

Group & Pension Administrators | Why GPA

**Exhibit F**

EMPLOYERS | MEMBERS | BROKERS | PROVIDERS

ABOUT GPA   WHY GPA   CUSTOM SOLUTIONS   NEWS & EVENTS   CONTACT US

- About GPA
- Why GPA
- Custom Solutions

- News & Events
- Employers
- Members

- Brokers
- Providers
- Contact Us

6/15/2015

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT** 000670 |
| | § | **OF** |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

*3571M*

### ORDER GRANTING
### AGREED MOTION FOR CONTINUANCE

CAME ON TO BE HEARD the AGREED MOTION FOR CONTINUANCE in the above-referenced cause, and the Court, after having considered same, does hereby hold that the above motion is GRANTED, and this case is hereby reset to _October 26_, 2015.

SIGNED the ___17___ day of ___June___, 2015.

_____
**JUDGE PRESIDING**

**ORDER GRANTING AGREED MOTION FOR CONTINUANCE - Page 1**

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS  75202-4604

June 17, 2015

File Copy

DC-09-07252
GPA HOLDING INC  vs.  PRIVATE HEALTHCARE SYSTEMS

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:    10/26/2015 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF
THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY.
IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED
FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL
PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS
RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL
PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL
PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN

FILED
DALLAS COUNTY
6/29/2015 1:30:59 PM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **PRIVATE HEALTHCARE SYSTEMS,** | § | |
| **INC.** | § | **298TH JUDICIAL DISTRICT** |

**PRIVATE HEALTHCARE SYSTEMS, INC.'S**
**NOTICE OF HEARING ON MOTION FOR PARTIAL SUMMARY**
**JUDGMENT RELATED TO LIMITATION OF LIABILITY PROVISION**

PLEASE TAKE NOTICE that the Motion for Partial Summary Judgment Related to Limitation of Liability Provision of Defendant, Private Healthcare Systems, Inc., will be heard on Friday, August 28, 2015, at 9:00 a.m., in the 298th Judicial District Court.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**

By:     /s/ *Craig L. Caesar*
Craig L. Caesar – State Bar #24056970
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone: 504.566.8616
Facsimile:  504.585.6916
ccaesar@bakerdonelson.com
**ATTORNEYS FOR PRIVATE HEALTHCARE**
**SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2015 the foregoing pleading was served to all counsel of record via electronic and United States mail as follows:

Jeffrey W. Ryan
(jwryan@chambleeryan.com)
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207

_/s/  *Craig L. Caesar*_____
Craig L. Caesar

FILED
DALLAS COUNTY
8/21/2015 4:00:36 PM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| GPA HOLDING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| PRIVATE HEALTHCARE | § | |
| SYSTEMS, INC. | § | 298TH JUDICIAL DISTRICT |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, GPA HOLDING, INC. ("GPA" or "Plaintiff"), Plaintiff and Non-Movant in the above-styled and numbered cause, and files this, its Response to Defendant Private Healthcare System Inc.'s Partial Motion for Summary Judgment, and would respectfully show the Court the following:

## I.
## BACKGROUND

1. Private Healthcare Systems, Inc. ("PHCS") operates one of the largest proprietary networks of Preferred Provider Organizations, more commonly known as PPOs. PHCS enters into contracts with health care providers, e.g., Baylor Health Care System ("Baylor"), to negotiate discounts from the providers' full charges for health care services. As a result of these preferred provider agreements (known in this case as the Hospital Services Agreement), individual patients are

able to access the health care provider's hospitals and services at discounted rates.

2. PHCS also enters into contracts known as Subscriber Service Agreements with insurance companies, employer health plans, managed-care organizations, and third party administrators (such as GPA) to provide the organizations and their members access to health care services at the discounted rates established by the preferred provider agreements.

3. Non-movant GPA is a third-party administrator that mainly conducts its business with self-funded health plans. GPA provides claims handling services and administrative support to health plans. By contracting with PPO networks, such as PHCS, GPA is able to offer its customers and their members access to medical services from a network of providers, such as Baylor Health Care System.

4. A Subscriber Service Agreement was executed by and between PHCS and GPA on April 17, 1998. Pursuant to a string of agreements that followed the Subscriber Service Agreement, included a Limited Power of Attorney by and between PHCS and GPA, PHCS agreed to act as GPA's fiduciary and was obligated to act in GPA's best interests. The Limited Power of Attorney empowered PHCS to enter into certain "standard form" agreements for the benefit of GPA and the individual self-funded plans administered by GPA.

5. In a lawsuit that preceded the present action,[1] Baylor alleged that PHCS, through its execution of the Hospital Services Agreement, bound GPA to the

---

[1] *Baylor Healthcare System v. GPA Holding Inc.*, Cause No. 06-00120.

obligations of a "Payor" under the markedly non-standard terms of the Hospital Services Agreement. As a result of PHCS' execution of the Hospital Services Agreement and the agreement's operation to confer Payor status to GPA, Baylor sued GPA for failure to timely pay for health care services provided to members of certain health care plans administered by GPA.

6.  GPA then brought a third-party action against PHCS, alleging among other claims, that PHCS, while acting as an agent for GPA, obligated GPA as a Payor pursuant to the terms of the Hospital Services Agreement with Baylor, something GPA had never been in the past and had no intention of being when it executed the Subscriber Services Agreement with PHCS. GPA was neither a signatory nor a party to the Hospital Services Agreement and denied that PHCS bound it as a Payor when it executed the Hospital Services Agreement with Baylor.

7.  Both Baylor and GPA filed Motions for Summary Judgment.[2] Baylor's motions were granted but relief was denied to GPA. This Court determined that PHCS did in fact obligate GPA as a Payor under the Hospital Services Agreement with Baylor. The parties then entered into an agreed judgment and severance, by which GPA's third-party claims against PHCS were severed into the present cause.

## II.
## SUMMARY JUDGMENT EVIDENCE

| Exhibit "A" | Affidavit of J.W. Dewbre |
|---|---|
| Exhibit "B" | Hospital Services Agreement-PPO |

---

[2] Baylor filed several motions for partial summary judgment.

| | between Baylor Healthcare System and Private Healthcare Services, Inc., effective January 1, 2002, signed August 2001 (the "Hospital Services Agreement"). |
|---|---|
| Exhibit "C" | Subscriber Services Agreement dated April 17, 1998 between Private Healthcare Systems, Inc. and Group Pension & Administrators, Inc.; Amendment Assignment and Assumption of The Subscriber Services Agreement dated January 1, 2003, and all exhibits thereto (the "Subscriber Services Agreement"). |

## III.
## THE BIGGER PICTURE

8.  In its Motion for Partial Summary Judgment, PHCS seeks a declaration from the Court that a cap of $1 million should be enforced in the event that GPA is able to recover on its theories of contribution and indemnity in the present cause. PHCS maintains in its Motion for Summary Judgment that it is "not seeking rulings from the Court on the merits of GPA's claims against PHCS," *See* Plaintiff's Motion for Summary Judgment, paragraph 6.

9.  However, the merits of GPA's claims are interrelated with the relief sought by PHCS in that GPA's remedies include, but are not limited to, rescission of the Subscriber Services Agreement and/or equitable estoppel preventing PHCS from relying on the limitation provision contained therein.

10.  Summary Judgment is inappropriate in the present case because the remedies sought by GPA in filing this lawsuit have significant bearing on the

enforceability of the limitation of liability provision of the Subscriber Services Agreement that PHCS now seeks to invoke.

11. Specifically, GPA contends that PHCS is equitably estopped from relying on the limitation of liability provision due to the fact that, while acting as GPA's fiduciary: (a) PHCS executed a non-standard Hospital Services agreement with Baylor which designated GPA as a Payor; (b) PHCS knew or should have known that GPA was not a Payor and did not intend to be a Payor; (c) PHCS exposed GPA to potential liability as a Payor; (d) the Hospital Services Agreement executed by and between PHCS and Baylor is inconsistent with GPA's rights and duties under the Employee Retirement Income Security Act ("ERISA"); (e) PHCS failed to properly protect GPA's interests in executing an agreement that does not require Baylor to refund any money if a claim is later determined ineligible for coverage under ERISA; (f) PHCS failed to obtain GPA's consent to receive commissions from both sides of the transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA; and (g) PHCS failed to provide GPA with the Hospital Services Agreement before the Baylor claims at issue, which ultimately resulted in the preceding lawsuit, were brought to GPA's attention.

12. Additional issues of material fact also exist regarding the construction of Section 6.2 of the Subscriber Services Agreement:

Subscriber Waiver. In consideration of the indemnification set forth in Section 6.1, Subscriber and its officers, directors, employs and agents waive the right to recover from PHCS any sum in excess of $1 million **per occurrence** in any

action involving such negligent performance, nonperformance, or **willful malfeasance** in connection with the performance of any of the Subscriber's duties and obligations under this agreement.

13.  GPA seeks exemplary damages from PHCS in the present action.  By operation of the above limitation of liability provision, PHCS seeks to limit its liability for gross negligence and/or willful malfeasance.  Such a limitation is contrary to public policy and fails as a matter of law.

## IV.
## BREACH OF FIDUCIARY DUTIES BY PHCS

14.  PHCS' actions in executing the non-standard Hospital Services Agreement with Baylor, thereby obligating GPA as a Payor, were in direct breach of PHCS' fiduciary duties owed to GPA.  As GPA's agent and fiduciary, PHCS had an obligation to enter into only contractual arrangements that were reasonable, readily performable, consistent with GPA's rights and responsibilities under ERISA, and beneficial to GPA.  A fiduciary relationship exists when the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation.  *Fisher v. Roper*, 727 S.W.2d 78, 81 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.).

15.  PHCS breached its fiduciary duties to GPA because it knew or should have known that GPA was not a Payor, did not intend to be a Payor and unnecessarily exposed GPA to potential liability as a Payor.  *See* Exhibit A, paragraphs 5-6.

16.  PHCS also breached its fiduciary duties to GPA by agreeing to a one-sided

and impracticable PPO agreement that is inconsistent with GPA's rights and duties under ERISA.  Section 4.4(a) of the Hospital Services Agreement requires that a claim be paid within 45 days of receipt of a clean claim.  If the claim was not paid within 45 days of receipt, GPA became obligated to pay the full amount of the billed charges—without the benefit of discounts provided by the Hospital Services Agreement.   Under this arrangement, claims would have to be paid before completion of the full investigation required by ERISA, and before the true Payors (the self-funded employee health plans) made funds available for payment. Notably, PHCS did not consult GPA at any point in time before agreeing to these one-sided and impracticable terms.  *See* Exhibit A, paragraph 5.

17. Furthermore, the Hospital Services Agreement does not require Baylor to refund any money paid if a claim is later determined not to be covered under the applicable self-funded ERISA plan.  PHCS further breached its fiduciary duties to GPA by entering into an agreement with Baylor that fails to appropriately protect the interests of GPA.  *See* Exhibit B, p.3, section 2.1.

18. As GPA's Fiduciary, PHCS owed GPA a duty to place the interests of GPA before its own.   However, upon information and belief, PHCS received an undisclosed 2% fee from Baylor in connection with claims submitted to GPA for processing.  At no point in time did PHCS advise GPA of such a fee or remit any fees to GPA or to the self-funded employee health plans for which GPA acted as third-party administrator.  PHCS thereby breached its fiduciary duties to GPA by

placing itself in a position of conflicting interests and competing duties of loyalty, and by failing to disclose the conflict of interest to GPA. PHCS further breached its fiduciary duties by failing to obtain GPA's consent to receive commissions from both sides of the transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA. *See* Exhibit A, paragraph 3.

19. In perhaps its most egregious breach of its fiduciary duty, PHCS failed to provide GPA with the Hospital Services Agreement before the Baylor claims in question arose. GPA was neither a signatory nor a party to the Hospital Services Agreement between Baylor and PHCS. PHCS breached its fiduciary duties by failing to inform GPA that the construction of the contract entered into by PHCS and Baylor would effectively render GPA a Payor—something it had never been before. *See* Exhibit A, paragraphs 5-6. PHCS placed GPA in the untenable position of performing a non-standard contract that was kept secret from PHCS' fiduciary. Baylor's legal claims against GPA flow from this breach of fiduciary duty by PHCS, as GPA was not informed of its obligations as Payor by PHCS, thereby exposing GPA to liability. In light of PHCS' failure to disclose this crucial term, GPA contends that PHCS is liable to GPA for all or part of Baylor's alleged damages and disputes the enforceability of the limitation of liability provision found in Section 6.2 of the Subscriber Services Agreement due to PHCS' material breach of its fiduciary duties to GPA

## V.
## SUMMARY JUDGMENT STANDARD

20.  Summary judgment in favor of PHCS is only proper if PHCS proves as a matter of law every element of its affirmative defense. *Park Place Hosp. v. Estate of Milo*, 909 S.W. 2d 508, 511 (Tex. 1985).  The limitation of liability provision in the Subscriber Services Agreement constitutes an affirmative defense under Tex. R. Civ. P. 94 because PHCS is attempting to avoid actual damages and/or equitable remedies by arguing that its liability is predetermined and limited.  *See Regency Advantage Limited Partnership v. Bingo Idea-Watauga, Inc.*, 928 S.W.2d 56, 63 (Tex. App.—Fort Worth 1995), *aff'd in part and rev'd in part on other grounds*, 936 S.W.2d 275 (Tex. 1996); *Borders v. KRLB, Inc.*, 727 S.W.2d 357, 359-60 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.).  Every reasonable inference must be indulged in favor of the non-movant.  *Estate of Milo*, 909 S.W. 2d at 549.  Furthermore, all doubts about the existence of a genuine issue of material fact must be resolved in favor of the non-movant.  *Id.* at 548-49.

## VI.
## ARGUMENT AND AUTHORITY

*A. Equitable Estoppel*

21. PHCS contends that its liability for damages in GPA's present action should be capped at $1 million pursuant to a limitation of liability provision in the Subscriber Services Agreement executed by and between PHCS and GPA (Attached hereto as Exhibit B).  GPA is not bound by the limitation of liability

provision in Section 6.2 of Exhibit B for a number of reasons.

22. The elements of equitable estoppel are: (1) a false representation or concealment of material fact; (2) made with actual or constructive knowledge of the fact; (3) to a party without knowledge or the means of the knowledge of the fact; (4) with the intention that party act on the representation; and (5) the party must have relied upon or acted on it to its prejudice. *See Harris v. Varo, Inc.*, 814 S.W.2d 520, 524-25 (Tex. App.—Dallas 1991, no writ).   The evidence here demonstrates that PHCS is estopped from enforcing its limitation of liability with regard to damages awarded to Baylor due to PHCS' material breach of its fiduciary duties.

23. PHCS is equitably estopped from relying on the limitation of liability provision in the Subscriber Services Agreement because, while acting as GPA's fiduciary: (a) PHCS executed a non-standard Hospital Services agreement with Baylor which designated GPA as a Payor; (b) PHCS knew or should have known that GPA was not a Payor and did not intend to be a Payor; (c) PHCS exposed GPA to potential liability as a Payor; (d) PHCS executed the Hospital Services Agreement, while acting as GPA's fiduciary and agent, when it knew or should have known that the terms of the Hospital Services Agreement and the obligations conferred upon GPA therewith were inconsistent with GPA's rights and duties under the Employee Retirement Income Security Act ("ERISA"); (e) PHCS failed to properly protect GPA's interests in executing an agreement that does not require

Baylor to refund any money if a claim is later determined ineligible for coverage under ERISA; (f) PHCS failed to obtain GPA's consent to receive commissions from both sides of the transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA; and (g) PHCS failed to provide GPA with the Hospital Services Agreement before Baylor's claims that preceded this action were brought to GPA's attention. (*See* Exhibit A).

24. The case law provides that the Court has considerable discretion in determining the appropriate quantum of damages. *See, e.g., Taylor v. Publ'g Co. v. Jostens, Inc.*, 216 F.3d. 465 (5th Cir. 2000) (noting that "because damages are difficult to prove in fiduciary duty cases, litigants and courts must be flexible and imaginative in calculating the proper measure of damages"); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2001) (noting that courts may fashion equitable remedies to remedy a breach of fiduciary duty); *Burrow v. Arce*, 997 S.W.3d 229, 237-45 (Tex. 1999) (upholding equitable forfeiture remedy upon Attorney's breach of fiduciary duty).

25. In *Int'l Nickel Co., Inc. v. Trammel Crown Distribution Corp.*, the owner of large amounts of nickel stored at the defendant's warehouse brought an action against the warehouse owner after it discovered that a significant amount of its nickel was missing from the warehouse. 803 F.2d 150 (5th Cir. 1986) (applying Texas law). While the Plaintiff sought to recover what it believed to be the fair value of the nickel (more than $260,000), the defendant claimed that a limitation of

liability provision limited its damages to $11,491. The trial court found for defendant/warehouse owner and Plaintiff appealed, arguing that the warehouse owner should be estopped from relying on the limitation of liability clause to due to defendant's material misrepresentations regarding required inspection and inventories of the nickel. *Id.* at 154. The appellate court reversed the trial court, finding that the Plaintiff raised triable issues of fact as to the misrepresentations of defendant/warehouse owner and whether Plaintiff relied on defendant's misrepresentations to his detriment. The court went on to add that if such contentions were established, the defendant "should be estopped from utilizing its limited liability bar. . ." *Id.* at 154-55.

26. As in the case at bar, the defendant/warehouse owner in *Int'l Nickel* made material misrepresentations to the plaintiff/nickel owner regarding the inventory and inspection of his property. Plaintiff then relied upon these misrepresentations to his detriment, and suffered considerable losses. Ultimately, the appellate court found that triable issues remained and that equitable estoppel would be the proper remedy to prevent defendant/warehouse owner to rely on his limitations defense despite his material misrepresentations that caused injury to plaintiff.

27. For these reasons, the Court should not grant PHCS' Motion for Partial Summary Judgment because issues remain as to the enforceability of the limitation of liability provision and the remedies available to GPA for PHCS' ongoing breaches of fiduciary duty during the relevant time period.

*B. Contract Construction of Limitation of Liability Provision*

28. Furthermore, additional issues of material fact exist regarding the construction of Section 6.2 of the Subscriber Services Agreement, particularly the language regarding GPA's waiver of the right to recover any sum in excess of **$1 million per occurrence:**

> Subscriber Waiver. In consideration of the indemnification set forth in Section 6.1, Subscriber and its officers, directors, employs and agents waive the right to recover from PHCS any sum in excess of $1 million per occurrence in any action involving such negligent performance, nonperformance, or willful malfeasance in connection with the performance of any of the Subscriber's duties and obligations under this agreement.

29. Texas courts agree that the proper focus in interpreting "occurrence" is on the events that cause the injuries and give rise to liability, rather than on the number of injurious effects. *See, e.g., Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.,* 447 F.2d 204, 206 (5th Cir. 1971) (applying Texas law and holding that events giving rise to liability constitute the "occurrence"); *Goose Creek Consol. I.S.D. v. Continental Cas. Co.,* 658 S.W.2d 338, 339 (Tex. App. 1983, no writ) (explaining that a majority of courts apply a "cause" analysis to determine whether a set of facts involve only one or several occurrences); *Transp. Ins. Co. v. Lee Way Motor Freight, Inc.*, 487 F. Supp. 1325, 1330 (N.D. Tex. 1980) (applying Texas law) (explaining that "[t]he great majority of courts have a adopted a 'cause' analysis").

30. While PHCS will argue that the preceding Baylor lawsuit constitutes the

single "occurrence" which limits its liability to $1 million dollars in this action, GPA steadfastly disputes this contention and questions the construction of "occurrence" in relation to the unique facts of this case. Whether a provision is ambiguous is a question of law for the court to decide. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995).

31.  As outlined, *supra,* PHCS failed to inform GPA that it had been obligated as a Payor, per the terms of PHCS' Agreement with Baylor. As a result, many of participants in the self-funded health plans for which GPA serves as TPA did not pay for services rendered by Baylor according to the "Prompt Payment" provisions for which GPA was unknowingly bound. Baylor filed suit to collect for each of the claims which were not promptly paid per the terms of the Hospital Services Agreement between Baylor and PHCS.

32.  Each time a participant in one of the self-funded health plans in GPA's charge failed to pay "within 45 days of receipt of a clean claim," thereby triggering GPA's liability to Baylor, is an "occurrence" under well established Texas law.

33.  In *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.,* a federal court, applying Texas law held that the number of "occurrences" was to be determined by not looking to the cause of the occurrence, nor to the effect of the occurrence, but to the event which triggered liability. 447 F.2d 204, 206 (5th Cir. 1971). Reversing the lower court's holding that only one "occurrence" had taken place and thus only one policy limit was applicable, the court in *Maurice Pincoffs* held that, where

birds died as a result of consuming contaminated bird seed which was sold by an importer to eight grain dealers, the word "occurrence" referred to the occurrence of events for which the importer would be liable, and as there eight sales, there were eight separate "occurrences." The lower court stated that the contamination of the bird seed was the occurrence to which the policy referred, because the contamination caused the damage, and as there was only one incident of contamination, there was only one "occurrence." Rejecting this causation theory, the Fifth Circuit held that it was the sale of the contaminated seed for which the insured was liable, and thus there was one "occurrence"—subject to full policy limits--for each sale of the bird seed. *Id.*

34. The fact that the *Maurice Pincoffs* case involved a contract of insurance is immaterial to the Court's analysis regarding the use and meaning of "occurrence" in the present action. In Texas, a contract of insurance is generally subject to the same rules of construction as other contracts. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co,* 811 S.W.3d at 554. Texas courts looking to interpret the construction of "occurrence" under contracts of insurance do not focus on an overarching cause, but rather on the event or events that give rise to the insurer's liability under the policy. *Pennzoil-Quaker State Co. v. American Intern. Specialty Lines Ins. Co.,* 653 F. Supp.2d 690, 703 (S.D. Tex. 2009). Applying the foregoing analysis to the case at bar, the Court shall look to the event or events that gave rise to liability for indemnitor, GPA. In this case, the events that gave rise to GPA's liability were the

plan-participants' failure to pay "within 45 days of receipt of a clean claim," as required by the Hospital Services Agreement entered into by and between Baylor and PHCS—a requirement that PHCS concealed from GPA, resulting in injury and the necessity of filing this lawsuit.

*C. Limitation of Liability for Willful Malfeasance is Contrary to Public Policy*

35. Given the facts of this case, it would be contrary to public policy to allow PHCS to limit its liability for willful malfeasance and/or gross negligence. As enumerated above, PHCS committed multiple breaches of its fiduciary duty to GPA by exploiting its bargaining power as GPA's agent and withholding material facts regarding GPA's obligations under the Hospital Services Agreement to which GPA was a not a party nor a signatory. Agreements exempting a party from future liability for negligence are not enforceable when the exculpatory provision is contrary to public policy or the public interest. *Interstate Fire Ins. Co. v. First Tape, Inc.,* 817 S.W. 2d 142 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

36. An agreement is violative of public policy if it exploits a disparity in bargaining power between the parties. *Fox Elec. Co., Inc.* v. *Tone Guard Sec., Inc.*, 861 S.W.3d 79 (Tex. App.—Fort Worth 1993, no writ).

37. In the present case, PHCS secured GPA's agreement to the Subscriber Services Agreement, including the limitation of liability provision at issue, and proceeded to self-deal with Baylor and place its own interests ahead of GPA's. *See* Exhibit A, paragraphs 5-6. Most importantly, PHCS failed to disclose its intent to

obligate GPA as a Payor, which would ultimately result in several "liability-triggering events" that would not have occurred, but for PHCS' unauthorized actions in obligating GPA as a Payor under the Hospital Services Agreement executed by and between PHCS and Baylor.  *See* Exhibit A, paragraphs 4-6.

## VII.
## CONCLUSION

Without addressing the merits of GPA's allegations, PHCS seeks a declaration from this Court that the limitation of liability provision found in the Subscriber Services Agreement caps its damages at $1 million per occurrence. GPA disputes that PHCS is entitled to judgment as a matter of law, as GPA's claims and remedies sought are interrelated with the agreements entered into by and between PHCS, GPA and Baylor.  Genuine issues of material fact exist that preclude summary judgment on PHCS' limitation of liability affirmative defense.

## VIII.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff GPA Holding, Inc. respectfully prays that summary judgment be in all things denied for the reasons stated above, that Defendant take nothing in this lawsuit and for such other and further relief, either at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**CHAMBLEE, RYAN, KERSHAW & ANDERSON, P.C.**

By:

_____

Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Jarad L. Kent
State Bar No. 24062824
jkent@chambleeryan.com
Christopher B. Wood
State Bar No. 2665470
cwood@chambleeryan.com

2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207
(214) 905-2003
(214) 905-1213 (Facsimile)

**ATTORNEYS FOR GPA HOLDING, INC.**

## CERTIFICATE OF SERVICE

I do hereby certify that on August 21, 2015 a true and correct copy of the above and foregoing document has been forwarded certified mail, return receipt requested to counsel for Defendant:

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA  70170

**Christopher B. Wood**

# EXHIBIT A

## AFFIDAVIT OF J.W. DEWBRE

STATE OF TEXAS      §
           §
COUNTY OF DALLAS    §

Before me, the undersigned Notary Public in and for the aforesaid County and State, personally came and appeared **J.W. Dewbre** who, having been duly sworn by me, deposes and says as follows:

1.  My name is J.W. Dewbre. I am Vice President and General Counsel at GPA Holdings, Inc. ("GPA"). I am over eighteen (18) years of age and I am of sound mind. I have never been convicted of any felony or crime of moral turpitude. I have personal knowledge of every statement made herein and am fully competent to testify to the matters stated herein. Every statement made herein is true and correct.

2.  GPA is the parent company of Group & Pension Administrators, Inc., which has been conducting business as a third-party administrator or "TPA" in the State of Texas since May 31, 1978.

3.  At no point in time did PHCS advise GPA of any fees it would collect from Baylor Health Care System in connection with any claims submitted for processing to GPA. Furthermore, PHCS never remitted any such fees to GPA or to the self-funded employee health plans for which GPA acted as TPA.

4.  A true and correct copy of the Hospital Services Agreement that PHCS executed with Baylor Health Care System ("Baylor") is attached to GPA's Response to PHCS' Motion for Summary Judgment as Exhibit B.

5.     I am unaware of any previous consultation by PHCS with GPA regarding the non-standard terms of the Hospital Services Agreement, including GPA's assumption of the obligations of a "Payor," as defined by the Hospital Services Agreement executed by and between Baylor and PHCS.

6.     During my time with the company, GPA has never elected to assume the obligations of a Payor subject to prompt payment requirements, as defined by PHCS' Hospital Services Agreement executed by and between Baylor and PHCS.


**FURTHER AFFIANT SAYETH NOT.**

Signed on this 21st day of August, 2015.


_____
J.W. Dewbre


**SUBSCRIBED AND SWORN TO BEFORE ME** on this _2/st_ day of
_August_, 20_15_.


_____
NOTARY PUBLIC
In and For the State of Texas

My Commission Expires:

_1-29-16_

# EXHIBIT B

HOSPITAL SERVICES AGREEMENT - PPO

This Hospital Services Agreement ("Agreement"), effective January 1, 2002 (the "Effective Date"), is entered into by and among the hospitals and related health care facilities of the Baylor Health Care System, executing this Agreement (each a "Hospital") and Private Healthcare Systems, Inc. ("PHCS"), for Hospital to provide health care services and supplies to be provided to Members on the terms and conditions herein. Hospital and PHCS are referred to individually as a "Party" and collectively as the "Parties."

RECITALS

WHEREAS, Hospital is a corporation licensed and operating in accordance with Texas and federal laws and is engaged in the business of providing hospital and related health care services, and wishes to provide Covered Services to Members; and

WHEREAS, PHCS desires to contract with Preferred Providers to allow Members access to appropriate health care services;

NOW, THEREFORE, in consideration of their mutual promises and obligations, the Parties agree as follows:

Article I. Definitions

"Business Days" means a weekday other than a Saturday or Sunday or other day on which commercial banks in Dallas, Texas are authorized or required to remain closed.

"Clean Claim" means a claim that is submitted on a UB92 form (or its successor) and accurately contains all the following information: patient name, patient's date of birth, Member identification number, Hospital's name, address and tax ID number, date(s) of service or purchase, diagnosis narrative or ICD-9 code, procedure narrative or CPT-4 code, services and supplies provided, physician's name and license number, the Hospital's charges and any other attachments or information mutually agreed upon in writing by the Parties.

"Copayment", "Coinsurance" or "Deductible" means payments that a Member is required to make to Hospital in accordance with the applicable Health Plan.

"Covered Services" means care, treatment, services and supplies for which a benefit is payable under the applicable Health Plan.

"Emergency Care" means the health care services provided in a hospital emergency facility or a comparable facility to evaluate and stabilize medical conditions of a recent onset of severity, including but not limited to severe pain, that would lead a prudent lay person possessing an average knowledge of medicine and health to believe that the person's condition, sickness, or injury is of such a nature that failure to get immediate medical care could result in: (a) placing the patient's health in serious jeopardy; (b) serious impairment to bodily functions; (c) serious dysfunction of any bodily organ or part; (d) serious disfigurement; or (e) in the case of a pregnant woman, serious jeopardy to the health of the fetus.

Confidential
PHCS0068

*"Health Plans"* means certain group or individual health insurance policies issued by Payor and certain self-funded or self-insured health benefit plans or trusts that include Direction (as defined in Section 2.3) to Preferred Providers for which PHCS provides or arranges for administrative services, including a network of Preferred Providers for Members.

*"Member"* means an eligible individual and/or any eligible dependents enrolled and entitled to Covered Services under the Health Plan.

*"Normal Billed Charges"* means Hospital's usual charges for health care services and supplies which are normally charged by Hospital to other persons regardless of whether the person is a Member.

*"Preferred Provider"* means a licensed facility or licensed, registered, or certified health care professional that agrees to provide health care services to Members and has been selected by PHCS for participation in the PHCS provider network. Preferred Providers may be referred to in this Agreement and in the administrative handbook(s) individually as "Preferred Facility" and "Preferred Professional" respectively.

*"Payor Acknowledgment"* means a written contract between a Payor and PHCS whereby PHCS arranges for the provision of a network of Preferred Providers which will provide Covered Services under such Payor's Health Plan, and the Payor agrees to abide by the terms of such arrangements.

*"Payors"* means an insurance company, employer health plans, Taft-Hartley fund, plan sponsors or other similarly situated entities or organizations which are obligated (directly or through its designee) to pay for Covered Services for Members in accordance with such Health Plans.

*"PHCS Affiliate(s)"* means the following entities, or any subsidiary or successor corporation: Central States, Southeast and Southwest Areas Health and Welfare Fund; Connecticut General Life Insurance Company; First Allmerica Financial Life Insurance Company; Fortis, Inc.; GE Group Administrators, Inc., GE Group Life Assurance Company; General American Life Insurance Company; The Guardian Life Insurance Company of America; New England Life Insurance Company; Pacific Life & Annuity Company; and Trustmark Insurance Company. PHCS may amend this list of PHCS Affiliates upon at least thirty (30) days' prior written notice to Hospital.

*"Preferred Payment Rates"* means the rates paid to Hospital for Covered Services, as set forth in Schedule 1.

*"Utilization Management Program"* means the programs, procedures and standards established by PHCS or by or on behalf of Payor under which the utilization of care, treatment or supplies may be evaluated against clinical criteria for medical necessity, appropriateness and efficiency under the terms of a Health Plan.

Confidential
PHCS0069

### Article II. Obligations/Representations of
### PHCS and/or Payors

2.1   *Identification Cards/Eligibility.* PHCS shall require Payors to provide Members with a means of identifying themselves to Hospital as covered under a Health Plan for the provision of health care services through a PHCS provider network. Unless otherwise agreed to by PHCS and Hospital, such methods of identification shall include, but are not limited to, identification cards indicating the name and/or logo of PHCS, the name of the policyowner or employee who is a Member, the name of the Health Plan and/or Covered Group, the Payor's name, a toll-free telephone number for general information regarding benefits under a Health Plan, verification of eligibility information, an address to send claims for Covered Services, and any other necessary information, including information necessary to obtain precertification. Except when Emergency Care is provided, the presentation of an identification card may be required by Hospital as a pre-condition to its providing Covered Services. Hospital acknowledges that it will accept the Preferred Payment Rates in Emergency Care situations even though the Member did not present his or her identification card beforehand. PHCS will require each Payor to provide the most current eligibility information available on the day of inquiry for that Payor's Members. Payor shall provide verification of eligibility of particular Members and pre-certification or authorization of Covered Services upon request of Hospital. PHCS shall use best efforts to work with Payor to respond to requests for verification of eligibility or pre-certification of Covered Services within twenty-four (24) hours of Hospital's request. Payor shall notify Hospital in writing of its determination of the request for pre-certification within two (2) Business Days of the request; provided that notifications of adverse determinations, including denials of a request for pre-certification, shall be made within the time period prescribed by the Texas Department of Insurance. Failure to respond within this time period will be deemed an automatic grant of pre-certification of the Covered Services and Payor shall be responsible for payment for such services. It is within the sole discretion of Payor to determine the eligibility of a Member and whether a service is a Covered Service under the applicable Health Plan. However, if Hospital follows Payor's procedure for verification of eligibility or pre-certification or authorization of coverage, provides Covered Services in reliance on such verification or authorization and provides to PHCS and/or Payor evidence documenting the verification of eligibility or authorization of coverage from Payor, Payor shall not retroactively deny, withhold or reduce payment for any Covered Services if it is later determined that the verification was in error.

2.2   *Payor Acknowledgment.* PHCS represents and warrants that it has entered into Payor Acknowledgments with Payors for the use of the PHCS provider network. A representative sample of the Payor Acknowledgment is attached hereto as <u>Exhibit 3</u>. Each Payor Acknowledgment between PHCS and a Payor will obligate the Payor (or its designee) to comply with the duties and obligations of this Agreement, including, but not limited to, paying for Covered Services rendered to Members in accordance with the provisions of <u>Article IV</u> of this Agreement. PHCS is not an insurer, guarantor, or payor of claims and will not be liable for any payment of claims submitted by Hospital to any Payor or PHCS under a Health Plan. In the event of a dispute between Hospital and a

Confidential
PHCS0070

Payor relating to fees, reimbursement or otherwise, PHCS will act as a liaison in cooperation with Hospital and Payor to resolve this matter. A Payor has final responsibility for its Health Plan claim payments. Notwithstanding the foregoing, PHCS shall assist Hospital in its collection efforts from a Payor upon Hospital's request.

2.3   *Modifications.* Payor shall retain, within its sole discretion, the right to modify, amend or otherwise change any Health Plan. PHCS shall use best efforts to require Payors to notify Hospital and provide the complete text of any material reduction to a Health Plan's level of benefits or coverage or Payor Acknowledgment at least thirty (30) days prior to the implementation of such amendment, modification or other change that may affect the obligations of or payment to Hospital. If the amendment or modification is not acceptable to Hospital, Hospital may so notify PHCS within thirty (30) days. If an accommodation with PHCS and the Payor cannot be worked out within the 30-day period, Hospital may terminate its participation in this Agreement in accordance with Section 5.3, if Hospital gives such notice, the amendment or modification shall not go into effect as to Hospital during the termination period.

2.4   *Marketing.* PHCS shall require that Payors make available and promote Health Plans issued in the service area of Hospital that include financial incentives which provide Direction to Members to utilize Preferred Providers rather than providers who are not Preferred Providers. "<u>Direction</u>" shall be defined as: (i) greater plan benefits; or (ii) the provision of financial incentives that provide Members with savings when they obtain health care services from Hospital. Direction may also include, in addition to greater plan benefits or financial incentives, directory listings. PHCS acknowledges that Hospital will not participate in any Health Plan, and this Agreement shall not apply to, any Payor which does not provide Direction to Members. A list of the types of PHCS products in which Hospital will participate is attached hereto as <u>Exhibit 5</u>.

2.5   *Utilization Management.*

(a)   PHCS has established a Utilization Management Program and shall perform utilization review and utilization management hereunder. A copy of the current Utilization Management Program is attached hereto as <u>Exhibit 1</u>. PHCS and any Payor performing Utilization Management must be appropriately licensed to perform such functions in the State of Texas, if required. PHCS shall provide Hospital a facsimile number for purposes of Hospital transmitting, and permit the transmission of, via facsimile, information regarding Members or the provision of Covered Services, as required by PHCS in the course of performing Utilization Management.

PHCS retains the right, at any time, to amend, revoke or modify its existing Utilization Management Program or to establish new standards and procedures. PHCS will use its best efforts to provide Hospital with at least thirty (30) days prior written notice of any material modifications to the PHCS Utilization Management Program. If the amendment or modification to the PHCS Utilization Management Program is not acceptable to Hospital, Hospital may notify PHCS within such thirty (30) day timeframe that it elects to terminate its participation

20008514 8                                    -4-

Confidential
PHCS0071

under this Agreement in accordance with Section 5.3 and, if the Agreement so terminates, the amendment or modification shall not go into effect as to Hospital during the termination period.

(c)     Notwithstanding anything to the contrary in this Agreement, PHCS shall not permit case managers or other personnel performing PHCS Utilization Management to unilaterally reduce the level of coverage a Member is receiving (*i.e.*, inpatient care reduced to skilled nursing facility care), unless PHCS has first communicated with the Member's attending physician. If the attending physician does not concur with the proposed change, any reduction in the level of services approved by PHCS or denial of reimbursement for such care shall be deemed to be an adverse determination and the rules and procedures established by the Texas Department of Insurance for review and appeal of an adverse determination shall apply. All Utilization Management Programs will provide a procedure for prompt reconsideration and appeal of any determination denying coverage for a requested or provided service or supply. PHCS and any Payor performing Utilization Management will conform with applicable law and rules of the Texas Department of Insurance in the conduct of its Utilization Management Program.

(d)     PHCS shall, and shall require Payors to, abide by and comply with the standard on-site utilization review guidelines and policies for Baylor University Medical Center when performing on-site concurrent review at that hospital.

(e)     Concurrent or retrospective review will not be provided by Hospital telephonically. Upon request, Hospital will use best efforts to provide a written update, via facsimile, of the Member's status within forty-eight (48) hours of the request by PHCS or Payor, as applicable.

2.6    *PHCS's Relationship With Payors.*

(a)     PHCS shall market its Preferred Provider Network to Payors as PHCS determines appropriate. PHCS shall offer Hospital's services to the Payors in accordance with the terms and conditions of this Agreement, including the payment provisions of Article IV.

(b)     Upon the Effective Date of this Agreement, PHCS shall provide Hospital a list of Payors which have Payor Acknowledgements currently in effect with PHCS ("Payor Listing"). The Payor Listing as of the Effective Date of this Agreement is attached hereto as Exhibit 2. After the Effective Date of this Agreement, PHCS will provide an updated Payor Listing to Hospital in each instance in which a new Payor executes a Payor Acknowledgement with PHCS in the market in which Hospital is located at least thirty (30) days prior to the effective date of such Payor Acknowledgement.

(c)     PHCS shall use best efforts to provide Hospital thirty (30) days notice prior to the termination of a Payor Acknowledgement. Hospital shall provide Covered Services to Members of the terminated Payor in accordance with Sections 5.6 and

Confidential
PHCS0072

Plaintiff's Response to Defendant's Motion for Partial Summary Judgment - Page 28

5.7 and Payor shall continue to reimburse Hospital in accordance with this Agreement.

(d) PHCS shall disclose the terms of Schedule 1 to the Payor as needed for purposes of the Payor remitting the appropriate fee to Hospital. Such disclosure shall not be deemed a violation of the confidentiality provision set forth in Section 6.11(c).

(e) Under a Payor Acknowledgment, the Payor shall be responsible for performing certain duties and obligations set forth in Article II. PHCS shall notify Hospital of the duties and obligations performed by a Payor and will ensure that Hospital receives written notice containing all information from such Payor that is reasonably necessary for Hospital to carry out and perform its duties and obligations under this Agreement. PHCS shall ensure that an appropriate communication mechanism exists whereby Hospital may contact the Payor to fulfill the Hospital's duties and obligations hereunder where such duties and obligations involve or are related to the administrative services being performed by the Payor. Notwithstanding the performance of certain duties and obligations by Payor, all administrative services must be performed using, and in accordance with, PHCS's programs, policies and procedures. PHCS shall require Payors to comply with the applicable terms of this Agreement. Notwithstanding the foregoing, Payor (or its designee) shall not delegate claims processing of Hospital claims to a provider group or practice.

(f) Neither PHCS nor any Payor, nor any entity or individual acting on behalf of PHCS or any Payor, will offer, lease, sell, discount, provide, or allow any other entity or individual to offer, lease, sell, discount, or provide the discounted fee schedule applicable to Hospital in this Agreement to any third party who is not a Payor at the time the Covered Services are provided to Members. PHCS will include in its Payor Acknowledgment with Payors a representation from Payor that Payor will use the Preferred Payment Rates agreed to in this Agreement solely for Covered Services rendered to Members covered under a Health Plan which utilizes the PHCS provider network and in which Hospital participates. Only Members covered by a Health Plan in which Hospital participates through the PHCS provider network at the date Covered Services are provided are entitled to the fee schedule amounts set forth on Schedule 1. The Parties acknowledge and agree that the purpose and intent of this subsection is to prohibit the practice commonly known in the managed health care industry as a "silent PPO." If PHCS learns or has reason to believe that a Payor is, or may be accessing, the Preferred Payment Rates set forth in Schedule 1 of this Agreement inappropriately, PHCS will immediately notify the Hospital affected of the Payor involved. If Hospital learns or has reason to believe that a Payor is, or may be accessing, the Preferred Payment Rates set forth in Schedule 1 of this Agreement inappropriately, Hospital will immediately notify PHCS in writing of the Payor involved and the claims for which Hospital believes the Preferred Payment Rates have been inappropriately accessed. Upon receipt of notice of a violation, PHCS will work in cooperation with Hospital to determine whether

200085514_8                              -6-

Confidential
PHCS0073

such Payor inappropriately accessed the Preferred Payment Rates agreed to on Schedule I of this Agreement. Such determination shall be made within ten (10) business days of receipt of notice or knowledge of a potential violation. In the event that PHCS and Hospital find that the Payor inappropriately accessed the Preferred Payment Rates, PHCS will notify such Payor in writing of the discount denial by Hospital. Violation of this subsection shall be grounds for immediate termination by Hospital in accordance with Section 5.5(a). Hospital may bill any such third parties at Hospital's Normal Billed Charges for services rendered.

2.7 *Limitation on Access.* PHCS will not market or contract to provide Hospital's services to any third-party who is not a PHCS Affiliate or Payor that is engaged in the business of providing or arranging for the provision of health care services, such as a, health maintenance organization, preferred provider organization, insurance company, third party administrator, independent practice association, provider network or broker for any such parties, nor disclose the terms of this Agreement or Schedule I to any such parties, without the prior written consent of Hospital. This provision does not prohibit PHCS from marketing or contracting with any party to provide Hospital's services for such party's own employee benefits plan, nor to disclose the terms of Schedule I to such party for such purpose.

2.8 *Equality of Preferred Providers.* PHCS retains the right, within its sole discretion and without consultation or the approval of Hospital, to contract with any hospital, physician or other ancillary health care provider not affiliated with Hospital for the delivery of health care services under Health Plans. Notwithstanding the foregoing, neither PHCS nor any Payor will, through financial incentives, exclusive arrangements, carve-outs or any other means, direct or influence Members to use any particular Preferred Provider or group of Preferred Providers within a given Health Plan or product who provide the same Covered Services as Hospital or refuse to authorize or pay for services because such services were provided by Hospital.

2.9 *Applicability of Agreement.* Subject to any continuing care obligations, only Members under Health Plans effective as of the date Covered Services are provided are entitled to the benefit of the rates set forth herein and/or any other benefits of this Agreement.

2.10 *Insurance Coverage.*

(a) *Coverage Required.* PHCS shall self-insure or carry at its sole expense liability insurance of at least One Million Dollars ($1,000,000) per occurrence and at least Three Million Dollars ($3,000,000) in the annual aggregate insuring against managed care liability. PHCS shall provide Hospital evidence of such coverage prior to the Effective Date of this Agreement and thereafter upon Hospital's reasonable request. PHCS shall maintain the above coverage during the entire term of this Agreement and will notify Hospital immediately in writing of any termination, cancellation or reduction of such coverage required by this Agreement or any failure to renew such coverage as described herein. No representative of Hospital shall be obligated to perform any services as a member of a committee or other group formed by PHCS with respect to the Health Plans

Confidential
PHCS0074

unless insurance coverage acceptable to Hospital is provided by PHCS for such services.

    (b)    If this Agreement is terminated and any insurance coverage of PHCS required under this Agreement is on a claims-made basis, PHCS shall continue such coverage with a non-advancing retroactive date or purchase tail coverage for all insured events alleged to have occurred during the term of this Agreement.

2.11    *Retaliatory Action.*  Neither PHCS nor any Payor shall engage in any retaliatory action against a Hospital, including termination or refusal to renew this Agreement, because Hospital has, on behalf of a Member, reasonably filed a complaint against PHCS or a Payor or has appealed a decision of PHCS or a Payor.

2.12    *Financial Incentives.*  Neither PHCS nor any Payor shall use any financial incentive or make a payment to Hospital or a Preferred Provider which acts directly or indirectly as an inducement to limit medically necessary services.

2.13    *Communications with Patients.*  Neither PHCS nor Payor shall, as a condition of this Agreement with Hospital or in any other manner, prohibit, attempt to prohibit, or discourage a provide from, or in any way penalize, terminate, or refuse to compensate for Covered Services Hospital for:

    (a)    discussing with or communication to a current, prospective, or former patient, or a party designated by a patient, information or opinions regarding that patient's health care, including but not limited to, the patient's medical condition or treatment options; or

    (b)    discussing with or communication in good faith to a current, prospective, or former patient, or a part designated by a patient, information or opinions regarding the provisions, terms, requirements, or services of the Health Plan as they relate to the medical needs of patient.

2.14    *Compliance with Laws.*  PHCS will comply with all laws and regulations governing its performance under this Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations, and certifications necessary for that purpose. PHCS will require each Payor to comply with all laws and regulations governing the Payor's responsibilities under this Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations, and certifications necessary for that purpose. PHCS will, and will require each Payor to act in conformance with the applicable rules and laws of the State of Texas and the Texas Department of Insurance ("TDI"), as amended, as such rules and laws are applicable to PHCS and/or Payor in the performance of their respective obligations under this Agreement.

### Article III. Obligations and Representations of Hospital

3.1    *Policies, Procedures and Rules.*  Hospital will cooperate with PHCS's policies, procedures and rules. PHCS will provide complete copies of such applicable policies,

20008514_8               -8-

Confidential
PHCS0075

procedures and rules to Hospital as needed for Hospital to meet such obligations. Prior to any change to such applicable policies, procedures and rules being effective as to Hospital, PHCS shall provide Hospital with at least thirty (30) days' advance written notice of any material changes in such policies, procedures and rules and a copy of the complete text thereof. If such changes are not acceptable to Hospital, and the Parties are unable to work out their differences during such 30-day period, Hospital may give PHCS written notice that it elects to terminate its participation in this Agreement in accordance with Section 5.3 and if this Agreement so terminates, such changes will not go into effect as to Hospital during the termination period. In the event of a conflict between PHCS's policies, procedures or rules and the terms of this Agreement, this Agreement shall control and govern.

3.2   *Standard of Care.* Hospital will render health care services in a manner which assures availability, adequacy and continuity of care to Members. Hospital shall be responsible for the quality of health care services rendered to Members, and will ensure that such services are rendered in accordance with generally accepted health care practices and standards prevailing in the medical community at the time of treatment, and shall be within the scope of Hospital's license.

3.3   *Nondiscrimination.* Hospital shall provide Covered Services to Members in the same manner and in accordance with the same standards and with the same availability as for patients who are not Members. Hospital shall render Covered Services without regard to race, age, religion, sex, national origin, marital status, source of payment or disability of any Member.

3.4   *Referrals.* Hospital's referrals of a Member for additional or ancillary services shall be to another Preferred Provider unless Hospital or the treating health care professional determines that it would be medically inappropriate to do so.

3.5   *Utilization Management.* Hospital agrees to participate in PHCS's and/or Payor's Utilization Management Program and any revised or substituted Utilization Management Program as provided for in Section 2.5. A copy of the current PHCS Utilization Management Program is attached hereto as Exhibit 1.

3.6   *PHCS Programs.* Subject to Section 3.1, Hospital will participate in and observe the protocols of the PHCS programs described in the administrative handbook(s), as may be modified from time to time, including, without limitation, the quality management and credentialing/recredentialing programs. In the event of a conflict with any protocols of the PHCS programs and this Agreement, this Agreement shall control and govern.

3.7   *Liability Insurance.*

(a)   *Coverage Required.* Hospital shall maintain separate medical professional and malpractice liability insurance in amounts equal to at least $1,000,000 per claim and $3,000,000 aggregate; and separate commercial general liability insurance in amounts equal to at least $1,000,000 per occurrence and $2,000,000 aggregate; or maintain a comparable program of self-insurance.

20008514_8.   -9-

Confidential
PHCS0076

(b) *Continuation of Coverage.* If this Agreement is terminated and any insurance coverage of Hospital is on a claims-made basis, Hospital shall continue such coverage with a non-advancing retroactive date or purchase tail coverage for all insured events alleged to have occurred during the term of this Agreement.

(c) *Evidence of Insurance.* Hospital shall furnish evidence of the above-required coverages to PHCS prior to the Effective Date. Hospital shall maintain the above coverage during the entire term of this Agreement and will notify PHCS immediately in writing of any termination, cancellation or reduction of such coverage or any failure to renew such coverage as described herein.

3.8 *Licenses, Certifications and Accreditations.* Hospital will comply with any applicable local, state and/or federal laws or regulations related to the delivery of health care services. Hospital possesses and will maintain in good standing:

(a) all licenses, accreditations, certifications, and registrations required by law to operate as a hospital or health care facility and to render health care services. Evidence of such licensure shall be provided to PHCS upon request;

(b) accreditation by the Joint Commission on the Accreditation of Healthcare Organizations; and

(c) Medicare certification, if applicable.

3.9 *Separate Agreements.* Hospital is free to enter into a separate agreement with a Payor under such terms and conditions as they may agree upon.

3.10 *Applicability of Payor Acknowledgment.* A particular Payor Acknowledgement shall have no application with respect to Hospital and a Payor on the earliest of the following:

(a) The date the Payor Acknowledgement between Payor and PHCS terminates (PHCS agrees to use best efforts to provide Hospital with advance notice of such date);

(b) The date this Agreement terminates;

(c) The date the Payor ceases business or becomes insolvent, if such bankruptcy proceeding, appointment of trustee, receiver or other custodian or general assignment for the benefit of creditors is not discharged or dismissed within sixty (60) days; or

(d) The date the Payor enters into a separate agreement, other than or in addition to the Payor Acknowledgment, with Hospital for the same Health Plan, product or business as is covered by the PHCS Preferred Provider network in order to avoid stacking of provider networks.

3.11 *Right to Subcontract/Addition or Deletion of Locations.* Hospital may subcontract in its discretion with appropriately licensed health care providers to provide certain Covered

Confidential
PHCS0077

Services upon notice to PHCS and subject to such subcontractor being approved for credentialing in the sole discretion of PHCS pursuant to PHCS's uniform credentialing criteria. Such subcontracting health care providers will provide Covered Services in compliance with the terms of this Agreement. Hospital will be financially responsible for payment to such providers for any Covered Services provided by them. Hospital may add new locations or delete existing locations at which it provides Covered Services. Such locations are listed on Exhibit 4 attached hereto. Such locations will be added when PHCS has determined in its sole discretion that the locations meet the applicable PHCS credentialing criteria, which determination shall be made within sixty (60) days of Hospital's notice to PHCS. Hospital will give PHCS notice of any changes to Exhibit 4.

3.12 *Notice of Actions.* Hospital will send written notice to PHCS within fifteen (15) business days of:

(a) Any final legal or governmental action taken against Hospital, including any termination, probation, suspension or sanction taken by any state or federal government or accrediting agency in connection with a Health Plan, a government sponsored health benefit program or license, accreditation, certification or registration held by Hospital for billing fraud or abuse.

(b) Any legal or governmental action initiated against Hospital related to (i) insolvency of Hospital; (ii) general assignment for the benefit of creditors by Hospital; or (iii) subjection of Hospital to any proceedings under the Federal Bankruptcy Act or any state statute relating to insolvency or the protection of rights of creditors; or (iv) appointment of a receiver for the business or assets of Hospital. Any notice required pursuant to this Section will be provided in accordance with the notice requirements specified in Section 6.16 of this Agreement, except that the address and agent to receive notice shall be as follows: Credentialing Coordinator to the Medical Director, Private Healthcare Systems, Inc., 1100 Winter Street, Waltham, MA 02451.

**Article IV. Payment**

4.1 *Hospital Fees.*

(a) Hospital shall accept as payment in full for Covered Services the fees specified in the attached Schedule 1, even when Payor may have subrogation rights of recovery from another party. Payor shall pay such fees, less any applicable Copayments, Coinsurance, Deductibles or any amounts payable by another payor under the coordination of benefits provisions of the applicable Health Plan.

(b) The fees set forth on Schedule 1 may be changed only upon written agreement of PHCS and Hospital. Renegotiated rates shall take effect on the date agreed upon by the Parties. Upon adoption of a new Schedule 1, inpatient admissions begun under the prior Schedule 1 shall continue under such prior fee schedule until the Member is discharged, unless the Parties agree otherwise.

20008514_B                                                    -11-

Confidential
PHCS0078

4.2    *Billing Restrictions.*

(a)    Hospital is not entitled to payment from Payor for supplies or services that are not Covered Services or are otherwise not subject to reimbursement from Payor. Hospital shall not seek payment from a Member for the difference between Hospital's Normal Billed Charges and the amount allowable pursuant to Schedule 1 of this Agreement, nor shall Hospital seek payment from a Member for services determined to be medically unnecessary pursuant to PHCS's and/or Payor's Utilization Management Program pursuant to this Agreement unless Hospital obtains written consent to such payment from the Member prior to rendering services. Further, Hospital will not seek payment from the Member for the amount of any reduction of fees due to Hospital's failure to comply with the procedures of PHCS's and or Payor's Utilization Management Program. Except as permitted by Section 4.2(b), in no event shall Hospital bill or require any Member to tender any payment with respect to Covered Services, other than Copayments, Coinsurance and Deductibles, if any, as specified in the Member's Health Plan.

(b)    Hospital may bill Members directly for services which are not Covered Services. For Covered Services, Hospital shall bill or collect from Members all Copayments as specified in the Member's Health Plan. Following the receipt of an explanation of benefits form from Payor, Hospital shall bill or collect from a Member any Coinsurance amounts or Deductibles which are due from Members under the terms of the applicable Health Plan. Hospital shall bill Members for Copayments, Coinsurance and Deductibles only on the discounted fee and not Hospital's Normal Billed Charges. PHCS shall assist Hospital in its collection efforts from a Payor upon request.

4.3    *Claim Submission.* Hospital shall use best efforts to submit a Clean Claim for its services or supplies at its Normal Billed Charge within ninety (90) days, but in no event greater than one hundred eighty (180) days, of furnishing Covered Services or discharge, whichever is later, utilizing a UB92 (or its successor) standard billing format, as applicable. Hospital's bills shall be prepared in strict adherence to the usage guidelines and conventions set forth in the CPT, ICD and DSM, as applicable. For inpatient Covered Services continuing for longer than thirty (30) days, Hospital may submit interim claims in thirty (30) day intervals. In the event Payor performs repricing, PHCS shall provide accurate fee schedule information to the Payor, update such information promptly as needed, and monitor Payor's accurate repricing of claims.

4.4    *Claim Processing.*

(a)    Payor (or its designee) shall pay all Clean Claims for Covered Services within forty-five (45) calendar days of receipt of a Clean Claim containing the information set out in Section 4.3 from Hospital in accordance with the applicable reimbursement rates attached on Schedule 1. If Payor (or its designee) determines that a bill is not a Clean Claim, it must notify Hospital by facsimile or electronic mail within fifteen (15) Business Days of receipt of the bill of the specific

Confidential
PHCS0079

Λ.

additional information needed to constitute a Clean Claim and pay the Clean Claim within forty-five (45) calendar days of resubmission by Hospital. If Payor fails to notify Hospital of any additional information needed to have a Clean Claim within fifteen (15) Business Days of Payor's receipt of the claim, the claim shall be deemed to be a Clean Claim. If Payor (directly or through its designee) does not pay within forty-five (45) days of receipt of a Clean Claim, Payor shall no longer be eligible for the rates set forth on Schedule 1 and shall be obligated to pay Hospital at Hospital's Normal Billed Charges and Hospital may elect to terminate this Agreement pursuant to Section 5.5(a)(vi) of this Agreement.

(b)     PHCS and the Payors will provide Hospital an opportunity to appeal and present its case on any bill determined not to be eligible for payment as submitted prior to final denial.

(c)     To the extent allowed by law, any requests for refunds for overpayments by PHCS or a Payor to Hospital must be made in writing within one hundred eighty (180) days of the date payment was made. Future payments to Hospital shall not be offset due to any past overpayments of claims. After expiration of this one hundred eighty (180) day period, the payment shall be considered final.

(d)     If Payor intends to audit a claim or bill, Payor must notify Hospital within forty-five (45) days of receipt of a claim from Hospital of its intent. Notwithstanding the intent to audit the claim or bill, Payor must pay eighty-five percent (85%) of the claim at the rates set forth in this Agreement within such forty-five (45) day period. Any audit of a claim shall be completed and Hospital notified in writing of the results within seventy-five (75) days of the date the claim was originally submitted by Hospital. Payment of any amounts due to Hospital shall be made within thirty (30) days of notification of the audit results. Hospital shall have the right to appeal any determination that Hospital is not entitled to full payment of the claim as originally submitted. Payor shall be obligated to provide Hospital with documentation supporting its audit results.

4.5     *Coordination of Benefits.* Hospital shall reasonably cooperate in coordinating benefit payments with other health care plans which may provide coverage to Members, and in all other matters relating to proper coordination of benefits. Other plans shall include, but are not limited to, group insurance plans, government-sponsored plans, multiple-employer trust plans and prepaid health maintenance organization plans. Except as otherwise required by law, if Payor is other than primary under the coordination of benefits rules, Hospital will accept from Payor, as payment in full, the amount which when added to amounts received by Hospital from any combination of other sources, equals one hundred percent (100%) of the Preferred Payment Rate.

Article V. Term and Termination of Agreement

5.1     *Initial Term.* This Agreement shall take effect on the Effective Date and shall remain in effect for a period of one (1) year unless terminated earlier as provided in this Agreement.

20008514_8                                    -13-

Confidential
PHCS0080

5.2   *Renewal of Agreement.*   This Agreement shall automatically renew for successive one (1) year periods on each anniversary of the Effective Date unless PHCS or Hospital gives to the other at least ninety (90) calendar days' advance written notice of its intention to terminate at the end of the initial term or the current renewal term, or unless this Agreement is otherwise terminated as provided in this Agreement.

5.3   *Voluntary Termination.*   In addition to any other termination rights under this Agreement, Hospital or PHCS may terminate this Agreement at any time upon ninety (90) calendar days' advance written notice to the other Party to this Agreement.

5.4   *Termination With Cause.*

   (a)   By PHCS.   PHCS shall have the right to terminate this Agreement upon at least thirty (30) calendar days advance written notice of such termination to Hospital if Hospital materially breaches any provision of this Agreement. PHCS shall set forth in the notice of termination the facts underlying its claim of breach and cite the relevant sections of this Agreement that are claimed to have been breached. Remedy of such breach to the reasonable satisfaction of PHCS, within thirty (30) calendar days of the receipt of such notice, shall revive this Agreement for the remaining portion of its then-current term.

   (b)   By Hospital.   Hospital shall have the right to terminate this Agreement upon at least thirty (30) calendar days advance written notice of such termination to PHCS if PHCS materially breaches any provision of this Agreement. Hospital shall set forth in the notice of termination the facts underlying its claim for breach and cite the relevant sections of the Agreement that are claimed to have been breached. Remedy of the breach to the reasonable satisfaction of Hospital, within thirty (30) calendar days of receipt of such notice, shall revive this Agreement for the remaining portion of its then-current term.

5.5   *Immediate Termination of Agreement.*

   (a)   Termination by Hospital.   Unless the Parties agree otherwise, this Agreement may be immediately terminated by Hospital upon written notice to PHCS for any of the following reasons:

      (i)   if PHCS becomes insolvent or admits in writing its inability or refusal to pay debts as they become due, or PHCS applies for, or consents to, or acquiesces in the appointment of a trustee, receiver or other custodian for PHCS or any property of PHCS, or make a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointment for PHCS or for a substantial part of the property of PHCS and is not discharged within sixty (60) calendar days; or any bankruptcy, reorganization, debt arrangement or other case or proceeding under any bankruptcy or insolvency law or any dissolution or liquidation proceeding is commenced in respect of PHCS, and if such case or proceeding is not

30008514_8                                    -14-

Confidential
PHCS0081

commenced by PHCS, it is consented to or acquiesced in by such party or remains for sixty (60) calendar days undismissed; or PHCS takes any action to authorize, or in furtherance of, any of the foregoing;

(ii)    if PHCS is found guilty of a felony criminal offense or is found liable for gross misconduct related to this Agreement;

(iii)    if the Texas Department of Insurance determines that the Parties may not perform in accordance with the terms of this Agreement and the Parties are unable to modify the Agreement to satisfy the requirements of the Texas Department of Insurance;

(iv)    if PHCS no longer has the necessary licensure or certification required to operate in conformity with this Agreement;

(v)    if Hospital discovers that PHCS or any Payor has engaged in any activity prohibited by Section 2.6; or

(vi)    if Payor fails to pay Hospital for Covered Services in a timely manner in accordance with Article IV of this Agreement; provided, however, that the Agreement shall not terminate if Payor pays all delinquent amounts for Covered Services within thirty (30) calendar days of receipt of Hospital's notice (subject to any penalties set forth in Section 4.4).

(b)    Termination by PHCS. Unless the Parties agree otherwise, this Agreement may be immediately terminated by PHCS upon written notice to Hospital for any of the following reasons:

(i)    if Hospital engages in any activity which causes or is likely to cause imminent harm to patient health;

(ii)    upon an action by a state medical board, other medical licensing board, or other licensing board or other government agency that effectively impairs Hospital's ability to practice;

(iii)    if Hospital engages in fraud or malfeasance; or

(iv)    any action is taken which requires Hospital to provide PHCS with notice under Section 3.12.

(c)    Effect of Termination. Either Party to this Agreement shall promptly notify the other Party in writing of any event giving rise to termination under this Section, provided that failure to give such notice shall not prevent this Agreement from automatically terminating upon the occurrence of such event. In the event one of the occurrences set forth in this Section occurs only in relation to one Hospital, the automatic termination of this Agreement shall occur only as to that particular Hospital. In the event one of the occurrences set forth in this Section occurs only

Confidential
PHCS0082

in relation to one Payor, the automatic termination of this Agreement, at the sole discretion of Hospital, shall occur only as to that particular Payor.

5.6 *Course of Treatment.* Subject to the provisions of Section 5.7 below, Covered Services performed as a course of treatment which began prior to the termination date of this Agreement will continue to be subject to this Agreement until the course of treatment is complete, subject to all terms and conditions of the Health Plan, unless arrangements are made for a medically appropriately transfer of treatment of the Member to another Preferred Provider. Notwithstanding the foregoing, if a medically appropriate transfer is not made within ninety (90) calendar days of termination, Hospital will be paid its Normal Billed Charges for all services and supplies provided after that 90th day.

5.7 *Special Circumstances.* Termination of this Agreement or termination of a Hospital's participation under this Agreement for reasons other than issues of medical competence or professional behavior by Hospital shall not release the obligation of Payor or PHCS to reimburse the Hospital as a Preferred Provider under the applicable Health Plan if at the time of such termination the Member has special circumstances such as a disability, acute condition, or life threatening illness or is past the 24th week of pregnancy and is receiving treatment in accordance with the dictates of medical prudence. "Special circumstances" means a condition such that the Hospital or other health care provider reasonably believes that discontinuing care by such Hospital could cause harm to the Member. Special Circumstances shall be identified by the Hospital which must request that the Member be permitted to continue treatment under the Hospital's care. In such instance, Hospital agrees not to seek payment from the Member of any amount for which the Member would not be responsible if the Hospital were still a Preferred Provider. Any dispute over whether a Member is subject to a "special circumstance" shall be settled under the terms of Article VII with the majority of the Arbitrators to be physicians licensed in the state of Texas actively practicing in a specialty which customarily treats patients' with the condition of the Member affected. The obligation to reimburse Hospital at the rates set forth on Schedule 1 extends for ninety (90) days beyond the effective date of termination or nine (9) months in the case of a Member who at the time of termination has been diagnosed with a terminal illness. The obligation to reimburse Hospital for services to a Member who at the time of termination is past the twenty-fourth (24th) week of pregnancy extends through delivery of the child, immediate postpartum care and the followup checkup within the first six (6) weeks of delivery. If a medically appropriate transfer has not been effected at the expiration of the preceding timeframes, PHCS or Payor shall reimburse the terminated Hospital for any additional services rendered to a Member at Hospital's Normal Billed Charges. This Section shall survive termination of this Agreement, regardless of the reason for termination.

5.8 *Notice to Members.* Payor shall provide, subject to the provisions of this section, reasonable advance notice to the Member of the impending termination from the Health Plan of Hospital which is currently treating the Member and in the event of termination of Hospital's participation in the Health Plan shall make available to the Member a current listing of Preferred Providers.

Confidential
PHCS0083

 

(a)    If a Hospital is terminated for reasons other than at the Hospital's request, Payor shall not notify Members of the termination until the effective date of the termination.

(b)    If a Hospital voluntarily terminates the Hospital's relationship with Payor, the Hospital shall provide reasonable notice to Members under the Hospital's care, Payor shall provide assistance to the Hospital in assuring that the notice requirements are met.

(c)    If a Hospital is terminated for reasons related to imminent harm, Payor may notify Members immediately.

### Article VI. Miscellaneous

6.1    *Entire Agreement.* This Agreement, including all Schedules and Exhibits, contains the entire agreement among the Parties relating to the rights granted and the obligations assumed under this Agreement. Any prior agreements, promises, negotiations or representations, either written or oral, relating to the subject matter of this Agreement not expressly set forth in this Agreement are of no force or effect.

6.2    *Assignability.* Neither PHCS, Payors nor Hospital may assign, delegate or transfer this Agreement or a Payor Acknowledgment or rights created or granted herein without the prior written consent of the other Party. Hospital may enter into subcontract agreements related to this Agreement solely in conformance with Section 3.11.

6.3    *Independent Entities.* The relationship of Hospital to PHCS and any Payor shall continue to be as independent entities, and no such Party is an employee, agent or representative of any other Party by virtue of this Agreement, nor shall any such Party have any expressed or implied right or authority to assume or create any obligation or responsibility on behalf of or in the name of any other Party by virtue of this Agreement.

6.4    *Third Parties.* This Agreement is entered into by and between the Parties for their benefit. There is no intent by any Party to create or establish third-party beneficiary status or rights or their equivalents in any Member, health care provider, subcontractor or other party which may be affected by the operation of this Agreement, and no such third party shall have any right to enforce or enjoy any benefit created or established under this Agreement.

6.5    *Amendment.* Neither PHCS nor Hospital may modify the terms of this Agreement without prior written approval of the other.

6.6    *Severability.* The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of any other term or provision of this Agreement.

6.7    *Waiver.* Failure to insist upon strict compliance with any of the terms, covenants or conditions of this Agreement shall not be deemed a waiver of those or any other term,

Confidential
PHCS0084

covenant or condition. Any waiver of any provision of this Agreement must be by written agreement of the Parties.

6.8   *Applicable Law.* This Agreement shall be construed and enforced according to the laws of the State of Texas. Venue for any dispute arising under this Agreement shall lie exclusively in Dallas County, Texas. Should any provision of this Agreement require judicial interpretation, the Parties agree and stipulate that the court interpreting or considering this Agreement shall not apply any presumption that the terms of this Agreement shall be more strictly construed against a Party who itself or through its agents prepared this Agreement. The Parties acknowledge that all Parties have participated in the preparation of this Agreement, either through drafting or review, and that each Party has had full opportunity to consult legal counsel of choice before execution of this Agreement.

6.9   *Headings.* The headings of the various Sections of this Agreement are inserted merely for convenience and do not, expressly or by implication, limit, define or extend the specific terms of the section so designated.

6.10   *Access to Records.* As permitted or required by applicable law, during the term of this Agreement and for a period of five (5) years thereafter, PHCS, Payor and Hospital shall have access during regular business hours and upon reasonable notice to all of the other Party's records, books and other documentation directly relevant to this Agreement and Hospital's participation in the Preferred Provider network. With appropriate authorization in conformance with Section 6.11, PHCS and Payors shall have access to Hospital's patient records, books and other documentation directly relevant to Covered Services provided or to be provided to Members, including any charges or claims for Covered Services under this Agreement. Said records, books and documentation shall be maintained in such form, containing such information and preserved for such time periods as are required by applicable law. PHCS, Payors or Hospital may also make copies of any such records, books and documentation. This Section shall survive termination of this Agreement, regardless of the reason for termination.

6.11   *Confidentiality/Privilege.*

(a)   Hospital, Payors and PHCS shall maintain the confidentiality of medical records of Members in accordance with applicable local, state and federal laws. Each Party shall only disclose information contained in a Party's records in accordance with applicable Federal and state laws and regulations. PHCS and Payors recognize, acknowledge, and agree that medical records pertaining to AIDS and psychiatric and alcohol and drug treatment are particularly sensitive and confidential and civil and criminal penalties may be imposed for breaching the confidentiality of the information contained in such records. Patient consent shall be required prior to the release of any documents containing such information. Such consent shall be obtained by PHCS or Payor, as applicable, prior to the release of any document containing such information to PHCS or Payor.

20008514_8                                   -18-

Confidential
PHCS0085

(b)     It is expressly agreed that any disclosure of patient medical records or Hospital quality assurance or peer review information to PHCS or any Payor or their employees, agents and representatives pursuant to this Agreement is not intended, nor shall it be construed to constitute, a waiver of any of the statutory or common law privileges that may attach to such information. Except as provided in this Agreement, PHCS or any Payor and their employees, agents and representatives agree that such information will be used solely and exclusively for the purpose of conducting utilization management and quality assurance activities, will be kept strictly confidential, and will be disclosed only to employees, agents and representatives of PHCS or any Payor with a need to access and with the status also to claim the privileged or confidential status of the information for such activities. Except as allowed by law, any other disclosure, distribution or publication of this information is prohibited. PHCS represents and warrants to Hospital that it is a "health care entity" as defined in the Texas Medical Practice Act and the federal Health Care Quality Improvement Act of 1986, as amended. This Section 6.11 shall survive termination of the Agreement, regardless of the reason for termination.

(c)     Except as otherwise required by law, no Party shall disclose the payment provisions of this Agreement or other financial information relating to this Agreement without the prior written consent of the other Party. The Parties acknowledge that, during the course of performance of their duties and obligations under this Agreement, certain proprietary matters or confidential information of the other Party may become available or otherwise be disclosed. Each Party agrees that any such information obtained under this Agreement will be used and kept in strictest confidence, will not be disclosed to third parties unless compelled by law or court order, and will not be used to gain an unfair advantage over the other Party, discredit the other Party, or gain financial benefit therefrom. This Section shall survive termination of this Agreement, regardless of the reason for termination.

(d)     Notwithstanding the provisions of Section 6.11(c), PHCS may provide prospective policyholders or Payors, or their representatives, with all or part of this Agreement, including, but not limited to, Schedule I, if PHCS first obtains a signed agreement from such parties that such information will be kept confidential and shall be used only for purposes of analyzing such parties' interest in contracting with PHCS for the use of the PHCS Preferred Provider network in connection with Payor's issuance or administration of a Health Plan, compliance with the terms of this Agreement and paying claims.

6.12    *Use of Names.*

(a)     PHCS and/or Payor may use the name, address, telephone number and a factual description of the facilities and services of Hospital in handbooks, directories and announcements of new Preferred Providers provided to Members and Preferred Providers without the prior written consent of Hospital. Hospital may use the name of PHCS in notification letters to physicians and patients to refer to

-19-

Confidential
PHCS0086

Hospital's status as a Preferred Provider without the prior written consent of PHCS.

(b)  Except as provided in this Section 6.12, Hospital, Payor and PHCS reserve the right to use and control the use of its respective name, symbols, and trademarks and service marks presently existing and subsequently acquired.  In addition, except as provided in this Section 6.12, neither PHCS, Payor nor Hospital will use the name, symbol, trademark or service marks, presently existing or subsequently acquired, of PHCS, Payor or Hospital without the prior written consent of such party and will cease any such use immediately upon receipt of written notice from the party or termination of this Agreement, whichever occurs first.

6.13  *Responsibility for Benefits.*  Hospital assumes no liability for Health Plan benefits, nor does Hospital underwrite the liability for benefits under a Health Plan.

6.14  *Other Programs.*  Nothing contained in this Agreement shall prevent PHCS, PHCS's policyholders, policyowners, employers subject to Health Plans, Payors, or Hospital from participating in or contracting with any other health care or other provider, preferred provider organization, health maintenance organization or other health delivery or insurance program.

6.15  *Other Coverage of Payor.*  Nothing in this Agreement shall prohibit a Payor from arranging for types of benefit coverage other than that which is available through this Agreement.

6.16  *Notices.*  All notices, requests, demands and other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given, made and received only when delivered as documented by a courier's receipt; or upon actual receipt of registered or certified mail, postage prepaid, return receipt requested; or by facsimile upon actual receipt, addressed as set forth below (or at such other addresses as may be stated in notices similarly given):

If to PHCS:  Private Healthcare Systems, Inc.
1501 LBJ Parkway #650
Dallas, TX 75234-6800
Attention:  Territory Director
Telephone:
Fax:
UM Fax:

with a copy to:  Private Healthcare Systems, Inc.
1100 Winter Street
Waltham, MA 02451
Attention:  Provider Contracts Administration
Telephone:
Fax:

20008514 8                                    -20-

Confidential
PHCS0087

If to Hospital:     2001 Bryan Street, Suite 2700
                    Dallas, Texas 75201-3005
                    Attention:   Vice President-Managed Care
                    Telephone:   (214) 820-8610
                    Facsimile:   (214) 820-4554

6.17   *Force Majeure.*  No Party shall be deemed to be in default of this Agreement if prevented from performing for reasons beyond its reasonable control, including, without limitation, governmental laws and regulations, acts of God, war, strikes or work stoppages.  In the event that performance must be suspended for any reason due to impossibility of performance within the meaning of this Section, the Parties agree to provide as timely notice of the existence of such conditions as possible, but in any event within forty-eight (48) hours of the commencement of the condition resulting in impossibility of performance hereunder.  In such event, the Parties agree to negotiate in good faith with the goal and intent of preserving this Agreement and the rights of the Parties, to the end of providing normal services as provided herein as nearly as is practicable under the circumstances.

6.18   *Relationship of Hospital/Physician.*  Hospital, PHCS and the Payors acknowledge that the physicians who provide services at Hospital to Members in connection with this Agreement are engaged in the independent practice of medicine, and none of them is under the direction, supervision or control of Hospital as to the practice of medicine or the provision of Covered Services.

6.19   *No Conflict.*  PHCS expressly represents and warrants to Hospital that no term or condition of this Agreement is in conflict with any Payor Acknowledgment.  In the event a term or condition of this Agreement does conflict with any Health Plan or Payor Acknowledgment, the Parties agree that this Agreement shall control and govern.

## Article VII.  Dispute Resolution

7.1   *Dispute Resolution.*  In the event of any problems or disputes that may arise under this Agreement, the Parties to such problem or dispute will meet and seek resolution in good faith.  Any controversy or claim arising out of or relating to this Agreement or the breach thereof, which is not resolved within thirty (30) days or such longer period as may be mutually agreed upon between the Parties, will be submitted to binding arbitration in accordance with the procedures set forth below.  Notwithstanding the agreement to arbitrate, PHCS or Hospital may seek interim and/or permanent injunctive relief pursuant to this Agreement in a court of competent jurisdiction.

7.2   *Appointment of Arbitrators.*  The demand for arbitration shall be in writing, shall be served on the other Party in the manner prescribed in Section 6.16 and shall set forth a short statement of the factual basis for the claim, specify with reasonable particularity the matter or matters to be arbitrated, including identification of the Section or Article of this Agreement in dispute.  Within thirty (30) calendar days of the demand, each Party shall appoint an arbitrator.  The arbitrators so appointed shall appoint a third arbitrator within fifteen (15) days of their appointment.  In the event a Party shall fail to appoint an

Confidential
PHCS0088

arbitrator and notify the other Party as herein provided within such 30-calendar day period, or a third arbitrator is not appointed within the 15-day period, either Party shall have the right to apply to the Chief Judge of the United States District Court for the Northern District of Texas—Dallas Division for an appointment of an arbitrator.

7.3    *Procedure.* The arbitrators shall hold a conference with the Parties as soon as practicable to define and narrow the issues and claims to be arbitrated and to attempt to define and limit discovery and identify the form of evidence to be presented. Any arbitration pursuant hereto shall be conducted in accordance with the Texas General Arbitration Act (the "Act") and the rules of the American Arbitration Association (the "Rules"). All such arbitration proceedings shall take place in Dallas, Texas. Either Party to the arbitration may seek to have the arbitration award entered in a court of competent jurisdiction. Except in connection with the enforcement of such award, or as may otherwise be required by law, all aspects of such arbitration proceeding will be held in strict confidence by the Parties and will not be disclosed to any third Person.

7.4    *Fees.* The fees and expenses of each arbitrator and all other costs and expenses incurred in the arbitration, including reasonable attorneys' fees, shall become due as specified in the arbitration award.

7.5    *Award.* The arbitrators shall render their decision and award upon the concurrence of at least two of their number. Such decision and award shall be in writing, and counterpart copies thereof shall be delivered to each of the Parties simultaneously. In rendering such decision and award, the arbitrators shall not add to, subtract from or otherwise modify the provisions of this Agreement or any agreement entered into pursuant hereto. The arbitration award shall not include any punitive, exemplary, or other non-economic damage component.

7.6    *Limitation of Other Proceedings.* Except as expressly provided in this Article VII each of the Parties agrees that it will not file (nor will it cause any other Person to file) any suit, motion, petition or otherwise commence any legal action or proceeding which may by submitted to arbitration pursuant to this Agreement. Upon the entry of an order dismissing or staying any such action or proceeding in a court, the Party which filed such action or proceeding shall promptly pay to the other Party the attorneys' fees, costs and expenses incurred by such other Party prior to the entry of such order.

7.7    *Survival.* With respect to disputes between the Parties arising during the term of this Agreement, this Article VII shall survive termination or expiration of the Agreement.

(Signature Pages Follow)

Confidential
PHCS0089

IN WITNESS WHEREOF, this Agreement is executed by the Parties through their duly authorized representatives as of the date first set forth above.

**Hospital**                                   **PHCS**

BAYLOR UNIVERSITY MEDICAL CENTER          PRIVATE HEALTHCARE SYSTEMS, INC.

By: _____            By: _____
Name: Gary D. Brock                      Name: George S. Moran
Title: Attorney-in-Fact for M. Timothy Parris, President    Title: Ex. VP Networks
Tax I.D. No. 75-1837484                  Date: August 2001

BAYLOR MEDICAL CENTER - ELLIS COUNTY

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Ron Hudepeth, President
Tax I.D. No. 75-1844139

BAYLOR MEDICAL CENTER AT GARLAND

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for John McWhorter, President
Tax I.D. No. 75-1037591

BAYLOR MEDICAL CENTER AT GRAPEVINE

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Mark C. Hood, President
Tax I.D. No. 75-1777119

BAYLOR/RICHARDSON MEDICAL CENTER

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Ron Boring, President
Tax I.D. No. 75-1233535

BAYLOR MEDICAL CENTER-IRVING

By: _____
Name: Gary D. Brock
Title: Attorney-in-Fact for Michael O'Keefe, President
Tax I.D. No. 75-2586857

Confidential
PHCS0090

BAYLOR INSTITUTE FOR REHABILITATION

By: _____

Name: Gary D. Brock

Title: Attorney-in-Fact for Dan/Lucan. President

Tax I.D. No. 75-1037226

BAYLOR SPECIALTY HOSPITAL (FORMERLY BAYLOR CENTER FOR RESTORATIVE CARE)

By: _____

Name: Gary D. Brock

Title: Attorney-in-Fact for Gary Brunkene, Exec. Dir.

Tax I.D. No. 75-1765385

BAYLOR PEDIATRIC SPECIALTY SERVICES (FORMERLY BAYLOR PEDIATRIC CENTER FOR RESTORATIVE CARE)

By: _____

Name: Gary D. Brock

Title: Attorney-in-Fact for Jay Fox, Exec. Dir.

Tax I.D. No. 75-1765385

MEDCARE @ HOME

By: _____

Name: Gary D. Brock

Title: Attorney-in-Fact for Jerry Carroll, President

Tax I.D. No. 58-2535411

BAYLOR SURGICARE

By: _____

Name: Gary D. Brock

Title: Attorney-in-Fact for Wesley Chick

Tax I.D. No. 75-2813815

TEXAS SURGERY CENTER

By: _____

Name: Gary D. Brock

Title: Attorney-in-Fact for Wesley Chick

Tax I.D. No. 75-2813815

20008514_8                    -24-

Confidential
PHCS0091

BAYLOR HEALTH CARE SYSTEM

HOSPITAL SERVICES AGREEMENT

Schedule 1

Effective  July 1, 2001

Compensation

20008514 8                                    25

Confidential
PHCS0092

Baylor University Medical Center
Payment Rates
Private Health Care System
Effective July 1, 2001

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Medical | | |
| Surgical | | |
| ICU/CCU/NICU | Rev. Codes 174-175, 200-204, 207-213, 219 | |
| ICU/CCU Step down | Rev. Codes 206, 214 | |
| Normal OB, includes baby | DRG 372-375 | |
| Additional days | | |
| C-Section, includes baby | DRG 370-371 | |
| Additional days | | |
| Nursery Newborn/Board | Rev. Codes 170-171, 179 | |
| Nursery, Level 2 & 3 | Rev. Codes 172-173 | |
| Craniotomy and other nervous system procedures | DRG 1, 2, 3, 7 | |
| Spinal and extracranial vascular procedures | DRG 4, 5 | |
| Angioplasty, PTCA | DRG 112 | |
| Cardiac Catheterization | DRG 124-125 | |
| Pacemaker Implantation | DRG 115-118 | |
| Open Heart Surgery | DRG 104-111 | |
| Circulatory Disorders w/CC | DRG 121 | |

BUMC Rates
PHCS PPO/POS/EPO 07-01-01

Confidential
PHCS0093

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Circulatory Disorders w/o CC | DRG 122 | |
| Rehabilitation | Rev. Codes 118, 128 | |
| Orthopedic Surgery | DRG 209-234, 471, 491, 496-503 | |
| Transplants and Transplant related services-Inpatient or Outpatient. | | |

Stop-Loss (Does not apply to Transplants & Transplant Related Services.)  If Billed charges exceed ▨ for a single inpatient stay, reimbursement reverts to ▨ of billed charges for the entire stay.

| | | |
|---|---|---|
| Ambulatory Surgery | | |
| Emergency Room | Rev. Codes 450-459 | |
| Other Outpatient | | |
| Excluded from all inpatient and outpatient rates: TPA, Implants, Prosthetics, Orthotics, Pacemakers, Stents, AZT, Activase, Chemo Drugs, | Rev. Codes 259, 274-275, 278-279 | |

BLMC Rates
PHCS PPO/POS/EPO 07-01-01

Confidential
PHCS0094

Baylor Medical Center Ellis County at Waxahachie
Baylor Medical Center at Grapevine
Baylor/Richardson Medical Center
Baylor Medical Center at Garland
Baylor Medical Center at Irving
Payment Rates
Private Health Care System
Effective July 1, 2001

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Medical | | |
| Surgical | | |
| ICU/CCU/NICU | Rev. Codes 174-175, 200-204, 207-213, 219 | |
| ICU/CCU Step down | Rev. Codes 206, 214 | |
| Normal OB, includes baby | DRG 372-375 | |
| Additional days | | |
| C-Section, includes baby | DRG 370-371 | |
| Additional days | | |
| Nursery Newborn/Board | Rev. Codes 170-171, 179 | |
| Nursery, Level 2 & 3 | Rev. Codes 172-173 | |
| Craniotomy and other nervous system procedures | DRG 1, 2, 3, 7 | |
| Spinal and extracranial vascular procedures | DRG 4, 5 | |
| Angioplasty, PTCA | DRG 112 | |
| Cardiac Catheterization | DRG 124-125 | |

*BHCS Ancillaries Rates*
*PHCS PPO/POS/EPO 01-01-01*
*Page 1 of 2*

1

Confidential
PHCS0095

| Service | DRG or Revenue Code | PPO/POS/EPO |
|---|---|---|
| Pacemaker Implantation | DRG 115-118 | |
| Open Heart Surgery | DRG 104-111 | |
| Circulatory Disorders w/CC | DRG 121 | |
| Circulatory Disorders w/o CC | DRG 122 | |
| Rehabilitation | Rev. Codes 118, 128 | |
| Orthopedic Surgery | DRG 209-234, 471, 491, 496-503 | |
| Transplants and Transplant related services-Inpatient or Outpatient | | |

Stop-Loss (Does not apply to Transplants & Transplant Related Services.) If billed charges exceed ▒▒▒ for a single inpatient stay, reimbursement reverts to ▒▒▒ of billed charges for the entire stay.

| | | |
|---|---|---|
| Ambulatory Surgery | | |
| Emergency Room | Rev. Codes 450-459 | |
| Other Outpatient | | |
| Excluded from all inpatient and outpatient rates: TPA, Implants, Prosthetics, Orthotics, Pacemakers, Stents, AZT, Activase, Chemo Drugs, | Rev. Codes 259, 274-275, 278-279 | |

Confidential
PHCS0096

Baylor Institute for Rehabilitation
Baylor Center for Restorative Care
Our Children's House
Baylor Center for Reproductive Health
Baylor SurgiCare
Texas Surgery Center
Payment Rates
Private Health Care System
Effective July 1, 2001

| Service | PPO, POS, EPO |
| --- | --- |
| Inpatient Services* | |
| Outpatient Services | |
| Ambulatory Surgery | |



*Excluded from all inpatient services:  To be paid at [     ] of billed charges:
TPA's, Specialty Beds – Rev. Code 278-279, Implants, Durable Medical Equipment,
Prosthetics, Positron Emission Tomography, Orthotics, Chemo Drugs, Pacemakers,
Stents

Confidential
PHCS0097

Medcare@Home
Affiliated with Baylor Health Care System
Payment Rates
Private Health Care System
Effective July 1, 2001

███ of billed charges.

Confidential
PHCS0098

EXHIBIT 1

UTILIZATION MANAGEMENT PROGRAM

[to be attached hereto]

20008514 8

Confidential
PHCS0099

EXHIBIT 1

I.   UTILIZATION MANAGEMENT SERVICES MODELS

1.   Utilization Management Services Models.  PHCS shall provide Payor upon purchase by Payor from PHCS with Utilization Management Services using one of the models noted below.  The models vary in the number of procedures, treatment or supplies reviewed and types of medical encounters.  Ninety (90) days prior to the commencement of Utilization Management Services, Payor shall choose one of the following models:

   (a)   Comprehensive Model -- The Comprehensive Model reviews treatment over the full continuum of care.  Reviews are conducted on a specific list of procedures, therapies, supplies and pharmaceuticals developed by PHCS.  The Comprehensive Model includes the following service components:

      (i)   Notification
      (ii)   Precertification
      (iii)   Admissions Review
      (iv)   Concurrent Review
      (v)   Discharge Planning

   (b)   Focused Model -- The Focused Model reviews a smaller scope of treatments (inpatient admissions and selected outpatient procedures) to be reviewed.  The Focused Model includes the following service components:

      (i)   Notification
      (ii)   Precertification
      (iii)   Admissions Review
      (iv)   Concurrent Review

   (c)   A la Carte Services -- A la Carte services provides a number of stand-alone Utilization Management Services components which may be added to either the Focused or Comprehensive Models.  A la Carte services include:

      (i)   Notification
      (ii)   Case Management
      (iii)   Retrospective Medical Record Review
      (iv)   Physician Stand Alone Review
      (v)   Discharge Planning
      (iv)   Behavioral Health Comprehensive Review

II.   UTILIZATION MANAGEMENT SERVICES COMPONENTS.

The following are the components of the Utilization Management Services.  Depending upon the model and setting chosen by the Payor, the Utilization Management Services provided to Payor may contain some or all of the following components:

Confidential
PHCS0100

10

1. Notification involves obtaining and documenting a complete record of medical services rendered to a Member to assist Payor with Payor's benefits administration and claims payment. Standard notification services includes obtaining and documenting a complete record of medical services for acute (short term) inpatient admissions, as well as out-patient surgical procedures.

2. Utilization Review. Utilization Review or treatment review is a service for evaluating and certifying whether certain care, treatment, pharmaceuticals or supplies prescribed for a Member meets certain medical necessity requirements of the Member's health care plan as well as examining length of stay and location of care requests. The criteria for Utilization Review (the "Utilization Review Requirements") is as follows:

   • determining whether a particular treatment is necessary and/or appropriate given the symptoms, and is consistent with the diagnosis, if any;

   • determining whether a particular treatment is not generally regarded as experimental or improven by recognized medical professionals or appropriate governmental agencies (such as, but not limited to, the United States Food and Drug Administration, the Public Health Services Office of Health Technology Assessment or the National Institutes of Health); and

   • if the treatment meets the requirements of subparagraphs (i) and (ii) above, PHCS then evaluates and certifies the appropriateness of the proposed location (i.e. inpatient or outpatient) of the prescribed treatment, and the appropriate length of stay for the prescribed treatment.

   (a) Utilization Review Process.

      (i) If PHCS's opinion is that the prescribed treatment meets the Utilization Review Requirements, PHCS will certify such treatment, setting, and/or amount of visits or services. The Precertification will then be communicated to the Member. If PHCS's opinion is that the prescribed treatment, setting, and/or amount of visits or services, does not meet the Utilization Review (or Continued/Concurrent Stay Review) Requirements, certification will not be tendered and the Member will be advised that he/she may appeal the decision. Once the appeal is initiated, the case will be reviewed by a board certified physician advisor, other than the original reviewing physician, who holds certification in the same or similar specialty as the treating physician and could typically manage the medical condition, procedure, or treatment under review ("Appeal Physician"). If the Appeal Physician confirms the conformity of the prescribed treatment to the Utilization Review (or Continued/Concurrent Stay Review) Requirements, the case will be certified. If a disagreement still exists between the Appeal Physician and the attending physician, or the case is not certified, then the Member will be referred to the Payor for further consideration. It is expressly understood that any claims for appeal described in this paragraph shall be submitted to the Payor for adjudication and payment.

      (ii) For those Members eligible for preferred hospital arrangements, PHCS will identify the preferred hospitals and notify the Member's treating physician whether or not the non-emergent admission is scheduled at a preferred hospital. Preferred Hospital shall mean a licensed facility that agrees to provide health care services to Members through a PHCS Provider network ("Preferred Hospital").

   (c) Utilization Review Services.

Confidential
PHCS0101

(i) Precertification. Precertification is the Utilization Review and certification of medical, surgical, obstetrical or behavioral health treatment prescribed *prior* to the date of such medical, surgical, obstetrical or behavioral health treatment prescribed, or in some instances very shortly thereafter (e.g., day of) (hereinafter "Precertification").

(ii) Precertification of Ancillary and Rehabilitation Services ("Ancillary Precertification"). Ancillary Precertification is the Utilization Review and certification (and Continued/Concurrent Stay Review) of certain ancillary or rehabilitation care or treatment prescribed for a Member to determine whether such ancillary or rehabilitation care or treatment meets certain medical necessity requirements for a *determined amount/quantity* of care or treatment (i.e., 10 chiropractic visits, 5 days of home nursing for 2 hours a day, etc.) prior to the date of the ancillary or rehabilitation care or treatment prescribed for a Member, or in some instances very shortly thereafter (e.g., day of) (hereinafter "Ancillary Precertification"). For purposes of this Exhibit, ancillary services may include, but are not limited to, home health care services, outpatient therapies, skilled nursing and hospice. Only those cases in which the Member is eligible to receive benefits under Health Plans offered or administered by the Payor, as determined by the Payor, will be reviewed by PHCS for Ancillary Precertification.

(iii) Admission Review. Admission Review is the Utilization Review and certification of medical, surgical, obstetrical or behavioral health treatment prescribed *at the time of an Inpatient admission* (hereinafter "Admission Review").

(iv) Concurrent Review. Concurrent Review is the Utilization Review and certification of requests for and extension to a previously authorized treatment. PHCS will review the clinical information and, when appropriate, certify the extended stay. Requests that do not meet the review guidelines are referred to Physician Review.

(v) Retrospective Review. Retrospective Review is the Utilization Review and certification of medical, surgical, obstetrical, behavioral health treatment, ancillary and rehabilitation services that is performed *retrospectively* ("Retrospective Utilization Review"). Payor will identify those claims appropriate for Retrospective Utilization Review and will forward information regarding such claim to PHCS, including, a copy of the written referral, a copy of the claim in question, and any supporting medical records.

3. Discharge Planning. With input from the Utilization Review process, selected medical/surgical and psychiatric admissions cases are intervened in by a registered nurse for the purpose of coordinating a Member's transfer from a acute care setting to a lesser level of care setting and/or coordinate the delivery of healthcare services such as home health services, DME, HHA, nursing, safety checks, IV and medications to the Member who is being discharged to the lesser level of care.

Confidential
PHCS0102

EXHIBIT 2

PAYOR LISTING

[to be attached hereto]

Confidential
PHCS0103

Sent by: Private Healthcare          9726209850;          03/19/01 12:54PM; JetFax_#8;   Page 3

SAMPLE
EXHIBIT A

PHCS hereby signifies its acceptance on behalf of the Carriers or Subsidiaries listed below, pursuant to a power of attorney, of the terms and conditions specified in the document entitled Amendment to the Preferred Hospital Agreement effective as to Baylor Health Care System (BHCS) on April 1, 2001.

CARRIERS AND (SUBSIDIARIES)



Page 2 of 22

Confidential
PHCS0104

03/19/01 12:55PM; JetFax_#8; Page 4

SAMPLE
EXHIBIT A CONTINUED



Page 3 of 22

Confidential
PHCS0105

Sent By: Private Healthcare   9/26209650;   03/19/01 12:55PM;JetFax_#8; Page 5/23

SAMPLE
EXHIBIT A CONTINUED



BY: _____
   Territory Director
DATE: _____

Page 4 of 22

Confidential
PHCS0106

EXHIBIT 3

PAYOR ACKNOWLEDGMENT

[to be attached hereto]

Confidential
PHCS0107

## PAYOR ACKNOWLEDGEMENT

The undersigned (the "Payor") hereby acknowledges the following obligations, effective as of _____, as provided in the Subscriber Services Agreement between Payor and Private Healthcare Systems, Inc. ("PHCS"):

### I. RECITALS:

A.   Payor and PHCS are parties to a subscriber services agreement under which PHCS will provide to Payor certain provider Network services, including credentialing, recredentialing and quality assurance services, and/or comprehensive medical management services, including utilization review, quality assurance, case management and other cost containment related services, (the "Services") in certain markets throughout the United States (the "Services Agreement").

B.   PHCS has entered into to contracts with health care providers for participation in the PHCS provider Network ("PHCS Preferred Providers") at certain reimbursement rates for health care services provided to Payor's Covered Employees pursuant to certain PHCS preferred provider agreements (the "PHCS Preferred Provider Agreement").

C.   All terms in this Payor Acknowledgement shall have the meaning ascribed to them in the Services Agreement unless otherwise defined in this Payor Acknowledgement or the PHCS Preferred Provider Agreement, copies of which such form PHCS Preferred Provider Agreements have or will be provided to the Payor.

In order to purchase the provider Network Services offered by PHCS, Payor hereby acknowledges the following:

1.1   Licenses, Registrations and Certifications.   Payor will comply with all laws and regulations governing its performance under the Services Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations and certifications necessary for that purpose.

1.2   Payment for Health Care Services and Compliance with Preferred Provider Agreement.   Payor agrees to (i) pay or arrange to pay PHCS Preferred Providers in accordance with the PHCS Preferred Provider Agreement for such Preferred Provider; and (ii) comply with the applicable terms and conditions of the PHCS Preferred Provider Agreements, for the Markets and the Networks for which Payor has purchased provider Network Services from PHCS.

1.3   Marketing.   Payor will make available and promote Healthcare Plans which provide direction and redirection to Preferred Providers, to the extent that it is lawful to do so.   Such direction and redirection may occur through, but is not limited to, greater plan benefits or directory listings. Payor will make available to Covered Employees the name, address and telephone number of PHCS Preferred Providers.

Confidential
PHCS0108

1.4 Identification and Eligibility. Payor will furnish Covered Employees with a means of identifying themselves as covered under a HealthCare Plan for the provision of the health care services through a PHCS provider Network. Such methods of identification may include, but is not limited to, (i) identification cards, (ii) affixing the PHCS logo to identification cards, or (iii) a PHCS phone number identifier. In addition, Payor will use its best efforts to provide the most current eligibility information available on the day of inquiry for those Covered Employees for whom Payor maintains eligibility information.

1.5 Copying of Medical and Billing Records. If Payor requests copies of medical and billing records from a Preferred Provider for purposes other than the reconsideration of payment to such Preferred Provider, Payor agrees to reimburse the Preferred Provider for such copies according to the rates specified in the Preferred Provider Agreement between PHCS and such Preferred Provider.

1.6 Third Party Beneficiaries. Nothing contained in this Agreement will be construed to make PHCS or Payor, and their respective directors, officers, employees, agents and representatives liable to, persons or entities not parties hereto in situations in which they would not otherwise be subject to liability. Nothing contained herein will be construed as, or be deemed to create, any rights or remedies in any party other than PHCS or Payor.

1.7 Inappropriate Access of the Preferred Payment Rates. Payor agrees that the Preferred Payment Rates agreed to in the PHCS Preferred Provider Agreement between PHCS and the Preferred Provider are applicable solely for Covered Care rendered to Covered Employees covered under a Healthcare Plan which utilizes the PHCS provider Network. In the event that a Preferred Provider believes Payor is, or may be, accessing the Preferred Payment Rates set forth in the Preferred Provider Agreement inappropriately (e.g., to non-eligible individuals), the Preferred Provider shall notify PHCS immediately in writing. Upon receipt of such notice, PHCS will work in cooperation with the Preferred Provider and Payor to determine whether Payor appropriately accessed the Preferred Payment Rates for a Covered Employee covered under a Healthcare Plan which utilizes the PHCS provider Network. In the event that PHCS finds that Payor intentionally and inappropriately accessed the Preferred Payment Rates agreed to in the Preferred Provider Agreement, Payor (i) will reimburse the Preferred Provider for the difference between the Preferred Payment Rate and the Provider's regular billing rates, and/or (ii) allow PHCS to terminate or limit the Payor's access to the applicable Preferred Provider's Preferred Provider Agreement.

PAYOR:

_____

By: _____

Name: _____

Title: _____

Date: _____

Confidential
PHCS0109

## EXHIBIT 4

### HOSPITAL LOCATIONS

Baylor University Medical Center
3500 Gaston Avenue
Dallas, TX  75246

Texas Surgery Center
3535 Worth Street, Suite 7000
Dallas, TX 75246

Baylor Medical Center – Ellis County
1405 West Jefferson
Waxahachie, TX 75165

Baylor Medical Center at Garland
2300 Marie Curie
Garland, TX  75042

Baylor Medical Center at Grapevine
1650 West College Street
Grapevine, TX  76051

Baylor/Richardson Medical Center
401 West Campbell Road
Richardson, TX  75080

Baylor Medical Center-Irving
1901 N. MacArthur Blvd.
Irving, TX 75061

Baylor Institute for Rehabilitation
3505 Gaston Ave.
Dallas, TX 75246

Baylor Specialty Hospital
3504 Swiss Avenue
Dallas, Texas 75204

Baylor Pediatric Specialty Services
3301 Swiss Avenue
Dallas, TX 75204

MedCare @ Home
6301 Gaston Avenue, Suite 800
Dallas, TX 75214

Baylor SurgiCare
3920 Worth Street
Dallas, TX 75246

Confidential
PHCS0110

EXHIBIT 5

PHCS PRODUCTS

Included:

- PPO

- POS (until December 31, 2001)

Specifically Excluded:

- Healthy Directions

20008514 R

Confidential
PHCS0111

# EXHIBIT C

## SUBSCRIBER SERVICES AGREEMENT

This SUBSCRIBER SERVICES AGREEMENT (which, together with all exhibits hereto, is referred to as the "Agreement") is made and entered into as of _____April 17._____, 199 8 (the "Effective Date"), between PRIVATE HEALTHCARE SYSTEMS INC., a Delaware corporation, located at 1100 Winter Street, Waltham, Massachusetts 02154, ("PHCS"), and Group & Pension Administrators, Inc., a Texas corporation, located at 300 Municipal Drive, Richardson, TX 75080 (the "Subscriber").

### RECITALS

A.    PHCS is in the business of providing provider networks and a comprehensive medical management system, including utilization review, quality assurance, and other cost containment related services throughout the United States.

B.    Plans offered and managed by Subscriber provide health benefits and/or services to eligible participants under health benefit plans.

C.    Plans offered and managed by Subscriber generally include financial incentives to encourage eligible participants to choose treatment from providers who have contracted with entities, such as preferred provider organizations and exclusive provider organizations, who are in the business of offering provider discounts and other managed medical benefits.

D.    Subscriber is interested in and intent upon becoming a subscriber for services of PHCS, thus availing itself of the PHCS comprehensive medical management system.

THEREFORE, the parties agree as follows:

### ARTICLE I:  DEFINITIONS

The following terms are defined for purposes of this Agreement:

1.1    [RESERVED]

1.2    "Centers of Excellence" shall mean the services described in Exhibit B to this Agreement.

1.3    "Covered Employee" shall mean the group consisting of an individual, and his or her covered dependents, if any, which:

(a)    is entitled to receive benefits under Healthcare Plans; and

GPASSA2.doc                                1

GPA-03005



(b)   is eligible to receive the Services (as defined in Section 1.24 below) from PHCS. For individual medical plans, "Covered Employee" shall mean the group consisting of the policyholder of the individual health policy, and his or her covered dependents.

1.4   [RESERVED]

1.5   "Healthcare Plan" shall mean healthcare benefits provided through either a group plan, an individual plan, or the medical reimbursement portion of a workers' compensation plan, whether insured or self-funded or any combination thereof, which plan is underwritten, administered, or managed by the Subscriber.

1.6   "Initial Fee" shall have the meaning set forth in Article IV of this Agreement.

1.7   "Initial Term" shall have the meaning set forth in Section 3.1 of this Agreement.

1.8   [RESERVED]

1.9   "Market" shall mean the separate geographic areas defined by PHCS and listed on Exhibit E, for which geographic areas Subscriber has requested that PHCS provide Network Services. Following the commencement of the Initial Term of this Agreement, Subscriber may add or delete Markets identified on Exhibit E by providing PHCS with at least ninety (90) days notice prior to the effective date of such addition or deletion of said Market(s) subject to the restrictions set forth in Section 5.11 of this Agreement.

1.10   "Materials" shall have the meaning set forth in Section 5.4 of this Agreement.

1.11   [RESERVED]

1.12   "Monthly Fee" shall have the meaning set forth in Section 4.2 of this Agreement.

1.13   "Network" shall mean one of the networks of Participating Providers established in the Markets.

1.14   "PHCS Mark" shall mean the service mark or marks, together with accompanying design, and the PHCS Graphic Standards (Guide to the Use of the Private Healthcare Systems, Inc. Logo) which has been provided to Subscriber.

1.15   "Plan Sponsor" shall mean any corporation, partnership, labor union, association, employer, or any other group that provides medical benefits to its employees or members pursuant to the terms of a Healthcare Plan.

1.16   "PCP Plan" shall mean the services described in Exhibit G of this Agreement.

1.17   [RESERVED]

GPASSA2.doc                                2

GPA-03006

Oct '26 O6 04:06p       Cathy Englk                                    /442410              p.4



1.18  [RESERVED]

1.19  [RESERVED]

1.20  "PPO Services" shall mean the services described in Exhibit J to this Agreement.

1.21  "Participating Provider" shall mean a Provider who has been selected by PHCS for participation in the network of providers that support the Services.

1.22  "Provider" shall mean hospital, physician, ancillary, physician's office personnel, or other direct provider of health care services.

1.23  "Service Exhibit" shall mean each of the exhibits to this Agreement which described the services to be provided by PHCS to Subscriber.

__ 1.24  "Services" shall mean the services provided by PHCS to the Subscriber pursuant to this Agreement.

1.25  [RESERVED]

1.26  "Successive Terms" shall have the meaning set forth in Section 3.1 of this Agreement.

1.27  [RESERVED]

1.28  [RESERVED]

## ARTICLE II: SERVICES

Pursuant to the terms and subject to the conditions of this Agreement, PHCS hereby offers the following Services to Subscriber:

2.1  <u>Services</u>.  Commencing on July 1, 1998, PHCS will make the Services available to the Subscriber subject to the terms and conditions contained in this Agreement, including the Service Exhibits.

2.2  <u>Terms</u>.  In addition to all other terms and conditions of this Agreement:

(a)  · the Services shall be provided by PHCS in accordance with the provisions of Exhibit N to this Agreement.

(b)  (i) PHCS shall have the right, in its sole discretion to add to, modify, rescind, delete, or change any or all of the Services;

(ii) PHCS shall give the Subscriber prior written notice of any adjustment to the Services pursuant to the preceding paragraph, and such adjustment to the Services shall be

GPASSA2.doc                                      3

GPA-03007



effective no sooner than the ninetieth (90th) day following the mailing of notice to the Subscriber;

(iii) if the adjustment to the Services is not acceptable to the Subscriber, the Subscriber may terminate this Agreement in accordance with Section 3.4; and

(iv) whether or not the Subscriber elects to utilize the Services, the Subscriber shall pay to PHCS the fees set forth in Article IV of this Agreement.

(c) the Subscriber hereby grants to PHCS a power of attorney, as set forth in Exhibit O hereto, to act in its name and on its behalf with respect to any and all contracts with Participating Providers regarding the Services. Subscriber understands and acknowledges that PHCS will be undertaking a recontracting effort to eliminate payors from the contracts with Participating Providers and adding PHCS to those contracts as the network administrator. This recontracting effort includes drafting new form agreements to be used to (i) recontract with existing Participating Providers in the PHCS network and (ii) contract with Providers who are not in the PHCS network (the "Recontracting Effort"). At the time of the Recontracting Effort and upon written notice to Subscriber, Subscriber agrees to allow PHCS to remove it as a party to those contracts with Participating Providers and to take all other steps PHCS deems reasonably necessary to effectuate the termination of Subscriber as a party to those contracts at the time PHCS is added as a party to serve as the network administrator.

(d) PHCS shall use its best efforts to determine that each Participating Provider participating meets certain quality assurance standards established by PHCS.

2.3    Ordering. The Subscriber shall order Services for a Plan Sponsor by submitting written notification to PHCS containing the information set forth in the applicable Service Exhibit.

2.4    Use of Subscriber's Marketing Name. PHCS agrees to use the following marketing name when referring to Subscriber in any of its marketing materials: _Group + Pension Adm., Inc._

## ARTICLE III: TERM & TERMINATION

3.1    Term. This Agreement shall continue in force from the Effective Date through June 30, 1999 (the "Initial Term"), and shall be renewed automatically for successive terms of one year (the "Successive Terms") until terminated as provided in this Article. As specified in more detail below, termination of this Agreement will be initiated by the provision of written notice which will specify the date of termination (the "Termination Date").

3.2    Termination With or Without Cause. Either party may terminate this Agreement at any time with or without cause by giving the other party written notice of its intention to terminate at least ninety (90) days prior to the Termination Date.

GPASSA2.doc                                    4

3.3 <u>Termination by PHCS.</u>  PHCS may terminate this Agreement in the event of any effort on the part of Subscriber to assign any Participating Provider contract, assign a new network administrator, or otherwise attempt to assume control of the PHCS Network (s).

3.4 <u>Termination After Fee Adjustment For Services or Change in Services.</u>  If Subscriber receives notice of a fee adjustment pursuant to Section 4.6 of this Agreement, a claims repricing fee pursuant to Sections 5.10 or 10.2 of this Agreement, or notice of a change in services pursuant to Section 2.2(b) of this Agreement, Subscriber shall have thirty (30) days to notify PHCS of its decision to terminate this Agreement.  The Termination Date shall be the sixtieth (60th) day after the date on which PHCS receives the Subscriber's written notice of termination pursuant to its right under this Section and in accordance with Section 10.5 of this Agreement.

3.5 <u>Effect of Termination.</u>  All obligations of the parties under this Agreement shall terminate on the Termination Date, except for the obligations specified in or created by Article IV (with respect to previously accrued fees and retroactive adjustments to fees), Article VI, and Article VIII.  Further, each of the contracts entered into by PHCS with Participating Providers on behalf of Subscriber shall terminate on the Termination Date.  PHCS shall take all steps it deems reasonably necessary to effectuate the termination of any and all such Participating Provider contracts.

## ARTICLE IV: FEES & TERMS OF PAYMENT

4.1 <u>Initial Fee</u>  The Subscriber shall pay PHCS the initial fee, if any, specified in Exhibit P to this Agreement ("Initial Fee") on the first day of the Initial Term.  In the event the Subscriber fails to: (a) initiate Services with PHCS under this Agreement; (b) continue the provision of Services by PHCS, within the first sixty (60) days of the Initial Term pursuant to this Agreement, this Agreement shall automatically terminate within one hundred fifty (150) days from the effective date of this Agreement, provided, however, Subscriber shall pay PHCS the implementation or initial fee specified on Exhibit P to this Agreement.

4.2 <u>Monthly Fee.</u>  The Monthly Fee shall be paid for PPO Services in the following manner.  For each calendar month during the Initial Term and any Successive Term the Subscriber shall pay to PHCS a fee every month ("Monthly Fee").  Subscriber shall calculate such Monthly Fee on the basis of (a) the number of Covered Employees eligible to receive each of the Services listed in this Section 4.2 as of the first day of any month, multiplied by (b) the rate for that particular service for each Covered Employee as set forth in Exhibit P to this Agreement.  Each payment of the Monthly Fee shall be accompanied by a statement prepared by the Subscriber showing the number of Covered Employees enrolled in each of the Services listed in this Section 4.2, and its calculation of the Monthly Fee paid, in a form mutually agreed to by the parties.

4.3 [RESERVED]

4.4 [RSERVED]

GPASSA2.doc                                    5

GPA-03009

4.5   Payment Terms. The Monthly Fee shall be payable on or before the fifteenth (15th) day of the month in which such fee was incurred.

4.6   PHCS Fee Adjustment. The Monthly Fees may be adjusted as of July 1st during any Successive Term; provided, that PHCS notifies the Subscriber no later 90 days immediately preceding the September 1st fee adjustment date of any proposed adjustment to the Monthly Fees. If the fee adjustment in any Successive Term is not acceptable to the Subscriber, the Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement, but in any case Subscriber shall pay the adjusted Monthly Fees from the effective date of the adjustment until the Termination Date.

4.7   Retroactive Adjustments. In the event that Subscriber submits information which seeks a retroactive decrease in the amount of any previously paid Monthly Fee or other fees set forth on Exhibit P, such retroactive adjustments in aggregate enrollment will be reflected only in the next month's Monthly Fees; provided, however, such retroactive adjustment in aggregate enrollment is requested by Subscriber in writing within six (6) months following the month for which such adjustment is being requested and in no event shall such adjustment be made any later than February 15 for the previous calendar year (e.g. In the event Subscriber seeks an adjustment for enrollment fee paid in November, it must seek an adjustment prior to February 15 of the following year. An adjustment sought in April for the month of November in the previous calendar year is prohibited.) In the event the Agreement is terminated, PHCS shall pay Subscriber the retroactive adjustment within thirty (30) days following the Termination Effective Date. Nothing contained in this Section 4.7 will limit the ability of PHCS to obtain retroactive adjustments to Monthly Fees or any other fees contained in this Agreement should any audit conducted by either party, or its designee, indicate inaccuracies in the enrollment figures or other information by which the Monthly Fees or any other fees contained in this Agreement were calculated.

## ARTICLE V:  DUTIES OF THE SUBSCRIBER

5.1   Covered Employee Health Care Benefits. As between PHCS and the Subscriber, the Subscriber shall retain full authority and responsibility (i) for determining whether a Covered Employee is eligible to receive benefits under Healthcare Plans, (ii) for determining the amount of such benefits Covered Employee is to receive under any such Healthcare Plan, and (iii) for providing any such benefits to the Covered Employee. PHCS is providing the Services under the terms of this Agreement as an independent contractor. PHCS shall not be authorized to communicate or confirm eligibility or coverage under the Healthcare Plans. Communications between PHCS and the Covered Employee or the Covered Employee's attending physician shall disclaim confirmation of eligibility or coverage.

5.2   Notice to Plan Sponsors and Covered Employees. It is the sole responsibility and obligation of the Subscriber to cause Plan Sponsors to timely and thoroughly communicate to all Covered Employees any and all requirements necessary to enable PHCS to provide the Services. Should the Subscriber fail to so notify Plan Sponsors and Covered Employees, PHCS shall be under no obligation to provide the Services to the Subscriber. PHCS shall, however, have the ability to communicate with Covered Employees in connection with any customer service issues directed to PHCS by the Covered Employee or Subscriber regarding the Services.

GPASSA2.doc                                    6

GPA-03010

5.3   Release of Information.  The Subscriber will use its best efforts to cause each Covered Employee to provide to his or her attending physician any authorization that may be necessary for the release of information concerning the Covered Employee to PHCS and by PHCS to healthcare providers, Subscriber, claims payors, and any other person or entity involved in the provision or review of health care services, claims processing, or claims payment of the Services.  Subscriber agrees that PHCS shall not be in breach of this Agreement if it cannot perform Services due to the failure of Subscriber to secure such authorization from any individual Covered Employee.

5.4   Materials.  The Subscriber may develop for anyone (except Participating Providers) their own sales materials, employee communication materials, and explanatory materials regarding the Services ("Materials").  . The Subscriber shall not, and shall take necessary actions to insure that each Plan Sponsor shall not, distribute, deliver or otherwise use any Materials without first submitting the Materials to PHCS.  Such review shall be limited in scope to matters potentially affecting the liability, responsibility, or reputation of PHCS.  The Subscriber shall make any modifications to the Materials as may be reasonably requested by PHCS prior to any distribution of the Materials.  ·PHCS shall have no · responsibility for the contents of the Materials, and nothing in this Agreement shall impose upon PHCS any obligation to review or comment on the Materials, or constitute a waiver of any of the provisions of Article VI.

5.5   Plan Sponsor Monthly Statements.  The Subscriber shall provide a monthly statement to PHCS listing each Plan Sponsor receiving the Services.  Such monthly statement shall be provided on paper or electronic media and shall include:  (i) the name and account number(s) of each Plan Sponsor, (ii) number of Covered Employees as of the beginning of the month for each Plan Sponsor for each Service, and (iii) other data which PHCS may reasonably require to provide Services under this Agreement.  All information required by this Section 5.5 shall be provided in a form reasonably acceptable to PHCS.

5.6   Cost of Directories and Materials.  If the Subscriber elects to publish directories of Participating Providers or other communications materials, such costs shall be paid by the Subscriber. Subscriber and publication such directories and other communications materials shall be subject to Section 5.4.

5.7   Quarterly Computer Tape.  Promptly after the end of·each calendar quarter the Subscriber shall provide PHCS (on computer tape or other medium meeting the specifications as PHCS may reasonably require) information regarding all claims paid or administered by the Subscriber regardless of whether such claim was paid to or on behalf of a Covered Employee.  This submission shall include such information regarding paid claims as PHCS may reasonably request.

5.8   Ad Hoc Eligibility Data Submission.  The Subscriber shall use its best efforts to provide to PHCS any information regarding Plan Sponsors requested by PHCS.

5.9   Use of PHCS Marks.  The Subscriber shall have the right to use in advertising and promotional materials the PHCS Mark; provided such use shall be in strict conformance with PHCS' graphic standards as published to PHCS's clients. and such advertising and promotional materials shall be subject to Section 5.4.

GPASSA2.doc                                           7

GPA-03011



5.10 Use of Outsourced Claims Administration.  Subscriber shall not use the services of a outsourced claims administrator ("OCA") in connection with the Services without the prior written consent of PHCS, which consent may be withheld in the sole discretion of PHCS.  Should PHCS consent to the use by Subscriber of a OCA, Subscriber shall cause the OCA to execute the OCA Confidentiality Agreement appended to this Agreement as Exhibit Q prior to the date on which Subscriber initiates its use of the OCA for PHCS Services.  In the event that an approved OCA is owned by an entity which is a vendor of provider network management services identical or similar to those Provider Network Services offered under this Agreement, the repricing of claims shall be performed by Subscriber or PHCS, at Subscriber's option.  In the event that PHCS performs the repricing of the claims, PHCS will charge Subscriber an additional fee for the claims repricing.  In the event that the repricing fee is not acceptable to Subscriber, Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement.

5.11 Restriction on Market Development.  During the Initial Term or any Successive Term and for a period of two (2) years after the termination or expiration of this Agreement, Subscriber shall not take any actions whatsoever to develop or initiate development of provider networks in the Markets in which Subscriber is using the Services.

## ARTICLE VI: INDEMNIFICATION

6.1 PHCS Indemnification.  PHCS shall indemnify, defend, and hold harmless the Subscriber and its officers, directors, employees and agents, against losses, claims, damages, judgments, liabilities or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or non-performance), or any willful malfeasance, by PHCS or any of its officers, employees, or agents, in connection with the performance of any of PHCS' duties and obligations under this Agreement.

6.2 Subscriber Waiver.  In consideration of the indemnification set forth in Section 6.1, the Subscriber and its officers, directors, employees, and agents, waive the right to recover from PHCS any sum in excess of $1 million per occurrence in any action involving such negligent performance, nonperformance, or willful malfeasance in connection with the performance of any of PHCS' duties and obligations under this Agreement.

6.3 Subscriber Indemnification.  The Subscriber shall indemnify, defend and hold harmless, PHCS and its officers, directors, employees, and agents against losses, claims, damages, judgments, liabilities, or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or nonperformance) or any willful malfeasance by the Subscriber or any of its officers, directors, employees, or agents in connection with the performance of any of the Subscriber's duties and obligations under this Agreement.

6.4 PHCS Waiver.  In consideration of the indemnification set forth in Section 6.3, PHCS and its officers, directors, employees, and agents waive the right to recover from the Subscriber any sum in excess of $1 million per occurrence in any action involving such negligent performance,

GPASSA2.doc                                    8

GPA-03012



nonperformance, or willful malfeasance in connection with the performance of any of the Subscriber's duties and obligations under this Agreement.

## ARTICLE VII:  INSURANCE

7.1    PHCS Insurance.   During the term of this Agreement PHCS shall maintain insurance coverage for liabilities that may result from provision of the Services in the amount of one million dollars ($1,000,000) per occurrence, ten million dollars ($10,000,000) in the aggregate.

7.2    Subscriber Insurance.   During the term of this Agreement Subscriber shall maintain insurance coverage for liabilities that may result from its duties and obligation under this Agreement in the amount of one million dollars ($1,000,000) per occurrence, ten million dollars ($10,000,000) in the aggregate.

## ARTICLE VIII:  CONFIDENTIALITY

8.1    Confidentiality Obligation of PHCS.  PHCS agrees to keep confidential all records and other information regarding the Subscriber, Plan Sponsors or Covered Employees.   The restrictions contained in this Section 8.1 shall not apply to information that is or comes within the public domain without breach of this Agreement by PHCS.

8.2    Non-Confidentiality of Certain Information.   PHCS may incorporate all data and information received from the Subscriber into PHCS' data bases for use and reporting on an aggregate basis so long as:

(a)    the identities of Covered Employees, Plan Sponsors and the Subscriber are not disclosed to parties other than the Subscriber; and

(b)    no data is disclosed by PHCS that (i) could not be disclosed by it were it an insurance company, agent, insurance support organization or other entity subject to any insurance information or privacy protection statute or other similar statute or regulation, or (ii) the disclosure of which could result in liability on the part of the Subscriber or any Plan Sponsor pursuant to any privacy or similar laws.

8.3    Confidentiality Obligation of the Subscriber. The Subscriber shall keep confidential, and shall cause any Plan Sponsors to keep confidential, all records, reports, trade secrets, proprietary processes, and proprietary data of PHCS, including, but not limited to, this Agreement, and any other information regarding PHCS, whether such information is written, transferred orally, visually, electronically or by any other means, as well as all copies, abstracts, summaries, or analyses of such information prepared by or on behalf of the Subscriber, which may be disclosed to the Subscriber in connection with this Agreement, or which may otherwise come into the possession of the Subscriber. The Subscriber agrees not to disclose any such information to any third party, except to a Plan Sponsor or potential Plan Sponsor, without the express prior written consent of PHCS.  Such information shall

GPASSA2.doc                              9

GPA-03013

Plaintiff's Response to Defendant's Motion for Partial Summary Judgment - Page 77

be disseminated only to employees of the Subscriber on an as-needed basis in conjunction with the performance of such employees' duties regarding the Services provided pursuant to this Agreement. The restrictions contained in this Section 8.3 shall not apply to information that is or comes within the public domain without breach of this Agreement by the Subscriber.

## ARTICLE IX: ACCESS TO RECORDS

9.1 . General Access. PHCS shall have the right, upon reasonable request and at reasonable times during normal business hours, to have access to such books and records of the Subscriber for inspection and examination as may be reasonably necessary for PHCS to audit the number of Covered Employees.. PHCS may be granted access to other books and records of the Subscriber for examination and inspection in connection with the Subscriber's performance of its obligations under this Agreement, but such access shall be granted only upon mutual agreement of the Subscriber and PHCS.

9.2 Access to Plan Sponsor Books and Records. The Subscriber shall use its best efforts to obtain similar rights of access for PHCS to the books and records of any Plan Sponsor, and such rights of access shall be a condition to PHCS' obligation to provide Services under this Agreement to the extent that such access is reasonably necessary to the provision of the Services or the determination or enforcement of PHCS' rights under this Agreement.

9.3 Subscriber Access. The Subscriber, or its representatives, shall have the right, upon reasonable request and at reasonable times during normal business hours, to have access to records of PHCS for inspection necessary to audit the performance of PHCS under this Agreement; provided, that the Subscriber, or its representatives, as the case may be, shall keep all information of PHCS confidential in accordance with Section 8.3 of this Agreement.

## ARTICLE X: MISCELLANEOUS

10.1 Waiver, Modification or Cancellation. No waiver, modification or alteration of any of the provisions of this Agreement, or cancellation or replacement of this Agreement, shall be valid unless in writing and signed by the parties hereto. The failure of any party to the Agreement, at any time, to require performance by any other party of any provision of this Agreement shall in no way affect the full right to require such performance at any time thereafter. The waiver by any party of a breach of any provision of this Agreement shall not constitute a waiver of any succeeding breach of the same or any other provision, nor shall such waiver constitute a waiver of the provision itself.

10.2 Assignment. This Agreement is personal to each of the parties hereto, and neither party may assign this Agreement without the prior written consent of the other party. In the event that Subscriber is merged, consolidated or purchased in whole or in part by another person or entity that, as of the Effective Date, is not owned by Subscriber, wholly owned by Subscriber or under common control with Subscriber ("Non-Affiliated Party"), PHCS has the right to terminate this Agreement upon ninety (90) days prior written notice in accordance with Section 10.5 of this Agreement. Upon

GPASSA2.doc                                          10

GPA-03014



such merger, consolidation or purchase: (a) the Participating Provider contracts shall not be assigned to the Non-Affiliated Party; and (b) all claims repricing shall immediately be conducted by PHCS. PHCS will charge Subscriber an additional fee for the claims repricing services. In the event that the claims repricing services fee is not acceptable to Subscriber, Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement.

10.3  Binding Effect.  This Agreement constitutes the entire agreement between the parties respecting the Services to be performed by PHCS, and shall be binding upon and shall inure to the benefit of the parties hereto and their permitted successors.

10.4  Governing Law.  The validity, construction, interpretation and enforceability of this Agreement shall be determined and governed by the laws of the Commonwealth of Massachusetts.

10.5  Notice.

Any notice provided for in this Agreement must be in writing and must be either personally delivered or mailed by first class mail (registered or certified, return receipt requested), telex, telecopier or overnight air courier guaranteeing next day delivery, to the recipient at the address(es) listed below, or to such other address(es) or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party. Except as otherwise provided in this Agreement, any notice under this Agreement shall be deemed to have been given:  (i) at the time delivered by hand, if personally delivered; (ii) when deposited in the mail, postage prepaid, if mailed; (iii) when answered back, if telexed; (iv) when receipt acknowledged, if telecopied; and (v) the next business day after timely delivery to the courier, if sent by overnight air courier guaranteeing next day delivery.

Private Healthcare Systems, Inc.          Group & Pension Administrators, Inc.
1100 Winter Street                        300 Municipal Drive
Waltham, MA 02154-1227                    Richardson, TX 75080
Attn: Group & Pension Administrators, Inc. Attn: Vice President of Marketing
Account Manager


with a copy to:                           with a copy to:

Private Healthcare Systems, Inc.          _____
1100 Winter Street                        _____
Waltham, MA 02154-1227                    _____
Attn: Vice President and General Counsel  Attn: _____

10.6  Severability.  If any provision of this Agreement, as applied to either party or to any circumstances, shall be adjudged by a court of competent jurisdiction to be void or unenforceable, the same shall in no way affect any other provision of this Agreement or the validity or enforceability of this Agreement.

GPASSA2.doc                               11



10.7  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.8  Third Party Beneficiaries.  Nothing in this Agreement, whether express or implied, shall be deemed to confer on any person, other than the parties hereto and their successors and assigns, any right, obligation, remedy, or liability.

10.9. Entire Agreement.  This Agreement and the exhibits hereto contain the entire agreement between the parties with respect to the matters contemplated by this Agreement.

10.10  Compliance with State and Federal Laws.  Each party shall comply with all applicable state and federal statutes and regulations relating to this Agreement.  Any provision of this Agreement which conflicts with an applicable state or federal statute or regulation shall be construed, interpreted and given effect so as to conform to the minimum requirements of such statute or regulation.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

Group & Pension Administrators, Inc.            Private Healthcare Systems, Inc.

By: _____                By: _____
Name: _Jeffry McPeters_____                 Name: Richard F. Belloff
Title: _President_____                 Title: Chairman, President & CEO
                                             _____

GPASSA2.doc                        12

GPA-03016

## EXHIBIT A:  CASE MANAGEMENT SERVICES

### RESERVED

GPASSA2.doc                              13

GPA-03017

---

## EXHIBIT B:  CENTERS OF EXCELLENCE SERVICES

---

*NOTE: The Subscriber acknowledges that the PPO and/or POS Services purchased by the Subscriber includes Centers of Excellence Services. Centers of Excellence Services may also be purchased independent of the PPO and/or POS Services for sale by the Subscriber as a stand-alone offering. However, the Subscriber has elected not to utilize the Centers of Excellence Services at this time as a stand-alone offering. Should the Subscriber subsequently elect to purchase the Centers of Excellence Services as a stand-alone offering, the Subscriber shall provide PHCS with written notice at least thirty (30) days prior to the date on which the Subscriber desires to first offer the Centers of Excellence Services as a stand-alone offering. The following Exhibit B contains the standard Centers of Excellence Services and is included for the sole purpose of identifying for the Subscriber, the Centers of Excellence Services to be available to the Subscriber under this Agreement.*

1. <u>Definition</u>.  The Centers of Excellence Program Services include PHCS:

   (a)   Establishing and maintaining a national network of providers that have agreed to certain reimbursement rates for organ transplantation services (the "Centers"), all as defined in the PHCS form of the Centers of Excellence Agreement.

   (b)   Providing information to the Subscriber describing the Centers of Excellence Network, including the Centers' names, addresses, preferred provider center reimbursement rates, and other information reasonably necessary for the Subscriber to process Center claims.

   (c)   Re-pricing Center claims for Subscriber upon Subscriber's request.  Should Subscriber request that PHCS re-price claims, the Centers will still submit their claims to Subscriber who will then forward the claims to PHCS.

   (d)   Providing information to the Centers describing the procedures for submitting claims and identifying Covered Employees who are eligible for the Centers of Excellence Program Services and identifying new Subscribers.

2. <u>PHCS Transplant Coordination Services</u>.  When a patient chooses to have a transplant performed at a PHCS Center of Excellence, the Covered Employee, the Subscriber or the attending physician contacts the PHCS Transplant Coordination staff to begin the precertification process.  If the procedure is certified, the Transplant Coordination staff is available to facilitate communications on administrative issues among the Covered Employee, family members, treatment team, medical center administrators and Subscriber.  The Transplant Coordination Staff only facilitates communication with the Center, and does not provide case management services as described in Exhibit A unless requested in writing and paid for at the rates set forth in Exhibit P.

3. <u>Transplant Case Management</u>:  For transplant case management, when PHCS does not otherwise provide case management in connection with the use of a PHCS healthcare provider network or PHCS utilization review services, PHCS is available to perform transplant case management services on a time and materials basis (in addition to the Centers of Excellence per Covered

GPASSA2.doc                                           14

GPA-03018



Employee per month fee).   Transplant Case Management consists of the services described in Exhibit A as applied to transplant cases.

(a)   The Transplant Coordination staff shall be available to assist and advise Subscriber of the Centers' specific benefit and eligibility requirements for transplant procedures.

(b)   PHCS' Transplant Coordination Staff shall also be available to answer questions about PHCS' Centers of Excellence Program, and assist in the overall coordination of patient referrals.   General information shall be available on each transplant program in the network.

4.   Duties of the Subscriber.

(a)   The Subscriber shall provide the following information to PHCS for each Plan Sponsor within fifteen (15) days from the date on which, pursuant to Section 2.3, the Subscriber orders Centers of Excellence Services: (i) the Plan Sponsor account name and address, (ii) the Plan Sponsor account number, (iii) the number of Covered Employees to receive Centers of Excellence Services, (iv) the effective date of the Centers of Excellence Services, and (v) any other information which PHCS may reasonably require to provide Centers of Excellence Services.   The Subscriber shall provide this information in a form acceptable to PHCS.

(b)   The Subscriber shall abide by the terms of any Centers of Excellence Agreement executed by Subscriber or its agents.

(c)   If the Subscriber elects to publish directories or directory supplements of Centers of Excellence or other communication materials, the production shall be performed by the Subscriber at its expense, and Subscriber shall comply with the provisions of Section 5.4 of the Agreement.

(d)   The Subscriber may terminate the Centers of Excellence Services for any Plan Sponsor without terminating this Agreement.   The Subscriber shall provide PHCS with written notice of the termination of the Centers of Excellence Services for any Plan Sponsor at least fifteen (15) days prior to the effective date of such termination.

GPASSA2.doc                         15

GPA-03019

## EXHIBIT C:  EMPLOYEE ASSISTANCE PROGRAM SERVICES

### RESERVED

GPASSA2.doc                                    16

GPA-03020

## EXHIBIT D: MANAGED PHARMACY PROGRAM

### RESERVED

GPASSA2.doc                                    17

GPA-03021



EXHIBIT ': DESCRIPTION OF MARKETS



GPASSA2.doc                              18

GPA-03022

Oct '26 06 04:12p    Cathy Engli                    '442410              p.20



GPASSA2.doc                              19

GPA-03023

Oct '26 06 04:13p        Cathy Engli                                    '442410                p.21





Revision date: August 6, 1997

GPASSA2.dcc                                    20

GPA-03024





## EXHIBIT F: MENTAL HEALTH SPECIALTY PLAN

### RESERVED

GPASSA2.doc                                    21

GPA-03025

Oct '26 06 04:13p      Cathy Engli                        '442410          p.23

## EXHIBIT G: PRIMARY CARE PLAN SERVICES

### RESERVED

GPASSA2.doc                         22

GPA-03026

Oct '26 06 04:14p      Cathy Engli:                              '442410              p.24

## EXHIBIT H: POS SERVICES

### RESERVED

GPASSA2.doc                          23

GPA-03027

Oct 26 06 04:14p     Cathy Engli                              '442410          p.25



## EXHIBIT I: PPO ENHANCEMENT SERVICES

RESERVED

GPASSA2.doc                          24

GPA-03028



## EXHIBIT J: PPO SERVICES

1. <u>Definition</u>. PHCS provides two different types of PPO Services, each is set forth as follows.

   (a)  <u>Hospital PPO</u>. PHCS' "Hospital PPO Services" include PHCS:

      (i)  establishing and maintaining a network of acute care medical and surgical facilities and ancillary facilities that have agreed to certain reimbursement rates for hospital services, all as defined in the PHCS form of Preferred Hospital Agreement ("Hospital PPO");

      (ii)  providing information to the Subscriber describing the Hospital PPO, including the hospitals' names, addresses, preferred provider hospital reimbursement rates, and other information reasonably necessary for the Subscriber to process Hospital PPO claims;

      (iii)  providing written information to the hospitals describing the procedures for submitting claims and identifying Covered Employees who are eligible for the Hospital PPO Services, which information shall be supplemented by on-site training sessions provided by PHCS for hospital administrative personnel.

   (b)  <u>Physician PPO</u>. PHCS' "Physician PPO Services" include PHCS:

      (i)  establishing and maintaining a network of physicians that have agreed to certain reimbursement rates for physician services, all as defined in the PHCS form of Preferred Physician Agreement ("Physician PPO");

      (ii)  providing information to the Subscriber describing the Physician PPO, including the physicians' names, addresses, preferred provider reimbursement rates, and other information reasonably necessary for the Subscriber to process PPO claims;

      (iii)  providing written information to the physicians describing the procedures for submitting claims and identifying Covered Employees who are eligible for the Physician PPO Services.

2. <u>PHCS Selection of PPO Markets and Services</u>.   PPO Services are provided with respect to hospitals and physicians in selected market areas.  The selection of market areas within which PPO Services will be provided and the schedule for providing specific PPO Services in those market areas shall be determined by PHCS, in its sole discretion.

3. <u>Duties of the Subscriber</u>.

GPASSA2.doc                                  25

GPA-03029



(a)   The Subscriber shall provide the following information to PHCS for each Plan Sponsor within fifteen (15) days from the date on which, pursuant to Section 2.3, the Subscriber orders PPO Services: (i) the Plan Sponsor account name and address, (ii) the Plan Sponsor account number, (iii) the name of the PHCS PPO market area(s) in which the Plan Sponsor will utilize PPO Services, (iv) the number of Covered Employees to receive PPO Services and whether the Covered Employees are enrolled in the Hospital PPO and/or the Physician PPO, (v) the effective date of the PPO Services, and (vi) any other information which PHCS may reasonably require to provide PPO Services.  The Subscriber shall provide this information in a form acceptable to PHCS.

(b)   The Subscriber shall abide by the terms of any agreement with a Participating Provider entered into by PHCS on behalf of the Subscriber with regard to the provision of PPO Services.

(c)   If the Subscriber elects to publish directories of PPO providers or other communications materials, the production shall be performed by the Subscriber at its expense.  Subscriber shall be prohibited from listing, or publishing directories of, PHCS Participating Providers on its or any Internet Website, unless Subscriber complies with all security requirements mutually agreed to in writing by PHCS and Subscriber.

(d)   The Subscriber shall produce a standard identification card for use by its Covered Employees enrolled for PPO Services (the "PPO ID Card"), which PPO ID Card shall contain the information set forth in Attachment J(1) hereto.  PHCS strongly recommends to the Subscriber that each Covered Employee participating in the PPO receive at least two PPO ID Cards.

(e)   The Subscriber shall produce a standard explanation of benefits form ("PPO EOB") which shall contain, among other items, the information set forth in Attachment J(2) hereto.  The Subscriber shall provide an PPO EOB to each Covered Employee upon each submission of a claim for services provided by a PPO Participating Provider.

(f)   The Subscriber may terminate the PPO Services for any Plan Sponsor without terminating this Agreement.  The Subscriber shall provide PHCS with written notice of the termination of the PPO Services for any Plan Sponsor at least fifteen (15) days prior to the effective date of such termination.

GPASSA2.doc                              26

GPA-03030



## ATTACHMENT J(1):  INFORMATION TO BE INCLUDED ON PPO CARDS

1.   PHCS Horizontal Red Stripe

2.   Identification as an "MD Plan" with the necessary encounter fee information (on front of card if possible)

3.   Subscriber – Employer Eligibility/Benefits Coverage Information Phone Number

4.   Claims Submission Address

5.   UR "800" Number

6.   —PHCS logo

In addition, PHCS strongly recommends:

1.   Multiple cards per employee

2.   Information on the UR requirements and penalty.





GPA-03031



## ATTACHMENT J(2):  INFORMATION TO BE INCLUDED ON
## PPO EXPLANATION OF BENEFITS FORM (PPO EOB)

The Subscriber shall develop its own PPO EOB that clearly identifies what the Participating Provider can or cannot bill to the Covered Employee. Either the amount which cannot be billed to the Covered Employee or the amount which will be billed to the Covered Employee must be set forth on the PPO EOB. Each Subscriber PPO EOB must identify PHCS as the provider network.   PHCS strongly recommends that both the amount that can be billed and the amount which cannot be shown on the PPO EOB. The PPO EOB is required to include the standard PPO EOB language set forth as follows:

A.     "PPO – Preferred Participating Provider Benefit Applied; $XXX (of $XXX) cannot be balanced billed to the Patient"

OR

B.     "PPO – Preferred Participating Provider Benefit Applied; only $XXX (of $XXX) may be billed to the Patient"

OR

C.     "PPO – Preferred Participating Provider Benefit Applied; not billable to the Patient."

[For this last option, an asterisk or numbered notation must be included to indicate which amount(s) are not billable.]

For all three of the above descriptions the exact amounts to be included in the parentheses are optional.



GPASSA2.doc                          28

GPA-03032

Oct '26 06 04:15p    Cathy Engli                              '442410            p.30

## EXHIBIT K: SPECIAL HANDLING PROGRAM

RESERVED

GPASSA2.doc                              29

GPA-03033

## EXHIBIT L:  UTILIZATION REVIEW

### RESERVED

GPASSA2.doc                                          30

GPA-03034

## EXHIBIT M: WORKERS' COMPENSATION SERVICES

RESERVED

GPASSA2.doc                          31

GPA-03035

Oct '26 06 04:15p      Cathy Engli                     ˙442410              p.33



## EXHIBIT N: SERVICES PREREQUISITES

1.  <u>General</u>. The Services to be provided under this Agreement are subject to the following conditions which delineate several prerequisites placed upon the Subscriber for utilizing certain services.

2.  <u>Conditions/Prerequisites</u>. Once the Subscriber orders the services pursuant to Section 2.3 of this Agreement, the Subscriber shall be required to utilize the Services in accordance with the following prerequisites.

    (a)  <u>Utilization Review</u>. The Subscriber has the option of declining to use Utilization Review Services

    (b)  <u>Case Management Services</u>. The Subscriber has the option of declining to use Case Management Services. In the event the Subscriber should utilize Case Management Services, the Subscriber has the option of utilizing only:

        (i)   Case Screening, or

        (ii)  Case Screening and Case Management.

        The Subscriber may use only option (i) or option (ii) for all Plan Sponsors. The Subscriber is not permitted to use option (i) for some Plan Sponsors and option (ii) for other Plan Sponsors.

    (c)  <u>POS Services</u>. The Subscriber has the option of declining to use POS Services. The Subscriber may use PPO Services with EPO or POS Services. In the event POS Services are ordered, the Subscriber has three (3) options for mental health services as follows:

        (i)   Mental Health Specialty Plan Services

        (ii)  Mental Health Utilization Review Services whereby PHCS will manage acute in-patient mental health services only.

        (iii) No Mental Health Services. PHCS will provide POS provider names to Covered Employees only. PHCS will transmit mental health claims data electronically to Subscriber with a low benefit recommendation.

    In the event POS Services are ordered, the Subscriber must offer a managed pharmacy program either by utilizing the Managed Pharmacy Program Services of PHCS or another vendor.

GPASSA2.doc                                32

GPA-03036



(d)  <u>Mental Health Specialty.</u>  The Subscriber must use either POS Services or PPO Services for Covered Employees using Mental Health Specialty Plan Services.  The Subscriber shall not offer PHCS Mental Health Specialty Plan Services without the PHCS PPO or POS.

(e)  <u>PPO Services.</u>  The following conditions and prerequisites apply to the Subscriber's use of PPO Services:

(i)  The Subscriber may decline to utilize the PPO Services.

(ii)  Utilization of Case Management Services is not a prerequisite to utilization of PPO Services.

(iii)  For each Plan Sponsor, the Subscriber may choose to use either:

a.  the Hospital PPO, or

b.  the Hospital PPO and Physician PPO.

(f)  <u>Special Handling Program Services.</u>  The Subscriber must use either PHCS' Case Management Services or the case management services of another vendor.

GPASSA2.doc                                       33

GPA-03037



Plaintiff's Response to Defendant's Motion for Partial Summary Judgment - Page 101

## EXHIBIT O: POWER OF ATTORNEY

## LIMITED POWER OF ATTORNEY

The undersigned (the "Company") hereby appoints and authorizes Private Healthcare Systems, Inc. ("PHCS"), a Delaware corporation, to be its agent and attorney-in-fact, for the limited purpose of making, executing, terminating, acknowledging and delivering, in the Company's name, place and stead, those preferred provider and other PHCS network agreements, including, but not limited to, physician individual and group agreements, hospital/facility agreements and ancillary/vendor services and case management agreements (the "Agreements"), with health care providers selected by PHCS (the "Participating Providers"), as are the then standard forms of such agreements in use by PHCS at the time the agreements are signed. The Company hereby further authorizes PHCS to execute, on the Company's behalf and without the prior approval of the Company, any amendments to such Agreements. Each Agreement, when executed and delivered by PHCS and Participating Provider, shall be binding upon and inure to the benefit of such Participating Provider and Company as if individually executed by Participating Provider and Company. New Exhibits may be added hereto and incorporated herein by reference only with the prior oral or written consent of the Company.

Third parties may rely upon the actions of said attorney-in-fact as to all matters relating to the power granted by this Power of Attorney, and no person who may act in reliance upon the actions of said attorney-in-fact shall incur any liability to the undersigned as a result of permitting said attorney-in-fact to exercise said judgment.

This Limited Power of Attorney will supersede any prior written Limited Power of Attorney between the parties with respect to the terms and provisions contained herein. The Company hereby authorizes PHCS to terminate each of the Agreements upon termination by either Company or PHCS of the Subscriber Services Agreement, and this Limited Power of Attorney shall be revoked upon the termination of the last of the Agreements. This Limited Power of Attorney may be revoked by written notice from Company to PHCS, but such revocation shall not be effective against any third party unless such third party shall have received actual notice of such revocation and as to Participating Providers, until each of the Agreements has been terminated. This Limited Power of Attorney shall be immediately revoked upon the termination by PHCS of the last of the Agreements following the effective date of termination or expiration of the Subscriber Services Agreement. Any such notice of revocation shall be provided by PHCS. This power is granted solely to PHCS acting through its authorized employees, and PHCS shall have no power of substitution with respect thereto.

IN WITNESS WHEREOF, this Power of Attorney has been executed by Group & Pension Administrators, Inc. on the 17th day of April , 199 8 .

By:
Name: _____
Title: _____

STATE OF _____
COUNTY OF _____

On this 17 day of ____, 199 5 , before me personally appeared _____, to me known and known to me to be the person identified above who executed the foregoing Power of Attorney and, being by me first duly sworn, duly acknowledged to me that he executed the same. Witness my hand and official seal.

EDNA GEER HUDGINS
Notary Public, State of Texas
My Commission Expires
AUG. 2, 2001

_____
Notary Public
My Commission Expires: _____

GPASSA2.doc                                    34

GPA-03038

## EXHIBIT P:  PHCS FEES

**INITIAL FEE:** ...................................................................................

|  | **MONTHLY RATE** |
|---|---|
| **SERVICE FEES: A/** | **PER COVERED EMPLOYEE** |

**PPO SERVICES: B/**

Physician, Hospital, and Ancillary PPO Services.................................

**CENTERS OF EXCELLENCE:**

Centers of Excellence.........................................................................

A/ The Services may only be utilized in accordance with the conditions and prerequisites set forth in Exhibit N.

B/ Subscriber is required to maintain a minimum number of 15,000 Covered Members enrolled in PHCS Services.  If enrollment fails to reach the 15,000 member level by October 1, 1998, the Monthly Fees owed by Subscriber to PHCS as set forth in Article IV and this Exhibit P of this Agreement will be calculated using the minimum number of 15,000 Covered Members, at ▮▮▮▮ per Covered Member per month, notwithstanding Subscriber's failure to maintain that minimum level of Covered Members (i.e. in the event only 10,000 Covered Members are enrolled in month X, Subscriber shall owe PHCS ▮▮▮▮▮▮▮▮▮▮▮▮ for month X.  In the event that Subscriber fails to reach the 15,000 member level by October 1, 1998, Subscriber shall pay to PHCS, the shortfall as if enrollment was at the 15,000 level from July 1, 1998.



GPASSP2.doc                                        35

GPA-03039

Plaintiff's Response to Defendant's Motion for Partial Summary Judgment - Page 103

## AMENDMENT, ASSIGNMENT, AND ASSUMPTION OF THE SUBSCRIBER SERVICES AGREEMENT

This amendment, assignment, and assumption (the "Amendment"), which is effective as of the dates set forth below is entered into by and among PRIVATE HEALTHCARE SYSTEMS, INC., a Delaware corporation, located at 1100 Winter Street, Waltham, MA 02451 ("PHCS"), GROUP AND PENSION ADMINISTRATORS, INC., a Texas corporation, located at 300 Municipal Drive, Richardson, TX 75080 (the "G&P Administrators") and GPA HOLDING, INC., ("GPA Holding") a _____ corporation, located at _____ (G&P Administrators and GPA Holding shall be collectively referred to herein as "Subscriber" or "Subscribers") and hereby modifies the Subscriber Services Agreement between PHCS and G&P Administrators dated January 1, 1998, including Attachments, Appendices, and previous amendments incorporated therein (the "Agreement"). All terms of this Amendment shall have the meaning ascribed to them in the Agreement unless otherwise defined herein.

WHEREAS, G&P Administrators and PHCS wish to amend the Agreement to change the payment terms; and

WHEREAS, G&P Administrators wishes to have the Agreement assigned to GPA Holding; and

WHEREAS, GPA Holding wishes to assume the duties and obligations under the Agreement; and

WHEREAS, PHCS consents to this assignment and assumption.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.  As of September 1, 2002, the Agreement is amended as follows:

    (a)   Delete Section 1.17 in its entirety and replace it with the following new Section 1.17:

        1.17 "Repricing Services" shall mean the services described in Exhibit R of this Agreement, but shall not include claims adjudication or claims payment.

    (b)   Delete Section 1.18 in its entirety and replace it with the following new Section 1.18:

        1.18 "Repricing Services Fee" shall have the meaning set forth on Exhibit P of this Agreement.

Confidential
PHCS0047

(c)   Delete Section 1.19 in its entirety and replace it with the following new Section 1.19:

1.19  Self Reported Enrollment Fees" shall mean the fees described on Exhibit P to this Agreement.

(d)   Delete Section 1.25 in its entirety and replace it with the following new Section 1.25

1.25  "Self Reported Claims Fees" shall mean the fees described on Exhibit P to this Agreement.

(e)   Delete Section 1.27 in its entirety and replace it with the following new Section 1.27

1.27  "Billed Fees" shall mean the fees described on Exhibit P to this Agreement.

(f)   Delete Section 2.2(c) in its entirety and replace it with the following:

2.2(c)  Subscriber hereby grants to PHCS a power of attorney (the "Power of Attorney"), as set forth in Exhibit O hereto, to act in its name and on its behalf with respect to any and all contracts with Participating Providers regarding the Services. In connection therewith, Subscriber understands and acknowledges that:

(i)   the addition of Subscriber to the PHCS provider contracts pursuant to the Power of Attorney is solely an administrative matter required in order to permit Subscriber and its customers access to the PHCS Provider Network;

(ii)   the addition of Subscriber to the PHCS provider contracts pursuant to the Power of Attorney is not intended to grant Subscriber any ownership interest in the PHCS Provider Network or in the contracts with Participating Providers

(iii)   PHCS is undertaking a recontracting effort to eliminate payors from the contracts with Participating Providers and adding PHCS to those contracts as the network administrator. This recontracting effort includes drafting new form agreements to be used to (i) recontract with existing Participating Providers in the PHCS network and (ii) contract with Providers who are not in the PHCS network (the "Recontracting Effort"). At the time of the Recontracting Effort and upon written notice to Subscriber, Subscriber agrees to allow PHCS to remove it as a party to those contracts with Participating Providers and to take all other steps PHCS deems reasonably necessary to effectuate the termination of Subscriber as a party to those contracts at the time PHCS is added as a party to serve as the network administrator. In order for PHCS to commence the

2

Confidential
PHCS0048

Recontracting Effort and to contract with Providers and recontract with Participating Providers, Subscriber agrees to the terms and conditions set forth in the Subscriber Acknowledgement on Exhibit B to this Agreement and shall execute the Subscriber Acknowledgement simultaneously with the execution of this Agreement.

(g)   Add the following to Section 2.4:

In the event Subscriber wishes to terminate a Service under this Agreement, the Subscriber may do so (provided, however, that the Subscriber is receiving other Services from PHCS) by submitting written notification to PHCS at least ninety (90) days prior to the effective date of the termination date of that Service. In the event Subscriber wishes to terminate all Services being provided to it by PHCS, Subscriber shall do so pursuant to Article III of this Agreement.

(h)   Delete Section 3.5 in its entirety and replace it with the following new Section

3.5    Effect of Termination.  All obligations of the parties under this Agreement shall terminate on the Termination Date, except for the obligations specified in or created by Article IV (with respect to previously accrued fees and retroactive adjustments to fees), Article VI, Article VIII and Exhibit P. Further, each of the contracts entered into by PHCS with Participating Providers on behalf of Subscriber shall terminate on the Termination Date. PHCS shall take all steps it deems reasonably necessary to effectuate the termination of any and all such Participating Provider contracts.

(i)   Delete Article IV: Fees & Terms of Payment in its entirety and replace it with the following new Article IV: Fees & Terms of Payment:

ARTICLE IV: FEES & TERMS OF PAYMENT

Subscriber shall pay PHCS for the Services purchased hereunder in accordance with the terms and conditions set forth on Exhibit P of this Agreement.

(j)   Delete Exhibit B, Centers of Excellence in its entirety and replace with the attached, new Exhibit B, Subscriber Acknowledgement.

(k)   Delete Exhibit E, Description of Markets and replace it with the following new Exhibit E, Description of Markets.

(l)   Delete Exhibit P, PHCS Fees in its entirety and replace it with the attached, new Exhibit P, PHCS Fees.

(m)   Add the attached Exhibit R, Repricing Services.

3

Confidential
PHCS0049

2.    As of January 1, 2003: (a) PHCS agrees to the assignment of the Agreement to GPA Holding; (b) G&P Administrators agrees to assign the Agreement to GPA Holding; and (c) GPA Holding agrees to assume all obligations, duties and rights under the Agreement, including its obligations to sign and deliver a Limited Power of Attorney and Subscriber Acknowledgement pursuant to Section 2.2(c) of this Agreement.

3.    This Amendment may be executed in one or more counterparts; each counterpart shall be deemed an original.

4.    PHCS, G&P Administrators and GPA Holding each ratify and confirm the terms and conditions of the Agreement as modified herein, and each confirm that the terms and conditions of the Agreement as modified herein shall remain in full force and effect. All other provisions of the Agreement are not amended by the foregoing remain valid and effective.

5.    In the event of a conflict between the terms of the Agreement and this Amendment, this Amendment shall control.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed as of the date first referenced above.

G&P Administrators:                          PHCS:
Group and Pension Administrators, Inc.       Private Healthcare Systems, Inc.

By: _____               By: _____
Name: _____               Name: Joseph R. Driscoll
Title: _____               Title:   President and CEO


GPA Holding (now known as Subscriber):
GPA Holding, Inc.
By: _____
Name: _____
Title: _____

4

Confidential
PHCS0050

---

## EXHIBIT B: SUBSCRIBER ACKNOWLEDGEMENT

---

## SUBSCRIBER ACKNOWLEDGEMENT

The undersigned (the "Subscriber") hereby acknowledges the following obligations, effective as of January 1, 2003, as provided in the Subscriber Services Agreement between Subscriber and Private Healthcare Systems, Inc. ("PHCS"):

### RECITALS:

A.    Subscriber and PHCS are parties to a subscriber services agreement under which PHCS will provide to Subscriber certain provider network services, including credentialing, recredentialing and quality assurance services, and/or comprehensive medical management services, including utilization review, quality assurance, case management and other cost containment related services, (the "Services") in certain markets throughout the United States (the "Services Agreement").

B.    PHCS has entered into contracts with health care providers for participation in the PHCS provider network ("PHCS Preferred Providers") at certain reimbursement rates for health care services provided to Subscriber's Covered Employees pursuant to certain PHCS preferred provider agreements (the "PHCS Preferred Provider Agreement").

C.    All terms in this Subscriber Acknowledgement shall have the meaning ascribed to them in the Services Agreement unless otherwise defined in this Subscriber Acknowledgement or the PHCS Preferred Provider Agreement, copies of which such form PHCS Preferred Provider Agreements have or will be provided to the Subscriber.

In order to purchase the provider network Services offered by PHCS, Subscriber hereby acknowledges the following:

1.1    Licenses, Registrations and Certifications.  Subscriber will comply with all laws and regulations governing its performance under the Services Agreement, including, but not limited to, obtaining and maintaining in effect all applicable licenses, registrations and certifications necessary for that purpose.

1.2    Payment health care services.  Subscriber agrees to pay or arrange to pay PHCS Preferred Providers in accordance with the PHCS Preferred Provider Agreement for such Preferred Provider, for the markets and the networks for which Subscriber has purchased provider network Services from PHCS.

1.3    Marketing. Subscriber will make available and promote Healthcare Plans which provide direction and redirection to Preferred Providers, to the extent that it is lawful to do so. Such direction and redirection may occur through, but is not limited to, greater plan benefits or directory listings. Subscriber will make available to Covered Employees the name, address and telephone number of PHCS Preferred Providers.

5

Confidential
PHCS0051

1.4   **Identification and Eligibility.** Subscriber will furnish Covered Employees with a means of identifying themselves as covered under a HealthCare Plan for the provision of the health care services through a PHCS provider network. Such methods of identification may include, but is not limited to, (i) identification cards, (ii) affixing the PHCS logo to identification cards, or (iii) a PHCS phone number identifier. In addition, Subscriber will use its best efforts to provide the most current eligibility information available on the day of inquiry for those Covered Employees for whom Subscriber maintains eligibility information.

1.5   **Copying of Medical and Billing Records.** If Subscriber requests copies of medical and billing records from a Preferred Provider for purposes other than the reconsideration of payment to such Preferred Provider, Subscriber agrees to reimburse the Preferred Provider for such copies according to the rates specified in the Preferred Provider Agreement between PHCS and such Preferred Provider.

1.6   **Third Party Beneficiaries.** Nothing contained in this Agreement will be construed to make PHCS or Subscriber, and their respective directors, officers, employees, agents and representatives liable to persons or entities not parties hereto in situations in which they would not otherwise be subject to liability, provided however, that Preferred Provider(s) are third party beneficiaries to this Agreement. Except as provided in the preceding sentence, nothing contained herein will be construed as, or be deemed to create, any rights or remedies in any party other than PHCS or Subscriber.

1.7   **Inappropriate Access of the Preferred Payment Rates.** Subscriber agrees that the Preferred Payment Rates agreed to in the PHCS Preferred Provider Agreement between PHCS and the Preferred Provider are applicable solely for Covered Care rendered to Covered Employees covered under a Healthcare Plan which utilizes the PHCS provider network. In the event that a Preferred Provider believes Subscriber is, or may be, accessing the Preferred Payment Rates set forth in the Preferred Provider Agreement inappropriately (e.g., to non-eligible individuals), the Preferred Provider shall notify PHCS immediately in writing. Upon receipt of such notice, PHCS will work in cooperation with the Preferred Provider and Subscriber to determine whether Subscriber appropriately accessed the Preferred Payment Rates for a Covered Employee covered under a Healthcare Plan which utilizes the PHCS provider network. In the event that PHCS finds that Subscriber intentionally and inappropriately accessed the Preferred Payment Rates agreed to in the Preferred Provider Agreement, Subscriber (i) will reimburse the Preferred Provider for the difference between the Preferred Payment Rate and the Provider's regular billing rates, and/or (ii) allow PHCS to terminate or limit the Subscriber's access to the applicable Preferred Provider's Preferred Provider Agreement.

SUBSCRIBER:
GPA Holding, Inc.

By: _Kathy Enoch_

Name: _____

Title: _____

6

Confidential
PHCS0052

## EXHIBIT E: DESCRIPTION OF MARKETS

Subscriber will receive the Network Services provided under this Agreement in the following Markets on the following effective dates:



7

Confidential
PHCS0053



| PHCS DEFINED | | NETWORK SERVICES SELECTED | | | | |
|---|---|---|---|---|---|---|
| MARKET | MEDICAL | PPO | Open Access | Healthy Directions | Access Advantage | National Advantage |

8

Confidential
PHCS0054



9

Confidential
PHCS0055

## EXHIBIT P: PHCS FEES

A.  Services, Fees and Fee Adjustments.

1.  Subscriber shall purchase the Services set forth below and shall pay PHCS for those Services in accordance with the terms, fees and conditions set forth in the Services and Pricing Table below.

2.  The fees outlined in the Services and Pricing Table below and any other applicable fees may be adjusted at any time during any Successive Term; provided, that (a) PHCS notifies the Subscriber no later 90 days immediately preceding the adjustment date of any proposed adjustment to the fees; and (b) fees are not adjusted more than once in any Successive Term. If the fee adjustment in any Successive Term is not acceptable to the Subscriber, the Subscriber may terminate this Agreement in accordance with Section 3.4 of this Agreement, but in any case Subscriber shall pay the adjusted fees from the effective date of the adjustment until the Termination Date.

SERVICES AND PRICING TABLE effective July 1, 2002 – June 30, 2003

| | | | | | |
|---|---|---|---|---|---|
| PPO Services | Each Covered Employee | Self-Reported By Subscriber | 5th day of month following the month in which fees were incurred. | | |
| Healthy Direction Services | Total Claims Savings | Self-Reported By Subscriber | 15th day of the month following the month in which fees were incurred | | |

10

Confidential
PHCS0056

SERVICES AND PRICING TABLE effective as of July 1, 2003

| | | | |
|---|---|---|---|
| PPO Services | Each Covered Employee | Self-Reported By Subscriber | 5th day of month following the month in which fees were incurred. |
| Healthy Direction Services | Total Claims Savings | Self-Reported By Subscriber | 15th day of the month following the month in which fees were incurred |
| Repricing Services --EDI Option A | Each Covered Employee | Self-Reported By Subscriber | 5th day of month following the month in which fees were incurred |

**B.  Payment Terms.**

1.  Payments are due on or before the due date indicated next to each Service in the Services and Pricing Table herein. A late payment fee of ▓▓▓ will be assessed on a monthly basis for all overdue balances.  In addition, in the event fees are not paid when due, PHCS may terminate: (a) this Agreement with notice and after 30 days of the payment due date; and/or (b) sales and customer support services, including, but not limited to, access reports, savings and disruption analyses, RFP support and telephonic customer service.

2.  All payments must be submitted to PHCS using either method to the following addresses:

Wire/ACH:                           Checks:
Fleet National Bank                 Private Healthcare Systems, Inc.
100 Federal St.                     P.O. Box D-3232
Boston, MA  02110                   Boston, MA  02241-3232
Account #: 0051021478               Attn: Accounting
ABA #: 011000138

Each payment shall reference Subscriber's assigned account number or remittance ID as well as the applicable enrollment month.

**C.  Calculation of Fees:**

1.  Billed Fees:  For each calendar month during the Initial Term and any Successive Term, PHCS shall calculate and bill the Subscriber an amount equal to the number of billing units for each billed Service multiplied by the price for that service as outlined in the Services and Pricing Table.

11

Confidential
PHCS0057

2.   Self-Reported Enrollment Fees: For each calendar month during the Initial Term and any Successive Term and for each Service purchased as set forth in the Service and Pricing Table herein with a bill type of "self-reported", the Subscriber shall calculate and pay to PHCS a self reported enrollment fee ("Self Reported Enrollment Fees"). Subscriber shall calculate such Self Reported Enrollment Fees on the basis of: (a) the number of Covered Employees eligible to receive each of the Services provided pursuant to this Agreement as of the first day of the month, multiplied by (b) the rate for that particular Service as set forth in the Service and Pricing Table.

(a)   The price tier to be used in calculating the Self Reported Enrollment Fee shall be determined based on the total enrollment of Covered Employees receiving the Service as of the first day of the month. However, the benefit of tiered pricing will not be in effect (i.e. the highest price for Service will apply) if Subscriber does not report all enrollment in one (1) detailed payment backup report and one (1) summary payment backup report ("Payment Report") provided to the Subscriber during the implementation process or if Subscriber pays Self Reported Enrollment Fees with more than one check or wire transfer for each month's enrollment payment.

(b)   In the event that Subscriber cannot calculate the actual number of Covered Employees for any calendar month, Subscriber shall estimate that month's Covered Employee enrollment based upon the Subscriber's prior month's Covered Employee enrollment.

(c)   In no event shall Subscriber withhold payment of the Self Reported Enrollment Fees due to the failure of Subscriber's Plan Sponsors to pay Subscriber for their enrollment and services provided by Subscriber.

3.   Self-Reported Claims Savings Fees: For each service in the Service and Pricing Table with a billing type of Self Reported and a billing unit of Total Claims Savings, as defined below, Subscriber shall calculate the monthly fee ("Self-Reported Claims Savings Fees"), which shall be based on the total of all savings generated in the current month. The savings will be determined by subtracting the total of all PHCS Negotiated Rates with Participating Providers, as defined below, for all claims processed in the current month from the total of all Covered Charges of Participating Providers for all claims processed in the current month ("Total Claims Savings").

(i)   PHCS Negotiated Rates are those rates agreed to by the Participating Providers in the PHCS Preferred Provider Agreements.

4.   Retroactive Adjustments.   Subscriber is required to report retroactive changes to previously reported enrollment and/or paid fees. Any fees payable hereunder shall be adjusted accordingly to reflect such retroactive changes. However, if such retroactive changes result in a reduction to previously paid fees, such changes must be reported within six (6) months following the month for which such adjustment is being requested and in no event shall such adjustment be made any later than February 15 for the previous calendar year in order to receive a credit against said fees.

12

Confidential
PHCS0058

(a)   Retroactive increases or decreases to previously paid fees will be calculated using the price paid in the enrollment and/or service month being adjusted.

(b)   In no event will retroactive adjustments be factored into the determination of the pricing tier to be used for a particular payment.

(c)   Nothing contained in this Section will limit the ability of PHCS to obtain retroactive adjustments to any fees contained in this Agreement should any audit conducted by PHCS or its designee, reveal discrepancies in the enrollment data or other information by which such fees contained in this Agreement were calculated.

D.   **Payment Support & Enrollment Reporting:**  Each month the Subscriber shall provide to PHCS, on or before the due date of its payment, a Payment Report via electronic media and in the format prescribed by PHCS.  The Payment Report shall consist of a (1) summary payment backup report; and (2) detailed payment backup report

1.   The summary payment backup report shall indicate for each Service and each enrollment month being paid or adjusted including:

(a)   the enrollment month,
(b)   the total number of billing units (Covered Employees or total claims savings),
(c)   the price being paid,
(d)   the total amount due

2.   The detail payment backup report shall indicate, for each self reported service fee the following:

(a)   for each Service and for each Plan Sponsor in each Service with a billing unit of Covered Employee, the number of Covered Employees as of the first of the month subtotaled by the first 3 digits of the zip code where each Covered Employee is located;
(b)   if applicable, the termination date for each Plan Sponsor that has terminated its relationship with Subscriber during the current month;
(c)   the total amount of claims savings as calculated pursuant to Section 3(e) of this Exhibit; and
(d)   other data which PHCS may reasonably require to provide Services under this Agreement.

E.   **Enrollment Expectations:**

1. Subscriber is expected to enroll and maintain a minimum number of 15,000 Covered Employees in PHCS PPO Services by January 1, 2002 and thereafter.

2.  As stated in Section 3.3 of this Agreement, if Subscriber fails to enroll and maintain 15,000 Covered Employees during this time period PHCS may immediately and without notice terminate this Agreement.

13

Confidential
PHCS0059

## EXAMPLES

*The fees provided in the examples below are for purposes of example only:

### Example – Retroactive Adjustments

If Subscribers initially reports PPO enrollment of 15,010 for October of 2002, the Self Reported Enrollment Fee for May will be calculated using the per Covered Employees rate of ▓▓▓▓ for PPO Services . If, in November of 2002, Subscriber reports a decrease in enrollment of 100 for October, the reduction in the Self Reported Enrollment Fee for October will be calculated as 100 x ▓▓▓▓ notwithstanding the fact that total enrollment for October might otherwise produce a *higher* Self Reported Enrollment Fee. By way of further example, if Subscriber initially reports PPO enrollment of 14,950 for November of 2002, the Self Reported Enrollment Fee for November will be calculated using the per Covered Employees rate of ▓▓▓▓ for PPO Services. If, in December of 2002, Subscriber reports an increase in enrollment of 75, the increase in the Self Reported Enrollment Fee due November will be calculated as 75 x ▓▓▓▓ notwithstanding the fact that total enrollment for November might otherwise produce a *lower* Self Reported Enrollment Fee.

### Example – Tiered Pricing

If Subscriber were to enroll 16,000 Covered Employees in the PPO Services, Subscriber would pay ▓▓▓▓ per Covered Employees per month for the PPO Services for all 16,000 Covered Employees. By way of further example, if the number of Covered Employees were to decline to 13,000, Subscriber would pay ▓▓▓▓ per Covered Employees per month for the PPO Services for all 13,000 Covered Employees. If, however, that same 16,000 Covered Employees were reported in two separate reports or was paid by two separate checks, the price for all 16,000 Covered employees would be ▓▓▓▓ (the highest price).

The amount of the Self Reported Enrollment Fee shall be calculated monthly based upon the totals reported in the summary and detailed payment backup reports submitted by Subscriber pursuant to this Exhibit. In the event that Subscriber submit more than one summary and one detailed payment backup report for any given month, the number of Covered Employees contained on the individual reports will not be combined when calculating the Self Reported Enrollment Fee due to PHCS and the fee for all enrollment will be calculated using the lowest tier of 1- 14,999 (the highest price).

14

Confidential
PHCS0060

<u>Example — % Savings</u>

FEE CALCULATION:

| | | | | | |
|---|---|---|---|---|---|
| Total Billed Charges | - | Non-Covered Services | = | Total "Covered" Services | |
| Total "Covered" Services | - | PHCS Negotiated Rate | = | Total Claims Savings | |
| Subscriber Price  | x | Total Claims Savings | = | Amount Owed to PHCS by Subscriber | |

EXAMPLE OF FEE CALCULATION:

Example: Cardiac Surgery, 10 day L.O.S.

Total Billed Charges
Non-Covered Services
Total Covered Services
PHCS Negotiated Rate
Total Claims Savings
Subscriber Price

Amount Due PHCS

15

Confidential
PHCS0061

## EXHIBIT O: POWER OF ATTORNEY

### LIMITED POWER OF ATTORNEY

The undersigned (the "Company") hereby appoints and authorizes Private Healthcare Systems, Inc. ("PHCS"), a Delaware corporation, to be its agent and attorney-in-fact, for the limited purpose of making, executing, terminating, acknowledging and delivering, in the Company's name, place and stead, those preferred provider and other PHCS network agreements, including, but not limited to, physician individual and group agreements, hospital/facility agreements and ancillary/vendor services and case management agreements (the "Agreements"), with health care providers selected by PHCS (the "Participating Providers"), as are the then standard forms of such agreements in use by PHCS at the time the agreements are signed. The Company hereby further authorizes PHCS to execute, on the Company's behalf and without the prior approval of the Company, any amendments to such Agreements. Each Agreement, when executed and delivered by PHCS and Participating Provider, shall be binding upon and inure to the benefit of such Participating Provider and Company as if individually executed by Participating Provider and Company. New Exhibits may be added hereto and incorporated herein by reference only with the prior oral or written consent of the Company.

Third parties may rely upon the actions of said attorney-in-fact as to all matters relating to the power granted by this Power of Attorney, and no person who may act in reliance upon the actions of said attorney-in-fact shall incur any liability to the undersigned as a result of permitting said attorney-in-fact to exercise such judgment.

This Limited Power of Attorney will supersede any prior written Limited Power of Attorney between the parties with respect to the terms and provisions contained herein. The Company hereby authorizes PHCS to terminate each of the Agreements upon termination by either Company or PHCS of a subscriber services agreement between the Company and PHCS (the "Subscriber Services Agreement") and this Limited Power of Attorney shall be revoked upon the last termination of the last of the Agreements. This Limited Power of Attorney may be revoked by written notice from Company to PHCS, but such revocation shall not be effective against any third party unless such third party shall have received actual notice of such revocation and as to Participating Providers. This Limited Power of Attorney shall be immediately revoked upon termination by PHCS of the last of the Agreements following the effective date of termination or expiration of the Subscriber Services Agreement. This power is granted solely to PHCS acting through its authorized employees, and PHCS shall have no power of substitution with respect thereto.

IN WITNESS WHEREOF, this Power of Attorney has been executed by GPA Holding Inc. and is effective as to GPA Holding Inc. as of the first day of January, 2003.

By: _Kathy Enochs_
Name: Kathy Enochs
Title: Chief Operating Officer

STATE OF _Texas_ )
COUNTY OF _Dallas_ )

On this _2_ day of _October_, 2003, before me personally appeared _Kathy Enochs_, to me known and known to me to be the person identified above who executed the foregoing Power of Attorney and, being by me first duly sworn, duly acknowledged to me that he executed the same. Witness my hand and official seal.

_Cathy L. English_
Notary Public
My Commission Expires: _3-30-05_

CATHY L. ENGLISH
Notary Public, State of Texas
My Commission Expires
March 30, 2005

16

Confidential
PHCS0062

Plaintiff's Response to Defendant's Motion for Partial Summary Judgment - Page 119

EXHIBIT R: REPRICING SERVICES

I.   <u>DEFINITIONS</u>.  The following terms are defined for purposes of this Exhibit:

   A.  EXCEPTIONS.  Any claim that cannot be auto-priced by the e-price system.

   B.  PENDED CLAIMS.  Any Exception that must be processed by PHCS.  These Exceptions include, but are not limited to, claims that cannot auto-price because the provider address missing, the fee schedule missing, or if it is a hospital claim that requires manual calculations.

II.  <u>REPRICING SERVICES MODELS</u>.  Subscriber may chose to purchase Repricing Services using only one of the three models noted below.

   A.  <u>E-price Options.</u>

      1.   Direct (EDI).   Under this model, the Subscriber inputs claims data necessary to reprice claims into a standard electronic file, as prescribed by PHCS. The Subscriber submits the file directly to PHCS using an Electronic Data Interface ("EDI").  The PHCS e-price system reprices the claims and sends the repriced claims back to the Subscriber using an EDI.  Pended Claims must be processed by PHCS.   Exceptions, except for Pended claims, can either be processed by PHCS, or can be sent back to the Subscriber for the necessary adjustments.

         •  OPTION A.  Under this option, the Pended Claims will be processed by PHCS, and all other Exceptions will be processed by the Subscriber.

         •  OPTION B.  Under this option, all Exceptions will be processed by PHCS.

      2.   Online (Remote).  Under this model, the Subscriber will have direct access to the e-price system via the Internet.  Subscriber will enter claim data into the remote desktop for repricing.   The e-price system will reprice the claims automatically for the Subscriber.  Pended Claims must be processed by PHCS. PHCS will send repriced Pended Claims back to the Subscriber via the Internet. To become a Remote User, Subscriber must be approved by the PHCS's repricing vendor (hereinafter the "Vendor").  PHCS shall have no responsibility for the Subscriber's Internet connectivity.

   B.   <u>Standard Repricing Option.</u>

17

Confidential
PHCS0063

Classic.  Under this model, the Subscriber submits all claims data necessary to reprice claims directly to PHCS in a standard paper claim format, as specified by PHCS.  PHCS will enter the claim into the e-price system, reprice the claim for the Subscriber, and then send the repriced claim back to the Subscriber in either a standard paper or EDI form.  All Exceptions must be processed by PHCS.

III.    REPRICING SERVICES COMPONENTS

A.    Implementation Services.

1.    Depending upon the Repricing Services purchased by the Subscriber, PHCS may organize a project team consisting of representatives from PHCS, Vendor and Subscriber will assist the Subscriber in testing and providing advice on equipment issues, software and staff training.

2.    The Subscriber will not be charged an additional fee for the implementation services, unless Subscriber requires Customization Services (as described below in Section 3).

B.    Support Services.  PHCS shall provide support services to the Subscriber in connection with the Repricing Services as follows:

1.    Help Desk Access.  Help Desk Services are available to Subscribers purchasing the Direct or Remote e-pricing options, or for Subscribers purchasing the Classic model with claims information transmitted from PHCS via EDI.  PHCS will provide the Subscriber with telephone access to a team who will be available to assist the Subscriber with technical issues including, but not limited to, system access and software functionality questions.

2.    Claim Support.  Claims support services will be provided to Subscriber for any of the repricing models described above.  PHCS will provide the Subscriber with telephone access to a team member who will be available to assist the Subscriber with questions relating to claim processing or business rule issues.  Please note that this support does not include assistance with the resolution of eligibility and/or benefits issues.

C.    Customization Services.  PHCS may be required to develop file formats or perform custom system modifications ("Customization Services") in order to provide the Subscriber with Repricing Services.  In the event that the Subscriber requires Customization Services, the Subscriber will be responsible for paying an additional fee for these services.  PHCS will work with the Vendor in determining the amount of

18

Confidential
PHCS0064

Plaintiff's Response to Defendant's Motion for Partial Summary Judgment - Page 121

customization required, and establishing a fee for the Customization Services. PHCS will provide the Subscriber with an invoice for any Customization Services Fees.

## IV. REPRICING SERVICES GENERAL PROVISIONS

A. **Fees.** The Subscriber will pay the fees specified in Exhibit P for the Repricing Services. The pricing noted on Exhibit P includes the applicable charge to process Exceptions and Pended Claims within the claims option purchased by the Subscriber. In the event that the Subscriber is purchasing the Repricing Services on a per claim basis, the Subscriber shall be charged a per claim fee each time that a claim is submitted, including duplicates, adjustments and resubmitted claims. The Subscriber shall not be charged a per claim fee for Exceptions until the repricing process is complete.

B. **Duties of the Subscriber with regard to Repricing Services.** The Subscriber shall submit client identification and applicable product information as required by PHCS to perform the Repricing Services. In addition, the Subscriber must submit all information that is required to reprice a claim under the model that is purchased by the Subscriber.

C. **Termination, Reduction and Modifications of Repricing Services.**

1. The Repricing Services may be terminated by Subscriber in accordance with Section 2.4 of this Agreement.

2. The Repricing Services may be added to, modified, rescinded, deleted or changed by PHCS in accordance with Section 2.2 of the Agreement.

3. Upon the Termination Date of the Agreement, PHCS will continue to provide Repricing Services under the Repricing Services model that the Subscriber is purchasing at the time of termination, for a period of 12 months for claims with service dates prior to termination. In the event that the Subscriber is not purchasing the Repricing Services on a per claim basis, PHCS will establish a per claim fee that the Subscriber will pay to PHCS for this 12 month period. In the event that the Subscriber is not purchasing Repricing Services as of the Termination Date, but requests that PHCS provide Repricing Services during the period following the Termination Date, PHCS will establish a per claim fee that the Subscriber will pay to PHCS for this 12 month period.

19

Confidential
PHCS0065

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT** 352M GOP430 |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

### ORDER ON PRIVATE HEALTHCARE SYSTEM, INC.'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

On the 28th Day of August 2015, came to be heard Defendant Private Healthcare Systems, Inc.'s ("PHCS") Motion for Partial Summary Judgment. The Court, having reviewed the Motion, the Response, the applicable law, and the arguments of counsel, is of the opinion that Defendant PHCS' Motion for Partial Summary Judgment seeking a declaration that its liability in the current action be capped at $1 million section should be in all things DENIED.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant Private Healthcare Systems Inc.'s Motion for Partial Summary Judgment is hereby **DENIED**.

Signed this 28th day of August, 2015

_____
**JUDGE PRESIDING**

DOCKET DATE:  08/28/2015

MOTION - PARTIAL SUMMARY JUDGMENT

NOTE:

THIS IS THE <u>SAME</u> EXACT PLEADING AS THE

MOTION - PARTIAL SUMMARY JUDGMENT

THAT WAS FILED ON 6/16/2015 (125 PAGES)

(first page only follows)

(<u>SEE</u> FULL COPY OF PLEADING AT DOCKET DATE:  6/16/2015)

FILED
DALLAS COUNTY
6/16/2015 5:41:16 PM
FELICIA PITRE
DISTRICT CLERK

**CAUSE NO. DC-09-07252**

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | |
| | § | **298TH JUDICIAL DISTRICT** |

### PRIVATE HEALTHCARE SYSTEMS, INC.'S MOTION
### FOR PARTIAL SUMMARY JUDGMENT
### <u>RELATED TO LIMITATION OF LIABILITY PROVISION</u>

Pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure, Third-Party Defendant, Private Healthcare Systems, Inc. ("PHCS") files this Motion for Partial Summary Judgment seeking a determination as to limitation of its liability to Third-Party Plaintiff GPA Holdings, Inc. ("GPA"),[1] and in support thereof, respectfully shows the Court as follows:

### I.

### <u>SUMMARY OF MOTION</u>

1.      Pursuant to the terms of the Subscriber Services Agreement (the "Agreement") between PHCS and GPA,[2] the parties entered into a mutual indemnification provision set forth in Article VI of the Agreement. At all times, the Agreement between PHCS and GPA was between

---

[1] This case was severed from the action styled *Baylor Health Care System v. GPA Holding, Inc. v. Private Healthcare Systems, Inc.*, No. 06-00120, 298th JDC, Dallas County, Texas (the "*Baylor/GPA* case"). In the present action, GPA is seeking indemnity of amounts paid by GPA to Baylor in settlement of the judgment rendered in favor of Baylor against it. The terms of the settlement are confidential, and for purpose of this motion need not be presented to the Court, thus avoiding the necessity of filing this pleading under seal.

[2] GPA is successor-in-interest to Group & Pension Administrators, Inc., which was the original signatory to the Agreement, which was executed in April 1998. In January 2003, the Agreement was amended, assigned and assumed by GPA, with PHCS' consent.

1

FILED
DALLAS COUNTY
9/28/2015 11:34:25 AM
FELICIA PITRE
DISTRICT CLERK

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

CRAIG L. CAESAR
Direct Dial: (504) 566-8616
Direct Fax: (504) 585-6916
CCaesar@bakerdonelson.com

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:   504.566.5200
FAX:       504.636.4000

www.bakerdonelson.com

September 22, 2015

**VIA FEDERAL EXPRESS**

Hon. Emily G. Tobolowsky
Judge, 298 Judicial District Court
George L. Allen, Sr. Courts Building
8th Floor New Tower
600 Commerce Street
Dallas, TX  75202

　　　　Re:　　GPA Holding, Inc. v. Private Healthcare Systems, Inc.; Cause
　　　　　　　No. DC-09-07252, 298 Judicial District, Dallas County, Texas

Dear Judge Tobolowsky:

　　　　Plaintiff's counsel and I have discussed the upcoming October 26, 2015 trial setting of this proceeding, and because of expert discovery and other scheduling issues, we have agreed and herein request to reset this case on February 1, 2016.  Please note that we have scheduled expert depositions for early November, 2015.

　　　　Appreciating the Court's attention to this matter, and with kind regards, I remain

　　　　　　　　　　　　　　　　　　Respectfully,

　　　　　　　　　　　　　　　　　　Craig L. Caesar

CLC/km

cc:　　Jeffrey W. Ryan

ALABAMA　　　FLORIDA　　　GEORGIA　　　LOUISIANA　　　MISSISSIPPI　　　TENNESSEE　　　TEXAS　　　WASHINGTON, D.C.

FILED
DALLAS COUNTY
10/7/2015 11:29:59 AM
FELICIA PITRE
DISTRICT CLERK

# BAKER DONELSON
BEARMAN, CALDWELL & BERKOWITZ, PC

CRAIG L. CAESAR
Direct Dial: (504) 566-8616
Direct Fax: (504) 585-6916
CCaesar@bakerdonelson.com

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:   504.566.5200
FAX:     504.636.4000

www.bakerdonelson.com

October 7, 2015

Hon. Emily G. Tobolowsky
Judge, 298 Judicial District Court
George L. Allen, Sr. Courts Building
8th Floor New Tower
600 Commerce Street
Dallas, TX  75202

Re:    GPA Holding, Inc. v. Private Healthcare Systems, Inc.; Cause
       No. DC-09-07252, 298 Judicial District, Dallas County, Texas

Dear Judge Tobolowsky:

Further to my e-filed correspondence requesting to reset the trial of this case on February 1, 2016 (see Exhibit "A"), attached please find a proposed Order.

Appreciating the Court's attention to this matter, I remain

Respectfully,

Craig L. Caesar

CLC/km

Agreed and accepted this _____ day of October, 2015:

By: _____
    Jeffrey W. Ryan, Counsel for Plaintiff

ALABAMA □ FLORIDA □ GEORGIA □ LOUISIANA □ MISSISSIPPI □ TENNESSEE □ TEXAS □ WASHINGTON, D.C.

FILED
DALLAS COUNTY
9/28/2015 11:34:25 AM
FELICIA PITRE
DISTRICT CLERK

# BAKER DONELSON
### BEARMAN, CALDWELL & BERKOWITZ, PC

CRAIG L. CAESAR
**Direct Dial:** (504) 566-8616
**Direct Fax:** (504) 585-6916
CCaesar@bakerdonelson.com

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:   504.566.5200
FAX:      504.636.4000

www.bakerdonelson.com

September 22, 2015

**VIA FEDERAL EXPRESS**

Hon. Emily G. Tobolowsky
Judge, 298 Judicial District Court
George L. Allen, Sr. Courts Building
8th Floor New Tower
600 Commerce Street
Dallas, TX  75202

Re:   GPA Holding, Inc. v. Private Healthcare Systems, Inc.; Cause
        No. DC-09-07252, 298 Judicial District, Dallas County, Texas

Dear Judge Tobolowsky:

Plaintiff's counsel and I have discussed the upcoming October 26, 2015 trial setting of this proceeding, and because of expert discovery and other scheduling issues, we have agreed and herein request to reset this case on February 1, 2016.  Please note that we have scheduled expert depositions for early November, 2015.

Appreciating the Court's attention to this matter, and with kind regards, I remain

Respectfully,

Craig L. Caesar

CLC/km

cc:    Jeffrey W. Ryan

**EXHIBIT "A"**

ALABAMA      FLORIDA      GEORGIA      LOUISIANA      MISSISSIPPI      TENNESSEE      TEXAS      WASHINGTON, D.C.

CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **PRIVATE HEALTHCARE SYSTEMS,** | § | |
| **INC.** | § | **298TH JUDICIAL DISTRICT** |

## ORDER GRANTING CONTINUANCE

CAME BEFORE THE COURT the AGREED REQUEST TO RESET TRIAL in the above-referenced cause, and the Court, after having considered same, does hereby hold that the request is GRANTED, and this case is hereby reset to February 1, 2016.

SIGNED the _____ day of October, 2015.


_____
JUDGE PRESIDING


**ORDER GRANTING CONTINUANCE**                                               **Page 1**

353M
000082

CAUSE NO. DC-09-07252

| GPA HOLDING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | |
| | § | DALLAS COUNTY, TEXAS |
| PRIVATE HEALTHCARE SYSTEMS, | § | |
| INC. | § | 298TH JUDICIAL DISTRICT |

## ORDER GRANTING CONTINUANCE

CAME BEFORE THE COURT the AGREED REQUEST TO RESET TRIAL in the above-referenced cause, and the Court, after having considered same, does hereby hold that the request is GRANTED, and this case is hereby reset to February 1, 2016.

SIGNED the __14__ day of October, 2015.

_____
JUDGE PRESIDING

**ORDER GRANTING CONTINUANCE**                                    **Page 1**

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS  75202-4604

October 14, 2015

CRAIG L. CAESAR
201 ST CHARLES AVENUE
SUITE 3600
NEW ORLEANS LA  70170

DC-09-07252
GPA HOLDING INC  vs.  PRIVATE HEALTHCARE SYSTEMS

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:    02/01/2016 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF
THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY.
IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED
FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL
PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS
RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL
PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL
PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN

FILED
DALLAS COUNTY
1/14/2016 10:36:52 AM
FELICIA PITRE
DISTRICT CLERK



# Chamblee Ryan

CHAMBLEE I RYAN I KERSHAW I ANDERSON

January 14, 2016

**_VIA ELECTRONIC FILING_**
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce Street, Box 822
Dallas, Texas  75202-6143

   Re: *GPA Holding, Inc. vs. Private Healthcare Systems, Inc.*
     Cause No. DC-09-07252
     Our File No.: 384-3565

Dear Sir/Madam:

  Enclosed please find an Order Granting Agreed Motion for Continuance regarding the above-referenced matter.  Please present this Order to the Judge for review and approval.

  By copy of this letter on this day, a true and correct copy of same is being forwarded to counsel for Defendant.

  As always, thank you for your assistance in this matter.  Please feel free to contact me if you need further information or if you have any questions.

   Sincerely,

   Jeffrey W. Ryan

JWR:bps
Enclosure

cc: Craig L. Caesar, Esq. – via e-filing service – w/enclosure

---

2777 N. Stemmons Frwy., Suite 1157 | Dallas, Texas 75207
P: (214) 905-2003 | D: (214) 905-9714 | F: (214) 905-1213
jwryan@chambleeryan.com | www.chambleeryan.com

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

## ORDER GRANTING
## AGREED MOTION FOR CONTINUANCE

CAME ON TO BE HEARD the AGREED MOTION FOR CONTINUANCE in the above-referenced cause, and the Court, after having considered same, does hereby hold that the above motion is GRANTED, and this case is hereby reset to May 9, 2016.

SIGNED the_____day of_____, 2016.


_____
**JUDGE PRESIDING**

**ORDER GRANTING AGREED MOTION FOR CONTINUANCE - Page 1**

FILED
DALLAS COUNTY
1/14/2016 10:35:02 AM
FELICIA PITRE
DISTRICT CLERK



January 14, 2016

Hon. Emily Tobolowsky
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce St., Box 822
8th Floor New Tower
Dallas, TX 75202-6143

> Re:   *GPA Holding, Inc. vs. PHCS, Inc.*
> Cause No.:   DC-09-07252
> Claim No.:   002428
> Our File No.: 384-3565

Dear Judge Tobolowsky:

It's us again.  I know this case has been on your docket for what seems like forever.  It is currently set on the Court's February 1, 2016, docket.

Unfortunately, we need to ask for this trial setting to be moved for what will be the very last time.  As a reminder, while the case has a much older docket number, there was a stay in place until 2014 and, therefore, it is not as old as it appears.

Since our last request, we have worked with each other on moving the case forward and just this last week completed expert depositions.  We have a few remaining fact discovery matters and the party are making one final attempt at pre-trial resolution.

As a result of the above, the parties respectfully request the current trial setting be reset on May 9, 2016, or if that is not feasible, that a brief telephone hearing be scheduled to arrange a trial setting that works for all parties involved.  I have attached a proposed Order.  Should it be necessary to schedule a brief hearing on this matter, we of course would be happy to do so.  Thank you for your time and attention to this matter.

Sincerely,

Craig L. Caesar, Counsel for Defendant                Jeffrey W. Ryan, Counsel for Plaintiff

---

FILED
DALLAS COUNTY
1/19/2016 11:18:14 AM
FELICIA PITRE
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE SYSTEMS,** | § | |
| **INC.** | § | **298TH JUDICIAL DISTRICT** |

## AGREED MOTION FOR CONTINUANCE

**COME NOW**, GPA Holdings, Inc. ("GPA") and Private Healthcare Systems, Inc. ("PHCS") and file this their Agreed Motion for Continuance and would respectfully show the Court the following:

### I.

Trial in this matter is set for trial on February 1, 2016. Since our last request, we have worked with each other on moving the case forward and just this last week completed expert depositions. We have a few remaining fact discovery matters and the party are making one final attempt at pre-trial resolution.

### II.

This continuance is not sought for purposes of delay but so that justice may be done.

**WHEREFORE, PREMISES CONSIDERED,** the Parties request this Agreed Motion for Continuance be granted and that trial be set on the May 9, 2016, trial docket.

**Agreed Motion for Continuance – Page 1**

Respectfully submitted,

**Chamblee, Ryan, Kershaw & Anderson, P.C.**

By: _____

Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, TX 75207
Telephone: (214) 905-2003
Telecopier: (214) 905-1213

ATTORNEY FOR GPA HOLDING, INC.

**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**

By: _____

Craig L. Caesar
Texas State Bar No. 24056970
ccaesar@bakerdonelson.com
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200
Telecopier: (504) 585-6916

ATTORNEY FOR PHCS

**Agreed Motion for Continuance – Page 2**

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS  75202-4604

February 23, 2016

File Copy

DC-09-07252
GPA HOLDING INC  vs.  PRIVATE HEALTHCARE SYSTEMS

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:   05/16/2016 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY. IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN

FILED
DALLAS COUNTY
4/19/2016 8:57:37 AM
FELICIA PITRE
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE SYSTEMS,** | § | |
| **INC.** | § | **298TH JUDICIAL DISTRICT** |

### AGREED MOTION FOR SCHEDULING ORDER & MOTION FOR CONTINUANCE

**COME NOW**, GPA Holdings, Inc. ("GPA") and Private Healthcare Systems, Inc. ("PHCS") and file this their Agreed Motion for Scheduling Order & Motion for Continuance and would respectfully show the Court the following:

### I.

Trial in this matter is currently set for May 16, 2016. Back in January, the parties and their counsel conferred and attempted to find a trial week that was convenient to all parties and witnesses involved. We had arrived at a proposed May 9 trial date but, unfortunately, that day did not work with the court's schedule. From its inception and throughout this case's long history, the scheduling of matters has been handled with an exceptional level of cooperation among the parties and counsel. That cooperation continues and once again, unfortunately, the current May 16 trial date does not work for the parties and their multiple witnesses. (In addition, the current setting falls within a planned vacation slot for GPA's counsel, Mr. Ryan).

Since our last request, we have worked with each other on moving the case forward and have completed expert depositions. We have a few remaining fact discovery matters and the parties are making one final attempt at pre-trial resolution.

## II.

The parties respectfully request the court schedule a conference (in person or telephonically) to discuss a new trial date and additional scheduling matters that will allow this matter to be tried in an efficient manner and on a date reasonably appropriate for the parties and their witnesses.

## II.

This continuance is not sought for purposes of delay but so that justice may be done.

**WHEREFORE, PREMISES CONSIDERED,** the Parties request this Agreed Motion for Scheduling Order and Motion for Continuance be granted and that trial be set on the _____, trial docket.

Respectfully submitted,

**Chamblee, Ryan, Kershaw & Anderson, P.C.**

By: _____
Jeffrey W. Ryan
State Bar No. 17469600
jwryan@chambleeryan.com
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, TX 75207
Telephone: (214) 905-2003
Telecopier: (214) 905-1213

ATTORNEY FOR GPA HOLDING, INC.

**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**

**Agreed Motion for Continuance – Page 2**

By: _____

Craig L. Caesar
Texas State Bar No. 24056970
ccaesar@bakerdonelson.com
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200
Telecopier: (504) 585-6916

ATTORNEY FOR PHCS

### CERTIFICATE OF SERVICE

    I do hereby certify that on April 19, 2016, a true and correct copy of the above and foregoing document has been forwarded via facsimile to counsel for Defendant:

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

_____
Jeffrey W. Ryan

### FIAT

    A hearing on the Agreed Motion for Continuance will be heard on the _____ day of

_____, 2016 at _____ __. m.   in the 298th Judicial District Court, Dallas County,

Texas.

_____
**JUDGE PRESIDING**

**Agreed Motion for Continuance – Page 3**

FILED
DALLAS COUNTY
4/19/2016 8:59:37 AM
FELICIA PITRE
DISTRICT CLERK



**Chamblee Ryan**
CHAMBLEE I RYAN I KERSHAW I ANDERSON

April 19, 2016

***VIA ELECTRONIC FILING***
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce Street, Box 822
Dallas, Texas 75202-6143

Re:    *GPA Holding, Inc. vs. Private Healthcare Systems, Inc.*
       Cause No. DC-09-07252
       Our File No.: 384-3565

Dear Sir/Madam:

Enclosed please find an Order Granting Agreed Motion for Scheduling Order & Motion for Continuance regarding the above-referenced matter. Please present this Order to the Judge for review and approval.

By copy of this letter on this day, a true and correct copy of same is being forwarded to counsel for Defendant.

As always, thank you for your assistance in this matter. Please feel free to contact me if you need further information or if you have any questions.

Sincerely,

Jeffrey W. Ryan

JWR:bps
Enclosure

cc:    Craig L. Caesar, Esq. – via e-filing service and via fax – w/enclosure

---

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

## ORDER GRANTING
## <u>AGREED MOTION FOR SCHEDULING ORDER &</u>
## <u>MOTION FOR CONTINUANCE</u>

CAME ON TO BE HEARD the AGREED MOTION FOR SCHEDULING

ORDER & MOTION FOR CONTINUANCE in the above-referenced cause, and

the Court, after having considered same, does hereby hold that the above motion is

GRANTED, and this case is hereby reset to _____.

SIGNED the_____day of_____, 2016.

_____
**JUDGE PRESIDING**

**ORDER GRANTING AGREED MOTION FOR CONTINUANCE - Page 1**

FILED
DALLAS COUNTY
4/26/2016 1:42:51 PM
FELICIA PITRE
DISTRICT CLERK

# Chamblee Ryan

CHAMBLEE | RYAN | KERSHAW | ANDERSON

April 26, 2016

Hon. Emily Tobolowsky
298th Judicial District Court
George L. Allen, Sr. Courts Building
600 Commerce St., Box 822
8th Floor New Tower
Dallas, TX 75202-6143

Re:    *GPA Holding, Inc. vs. PHCS, Inc.*
       Cause No.:    DC-09-07252
       Claim No.:    002428
       Our File No.:  384-3565

Dear Judge Tobolowsky:

As you know, the parties recently filed an Agreed Motion for Continuance. The Motion was filed in part because of party/witness conflicts with the current trial date (we had requested an earlier trial date which apparently was unavailable with the Court). In addition, the Motion was based on a personal vacation conflict with the current trial date.

The parties have discussed this matter and would ask that the case be reset on September 12, 2016. Again, both of us and our clients are acutely aware this matter has been around for a long time. As a reminder, this portion of the case is not nearly as old and active as the cause number suggests. We would be happy to discuss this matter via telephone conference or personally at a hearing. A proposed Agreed Order on the Motion is being submitted for your review and consideration.

Sincerely,

Jeffrey W. Ryan

JWR:bg

cc:    Mr. Craig L. Caesar, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.

**CAUSE NO. DC-09-07252**

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE SYSTEMS,** | § | |
| **INC.** | § | **298TH JUDICIAL DISTRICT** |
| | § | |

**ORDER GRANTING**
**AGREED MOTION FOR CONTINUANCE**

CAME ON TO BE HEARD the AGREED MOTION FOR CONTINUANCE in the above-referenced cause, and the Court, after having considered same, does hereby hold that the above motion is GRANTED, and this case is hereby reset to September 12, 2016.

SIGNED the_____day of_____, 2016.

_____
**JUDGE PRESIDING**

**Order Granting Agreed Motion for Continuance – Solo Page**

FILED
DALLAS COUNTY
4/27/2016 12:32:19 PM
FELICIA PITRE
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC.** | § | **298TH JUDICIAL DISTRICT** |

### PLAINTIFF GPA HOLDING, INC.'S SECOND
### AMENDED ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **COMES NOW**, Plaintiff GPA Holding, Inc. ("GPA") and files this its
Second Amended Petition against Private Healthcare Systems, Inc. ("PHCS")
pursuant to Texas Rule of Civil Procedure 38, and in support thereof would
respectfully show as follows:

### I. Jurisdiction and Venue

   1.   This Court has jurisdiction over this case because the amount in
controversy is above the minimum jurisdictional limits of this Court.

   2.   Venue is proper in Dallas County, Texas pursuant to Section
15.002(a)(1) of the Texas Civil Practices & Remedies Code because the original
suit by Baylor Health Care System ("Baylor") was filed in Dallas County, Texas,
and all or a substantial part of the events giving rise to the claims asserted herein
arose or occurred in Dallas County, Texas.

## II.   Parties

3.     GPA is a Texas corporation with its principal place of business in Dallas County, Texas.

4.     Defendant PHCS is a Delaware corporation authorized to conduct and conducting business in the State of Texas, with its principal place of business at 1100 Winter Street, Waltham, Massachusetts 02451.  PHCS has  previously been served with process by serving its registered agent in Texas, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201 and has previously appeared and answered herein.  PHCS has contracted with medical providers in Texas such as Baylor, and is otherwise conducting business in this State and in Dallas County.  Accordingly, PHCS is subject to the jurisdiction of this Court.

## III.   Factual Background

5.     Baylor Healthcare System filed its Original Petition against GPA on October 11, 2006 in Cause No. 06-00120, alleging that GPA breached a contract between Baylor and PHCS.  More particularly, Baylor's allegations against GPA arise from a Hospital Services Agreement – PPO ("Hospital Services Agreement") executed by and between Baylor and PHCS on January 1, 2002.  GPA was neither a signatory nor a party to the Hospital Services Agreement and has maintained that it is not individually subject to the prompt payment obligations specified in Baylor's Original Petition.

6.      GPA Holding, Inc. filed its Original Third-Party Petition against Private Healthcare Systems, Inc. on December 18, 2006 alleging causes of action against PHCS for numerous claims including breach of fiduciary duty, negligence, indemnity, contribution and breach of contract.

7.      Subsequently, this Court entered an Agreed Final Judgment between Baylor Healthcare System and GPA Holding, Inc. and further ordered GPA's third-party claim against PHCS be severed from the present cause and be docketed by the District Clerk's Office under a separate cause number.   The parties in the above-matter subsequently entered into an Agreed Order to Stay Proceedings pending the outcome of appeals of the underlying GPA/Baylor litigation.   This Court entered a Stay of all Proceedings for the present case, which was subsequently lifted on March 13, 2014.

8.      GPA has denied liability to Baylor in this matter.   However, GPA has exhausted all avenues of appeal regarding this Court's finding of liability to Baylor.   Therefore, in light of the Court's finding in Baylor's favor on claims asserted against GPA, GPA contends that PHCS is liable to GPA for all or part of Baylor's alleged damages.

## IV.   <u>Causes of Action</u>

### A.   *Breach of Fiduciary Duty*

9.    Pursuant to a string of agreements, including a Limited Power of Attorney by and between PHCS and GPA, PHCS agreed to act as GPA's fiduciary and was obligated to act in GPA's best interests.  The Limited Power of Attorney empowered PHCS to enter into certain "standard form" agreements for the benefit of GPA and the individual self-funded plans administered by GPA.

10.    By way of its Original Petition, Baylor alleges that PHCS, through its execution of the Hospital Services Agreement, bound GPA to the obligations of a "Payor" under the non-standard Hospital Services Agreement.  GPA previously denied that PHCS bound it as a "Payor" under the Hospital Services Agreement, but the determination by this Court that PHCS did in fact obligate GPA as a "Payor" under the agreement with Baylor, then such an action by PHCS was in direct breach of its fiduciary duties owed to GPA.

11.    As GPA's agent and fiduciary, PHCS had an obligation to enter only contractual arrangements that were reasonable, readily performable, consistent with GPA's rights and responsibilities under the Employee Retirement Income Security Act, and beneficial to GPA.  The Court's determination that Baylor is correct in asserting that GPA is a "Payor" under the Hospital Services Agreement (which GPA specifically denied), means that PHCS breached its fiduciary duties to

GPA because it knew or should have known that GPA was not a Payor and unnecessarily exposed GPA to potential liability as a "Payor."

12.    Based on Baylor's interpretation of the Hospital Services Agreement, PHCS also breached its fiduciary duties to GPA by agreeing to a one-sided and impracticable PPO agreement that is inconsistent with GPA's rights and duties under ERISA.   Section 4.4 of the Hospital Services Agreement requires that a claim be paid within 45 days of receipt of a clean claim.   Pursuant to Baylor's contract construction (which GPA disputed), claims would have to be paid before completion of the full investigation required by ERISA, and before the true payors (the self-funded employee health plans) made funds available for payment. Moreover, PHCS agreed to the Hospital Services Agreement without ever consulting GPA.

13.    Further, the Hospital Services Agreement does not require Baylor to refund any money paid if a claim is later determined not to be covered under the applicable self-funded ERISA plan. PHCS breached its fiduciary duties to GPA by entering into an agreement with Baylor that fails to appropriately protect the interests of GPA (to the extent GPA is considered a Payor, which GPA denied).

14.    As GPA's fiduciary, PHCS owed GPA a duty to place the interests of GPA before its own.   Yet, upon information and belief, PHCS received an undisclosed 2% fee from Baylor in connection with claims submitted to GPA for

processing, without advising GPA or remitting such fee to GPA or to the self-funded employee health plans in GPA's charge.   PHCS thereby breached its fiduciary duties to GPA by placing itself in a position of conflicting interests and competing duties of loyalty, and by failing to disclose the conflict of interest to GPA.   PHCS further breached its fiduciary duties by failing to obtain GPA's consent to receive commissions from both sides of transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA.

15.    Further, PHCS breached its fiduciary duties to GPA by failing to provide GPA with the Hospital Services Agreement before the Baylor claims in question arose.   Specifically, PHCS breached its fiduciary duties by failing to inform GPA that the construction of the contracts entered into by PHCS and Baylor would effectively make GPA a "payor" – something they never were before. PHCS placed GPA in the untenable position of performing a non-standard contract that was kept secret from PHCS' fiduciary.

**B.    *Negligence and Willful Malfeasance***

16.    PHCS owed GPA a duty of care as GPA's agent and attorney in fact. PHCS was negligent, grossly negligent, and/or acted with reckless disregard, willful malfeasance and/or intent to harm GPA in connection with and in performing duties it owed to GPA.

17.     In the event Baylor prevails in its claims against GPA, the GPA alleges that PHCS proximately caused GPA harm.

## C.     *Indemnity*

18.     In light of GPA being found liable for Baylor's alleged damages, PHCS is liable to GPA for indemnity.

19.     GPA seeks indemnity directly from PHCS based on Article VI, Section 6.1 of the Subscriber Services Agreement for negligence and/or willful malfeasance by PHCS in connection with the performance or non-performance of PHCS' duties and obligations under the Hospital Services Agreement.

20.     In addition, GPA was sued by Baylor in this action based upon alleged acts or omissions on the part of PHCS.  In light of these allegations, GPA seeks all rights and remedies under common law and under the Texas Civil Practices & Remedies Code Chapter 32.001, *et seq.*

## D.     *Contribution*

21.     In light of GPA being found liable for Baylor's alleged damages, GPA is entitled to contribution from PHCS under Chapters 32 and 33 of the Texas Civil Practices and Remedies Code and any other applicable statues or law.

22.     GPA affirmatively asserts that the negligent and/or wrongful acts or omissions of PHCS proximately caused the harm alleged by Baylor, and GPA is

entitled to and seeks a reduction of liability and damages for any percentage of responsibility of PHCS for the damages alleged in this suit.

### E.   *Breach of Contract*

23.    PHCS materially breached its contract with GPA by failing to provide GPA with the Hospital Services Agreement as required by Section C and Section 1.2 of the Subscriber Acknowledgment.

24.    PHCS materially breached its contract with GPA by entering into a non-standard contract with Baylor, to the extent GPA is bound by conventional terms making it a "payor" under the Agreement.

25.    Further, PHCS has materially breached its contract with GPA by failing to indemnify GPA as required by Article VI, Section 6.1 of the Subscriber Services Agreement.

26.    PHCS' material breaches have caused and continue to cause GPA injury and damages.

### F.   *Equitable Relief - Rescission*

27.    In the alternative, GPA pleads affirmatively for equitable relief, including, but not limited to, rescission of the Subscriber Services Agreement executed by and between PHCS and GPA and/or the Hospital Services Agreement executed by and between GPA and Baylor in order to restore the *status quo ante*. While acting as GPA's fiduciary: (a) PHCS executed a non-standard Hospital

Services agreement with Baylor which designated GPA as a Payor; (b) PHCS knew or should have known that GPA was not a Payor and did not intend to be a Payor; (c) PHCS exposed GPA to potential liability as a Payor; (d) the Hospital Services Agreement executed by and between PHCS and Baylor is inconsistent with GPA's rights and duties under the Employee Retirement Income Security Act ("ERISA"); (e) PHCS failed to properly protect GPA's interests in executing an agreement that does not require Baylor to refund any money if a claim is later determined ineligible for coverage under ERISA; (f) PHCS failed to obtain GPA's consent to receive commissions from both sides of the transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA; and (g) PHCS failed to provide GPA with the Hospital Services Agreement until after Baylor filed a lawsuit against PHCS and GPA.  GPA's allegations of breach of fiduciary duty and willful malfeasance bring this case within the recognized grounds for equitable relief.

## G.    Attorneys' Fees

28.    GPA has been required to retain the services of the undersigned counsel to represent it in connection with the prosecution of this suit.  GPA is entitled to recover reasonable and necessary attorneys' fees through trial, appeal, and Supreme Court review pursuant to the Subscriber Services Agreement and

Chapters 38 of the Texas Civil Practices and Remedies Code and/or other applicable law.

### H.   Conditions Precedent

29.   All conditions precedent to the relief requested in this Second Amended Original Petition have occurred, been performed, been waived, or are excused by law.

## V.   Damages

30.   As a direct and proximate result of PHCS' conduct described above, GPA has been damaged, continues to be damaged, and seeks the following relief:

     a.  Actual damages;

     b.  Consequential damages;

     c.  Exemplary damages;

     d.  Forfeiture of any/all fees received by PHCS, whether received from Baylor or GPA;

     e.  Profit disgorgement;

     f.  Indemnity;

     g.  Contribution;

     h.  Equitable relief, including but not limited to rescission;

     i.  Reasonable and necessary attorneys' fees;

     j.  Pre- and post-judgment interest;

k. Costs of suit;

l. All further relief to which GPA may show itself to be justly
entitled.

**WHEREFORE, PREMISES CONSIDERED**, GPA requests that, on final

trial of this cause, the Court enters judgment against PHCS awarding GPA all

relief to which it may be justly entitled.

Respectfully submitted,

**CHAMBLEE,    RYAN,    KERSHAW    &
ANDERSON, P.C.**

By:    /s/ Jeffrey W. Ryan
Jeffrey W. Ryan
State Bar No. 17469600
jryan@crka.law
Jarad L. Kent
State Bar No. 24062824
jkent@crka.law
Christopher B. Wood
State Bar No. 24056670
cwood@crka.law

2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207
(214) 905-2003
(214) 905-1213 (Facsimile)

**ATTORNEYS FOR GPA HOLDING, INC.**

## CERTIFICATE OF SERVICE

I do hereby certify that on April 27, 2016, a true and correct copy of the above and foregoing document has been forwarded via fax to Defendant's counsel of record:

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA  70170

/s/ Christopher B. Wood
Christopher B. Wood

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS 75202-4604

May 05, 2016

File Copy

DC-09-07252
GPA HOLDING INC vs. PRIVATE HEALTHCARE SYSTEMS

ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:    09/12/2016 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF
THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY.
IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED
FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL
PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS
RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL
PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL
PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN

FILED
DALLAS COUNTY
6/3/2016 2:13:44 PM
FELICIA PITRE
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | **298TH JUDICIAL DISTRICT** |
| **SYSTEMS, INC.,** | § | |

### PRIVATE HEALTHCARE SYSTEMS, INC.'S
### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

COMES NOW, Private Healthcare Systems, Inc. ("PHCS"), and with a full reservation of rights, respectfully files the following Answer, Affirmative Defenses, and Counterclaim in response to the First Amended Original Petition filed by GPA Holding, Inc. ("GPA") on November 14, 2014, as follows:

### I.

### GENERAL DENIAL

1.     Pursuant to Rule 92 of the Texas Rules of Civil Procedure, PHCS generally denies all of GPA's claims and demands strict proof thereof.

### II.

### AFFIRMATIVE AND OTHER DEFENSES

2.     Pleading further and/or in the alternative, if necessary, and without waiver of any defense or affirmative defense pleaded, PHCS asserts the following affirmative and other defenses.

3.     GPA has failed to state a claim upon which relief can be granted.

4.     PHCS has not breached any obligation allegedly owed to GPA arising out of any contractual relationship between GPA and PHCS.

5.     All of GPA's tort claims, including breach of fiduciary duty, negligence, gross negligence, and "willful malfeasance," are barred by the economic loss doctrine.

6.     PHCS is not the cause of any alleged liability on the part of GPA to Baylor Health Care System ("Baylor") for which GPA is seeking recovery from PHCS.

7.     PHCS is not the proximate cause of any damages allegedly suffered by GPA.

8.     PHCS has not breached any alleged fiduciary duty claimed by GPA to have been owed to GPA.

9.     PHCS' alleged conduct does not rise to negligence and therefore is not actionable.

10.    Plaintiff's claims are barred in whole or in part by Chapter 33 of the Texas Civil Practice and Remedies Code to the extent that Plaintiff is responsible for a percentage of the alleged harm for which relief is sought in Plaintiff's petition.  See TEX. CIV. & PRAC. REM. CODE §§ 33.001—.016.

11.    PHCS pleads the affirmative defense of waiver.

12.    GPA waived the remedy of rescission by failing to exclude Baylor and continuing to accept benefits under the Hospital Services Agreement.

13.    GPA is estopped from asserting the remedy of rescission by failing to exclude Baylor and continuing to accept benefits under the Hospital Services Agreement.

14.    GPA is not entitled to indemnification or contribution from PHCS because contribution and indemnity are not recoverable from PHCS when Baylor had no cause of action against PHCS.

15.    GPA is estopped by its conduct from asserting any claim against PHCS for indemnity or contribution.

16.    GPA has failed to mitigate its damages.

17.    PHCS pleads all of the terms and conditions of the Subscriber Services Agreement between PHCS and GPA (and all ancillary documents), including all limitations, terms, and defenses as set forth therein as bars to the claims of GPA.

18.    On information and belief, PHCS avers that GPA did not fulfill its obligations as set forth in Subscriber Services Agreement between PHCS and GPA (and all ancillary documents), as well as those obligations in the Hospital Services Agreement-PPO between PHCS and Baylor to which GPA was bound; therefore GPA is barred from any recovery from PHCS.

19.    PHCS reserves the right to supplement these affirmative defenses based on future discovery and pleadings by the parties.

### III.

### RESPONSE TO PLAINTIFF'S PRAYER

20.    The allegations contained in the "PRAYER" are denied.   Specifically, PHCS denies that GPA is entitled to any relief herein, monetary or otherwise.

### IV.

### COUNTERCLAIM

AND NOW, assuming the position of Counterclaim-Plaintiff, PHCS avers as follows:

21.    Jurisdiction and venue are proper in this Court based on the claims asserted by GPA in the First Amended Original Petition.

22.     GPA and PHCS are parties to that certain Subscriber Services Agreement, with an Effective date of April 17, 1998, as amended, assigned and assumed (the "Subscriber Services Agreement").

23.     Pursuant to Article VI, Section 6.3 - <u>Subscriber Indemnification</u>, of the Subscriber Services Agreement, GPA agrees to "indemnify, defend and hold harmless, PHCS, and its officers, directors, employees, and agents against any losses, claims, damages, judgment, liabilities, or expense (including reasonable counsel fees and costs) incurred as a result of negligent performance (or nonperformance) or any willful malfeasance by [GPA] or any of its officers, directors, employees, or agents in connection with the performance of any of the Subscriber's duties or obligations under this Agreement."

24.     To the extent that GPA has been found liable to Baylor Health Care System ("Baylor") for failure to pay in accordance with the terms of the Hospital Services Agreement between Baylor and PHCS, as set forth in GPA's First Amended Original Petition, and such failure is the result of GPA's "negligent performance (or nonperformance) or  . . . willful malfeasance," then PHCS is entitled to indemnification from GPA for the "losses, claims, damages, judgment, liabilities or expense (including reasonable counsel fees and costs) incurred" as a result. Thus, PHCS, at a minimum, is entitled to an offset from any sums sought by GPA from PHCS, by way of indemnity or otherwise, that are attributable to GPA's negligence or malfeasance.

25.     Moreover, whether by way of the above-cited indemnity provision from the Subscriber Services Agreement, pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001 et seq., and/or any other applicable law, because PHCS has been required to retain the services of

undersigned counsel to represent it in connection with this suit, PHCS is entitled to recover reasonable and necessary attorney's fees through trial appeal and Supreme Court review.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Private Healthcare Systems, Inc. prays that, after due proceedings are held,  this matter be dismissed and that GPA Holding, Inc. take nothing by way of its claims, that PHCS recover all of its costs and reasonable and necessary attorneys' fees as allowed by law, and for such other and further relief, both at law and in equity, to which PHCS may be justly entitled.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By:      */s/ Craig L. Caesar*
**CRAIG L. CAESAR (State Bar No. 24056970)**
201 St. Charles Ave., Suite 3600
New Orleans, LA  70170
Telephone:    (504) 566-8616
Facsimile:    (504) 585-6916
ccaesar@bakerdonelson.com

and

Errol J. King
Chase Tower North, 20th Floor
450 Laurel St.
Baton Rouge, LA  70801
Telephone:    (225) 381-7041
Facsimile:    (225) 343-3612
eking@bakerdonelson.com

**ATTORNEYS FOR PRIVATE HEALTHCARE
SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2016, the foregoing pleading was served to all counsel of record via electronic mail as follows:

Jeffrey W. Ryan
(jwryan@chambleeryan.com)
Chamblee, Ryan, Kershaw & Anderson
2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207


_____ /s/ Craig L. Caesar _____
**CRAIG L. CAESAR**

FILED
DALLAS COUNTY
8/22/2016 5:42:01 PM
FELICIA PITRE
DISTRICT CLERK

## CAUSE NO. DC-09-07252

| | | |
|---|---|---|
| **GPA HOLDING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **VS.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| | § | |
| **PRIVATE HEALTHCARE** | § | |
| **SYSTEMS, INC. AND** | § | |
| **MULTIPLAN, INC.** | § | **298TH JUDICIAL DISTRICT** |

## PLAINTIFF GPA HOLDING, INC.'S
## THIRD AMENDED ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Plaintiff GPA Holding, Inc. ("GPA") and files this its Third Amended Original Petition against Private Healthcare Systems, Inc. ("PHCS") and MultiPlan, Inc. pursuant to Texas Rule of Civil Procedure 38, and in support thereof would respectfully show as follows:

### I. Jurisdiction and Venue

1.  This Court has jurisdiction over this case because the amount in controversy is above the minimum jurisdictional limits of this Court.

2.  Venue is proper in Dallas County, Texas pursuant to Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code because the original suit by Baylor Health Care System ("Baylor") was filed in Dallas County, Texas,

and all or a substantial part of the events giving rise to the claims asserted herein arose or occurred in Dallas County, Texas.

## II.    Parties

3.     GPA is a Texas corporation with its principal place of business in Dallas County, Texas.

4.     Defendant PHCS is a Delaware corporation authorized to conduct and conducting business in the State of Texas, with its principal place of business at 1100 Winter Street, Waltham, Massachusetts 02451.  PHCS has  previously been served with process by serving its registered agent in Texas, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201 and has previously appeared and answered herein.  PHCS has contracted with medical providers in Texas such as Baylor, and is otherwise conducting business in this State and in Dallas County.  Accordingly, PHCS is subject to the jurisdiction of this Court.

5.     Defendant MultiPlan, Inc. ("MultiPlan") is a New York corporation authorized to conduct and conducting business in the State of Texas, with its principal place of business at 115 Fifth Avenue, 7th Floor, New York, New  York 10003.  MultiPlan has acquired and/or merged with PHCS.  When a merger takes effect, the separate existence of the corporations ceases, except for any surviving or new domestic corporation.  Tex. Bus. Orgs. Code § 10.008(a)(1); *Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex. 1995), *disapproved on other*

*grounds, Chilkewitz v. Hyson*, 22 S.W.3d 825 (Tex. 1999). When a business entity is acquired in its entirety by another, in the absence of specific terms to the contrary, both the liabilities and assets of the acquired company are transferred to the purchaser. *Duke Energy Field Servs. Assets, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 68 S.W.3d 848, 850 (Tex.App.--Texarkana 2002, pet. denied). The privileges, powers, rights, and duties of the corporation are transferred to the surviving corporation. *Bailey*, 894 S.W.2d at 759. Accordingly, MultiPlan is subject to the jurisdiction of this Court as successor to PHCS.

### III.   Factual Background

6.    Baylor Healthcare System filed its Original Petition against GPA on October 11, 2006 in Cause No. 06-00120, alleging that GPA breached a contract between Baylor and PHCS. More particularly, Baylor's allegations against GPA arise from a Hospital Services Agreement – PPO ("Hospital Services Agreement") executed by and between Baylor and PHCS on January 1, 2002. GPA was neither a signatory nor a party to the Hospital Services Agreement and has maintained that it is not individually subject to the prompt payment obligations specified in Baylor's Original Petition.

7.    GPA Holding, Inc. filed its Original Third-Party Petition against Private Healthcare Systems, Inc. on December 18, 2006 alleging causes of action

against PHCS for numerous claims including breach of fiduciary duty, negligence, indemnity, contribution and breach of contract.

8.    Subsequently, this Court entered an Agreed Final Judgment between Baylor Healthcare System and GPA Holding, Inc. and further ordered GPA's third-party claim against PHCS be severed from the present cause and be docketed by the District Clerk's Office under a separate cause number.   The parties in the above-matter subsequently entered into an Agreed Order to Stay Proceedings pending the outcome of appeals of the underlying GPA/Baylor litigation.   This Court entered a Stay of all Proceedings for the present case, which was subsequently lifted on March 13, 2014.

9.    GPA has denied liability to Baylor in this matter.   However, GPA has exhausted all avenues of appeal regarding this Court's finding of liability to Baylor.   Therefore, in light of the Court's finding in Baylor's favor on claims asserted against GPA, GPA contends that PHCS is liable to GPA for all or part of Baylor's alleged damages.

## IV.   Causes of Action

### A.   *Breach of Fiduciary Duty*

10.   Pursuant to a string of agreements, including a Limited Power of Attorney by and between PHCS and GPA, PHCS agreed to act as GPA's fiduciary and was obligated to act in GPA's best interests.  The Limited Power of Attorney empowered PHCS to enter into certain "standard form" agreements for the benefit of GPA and the individual self-funded plans administered by GPA.

11.   By way of its Original Petition, Baylor alleges that PHCS, through its execution of the Hospital Services Agreement, bound GPA to the obligations of a "Payor" under the non-standard Hospital Services Agreement.  GPA previously denied that PHCS bound it as a "Payor" under the Hospital Services Agreement, but the determination by this Court that PHCS did in fact obligate GPA as a "Payor" under the agreement with Baylor, then such an action by PHCS was in direct breach of its fiduciary duties owed to GPA.

12.   As GPA's agent and fiduciary, PHCS had an obligation to enter only contractual arrangements that were reasonable, readily performable, consistent with GPA's rights and responsibilities under the Employee Retirement Income Security Act, and beneficial to GPA.  The Court's determination that Baylor is correct in asserting that GPA is a "Payor" under the Hospital Services Agreement (which GPA specifically denied), means that PHCS breached its fiduciary duties to

GPA because it knew or should have known that GPA was not a Payor and unnecessarily exposed GPA to potential liability as a "Payor."

13.    Based on Baylor's interpretation of the Hospital Services Agreement, PHCS also breached its fiduciary duties to GPA by agreeing to a one-sided and impracticable PPO agreement that is inconsistent with GPA's rights and duties under ERISA.   Section 4.4 of the Hospital Services Agreement requires that a claim be paid within 45 days of receipt of a clean claim.   Pursuant to Baylor's contract construction (which GPA disputed), claims would have to be paid before completion of the full investigation required by ERISA, and before the true payors (the self-funded employee health plans) made funds available for payment. Moreover, PHCS agreed to the Hospital Services Agreement without ever consulting GPA.

14.    Further, the Hospital Services Agreement does not require Baylor to refund any money paid if a claim is later determined not to be covered under the applicable self-funded ERISA plan. PHCS breached its fiduciary duties to GPA by entering into an agreement with Baylor that fails to appropriately protect the interests of GPA (to the extent GPA is considered a Payor, which GPA denied).

15.    As GPA's fiduciary, PHCS owed GPA a duty to place the interests of GPA before its own.   Yet, upon information and belief, PHCS received an undisclosed 2% fee from Baylor in connection with claims submitted to GPA for

processing, without advising GPA or remitting such fee to GPA or to the self-funded employee health plans in GPA's charge. PHCS thereby breached its fiduciary duties to GPA by placing itself in a position of conflicting interests and competing duties of loyalty, and by failing to disclose the conflict of interest to GPA. PHCS further breached its fiduciary duties by failing to obtain GPA's consent to receive commissions from both sides of transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA.

16.    Further, PHCS breached its fiduciary duties to GPA by failing to provide GPA with the Hospital Services Agreement before the Baylor claims in question arose. Specifically, PHCS breached its fiduciary duties by failing to inform GPA that the construction of the contracts entered into by PHCS and Baylor would effectively make GPA a "payor" – something they never were before. PHCS placed GPA in the untenable position of performing a non-standard contract that was kept secret from PHCS' fiduciary.

**B.    *Negligence and Willful Malfeasance***

17.    PHCS owed GPA a duty of care as GPA's agent and attorney in fact. PHCS was negligent, grossly negligent, and/or acted with reckless disregard, willful malfeasance, and/or intent to harm GPA in connection with and in performing duties it owed to GPA.

18.   In the event Baylor prevails in its claims against GPA, GPA alleges that PHCS proximately caused GPA harm.

### C.   *Indemnity*

19.   In light of GPA being found liable for Baylor's alleged damages, PHCS is liable to GPA for indemnity.

20.   GPA seeks indemnity directly from PHCS based on Article VI, Section 6.1 of the Subscriber Services Agreement for negligence and/or willful malfeasance by PHCS in connection with the performance or non-performance of PHCS' duties and obligations under the Hospital Services Agreement.

21.   In addition, GPA was sued by Baylor in this action based upon alleged acts or omissions on the part of PHCS.  In light of these allegations, GPA seeks all rights and remedies under common law and under the Texas Civil Practice & Remedies Code Chapter 32.001, *et seq.*

### D.   *Contribution*

22.   In light of GPA being found liable for Baylor's alleged damages, GPA is entitled to contribution from PHCS under Chapters 32 and 33 of the Texas Civil Practice and Remedies Code and any other applicable statues or law.

23.   GPA affirmatively asserts that the negligent and/or wrongful acts or omissions of PHCS proximately caused the harm alleged by Baylor, and GPA is

entitled to and seeks a reduction of liability and damages for any percentage of responsibility of PHCS for the damages alleged in this suit.

### E.    Breach of Contract

24.    PHCS materially breached its contract with GPA by failing to provide GPA with the Hospital Services Agreement as required by Section C and Section 1.2 of the Subscriber Acknowledgment.

25.    PHCS materially breached its contract with GPA by entering into a non-standard contract with Baylor, to the extent GPA is bound by conventional terms making it a "payor" under the Agreement.

26.    Further, PHCS has materially breached its contract with GPA by failing to indemnify GPA as required by Article VI, Section 6.1 of the Subscriber Services Agreement.

27.    PHCS' material breaches have caused and continue to cause GPA injury and damages.

### F.    Equitable Relief - Rescission

28.    In the alternative, GPA pleads affirmatively for equitable relief, including, but not limited to, rescission of the Subscriber Services Agreement executed by and between PHCS and GPA and/or the Hospital Services Agreement executed by and between GPA and Baylor in order to restore the *status quo ante*. While acting as GPA's fiduciary: (a) PHCS executed a non-standard Hospital

Services agreement with Baylor which designated GPA as a Payor; (b) PHCS knew or should have known that GPA was not a Payor and did not intend to be a Payor; (c) PHCS exposed GPA to potential liability as a Payor; (d) the Hospital Services Agreement executed by and between PHCS and Baylor is inconsistent with GPA's rights and duties under the Employee Retirement Income Security Act ("ERISA"); (e) PHCS failed to properly protect GPA's interests in executing an agreement that does not require Baylor to refund any money if a claim is later determined ineligible for coverage under ERISA; (f) PHCS failed to obtain GPA's consent to receive commissions from both sides of the transaction when PHCS was legally obligated to act for the benefit and on behalf of GPA; and (g) PHCS failed to provide GPA with the Hospital Services Agreement until after Baylor filed a lawsuit against PHCS and GPA.  GPA's allegations of breach of fiduciary duty and willful malfeasance bring this case within the recognized grounds for equitable relief.

### G.   *Attorneys' Fees*

29.   GPA has been required to retain the services of the undersigned counsel to represent it in connection with the prosecution of this suit.  GPA is entitled to recover reasonable and necessary attorneys' fees through trial, appeal, and Supreme Court review pursuant to the Subscriber Services Agreement and

Chapters 38 of the Texas Civil Practice and Remedies Code and/or other applicable law.

## H.    *Conditions Precedent*

30.    All conditions precedent to the relief requested in this Third Amended Original Petition have occurred, been performed, been waived, or are excused by law.

## V.    <u>Damages</u>

31.    As a direct and proximate result of PHCS' conduct described above, GPA has been damaged, continues to be damaged, and seeks the following relief:

a.  Actual damages;

b.  Consequential damages;

c.  Exemplary damages;

d.  Forfeiture of any/all fees received by PHCS, whether received from Baylor or GPA;

e.  Profit disgorgement;

f.  Indemnity;

g.  Contribution;

h.  Equitable relief, including but not limited to rescission;

i.  Reasonable and necessary attorneys' fees;

j.  Pre- and post-judgment interest;

k.  Costs of suit; and

l.  All further relief to which GPA may show itself to be justly
entitled.

**WHEREFORE, PREMISES CONSIDERED**, GPA requests that, on final

trial of this cause, the Court enters judgment against PHCS and MultiPlan

awarding GPA all relief to which it may be justly entitled.

Respectfully submitted,

**CHAMBLEE,      RYAN,      KERSHAW      &**
**ANDERSON, P.C.**

By:    */s/ Jeffrey W. Ryan*
Jeffrey W. Ryan
State Bar No. 17469600
jryan@crka.law
Jarad L. Kent
State Bar No. 24062824
jkent@crka.law
Christopher B. Wood
State Bar No. 24056670
cwood@crka.law

2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas  75207
(214) 905-2003
(214) 905-1213 (Facsimile)

**ATTORNEYS FOR GPA HOLDING, INC.**

## CERTIFICATE OF SERVICE

I do hereby certify that on August 22, 2016, a true and correct copy of the above and foregoing document has been forwarded via eservice to Defendant's counsel of record:

Mr. Craig L. Caesar
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170

*/s/ Christopher B. Wood*
Christopher B. Wood

298TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS  75202-4604

May 05, 2016

File Copy


DC-09-07252
GPA HOLDING INC  vs.  PRIVATE HEALTHCARE SYSTEMS


ALL COUNSEL OF RECORD/PRO SE LITIGANTS:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

JURY TRIAL:    09/12/2016 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF
THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY.
IF NO PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED
FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL
PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS
RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL
PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL
PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,


EMILY TOBOLOWSKY
JUDGE, 298TH DISTRICT COURT
DALLAS COUNTY, TEXAS

Cc:
CRAIG L. CAESAR; JEFFREY W RYAN